IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT L. VAZZO, LMFT, individually
and on behalf of his patients, DAVID H.
PICKUP, LMFT, individually and on
behalf of his patients,

This is a Dispositive Motion

Case No. 8:17-cv-02896- CEH-AAS

     Plaintiffs,

v.

CITY OF TAMPA, FLORIDA,

     Defendant.

---

<u>DEFENDANT, CITY OF TAMPA'S, MOTION TO DISMISS COMPLAINT WITH
PREJUDICE, AND MEMORANDUM OF LAW IN SUPPORT THEREOF</u>

The Defendant City of Tampa ("City"), by and through its undersigned counsel,

hereby moves to dismiss the Complaint with prejudice. In support thereof, the City states

as follows:

FACTUAL BACKGROUND

On April 6, 2017, the Tampa City Council passed Ordinance No. 2017-47,

relating to conversion therapy on patients who are minors ("the Ordinance") and, on April

10, 2017, Mayor Buckhorn approved the Ordinance.   The intent of the Ordinance is

expressly set forth in § 14-310 and provides as follows:

> The Intent of this Ordinance is to protect the physical and
> psychological well-being of minors, including but not limited to lesbian, gay,
> bisexual, transgender and/or questioning youth from exposure to the serious
> harms and risks caused by conversion therapy or reparative therapy by
> licensed providers, including but not limited to licensed therapists. These
> provisions are exercise of police power of the City for the public safety,
> health, and welfare; and its provisions shall be liberally construed to
> accomplish that purpose.

1

The Ordinance cites to numerous medical and mental health organizations which have found that sexual orientation change efforts ("SOCE") therapy, including conversion therapy and reparative therapy, may pose a serious threat to the health and well-being of the affected persons. Moreover, according to the Ordinance, many such organizations have also concluded that there is a lack of credible evidence that SOCE therapy is effective. Specifically, the Ordinance cites to articles, reports, position statements, policy statements, a resolution and other publications, from such prominent medical and mental health organizations as the American Academy of Pediatrics, the American Psychiatric Association, the American Psychological Association's Task Force on Appropriate Therapeutic Responses to Sexual Orientation,[1] the American Psychological Association, the American Psychoanalytic Association, the American Academy of Child & Adolescent Psychiatry, the Pan American Health Organization, the American School Counselor Association, the Substance Abuse and Mental Health Services Administration (a division of the U.S. Department of Health and Human

---

[1] Although Plaintiffs' Complaint cites to select portions of the 2009 Report of the American Psychological Association Task Force on Appropriate Therapeutic Responses to Sexual Orientation ("APA Report") in support of their position (Doc. 1, ¶29-39), there are other portions of the APA Report that support the City's concerns that SOCE therapy can pose serious health risks.  For example, and without limitation, in the summary of the APA Report, in chapter 4,  it states that "studies … indicate that attempts to change sexual orientation may cause or exacerbate distress and poor mental health in some individuals, including depression and suicidal thoughts." (Page 42 of APA Report, Doc. 1, Ex. B.)  In the conclusion of the APA Report, in chapter 4, it further provides that "We found that there was some evidence to indicate that individuals experienced harm from SOCE" (Page 43 of APA Report, Doc. 1, Ex. B.). The APA Report also provides that: "the peer-refereed empirical research on the outcome of efforts to alter sexual orientation provides little evidence of efficacy and some evidence of harm." (Page 35 of APA Report, Doc. 1, Ex. B.) The City further notes that to the extent that there is a lack of absolute certainty as to the adverse impact of conversion therapy, it would be imprudent to require the City to conduct studies on children, subjecting them to conversion therapy, to prove with certainty that conversion therapy poses serious harms. *See FCC v. Fox Television Stations, Inc.*, 129 S. Ct. 1800, 1813 (2009) (Supreme Court refused to require Congress to present studies where minors were intentionally exposed to indecent television broadcasts, isolated from all other indecency, to establish the harmful effects of the broadcasts).

Services), the American College of Physicians, the American Medical Association, the

World Psychiatric Association, the National Association of Social Workers, and the

Agency for Healthcare Research and Quality.[2] (The articles, reports, position statements,

policy statements, resolution, and other publications, which are cited in the Ordinance,

are attached to the certified copy of the Ordinance being filed of record by the City.[3])

The Ordinance also cites to two federal appellate decisions wherein the courts upheld the

validity of a statute prohibiting licensed professionals from engaging in SOCE therapy

with minors.[4]

> The Ordinance further provide that:
>
>> City Council hereby finds the overwhelming research demonstrating
>> that sexual orientation and gender identity change efforts can pose critical
>> health risks to lesbian, gay, bisexual, transgender or questioning persons, and
>> that being lesbian, gay, bisexual, transgender or questioning is not a mental
>> disease, mental disorder, mental illness, deficiency, or shortcoming ....

(Page 4 of Ordinance.) The Ordinance also goes on to state that the City has a

"compelling interest in in protecting the physical and psychological well-being of minors,

including but not limited to lesbian, gay, bisexual, transgender and questioning youth,

and in protecting its minors against exposure to serious harm caused by sexual orientation

and gender identity change efforts ...."[5]  Further, the Ordinance provides:

>> ... the City does not intend to prevent mental health providers from
>> speaking to the public about SOCE; expressing their views to patients;
>> recommending SOCE to patients; administering SOCE to any person who is

---

[2] *See* the "Whereas Clauses" on pages 1-4 of the Ordinance which, pursuant to section 1 of the Ordinance, are incorporated therein by reference.

[3]   The City, under separate cover, is filing a notice of  the certified copy of the Ordinance and a request that the Court take judicial notice thereof.

[4] *See* page 4 of Ordinance, citing *to King v. Governor of the State of New Jersey*, 767 F.3d 216 (3d Cir. 2014) and *Pickup v. Brown*, 740 F.3d 1208 (9th Cir. 2013).

[5] Page 4 of the Ordinance.

> 18 years of age or older; or referring minors to unlicensed counselors, such as religious leaders. This ordinance does not prevent unlicensed providers, such as religious leaders, from administering SOCE to children or adults; nor does it prevent minors from seeking SOCE from mental health providers in other political subdivisions or states outside of the City ....

(Page 4 of Ordinance.) The Ordinance further states that:

> the City Council finds minors receiving treatment from licensed therapists in the City of Tampa, Florida, who may be subject to conversion or reparative therapy are not effectively protected by other means, including, but not limited to, other state statutes, local ordinances, or federal legislation ....

(Page 4 of Ordinance.) Turning to the definitions in the Ordinance, the term "Conversion therapy or reparative therapy" is defined as follows:

> *Conversion therapy or reparative therapy* means, interchangeably, any counseling, practice, or treatment performed with *the goal of changing an individual's sexual orientation or gender identity*, including, but not limited to, efforts to change behaviors, gender identity, or gender expression, or to eliminate, or reduce sexual or romantic attractions or feelings toward individuals of the same gender or sex. *Conversion therapy does not include counseling that provides support and assistance to a person undergoing gender transition or counseling that provides acceptance, support, and understanding of a person or facilitates a person's coping, social support, and development, including sexual orientation-neutral interventions to prevent or address unlawful conduct or unsafe sexual practices, as long as such counseling does not seek to change sexual orientation or gender identity.*

(Section 14-311(a) of Ordinance.) (Emphasis supplied.)   The term "Minor" is defined in the Ordinance "to mean any person less than 18 years of age." (Section 14-311(b) of Ordinance.)   The term "Provider" is defined in the Ordinance as follows:

> Provider means any person who is licensed by the State of Florida to provide professional counseling, or who performs counseling as part of his or her professional training under chapters 456, 458, 459, 490 or 491 of the Florida Statutes, as such chapters may be amended, including but not limited to, medical practitioners, osteopathic practitioners, psychologists, psychotherapists, social workers, marriage and family therapists, and licensed counselors. *A Provider does not include members of the clergy who are acting in their roles as clergy or pastoral counselors and providing religious*

*counseling to congregants, as long as they do not hold themselves out as*
*operating pursuant to any of the aforementioned Florida Statutes licenses.*

(Section 14-311(c) of Ordinance.) (Emphasis supplied.)

Finally, with respect to the "conversion therapy prohibited," the Ordinance states:
"It shall be unlawful for any Provider to practice conversion therapy efforts on *any*
*individual who is a minor* regardless of whether the Provider receives monetary
compensation in exchange for such services." (Section 14-312 of Ordinance.) (Emphasis
supplied.)

LEGAL ARGUMENT

Introduction

Plaintiffs Vazzo and Pickup, for themselves and on behalf of their purported
minor patients, have filed a Complaint against the City wherein they challenge the
constitutionality of the Ordinance - both under federal and state law - and also challenge
the validity of the Ordinance on the basis of state preemption and Florida Patient's Bill
of Rights and Responsibilities Act. The Complaint fails to state a claim upon which relief
can be granted and should be dismissed with prejudice pursuant to Rule 12(b)(6), Federal
Rules of Civil Procedure. In addition, Plaintiffs lack standing to assert claims on behalf
of their purported minor patients, and Plaintiff Pickup lacks standing to assert claims on
his own behalf. As such, Plaintiffs' claims on behalf of their minor patients, and the
claims of Plaintiff Pickup, should also be dismissed pursuant to Rule 12(b)(1), Federal
Rules of Civil Procedure.

With respect to Plaintiffs' federal constitutional challenges in counts I-III of the
Complaint, there are four decisions of the United States Court of Appeals - including two

5

in the Third Circuit[6] and two in the Ninth Circuit[7] - which have addressed the constitutionality of statutes prohibiting licensed professionals from engaging in SOCE therapy with minors. In each of these cases, the courts have found the statutes to pass constitutional muster. Moreover, in each of these cases, review has been sought from the United States Supreme Court, and the Supreme Court has denied the petitions for writ of certiorari. In the Third Circuit, in *King*, the court applied an intermediate scrutiny test in upholding the constitutionality of the statute as it related to a challenge under the First Amendment right to free speech, 767 F.3d at 237, and the court applied a rational basis review in rejecting the claim that the statute violated the First Amendment right to the free exercise of religion. 767 F. 3d at 243. In the Ninth Circuit, in *Pickup*, the court applied a rational basis review test in upholding the constitutionality of the statute. 740 F.3d at 1231-33. Although the City candidly acknowledges that the Eleventh Circuit, in *Wollschaeger v. Governor of State of Florida*, 848 F.3d 1293, 1309 (11th Cir. 2017), has stated that "there are serious doubts about whether *Pickup* was correctly decided", the Eleventh Circuit nonetheless proceeded to state that "In any event, *Pickup is distinguishable on its face and does not speak to the issues before us." Id.* (Emphasis supplied.)[8] The City is unaware, moreover, of any criticism by the Eleventh Circuit of

---

[6] *King v. Governor of the State of New Jersey*, 767 F.3d 216 (3d Cir. 2014 *cert. den.* 135 S. Ct. 2048(2015); *Doe v. Governor of the State of New Jersey*, 783 F.3d 150 (3d Cir. 2015) *cert. den.* 136 S. Ct. 1155 (2016).

[7] *Pickup v. Brown*, 740 F.3d 1208 (9th Cir. 2014) *cert. den.* 134 S. Ct. 2871 (2014); *Welch v. Brown*, 834 F.3d 1041 (9th Cir. 2016) *cert. den.* 137 S. Ct. 2093 (2017).

[8] *In Wollschaeger*, the Eleventh Circuit noted: "Importantly ...the law in *Pickup* ... did not restrict what the practitioner could say or recommend to a patient or client. *See* [740 F.3d] at 1223 (explaining that the California law did not prevent mental health providers 'from expressing their views to patients, whether children or adults, about SOCE, homosexuality, or any other topic' or from 'recommending SOCE to patients, whether children or adults'). The *Pickup* panel, therefore, concluded that the law 'regulated conduct' even though it covered the verbal aspects of SOCE therapy. *See id.* at 1229." 848 F.3d at 1309. Similarly, in the case *sub judice*, the Ordinance provides that "the City does not intend to prevent mental

the Third Circuit decisions in *King* and *Doe* upholding the constitutionality of a statute prohibiting licensed professionals from engaging in SOCE therapy with minors. The City would also note that, although numerous jurisdictions have enacted laws prohibiting licensed professionals from engaging in SOCE therapy with a minor,[9] the City is unaware of any judicial decision which has found these laws to be unconstitutional or invalid.

---

health providers from speaking to the public about SOCE; expressing their views to patients; recommending SOCE to patients; administering SOCE to any person who is 18 years of age or older; or referring minors to unlicensed counselors, such as religious leaders...." (Page 4 of Ordinance.)

[9] Jurisdictions that have enacted laws prohibiting licensed professionals from engaging in SOCE therapy with a minor include, but are not limited to, the following: (a) nine states comprising California, Connecticut, Illinois, Nevada, New Jersey, New Mexico, Oregon, Rhode Island, and Vermont; (b) the District of Columbia; (c) seventeen local governments in Florida comprising City of Boca Raton, City of Boynton Beach, City of Delray Beach, City of Greenacres, City of Key West, City of Lake Worth, City of Miami, City of Miami Beach, City of North Bay Village, City of Oakland Park, Palm Beach County, City of Rivera Beach, Town of Bay Harbor Islands, Village of El Portal, Village of Wellington, City of West Palm Beach, and City of Wilton Manors; and (d) at least ten out-of-state local governments comprising City of Allenton, City of Athens, City of Cincinnati, City of Columbus, City of Dayton, City of Philadelphia, Pima County, City of Pittsburgh, City of Seattle, and City of Toledo. *See,* respectively, §§ 865.1, 865.2, Cal. Bus. & Prof. Code.; P.A. 17-5, §§ 1-4, Conn. Gen. Stat.; Chp. 405, Act 48, §5, Ill. Comp. Stat.; SB 201, §1.5, Nev. Admin. Code; §§ 45:1–54, –55, N.J. Stat. Ann.; §§ 61-1-33, 61-3-28, 61-6-15, 61-9-13, 61-9A-26, 61-10-151, 61-31-17, N.M. Stat.; §§ 675.070, 675.850, Or. Rev. Stat.; §§ 23-91-1, 23-91-2, 23-91-3, 23-91-4, 23-91-5, R.I. Code; 3 V.S.A. §129a, 18 V.S.A. §§ 8351-8353, 26 V.S.A. §§ 1354(a), 1842(b), 3016, 3210, 3271, 4042, 4062, 4132; §§ 7-1231.02, 7-1231.14a, D.C. Code; City of Boca Raton, Fla., Code of Ordinances, §§9-104, 9-105, 9-106, 9-107; City of Boynton Beach, Fla., Code of Ordinances, §§ 15-134, 15-135, 15-136, 15-137; City of Delray Beach, Fla., Code of Ordinances, § 133.02; City of Greenacres, Fla., Code of Ordinances, § 8-74; City of Key West, Fla., Code of Ordinances, § 42-18; City of Lake Worth, Fla., Code of Ordinances, §§ 15-91, 15-92, 15-93, 15-94; City of Miami, Fla., Code of Ordinances, § 37-13; City of Miami Beach, Fla., Code of Ordinances, §§ 70-405, 70-406, 70-407; City of North Bay Village, Fla., Code of Ordinances, §§ 137.01, 137.02, 137.03; City of Oakland Park, Fla., Code of Ordinances, §§ 8-126, 8-127, 8-128, 8-129; Palm Beach County, Fla., Code of Ordinances, Ordinance No. 2017-046; City of Rivera Beach, Fla., Code of Ordinances, § 1-8; Town of Bay Harbor Islands, Fla., Code of Ordinances, § 23-5.2; Village of El Portal, Fla., Code of Ordinances, Ordinance No. 2016-08; Village of Wellington, Fla., Code of Ordinances, §§ 36-35, 36-46, 36-47, 36-48; City of West Palm Beach, Fla., Code of Ordinances, §§ 54-172, 54-173, 54-174; City of Wilton Manors, Fla., Code of Ordinances, §§ 12-11, 12-12, 12-13; City of Allenton, Pa., Code of Ordinances, §§ 320.01, 320.02, 320.03, 320.04; City of Athens, Ohio, Code of Ordinances, §§ 3.12.01, 3.12.02, 3.12.03; City of Cincinnati, Ohio, Code of Ordinances, §§ 769-1, 769-3, 769-99; City of Columbus, Ohio, Code of Ordinances, § 2331.10; City of Dayton, Ohio, Code of Ordinances, §§ 135.03, 135.04, 135.05; City of Philadelphia, Pa., Code of Ordinances, § 9-903; Pima County, Ariz., Code of Ordinances, §§ 9.90.010, 9.90.020, 9.90.030, 9.90.040, 9.90.050; City of Pittsburgh, Pa., Code of Ordinances, §§ 628.01, 628.02; City of Seattle, Wash., Code of Ordinances, §§ 14.21.010, 14.21.020, 14.21.030, 14.21.040, 14.21.050; City of Toledo, Ohio, Code of Ordinances, §§ 554.01, 554.06, 555.99.

With respect to Plaintiffs' state law claims, they are also without merit. Plaintiffs' constitutional challenges under the Florida Constitution, in Counts IV-V of the Complaint, fail for the same reasons that the federal constitutional challenges must be dismissed. Count VI and VII of the Complaint fail to state a claim upon which relief can be granted.

<u>Plaintiffs lack standing to assert claims on behalf of their purported minor patients</u>

The caption of the Complaint identifies the Plaintiffs as Robert L. Vazzo, LMFT and David M. Pickup, LMFT, individually, and on behalf of their patients. The body of the Complaint, moreover, includes allegations and claims on behalf of unnamed minor patients.[10]

Plaintiffs lack standing to assert claims on behalf of their purported minor patients in the City. In *King*, where the plaintiffs argued that the District Court erred by concluding that they lacked standing to bring claims on behalf of their minor clients, the Third Circuit rejected that argument and concluded that "Plaintiffs lack standing to pursue claims on behalf of their minor clients." 767 F.3d at 244. In reaching that conclusion, the Third Circuit first addressed the limited circumstances in which one can obtain third-party standing and stated in relevant part:

> "It is a well-established tenet of standing that 'a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties.'" *Pennsylvania Psychiatric Soc'y v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 288 (3d Cir. 2002) (quoting *Powers v. Ohio*, 499 U.S. 400, 410, 111 S. Ct. 1364, 113 L. Ed.2d 411 (1991)).

---

[10] With respect to Plaintiff Vazzo, although the Complaint alleges he has been contacted by individuals in the City who desire to discuss and engage in sexual orientation change efforts counseling with him (Doc. 1, ¶ 73), the Complaint appears to identify the existence of only one unnamed minor client in the   City. (Doc. 1 ¶ 74-76, 108-109.) The remainder of Plaintiffs' alleged minor patients in the City appear to be prospective clients. (Doc. 1 ¶ 73, 86, 88-92, 107-11, 133-140.)

Yet the prohibition is not invariable and our jurisprudence recognizes third-party standing under certain circumstances.' *Id.* (citations omitted.) To establish third party standing, a litigant must demonstrate that (1) she has suffered an 'injury in fact' that provides her with a sufficiently concrete interest in the outcome of the case in dispute'; (2) she has a 'close relation to the third party'; and (3) there exists 'some hindrance to the third party's ability to protect his or her own interests.' *Powers,* 499 U.S. at 411, ….

767 F.3d at 243. The Third Circuit went on to state: "Plaintiffs have failed to establish that their clients are 'hindered' in their ability to bring suit themselves … Further, we note that minor clients have been able to file suit pseudonymously in both *Pickup* and *Doe v. Christie,* - F. Supp.3d -, 2014 WL 3765310 (D.N.J. July 31, 2014)…." 767 F.3d at 244.

In the case at bar, Plaintiffs have failed to allege each of the elements necessary to obtain third-party standing. Moreover, pursuant to the analysis in *King,* the fact that minor clients could file suit pseudonymously, supports the conclusion that Plaintiffs' minor patients are not hindered in their ability to protect their own interests. Accordingly, Plaintiffs lack standing to assert claims on behalf of their minor patients.

<u>Plaintiff Pickup lacks standing</u>

According to the Complaint, although Plaintiff Vazzo is a licensed marriage and family therapist in the State of Florida (Doc. 1, ¶14), Plaintiff Pickup is "currently undergoing the necessary requirements to obtain his license in Florida." (Doc. 1, ¶15.) Thus, Plaintiff Pickup's claims are premature at best, and he currently lacks standing to challenge the validity of the Ordinance in a jurisdiction where he is not licensed to practice.

The United States Supreme Court, in addressing the requirements for standing, has

held that:

> To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.' ... Although imminence is a concededly somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes–that the injury is *certainly impending*.'...Thus, we have repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that [a]llegations of *possible* future injury' are not sufficient.

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis in original) (citations

omitted).

In the matter at hand, it is unknown from the Complaint what "necessary

requirements" Plaintiff Pickup is undertaking to obtain his license, the length of time those

"necessary requirements" will take, whether Plaintiff Pickup will successfully complete

these "necessary requirements" and when, if at all, the State of Florida may provide him

with a license. Accordingly, Plaintiff Pickup fails to satisfy the requirements for standing

as articulated by the Supreme Court in *Clapper*.

<u>Count I of the Complaint should be dismissed with prejudice</u>

Count I of the Complaint, which alleges the Ordinance violates Plaintiffs' right

to freedom of speech under the First Amendment, fails to state a claim upon which relief

can be granted. In *King*, the Third Circuit held that the enactment of a statute, prohibiting

licensed counselors from engaging in SOCE therapy with clients under age eighteen, did

not violate the counselors' First Amendment free speech rights.   In reaching that

conclusion, the court applied an intermediate scrutiny standard of review and found that

that the statute advanced the government's interest of protecting minors from ineffective

and/or harmful professional services and was not more extensive than necessary to serve

that interest. The Third Circuit stated in relevant part:

> ... The legislative record demonstrates that over the last few decades a number of well-known, reputable professional and scientific organizations have publicly condemned the practice of SOCE, expressing serious concerns about its potential to inflict harm .... Many such organizations have also concluded that there is no credible evidence that SOCE counseling is effective....

> We conclude that this evidence is substantial. Legislatures are entitled to rely on the empirical judgments of independent professional organizations that possess specialized knowledge and experience concerning the professional practice under review ....

> ....

> ... a state legislature is not constitutionally required to wait for conclusive scientific evidence before acting to protect its citizens from serious threats of harm. *See United States v. Playboy Entm't Grp, Inc.,* 529 U.S. 803, 822 (2000) .... It is not too far a leap in logic to conclude that a minor client might suffer psychological harm if repeatedly told by an authority figure that her sexual orientation – a fundamental aspect of her identity – is an undesirable condition. Further if SOCE counseling is ineffective – which, as we have explained, is supported by substantial evidence – it would not be unreasonable for a legislative body to conclude that a minor would blame herself if the counselor's efforts failed.... We therefore conclude that [the statute] 'directly advances' New Jersey's stated interest in protecting minor citizens from harmful professional practices.

> Lastly, we must determine whether [the statute] is more extensive than necessary to protect this interest. To survive this prong of intermediate scrutiny, New Jersey 'is not required to employ the least restrictive means conceivable, but it must demonstrate narrow tailoring of the challenged regulation to the asserted interest.' *Greater New Orleans Broad Ass'n, Inc. v. United States,* 527 U.S. 173, 188, 119 S. Ct. 1923, 144 L. Ed.2d 161 (1999) (citing *Board of Tr. Of State Univ. of New York v. Fox,* 492 U.S. 469, 480, 109 S. Ct.. 3028, 106 L. Ed.2d 388 (1989). Thus, New Jersey must establish a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served.' *Id. (quoting Fox,* 492 U.S. at 480, 109 S. Ct. 3028); *See also Heffner v. Murphy,* 745 F.3d 56, 92-93 (3d Cir. 2014) (upholding

> regulation of commercial speech while acknowledging that the fit between the statute and its interest was 'imperfect') ....
>
> Plaintiffs argue that [the statute's] ban is overly burdensome, and that New Jersey's objectives could be accomplished in a less restrictive manner via a requirement that minor clients give their informed consent before undergoing SOCE counseling. We are not convinced, however, that an informed consent requirement would adequately serve New Jersey's interests. Minors constitute an 'especially vulnerable population,' ... and may feel pressured to receive SOCE counseling by their families and their communities despite their fear of being harmed....

767 F.3d at 238-240 (footnote omitted). In *King*, the court also rejected plaintiffs'

argument that the statute was unconstitutionally vague and overbroad. 767 F.3d at 240-

241.

The decision in *King* is extremely apposite to the case at bar where: (1) the

legislative findings of City Council reflect that a number of medical and mental health

organizations have found that SOCE therapy may pose a serious threat to the health and

well–being of the affected persons, and many such organizations have also concluded

that there is a lack of credible evidence that such therapy is effective;[11] (2) the Ordinance

expressly articulates a compelling interest in protecting the physical and psychological

well-being of minors against exposure to serious harms caused by SOCE therapy; and

(3) the Ordinance is narrowly tailored and constitutes the least restrictive means of

advancing the compelling governmental interest.

The assertion by Plaintiffs, that "informed consent" would be a less restrictive

means to achieve the City's interest, is an argument that was rejected in *King*. 767 F.3d

at 240. Moreover, in a number of other cases, federal and state courts have recognized

---

[11] See Ordinance at pages 1-4.

that minors, because of their young age, cannot consent to - or make informed decisions on - a variety of matters; that parents do not have unfettered rights concerning their children; and that the government has a compelling interest in protecting the physical and psychological well-being of minors.[12] Accordingly, the Ordinance should clearly

---

[12] *See Hodgson v. Minnesota*, 497 U.S. 417, 444 (1990) ("The State has a strong and legitimate interest in the welfare of its young citizens, whose immaturity, inexperience, and lack of judgment may sometimes impair their ability to exercise their rights wisely."); *Sable Commc'ns of Cal., Inc v. FCC*, 492 U.S. 115, 126 (1989) (the state has a "compelling interest in protecting the physical and psychological well-being of minors," which "extends to shielding minors from the influence of literature that is not obscene by adult standards."); *City of Dallas v. Stanglin*, 109 S. Ct. 1591 (1989) (city ordinance did not infringe on First Amendment rights in restricting admission to certain dance halls to persons between ages of 14 and 18, and a rational relationship existed between age restrictions for dance halls and city's interest in promoting the welfare of teenagers); *Parham v. J.R.*, 442 U.S. 584, 603 (1979) ("state is not without constitutional control over parental discretion in dealing with children when their physical or mental health is jeopardized."); *McKeiver v. Pennsylvania*, 403 U.S. 528, 550 (1971) (plurality opinion) ("State is entitled to adjust its legal system to account for children's vulnerability and their need for 'concern, … and paternal attention"); *Prince v. Massachusetts*, 321 U.S. 158, 168-169 (1944) (Supreme Court upheld statute prohibiting boys under age 12 and girls under age 18 from selling magazines, etc., on the street and held that state's authority over children's activities is broader than that over like actions of adults. In reaching that conclusion, the Court stated that:

> … the family itself is not beyond regulation in the public interest, as against a claim of religious liberty. *Reynolds v. United States*, 98 U.S. 145, 25 L.Ed. 244; *Davis v. Beason*, 133 U.S. 333, 10 S. Ct. 299, 33 L.Ed. 637. And neither rights of religion nor rights of parenthood are beyond limitation. Acting to guard the general interest in youth's well being, the state as parens patriae may restrict the parent's control by requiring school attendance, regulating or prohibiting the child's labor, and in many other ways. Its authority is not nullified merely because the parent grounds his claim to control the child's course of conduct on religion or conscience. Thus, he cannot claim freedom from compulsory vaccination for the child more than for himself on religious grounds. The right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death.

321 U.S. at 166-167 (footnotes omitted); *Parker v. Hurley*, 514 F.3d 87 (1st Cir. 2008) (where parents. individually and on behalf of their children, brought a §1983 and state law action against school district officials and employees, alleging curriculum materials intended to encourage respect for gay person and couples violated both their free exercise right and their right to raise their children as they wished, the First Circuit affirmed the district court's granting defendant's motion to dismiss the federal claims for failure to state a claim upon which relief could be granted, and dismissed the state claims without prejudice); *American Booksellers v. Webb*, 919 F.2d 1493 (11th Cir. 1990) (Eleventh Circuit held state may, absent impermissible burden on adults, deny minors all access in any form to materials obscene as to them, but acceptable for adults; that minors have no right to view or in any way consume such material, even if they do not purchase or otherwise take control of it; and that state's interest in protecting its youth justifies limited burden on free expression); *Schmitt v. State*, 590 So.2d 404, 410-411 (Fla. 1991) (Florida Supreme Court held "it is evident beyond all doubt that any type of sexual conduct involving a child constitutes an intrusion upon the rights of that child, whether or not the child consents and whether or not that conduct originates from a parent.")

pass constitutional muster under the intermediate scrutiny standard of review that was applied by the Third Circuit in *King*, and should also pass muster under any standard of review.[13]

### Count II of the Complaint should be dismissed with prejudice

Count II of the Complaint, which alleges that the Ordinance violates Plaintiffs' clients' First Amendment right to receive information, fails to state a claim upon which relief can be granted. In *Doe v. Governor of the State of New Jersey*, 783 F.3d 150 (3d Cir. 2015) *cert. den.* 136 S. Ct. 1155 (2016), where a minor child and his parents brought an action against the Governor of New Jersey, challenging the constitutionality of a New Jersey statute that prohibited licensed counselors from engaging in SOCE therapy with minors, and plaintiffs alleged in their complaint that the statute violated their First Amendment right to receive information, the Third Circuit rejected that argument. 783 F.3d at 155-156. In reaching that conclusion, the court stated in relevant part:

> ...the First Amendment protects both the speaker and the recipient of information. *See Va. State Bd. Of Pharm. v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756-57, 96 S. Ct. 1817, 48 L. Ed.2d 346 (1976). However, the cases interpreting the First Amendment do not contemplate that some speech may be restricted as to the speaker but not the listener. The listener's right to receive information is reciprocal to the speaker's right to speak. *See id.; Bd. Of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 867, 102 S. Ct. 2799, 73 L. Ed.2d 435 (1982) ([T]he right to receive ideas

---

[13] Although the court applied an intermediate scrutiny test to the challenge under the First Amendment right to free speech, 767 F.3d at 237, the court noted that "We recognize that our sister circuits have concluded that regulations of professional speech are subject to a more deferential standard of review or, possibly no review at all. *See Pickup*, 740 F.3d at 1231; *Wollschlager*, 760 F.3d at 1217-18, 2014 WL 3695296, at *13-*14; *Moore-King*, 708 F.3d at 567-70. *Pickup*, for example, cited *Casey*, 505 U.S. at 884, 967-68, 112 S.Ct. 279 (plurality opinion), as support for its decision to apply rational basis review to a similar statute. *Pickup*, 740 F.3d at 1231." 767 F.3d at 235 (footnote omitted). Moreover, even assuming arguendo that a strict scrutiny standard were applied to this case, and the City does not believe such a standard should be applied based upon the analysis in *King*, the Ordinance should still pass muster as the Ordinance articulates a compelling governmental interest of protecting minors from serious harms and the Ordinance constitutes the least restrictive means of advancing the compelling governmental interest.

> follows ineluctably from the sender's First Amendment right to send them.')
> As we concluded in *King,* [the statute] does not violate the counselor's right
> to speak, *see* 767 F.3d at 240, and, as a result, it does not violate Appellants'
> right to receive information.

783 F.3d at 155. In applying this holding to the matter at hand, insofar as count I of the

Complaint fails to state a claim upon which relief can be granted, Plaintiffs' claim under

count II must also be dismissed.

<u>Count III of the Complaint should be dismissed with prejudice</u>

Count III of the Complaint, which alleges that the Ordinance violates Plaintiffs'

right to free exercise of religion," fails to state a claim upon which relief can be granted.

In *King,* where plaintiffs' second constitutional claim was that the statute violated their

First Amendment right to free exercise of religion, the Third Circuit concluded that this

claim also lacked merit. In reaching that conclusion, the court stated in relevant part:

> Under the Religion Clauses of the First Amendment, 'Congress shall
> make no law respecting an establishment of religion, or prohibiting the free
> exercise thereof.' The right to freely exercise one's religion, however, is not
> absolute. *McTernan v. City of York,* 577 F.3d 521, 532 (3d Cir. 2009).   If a
> law is 'neutral' and 'generally applicable,' it will withstand a free exercise
> challenge so long as it is 'rationally related to a legitimate governmental
> objective.' *Brown v. City of Pittsburgh*, 586 F.3d 263, 284 (3d Cir. 2009)
> (citation omitted).  This is so even if the law 'has the incidental effect of
> burdening a particular religious practice or group.' Id. at 284 (*quoting
> Church of the Lukumi Babalu Aye, Inc. v. City of Hialea*h, 508 U.S. 520, 531,
> 113 S. Ct. 2217, 124 L. Ed.2d 472 (1993)).

> The issue before us, then, is whether [the statute] is 'neutral' and
> 'generally applicable.' A law is 'neutral' if it does not target religiously
> motivated conduct either on its face or as applied in practice.' ...' A law fails
> the general  applicability requirement if it burdens a category of religiously
> motivated conduct but exempts or does not reach a substantial category of
> conduct that is not religiously motivated and that undermines the purposes
> of the law to at least the same degree as the covered conduct that is
> religiously motivated....'

As a preliminary matter, [the statute] makes no explicit reference to any religion or religious beliefs, and is therefore neutral on its face. *See Lukumi,* 508 U.S. at 533-34, 113 S. Ct. 2217. Nevertheless, Plaintiffs argue that [the statute] covertly targets their religion .....

None of [the] 'exemptions,' however, demonstrate that [the statute] covertly targets religiously motivated conduct....

Accordingly, we conclude that [the statute] is neutral and generally applicable, and therefore triggers only rational basis review....

767 F.3d 216, 241-243. Similarly, in *Welch,* the Ninth Circuit held a statute, prohibiting licensed mental health providers from providing SOCE therapy to minors, did not excessively entangle the state with religion in violation of mental health providers' rights under the First Amendment's Establishment Clause. 834 F.3d at 1044-1047.

In applying the aforesaid law to the matter at hand, the Ordinance must also pass muster under First Amendment right to the free exercise of religion where the Ordinance (1) is neutral and generally applicable, and does not target religiously motivated conduct either on its face or as applied in practice,[14] and (2) at a minimum, is rationally related to a legitimate governmental objective. Indeed, as discussed earlier, the Ordinance serves a compelling governmental interest and is narrowly tailored and constitutes the least restrictive means of advancing the compelling governmental interest.

---

[14] The Ordinance does not make any explicit reference to any religion or religious beliefs. Moreover, none of the exemptions to the Ordinance covertly target religiously motivated conduct. To the contrary, the Ordinance expressly states: "A Provider does not include members of the clergy who are acting in their roles as clergy or pastoral counselors and providing religious counseling to congregants, as long as they do not hold themselves out as operating pursuant to any of the aforementioned Florida Statutes licenses." Section 14-311(c) of the Ordinance. The Ordinance further states, on page 4, that "the City does not intend to prevent mental health providers from ... referring minors to unlicensed counselors, such as religious leaders. This ordinance does not prevent unlicensed providers, such as religious leaders, from administering SOCE to children or adults ...." Finally, the City would note that the prohibition in the Ordinance against SOCE therapy with minors by licensed providers is neutral and expressly applies to "any individual who is a minor". Section 14-312 of the Ordinance.

<u>Count IV of the Complaint should be dismissed with prejudice</u>

Count IV of the Complaint, which alleges that the Ordinance violates Plaintiffs' rights to liberty of speech under Article I, Section 4 of the Florida Constitution, fails to state a claim upon which relief can be granted.   Article I, § 4, of the Florida Constitution, which provides that "[n]o law shall be passed to restrain or abridge the liberty of speech," is similar to the language in the First Amendment to the United States Constitution which provides that "Congress shall make no law … abridging freedom of speech."[15] The Second District Court of Appeal has held that the scope of the guarantees of freedom of speech under the Florida Constitution and the First Amendment to the United States Constitution are the same and, accordingly, the court would not treat them separately. *Florida Canners Association v. State of Florida,* 371 So.2d 503, 517 (Fla. 2d DCA 1979). The federal court, in *Warner v. City of Boca Raton*, 64 F. Supp. 2d 1272, 1295 (S.D. Fla. 1999) *aff'd* 420 F.3d 1308 (11th Cir. 2005),  has also held that "Florida Courts have generally construed their state constitutional guarantees to be coextensive with their federal counterparts."

Accordingly, the same analysis that is applied in adjudicating count I of the Complaint should also apply in determining whether count IV should be dismissed.  As such,  the City incorporates by reference its arguments in support of dismissing count I

---

[15] In *Simmons v. State of Florida,* 944 So.2d 317, 323 (Fla. 2006), the Supreme Court of Florida stated that the provision of the First Amendment of the United States Constitution, providing that Congress shall make no law abridging freedom of speech, is similar to article I, section 4 of the Florida Constitution which provides that "[n]o law shall be passed to restrain or abridge the liberty of speech."

of the Complaint, and for all the reasons set forth by the City as to why count I of the Complaint must be dismissed, this Court should also dismiss count IV of the Complaint.

<u>Count V of the Complaint should be dismissed with prejudice</u>

Count V of the Complaint, which alleges that the Ordinance violates Plaintiffs' right to free exercise and enjoyment of religion under Article I, Section 3 of the Florida Constitution, fails to state a claim upon which relief can be granted. Florida courts have interpreted the guarantees contained in Florida's Free Exercise Clause as coequal to the federal counterpart in the Free Exercise Clause of the First Amendment to the United States Constitution. *See Toca v. State*, 834 So.2d 204, 208 (Fla. 2d DCA 2002) (citing Commentary to Art. I, § 3, 1968 Revision of the Florida Constitution for the premise "that Florida's Free Exercise Clause parallels the First Amendment"); *Allen v. Allen*, 622 So.2d 1369 (Fla. 1st DCA 1993) (summarily finding concurrent violations of the Free Exercise Clause of both Art. I, § 3 and the First Amendment).

Accordingly, the same analysis that is applied in determining whether to dismiss count III of the Complaint - wherein Plaintiffs allege violations of their right to free exercise of religion under the Free Exercise Clause of the First Amendment - should also be applied in determining whether to dismiss count V of the Complaint. To that end, the City incorporates herein by reference it arguments in support of dismissing count III of the Complaint.

<u>Count VI of the Complaint should be dismissed with prejudice</u>

Plaintiffs allege in count VI of the Complaint that the City has no authority to enact the Ordinance because the Legislature preempted the "field of regulation of mental

health professionals" and the "field of disciplinary actions for licensed mental health professionals" pursuant to Chapter 491 (particularly § 491.009) and "Fla. Admin. Code Ann. R. 64B-5001." (Doc. No. 1 ¶ 191-192.)[16] Thus, Plaintiffs claim that the City's adoption of the Ordinance was *void ab initio* and *ultra vires* under Article VIII, § 2(B) of the Florida Constitution and § 166.021, Fla. Stat. (Doc. No. 1. ¶ 186-190, 197). Plaintiffs fail to state a claim upon which relief can be granted.

Florida acknowledges two types of preemption: express and implied. *See D'Agastino v. City of Miami,* 220 So. 3d 410, 421 (Fla. 2017); *Sarasota Alliance for Fair Elections, Inc. v. Browning,* 28 So. 3d 880, 886 (Fla. 2010). Express preemption requires a specific legislative statement that cannot be implied or inferred, and must be accomplished by clear language stating an intended preemption. *Browning,* 28 So. 3d at 886; *City of Hollywood v. Mulligan,* 934 So. 2d 1238, 1243 (Fla. 2006). Implied preemption occurs when "the legislative scheme is so pervasive as to virtually evidence an intent to preempt the particular area, and where strong public policy reasons exist for finding such an area to be preempted by the Legislature." *D'Agastino,* 220 So. 3d at 421; *Browning,* 28 So. 3d at 886. "In determining if implied preemption applies, the court must look 'to the provisions of the whole law, and to its object and policy.'" *Browning,* 28 So. 3d at 886 (quoting *State v. Harden,* 938 So.2d 489, 486 (Fla. 2006)). However, courts "must be careful and mindful in attempting to impute intent to the Legislature to preclude a local elected governing body from exercising its home rule powers," and

---

[16] The City notes that it is unable to locate section 64B-5001 of the Administrative Code as alleged by Plaintiffs, and the City will infer for purposes of its argument that Plaintiffs meant to rely on Florida Administrative Code Rule 64B4-5.001, entitled "Disciplinary Guidelines."

findings of implied preemption are generally "disfavored." *D'Agastino,* 220 So. 3d at 421, 423; *see also Exile v. Miami-Dade County*, 35 So. 3d 118, 119 (Fla. 3d DCA 2010) (noting the "severely restricted and strongly disfavored doctrine of implied preemption"); *Randolph v. Family Network on Disabilities of Florida, Inc.*, 2012 WL 71719 (M.D. Fla. 2012) (District Court, in granting defendant's motion to dismiss, upheld the enforcement of a Leon County ordinance prohibiting discrimination on the basis of sexual orientation despite an argument that it was impliedly preempted by the Florida's Civil Rights Act. In reaching that conclusion, the court stated "Because the ordinance and statute can coexist, there is no preemption." *Id.* at 71719*3.).

Irrespective of whether one applies an express preemption analysis or an implied preemption analysis, Plaintiffs cannot state a claim upon which relief can be granted. Plaintiffs fail to allege any actual legislative statement expressly prohibiting local governments in the state from enacting ordinances prohibiting conversion therapy. In addition, an examination of the provisions cited by Plaintiffs - Chapter 491 of the Florida Statutes and Section 64B4 of the Florida Administrative Code[17] - reflect that they are completely silent as to any pervasive scheme evidencing a legislative attempt to preempt the City from prohibiting conversion therapy within its jurisdiction. An examination of the intent of Chapter 491 reflects, moreover, that it is completely bereft of any reference to prohibiting conversion therapy, and the intent is directed to "establishing minimum

---

[17] Plaintiffs also make a passing reference to proposed SOCE legislation that died in the Florida House and Florida Senate during the 2016 legislative session. *(See* Doc. 1 ¶ 195.) Plaintiffs have not, however, cited to any authority for the proposition that a municipality is prohibited from adopting a provision simply because the state legislature declined to adopt the provision. Put otherwise, the failure to adopt a provision by the state legislature is not synonymous with the state legislature prohibiting the enactment of such a provision.

qualifications for entering into and remaining in the respective professions". Section 491.002, Fla. Stat.[18]

Simply put, the Ordinance can coexist with Chapter 491, and the regulations promulgated thereunder. Accordingly, there is no preemption under state law, and count VI of the Complaint should be dismissed with prejudice.

<u>Count VII of the Complaint should be dismissed with prejudice</u>

Plaintiffs allege in count VII of the Complaint that the Ordinance violates the Florida Patient's Bill of Rights and Responsibilities Act, § 381.026, Fla. Stat., by: (a) prohibiting their "right to offer SOCE counseling in compliance with 381.026(d)(2), and 456.41, Florida Statutes"; (b) prohibiting their *clients'* right to receive SOCE counseling under 381.026(d)(3)"; and (c) prohibiting their *clients'* right to impartial access of medical treatment and accommodation based on their religious beliefs under 381.026(d)(1)." (Doc. 1 ¶ 211-212, 214) (emphasis supplied).[19] Plaintiffs argue they are "health care practitioners" under § 381.026 because their status as licensed "marriage and family therapists" under § 491.003(5) qualifies them as "health care practitioners" under the definition of § 456.41(2)(b) and the corresponding definition under §456.001(4). (Doc. 1 ¶ 202.) Based on Plaintiffs' lack of standing, and inability to state a cause of action, the Court should dismiss count VII with prejudice.

---

[18] The City notes § 491.002 and § 491.009, entitled "Discipline," were enacted in the same Act. *See* Laws of Fla., ch. 87-252, § 15.
[19] The City notes that there is no § 381.026(d) as alleged by Plaintiffs. The City will infer for purposes of its argument that Plaintiffs allege Ordinance 2017-47 violates subsection (4)(d) of § 381.026, entitled "Rights of Patients." *See* § 381.026(4)(d), Fla. Stat.

Plaintiffs' reliance on, and application of, § 456.41 is misplaced because Plaintiffs are not "health care providers" under § 381.026, they are not "patients" to whom the Florida Patient's Bill of Rights and Responsibilities Act applies, and § 456.41 does not provide them with any cognizable action pursuant to the well-articulated restrictions of § 381.026(3). Rather, § 381.026(2) states that, "[a]s used in this section," the term ¶"'[h]ealth care provider' means a physician licensed under chapter 458, an osteopathic physician licensed under chapter 459, or a podiatric physician licensed under chapter 461." Section 381.026(2)(c), Fla. Stat. While the Legislature could have added "marriage and family therapists" under Chapter 491 as defined "health care providers," it chose not to despite fifteen revisions to § 381.026 following its enactment in 1991,[20] and the same definition of "marriage and family therapist" existing under § 491.003(5) since 1987.[21]

An examination of the purpose of Florida Patient's Bill of Rights and Responsibilities Act is instructive. Section 381.026(3) provides as follows:

> (3)   PURPOSE.—It is *the purpose of this section* to promote the interests and *well-being of the patients of health care providers* and health care facilities and to promote better communication between the patient and the health care provider. It is the intent of the Legislature that *health care providers* understand their responsibility to give their patients a general understanding of the procedures to be performed on them and to provide information pertaining to their health care so that they may make decisions in an informed manner after considering the information relating to their condition, the available treatment alternatives, and substantial risks and hazards inherent in the treatments. It is the intent of the Legislature that patients have a general understanding of their responsibilities toward *health care providers* and health care facilities. It is the

---

[20] *See* Laws of Fla., ch. 91-127, § 1 (enactment); Laws of Fla., ch. 92-289, § 65; Laws of Fla., ch 95-148, § 656;  Laws of Fla., ch. 98-89, §. 21; Laws of Fla., ch. 98-166, § 178; Laws of Fla., ch. 99-397, § 64; Laws of Fla., ch. 2001-53, § 7; Laws of Fla., ch. 2001-116, § 2; Laws of Fla., Ch. 2004-297, § 3; Laws of Fla., ch 2006-261, § 12; Laws of Fla., ch. 2008-47, § 3; Laws of Fla., ch.  2011-112, § 2; Laws of Fla., ch. 2011-122, § 1; Laws of Fla., ch. 2012-5, § 48; Laws of Fla., ch. 2016-234, § 11; Laws of Fla., ch. 2017-152, § 1.
[21] *See* Laws of Fla., ch. 87-252, § 15 (enactment).

intent of the Legislature that the provision of such information to a patient eliminate potential misunderstandings between patients and *health care providers*. It is a public policy of the state *that the interests of patients be recognized* in a patient's bill of rights and responsibilities and that a health care facility or health care provider may not require a patient to waive his or her rights as a condition of treatment. *This section shall not be used for any purpose in any civil or administrative action and neither expands nor limits any rights or remedies provided under any other law.*

§ 381.026(3), Fla. Stat. (emphasis added). The statutory purpose of § 381.026 concerns the "well-being of the patients of health care providers and health care facilities." Plaintiffs are not, and cannot be considered, "health care providers" under the plain definition of the statute. *See Lawson v. Suwannee Fruit & S.S. Co.*, 336 U.S. 198, 201 (1949) ("Statutory definitions control the meaning of statutory words[.]"); *Baker v. State*, 636 So. 2d 1342, 1343–44 (Fla. 1994) ("Where the legislature has used particular words to define a term, the courts do not have the authority to redefine it."); *see also Biddle v. Prison Health Services, Inc.*, 2010 WL 11553188, at *2 (S.D. Fla. 2010) (rejecting challenge under § 381.026 where defendant was not a "health care facility" or "health care provider" under statutory definition).

The City recognizes that subsection (4)(d)(3) of § 381.026 cite to § 456.41 and the term "health care practitioner." However, the mere mention of "health care practitioner" in this subsection - and only this subsection - through the Legislature's addition of subsection (4)(d)(3) in 2001, Laws of Fla., ch. 2001-116, §2, does not mean the statutory definition of "health care practitioner" under § 456.41(2)(b) and 456.001(4) are somehow inserted into the definition of "health care provider" or that "marriage and family therapists" can be considered "health care providers" under § 381.026. *See Kasischke v. State*, 991 So. 2d 803, 810 (Fla. 2008) ("The Legislature did not include

such language, and we cannot add it on our own."). Such interpretation overlooks the basic statutory premise that there is no occasion to resort to rules of statutory construction when the "the language of the statute is clear and unambiguous and conveys a clear and definite meaning," *Holly v. Auld*, 450 So.2d 217, 219 (Fla. 1984). It also ignores the plain language of § 456.41, which limits its definitions "as used in" that particular section, and sections 456.001 and 491.003 which limit their definitions "as used in" Chapter 456 and Chapter 491, respectively. Accordingly, Plaintiffs are not "health care providers" under § 381.026 even when subsection (4)(d)(3) is considered.

Further, the clear language of subsections (4)(d)(1), (2), and (3) apply to rights of *patients*; not Plaintiffs. Plaintiffs do not have standing to raise patient-specific claims of subsections (4)(d)(1), (2), and (3) under a statute that is clearly delineated as a patient bill of rights with the purpose "to promote the interests and *well-being of the patients* of health care providers and health care facilities." § 381.026(3), Fla. Stat. (emphasis added); *see also Langbehn v. Pub. Health Tr. of Miami-Dade County*, 661 F. Supp. 2d 1326, 1342 (S.D. Fla. 2009) (Patients' Bill of Rights was only applicable to deceased patient and her estate, not the deceased's life partner*); Powers v. Ohio*, 499 U.S. 400, 410 (1991) ("In the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties."). This is particularly true in light of the allegations in paragraphs 212 and 214 of the Complaint, in which Plaintiffs attempt to bring claims on behalf of unidentified clients without alleging each of the criteria articulated in *Powers* to obtain third-party standing in limited circumstances.

Finally, it is important to note that the language in § 381.026(3) expressly states that "[t]his section shall not be used for any purpose in any civil or administrative action...." *See Langbehn,* 661 F. Supp. 2d at 1342–43 ("Given this language, it is apparent . . . that the statute is not meant to protect a particular class of people from a particular injury or risk of injury."). Hence, Plaintiffs lack any cognizable "right" to bring any action under § 381.026, and the Court should dismiss Count VII with prejudice.

Severability

Section 9 of the Ordinance provides that: "Should any section or provision of this Ordinance or any portion, paragraph, sentence, or word be declared invalid by a court of competent jurisdiction, such decision shall not affect the validity of the remainder of this Ordinance." Consistent therewith, although the City believes that  the entire Ordinance should be found to be valid, in the event that this Court were to find any portion thereof to be invalid, it should not affect the validity of the remainder of the Ordinance. *See Wollschlaeger,* 848 F.3d at 1318 ("It is our 'affirmative duty to preserve the validity of legislative enactments when it is at all possible to do so,' ....) *(quoting Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1347-48 (11th Cir. 2004)).

Conclusion

For all of the aforesaid reasons, the City respectfully requests that this Honorable Court grant the within Motion and dismiss the Complaint with prejudice, and grant such further relief as this Court deems just and proper.

Respectfully submitted,

By: */s/ Jerry M. Gewirtz*
    Jerry M. Gewirtz, Esquire
    Florida Bar No. 0843865
    Primary:  Jerry.Gewirtz@tampagov.net
    Secondary:  Kimber.Spitsberg@tampagov.net
    Robin Horton Silverman, Esquire
    Florida Bar No. 0027934
    Primary:  Robin.Horton-
    Silverman@tampagov.net
    Secondary:
    Laytecia.McKinney@tampagov.net
    5th Floor, City Hall
    315 E. Kennedy Boulevard
    Tampa, Florida 33602
    Telephone:  (813) 274-8996
    Facsimile:  (813) 274-8777
    Attorneys for Defendant, City of Tampa

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 12, 2018 the foregoing was electronically filed with the Clerk of Court and a copy is being furnished by email to the following: Roger K. Gannam, Esquire at rgannam@lc.org; Horatio G. Mihet, Esquire at hmihet@lc.org; Mathew D. Staver, Esquire at mat@lc.org and Daniel J. Schmid, Esquire at dschmid@lc.org (Liberty Counsel, P.O. Box 540774, Orlando, FL  32854-0774).

By: */s/ Jerry M. Gewirtz*
    Jerry M. Gewirtz, Esquire