IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF FLOIDA
Tampa Division

| | | |
|---|---|---|
| ROBERT L. VAZZO, LMFT, individually and on behalf of his patients, DAVID H. PICKUP, LMFT, individually and on behalf of his patients, | ) ) ) ) | Civil Action No.: 8:17-cv-02896-CEH-AAS |
| Plaintiffs, | ) ) ) | **INJUNCTIVE RELIEF SOUGHT** |
| v. | ) ) | |
| CITY OF TAMPA, FLORIDA, | ) ) | |
| Defendant | ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS,**

**AND PLAINTIFFS' REPLY IN SUPPORT OF
<u>THEIR MOTION FOR PRELIMINARY INJUNCTION</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS................................................................................................i

TABLE OF AUTHORITIES.....................................................................................iii

INTRODUCTION........................................................................................................1

LEGAL ARGUMENT.................................................................................................2

I.     PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS OF THEIR FIRST AMENDMENT CHALLENGE...............................................................................2

     A.    *Reed* Mandates That The Ordinance Be Subjected to Strict Scrutiny.......................3

     B.    The City's Utter Failure To Address The Binding Precedent Of *Wollschlaeger* Is Fatal To Its Contentions. ...........................................................5

     C.    The Ordinance Is Not Narrowly Tailored. .............................................................7

          1.    Even in the Preliminary Injunction Context, the City Bears the Burden of Demonstrating that the Ordinance is Narrowly Tailored............7

          2.    The City Has Not and Cannot Meet Its Burden of Proving Narrow Tailoring Because It Has Not Shown That The Ordinance Is The Least Restrictive Means. ...............................................................................8

          3.    The City's Purported Rejection of Informed Consent Alternatives is Pretextual, Contradicts the Ordinance, Violates Florida Law, and Violates the United States Constitution. ....................................................10

          4.    The City Has Not Shown that it has Seriously Considered Less Speech-Restrictive Alternatives and Ruled them Out for Good Reason. .................................................................................................12

     D.    The Ordinance Is A Presumptively Unconstitutional Prior Restraint On Speech. ....................................................................................................13

II.    PLAINTIFFS HAVE DEMONSTRATED THAT THEY ARE SUFFERING IRREPARABLE INJURY. ...............................................................................16

III.   PLAINTIFFS HAVE DEMONSTRATED THAT AN INJUNCTION FAVORS THE PUBLIC INTEREST AND THAT THE CITY SUFFERS NO HARM....................17

IV.   PLAINTIFFS' WELL-PLEADED ALLEGATIONS SURVIVE DISMISSAL AND ENTITLE THEM TO RELIEF. ...............................................................18

A.    Plaintiffs Have Sufficiently Pled Standing To Challenge The Ordinance..............19

    1.    Vazzo Has Sufficiently Pled Standing......................................................19

    2.    Pickup Has Sufficiently Pled Standing.....................................................20

    3.    Plaintiffs Have Standing to Challenge the Ordinance on Behalf of their Clients. ............................................................................................21

        a.    Plaintiffs have suffered concrete and irreparable injury................22

        b.    Plaintiffs and their clients have the requisite close relationship. .........................................................................................22

        c.    Plaintiffs' clients face obstacles to litigation.................................23

B.    Plaintiffs Have Sufficiently Pled A Violation Of The First Amendment...............24

C.    Plaintiffs Have Sufficiently Pled That The Ordinance Is *Ultra Vires*....................25

D.    Plaintiffs Have Sufficiently Pled A Violation Of The Patient's Bill Of Rights and Responsibilities. .............................................................................27

CONCLUSION.....................................................................................................................28

# TABLE OF AUTHORITIES

**CASES**

*ACLU of Fla., Inc. v. The Florida Bar*, 744 F. Supp. 1094 (N.D. Fla. 1990)...................................17

*Aid for Women v. Foulston*, 441 F.3d 1101 (10th Cir. 2006) ................................................22, 24

*Alexander v. United States*, 509 U.S. 544 (1993) ...........................................................14

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352 (2d Cir. 2016)........................22

*Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*, 564 U.S. 721 (2011)....................7

*Ashcroft v. ACLU*, 542 U.S. 656 (2004) ...............................................................7, 8, 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................18

*Awad v. Ziriax*, 670 F.3d 1111 (10th Cir. 2012) ............................................................17

*Bd. of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569 (1987) ............................................16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................18

*Boos v. Berry*, 485 U.S. 312 (1988) .............................................................................9

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364 (11th Cir. 1997)........................19

*Bruni v. City of Pittsburgh*, 824 F.3d 353 (3d Cir. 2016) .................................................12

*Carey v. Population Serv., Int'l*, 431 U.S. 678 (2010) ....................................................20

*CBS, Inc. v. Davis*, 510 U.S. 1315 (1994) ..................................................................15

*City of Littleton v. Z.J. Gifts D-4, LLC*, 541 U.S. 774 (2004) .........................................14

*Classy Cycles, Inc. v. Bay Cnty.*, 201 So.3d 779 (Fla. 2016) .........................................25

*Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*,
219 F.3d 1301 (11th Cir. 2000) ................................................................................7

*Cooper v. Dillon*, 403 F.3d 1208 (11th Cir. 2005) ........................................................14

*Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328 (5th Cir. 1981) ........................21, 22

*Doe v. Bolton*, 410 U.S. 179 (1973) ..........................................................................21

*Elrod v. Burns*, 427 U.S. 347, 373 (1976) ................................................................17

*Erznoznik v. City of Jacksonville*, 422 U.S. 205 (1975) ...............................................13

*Freedman v. State of Maryland*, 380 U.S. 51 (1965) ...................................................14

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006)................7, 8

*Hunnings v. Texaco, Inc.*, 29 F.3d 1480 (11th Cir. 1994) ...........................................26

*In re Florida Cement & Concrete Antitrust Litig.*, No. 09-2387-CIV-ALTONAGA/Brown, 2011 WL 13174536 (S.D. Fla. Feb. 24, 2011) ............................................................20

*In re Goode*, 821 F.3d 553 (5th Cir. 2016) .................................................................15

*Int'l Erectors, Inc. v. Wilhoit Steel Erectors & Rental Serv.*, 400 F.2d 465 (5th Cir. 1968)..........19

*Jaffree v. Redmond*, 518 U.S. 1 (1996)........................................................................23

*KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261 (11th Cir. 2006)......................................18

*King v. Governor of New Jersey,* 767 F.3d 216 (3d Cir. 2014) ...............................................*passim*

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ........................................................19

*McCullen v. Coakley*, 134 S. Ct. 2518 (2014) .......................................................12, 13

*Mississippi State Chapter, Operation Push, Inc. v. Mabus*, 932 F.2d 400 (5th Cir. 1991)..............25

*Nasir v. Morgan*, 350 F.3d 366 (3d Cir. 2003) .............................................................23

*Near v. Minnesota*, 263 U.S. 697 (1931) ......................................................................14

*Parham v. J.R.*, 442 U.S. 584 (1979) ..........................................................................24

*Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993 (11th Cir. 2004) ......................................20

*Penn. Psychiatric Soc'y v. Green Springs Health Serv., Inc.*, 280 F.3d 278 (3d Cir. 2002).....23, 24

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376 (1973)..............14

*Planned Parenthood Ass'n of Altanta Area, Inc. v. Miller*, 934 F.2d 1462 (11th Cir. 1991).........21

*Planned Parenthood Se., Inc. v. Bentley*, 951 F. Supp. 2d 1280 (M.D. Ala. 2013).......................22

*Planned Parenthood of Cent. Mo. v. Danforth*, 428 U.S. 52 (1976) ...........................................12

*Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015) ................................................................ *passim*

*Reproductive Health Servs. v. Strange*, 204 F. Supp. 3d 1300 (M.D. Ala. 2016) .........................22

*Republican Party of Minn. v. White*, 536 U.S. 765 (2002) ............................................................8

*Sarasota Alliance For Fair Elections, Inc. v. Browning*, 28 So.3d 880 (Fla. 2010).......................26

*Scott v. Roberts*, 612 F.3d 1279 (11th Cir. 2010). .......................................................................17

*Singleton v. Wulff*, 428 U.S. 106 (1976) ..........................................................................21, 22, 23

*Spanish Broad. Sys. Of Fla., Inc. v. Clear Channel Commc'ns, Inc.*,
376 F.3d 1065 (11th Cir. 2004). ........................................................................................18, 25

*Speiser v. Randall*, 357 U.S. 513 (1958) ....................................................................................13

*Thompson v. Oklahoma*, 487 U.S. 815 (1988) ............................................................................12

*United States v. City of Redwood City*, 640 F.2d 963 (9th Cir. 1981). ..........................................19

*United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803 (2000) ...................................................7

*United States v. Stevens*, 559 U.S. 460 (2010) .......................................................................16, 17

*Vance v. Universal Amusement Co.*, 445 U.S. 308 (1980) ............................................................14

*Vill. of Arlington Heights v. Metro Housing Dev. Corp.*, 429 U.S. 252 (1977).............................20

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) ......................................................................9

*Weaver v. Bonner*, 309 F.3d 1312 (11th Cir. 2002) .....................................................................15

*Wollschlaeger v. Florida*, 848 F.3d 1293 (11th Cir. 2017) ...................................................*passim*

*Worley v. Florida Secretary of State*, 717 F.3d 1238 (11th Cir. 2013) ...........................................8

**STATUTES**

Federal Rule of Civil Procedure 8(a)(2) .....................................................................................18

Fla. Stat. Ann. §381.026(4)(d)(3) .........................................................................................27, 28

Fla. Stat. Ann. § 394.4784(2) .....................................................................................................11

Fla. Stat. Ann. § 397.501(7)(e)(1) ...............................................................11

Fla. Stat. Ann. § 456.61(1) .................................................................27, 28

Fla. Stat. Ann. § 743.065...........................................................................11

**OTHER**

5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)..........18

11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane,
*Federal Practice & Procedure* §2948.1 (2d ed. 1995) .................................................17

Pursuant to M.D. Fla. Local Rule 3.01(c), Plaintiffs, Robert L. Vazzo, LMFT, and David H. Pickup, LMFT, individually and on behalf of their patients (collectively "Plaintiffs"), by and through the undersigned counsel, hereby submit their Response in Opposition to Defendant, City of Tampa's ("City"), Motion to Dismiss (dkt. 22, "MTD"), and their Reply in Support of Plaintiffs' Motion for Preliminary Injunction. (Dkt. 3, "PI Motion"). For the following reasons, the City's Motion to Dismiss must be denied, and Ordinance 2017-47 (the "Ordinance") must be enjoined.

## INTRODUCTION

In the City's Opposition to Plaintiffs' motion for preliminary injunction (dkt. 23, "Opp.") and in its motion to dismiss, the City utterly fails to satisfy the demanding burdens placed upon it. The City's failures are rampant and inexplicable. The City fails to acknowledge the existence of binding Supreme Court precedent in *Reed v. Town of Gilbert*, issued **after** the primary authorities upon which it relies, which created a sea-change in constitutional jurisprudence regarding content-based restrictions of speech. In so doing, the City astoundingly claims that the application of strict scrutiny has no place in this context. This failure to recognize binding and unequivocal precedent from the Supreme Court is fatal to its contentions.

The City does only marginally better in acknowledging (but not discussing) the binding en banc Eleventh Circuit decision in *Wollschlaeger v. Florida*. The City fails to explain why the Ordinance should not suffer constitutional demise under *Wollschlaeger*'s clear dictates, and does not even attempt to discuss its application to the instant case. Similarly, the City fails to even acknowledge, let alone discuss, and let alone actually meet, its burden to demonstrate that the Ordinance is narrowly tailored and represents the least restrictive means available. The City fails to even mention potential alternatives that might have been less restrictive of speech than the Ordinance, which is also fatal to its defenses.

In its Motion to Dismiss, the City fairs no better. There, the City once again ignores binding and unequivocal precedent from the Supreme Court regarding Plaintiffs' First Amendment challenge. The City ignores binding precedent from the Supreme Court concerning the standing of Plaintiffs in this matter, despite conceding that Vazzo's standing in this matter is unquestionable. The City fails to acknowledge that it faces a high burden for dismissal and resorts to factual arguments inappropriate at this stage of the proceedings.

In sum, the City's head-in-the-sand approach to unequivocal First Amendment jurisprudence does not suffice to overcome Plaintiffs' motion for preliminary injunction and falls far short of the mark to obtain the disfavored and rarely granted remedy of dismissal. The City's motion should be denied, and the Ordinance enjoined.

## LEGAL ARGUMENT

## I. PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS OF THEIR FIRST AMENDMENT CHALLENGE.

The City's efforts to invoke Plaintiffs' unsuccessful challenge to other statutes that have addressed SOCE counseling ignores the significant sea changes in First Amendment jurisprudence since the time the decisions the City relies upon were released. Astoundingly, the City fails to even acknowledge, let alone address, the unequivocal holding of *Reed v. Town of Gilbert* that content-based restrictions on speech must survive the most exacting scrutiny. Even more astounding is the City's willful disregard for the binding precedent of the Eleventh Circuit's en banc decision *Wollschlaeger v. Florida*. Indeed, the City utterly fails to demonstrate why those binding precedents, **issued <u>after</u> all of the cases cited by the City**, do not mandate enjoining the Ordinance.

*Reed* mandates the application of strict scrutiny, *Wollschlaeger* compels a finding that the Ordinance is content and viewpoint based, and the City has not and cannot meet **its burden** to

2

demonstrate that the Ordinance is justified by a compelling interest, narrowly tailored, or the least restrictive means. Fatal for the City's contentions, binding precedent cannot be escaped by simply ignoring it. The Ordinance must be enjoined.

### A.     *Reed* Mandates That The Ordinance Be Subjected to Strict Scrutiny.

The City's silence on *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015) is deafening. Indeed, despite Plaintiffs' substantive discussion of the binding mandates of *Reed*, the City fails to even acknowledge its existence, let alone address its clear holding that content-based restrictions on speech require the application of **strict** scrutiny. Instead, the City relies upon *King v. Governor of New Jersey* to argue that its prohibition of SOCE counseling survives First Amendment **intermediate** scrutiny. (Opp. at 10) (quoting 767 F.3d 216 (3d Cir. 2014)). In fact, the City contends that *King* is "extremely apposite" to the present case. (*Id.* at 10). The City's contention that authority from outside the Eleventh Circuit, decided before *Reed*, and reaching a conclusion directly contrary to *Reed* should somehow compel upholding the Ordinance is plainly wrong.

The City flatly contends that it "**does not believe that [strict scrutiny] should be applied based on the analysis in *King*.**" (Opp. at 11 n.7 (emphasis added)). This argument is utterly meritless post-*Reed*. A simple comparison of *King* and *Reed* demonstrates why the City is relying on precedent that is **no longer valid law**. In *King*, the Third Circuit explicitly stated that it had "little doubt in [the] conclusion" that the challenged law, **on its face**, "discriminates on the basis of content." *King*, 767 F.3d at 236 & n.20. Nevertheless, the court held that "A3371 discriminates on the basis of content, [but] does so in a way that does not trigger strict scrutiny." *Id.* at 236. The Third Circuit's flawed rationale for why such a content-based restriction on speech survived strict scrutiny: the State believed that such counseling is unwarranted and that there was anecdotal evidence of harm. *Id.* at 237. Simply put: the Third Circuit held that a content-based restriction on

speech does not warrant strict scrutiny when the government's benign motive does not express a desire to suppress an idea. *Id.*

The City's entire defense of the Ordinance is based on this rationale from *King*. But, *King* no longer holds constitutional relevance. Indeed, in *Reed*, the unanimous Supreme Court held that "**[a] law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of animus toward the ideas contained in the regulated speech**." *Reed*, 135 S. Ct. at 2228 (emphasis added). Where, as here, the face of the statute discriminates on the basis of content, the government's justification for the Ordinance is irrelevant. *Id.* at 2233 ("On its face, the [law] is a content-based regulation of speech. **We thus have no need to consider the government's justifications or purposes for enacting the [law] to determine whether it is subject to strict scrutiny.**" (emphasis added)). Thus, regardless of the City's benign justification or desires in adopting the Ordinance, because it is content- and viewpoint-based, it must satisfy strict scrutiny. *King*'s holding to the contrary cannot survive the firm rule handed down by *Reed*. The only thing *King* does here is confirm what is already obvious—that the Ordinance "discriminates on the basis of content." *King*, 767 F.3d at 236 & n.20. Under *Reed*, that is the end of the analysis in deciding what scrutiny to apply. The City's reliance on *King* is therefore absurd and evinces a fundamental misunderstanding of the First Amendment's mandate regarding content-based restrictions on speech. Its entire analysis is therefore questionable and cannot be countenanced by this Court.

Despite the inescapable infirmity imposed by *Reed*'s firm rule, the City digs a further grave by asserting that the Ordinance is merely a mechanism to prevent "harmful professional services," so it should be subject to lesser scrutiny. (Opp. at 8). This argument, too, is nonsense in light of *Reed*. The Supreme Court made it abundantly clear that its firm rule mandating strict scrutiny of

**all** content-based restrictions on speech is likewise applicable to the speech of licensed professionals. *Reed*, 135 S. Ct. at 2229 ("**it is no answer to say that the purpose of these regulations was merely to insure high professional standards and not to curtail free expression**" (emphasis added)).

The City's contentions that the Ordinance is not subject to strict scrutiny is borderline frivolous after *Reed*. Yet, it makes one last effort to save its Ordinance from constitutional condemnation: "The City is unaware, moreover, of any criticism by the Eleventh Circuit of the Third Circuit's decision in *King*." (Opp. at 15). That the Eleventh Circuit has not yet had a chance to condemn *King* is irrelevant given the evisceration of *King* by *Reed*. Indeed, *Reed* did not simply issue a criticism of the rationale of *King*, it issued an undeniable **rejection** of *King*'s entire premise. It is hard to fathom how the City could claim ignorance of the constitutional dustbin *King* lies in given Plaintiffs' discussion of *Reed* in their PI Motion. (*See* PI Motion at 10-12). The Ordinance is subject to strict scrutiny under *Reed*.

> **B.** **The City's Utter Failure To Address The Binding Precedent Of *Wollschlaeger* Is Fatal To Its Contentions.**

As if the City had not done sufficient damage to its credibility by ignoring the existence of *Reed*, it goes a step farther by giving only passing mention to the binding decision of the en banc Eleventh Circuit in *Wollschlaeger v. Florida*, 848 F.3d 1293, 1307 (11th Cir. 2017) (en banc). To its credit, as opposed to *Reed*, the City at least acknowledges the existence of this binding precedent (Opp. at 14), but its failure to address *Wollschlaeger*'s analysis can only mean that the City has nothing to offer to cast it aside.

In *Wollschlaeger*, the en banc Eleventh Circuit held unequivocally that the speech of licensed professionals is protected by the First Amendment. *Id.* at 1307. Just like the City attempts to do here (Opp. at 8), the State attempted to justify a content-based restriction of speech by arguing

it was merely a regulation of "professional speech," not subject to the exacting scrutiny required by the First Amendment. *Id.* at 1308. The Eleventh Circuit aptly noted that "no law abridging freedom of speech is ever promoted as a law abridging freedom of speech." *Id.* This is certainly true of the City's argument, claiming that it is not restricting speech at all. (Opp. at 8). The law at issue in *Wollschlaeger* restricted speech by medical professionals on a single topic: firearm ownership. *Wollschlaeger*, 848 F.3d at 1307. Here, the Ordinance prohibits speech by medical professionals on a single topic: changing unwanted same-sex attractions, behaviors, or identity. (Dkt. 1, Verified Complaint, "VC," Ex. A). As was true in *Wollschlaeger*, the Ordinance "appl[ies] only to the speech of doctors and medical professionals, and only on the topic of [unwanted same-sex attractions, behaviors, or identity]." *Wollschlaeger*, 848 F.3d at 1307. Its prohibition is thus "speaker focused and content-based." *Id.* Under *Reed*, therefore, the Ordinance must satisfy strict scrutiny, nothing less.

Fatal to the City's contentions, the en banc Eleventh Circuit noted that a content-based restriction on the speech of medical professionals could not even survive intermediate scrutiny, let alone the *Reed*-imposed strict scrutiny. *Id.* at 1313. It thus invalidated the law. *Id.* (holding that because "[t]he record demonstrates that some patients do not object to questions and advice about [the prohibited content of speech], and some even express gratitude for their doctor's discussion of the topic," the law is unconstitutional as it "does not provide for such patients a means by which they can hear from their doctors on the topic."). The same is true of the Ordinance here. Countless individuals seek out Plaintiffs for this counseling, desire it, benefit from it, and express gratitude for it. (VC ¶¶ 42, 68-75, 80-86). Yet, the Ordinance provides no ability for these clients to receive SOCE counseling from their doctors on this topic. This flat prohibition, disrespectful of the client's fundamental rights to self-determination, goals, and objectives, is fatal under *Wollschlaeger*. Thus,

the Ordinance must meet the same fate—the grave of constitutional infirmity.

###### C.     The Ordinance Is Not Narrowly Tailored.

####### 1.     Even in the Preliminary Injunction Context, the City Bears the Burden of Demonstrating that the Ordinance is Narrowly Tailored.

Even on a motion for preliminary injunction, the City unquestionably bears the burden of demonstrating that the Ordinance is narrowly tailored. Indeed, as the Supreme Court has unequivocally held: "**the burdens at the preliminary injunction stage track the burdens at trial**." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006) (emphasis added). Beyond this general proposition, the Supreme Court has also held that, on a preliminary injunction motion, **the government** – not the movant – bears the burden of proof on narrow tailoring, because **the government** bears that burden at trial:

> When plaintiffs challenge a content-based restriction, **the burden is on the government** to prove that the proposed alternatives will not be as effective as the challenged statute.

*Ashcroft v. ACLU*, 542 U.S. 656, 665 (2004) (emphasis added) (holding that the government bears the burden of proving narrow tailoring in the preliminary injunction context).

The City cannot seriously dispute that it bears the burden of proving narrow tailoring at trial, because that principle is firmly entrenched and established as a matter of law. *See, e.g.*, *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000) ("When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions."); *id.* at 2540 ("To meet the requirement of narrow tailoring, **the government must demonstrate** that alternative measures that burden substantially less speech would fail to achieve the government's interests, not simply that the chosen route is easier" (emphasis added)); *Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011) ("Laws that burden political speech are accordingly subject to strict scrutiny, **which requires the Government to prove** that

7

the restriction furthers a compelling state interest and is narrowly tailored to achieve that interest"

(emphasis added) (citations omitted)); *Worley v. Florida Secretary of State*, 717 F.3d 1238, 1242

(11th Cir. 2013) (same); *Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*,

219 F.3d 1301, 1318 (11th Cir. 2000) (in the narrow tailoring context, the government bears the

burden). Thus, because it bears the burden to prove narrow tailoring at trial, the City also bears –

and falls woefully short of meeting – the burden of proving narrow tailoring here. *Gonzales*, 546

U.S. at 429; *Ashcroft*, 542 U.S. at 665. Accordingly, Plaintiffs "**must be deemed likely to prevail**

**unless the government has shown that [their] proposed less restrictive alternatives are less**

**effective than enforcing the act**." *Ashcroft*, 542 U.S. at 666 (emphasis added). The City has not

and cannot do so.

> **2.      The City Has Not and Cannot Meet Its Burden of Proving Narrow**
> **Tailoring Because It Has Not Shown That The Ordinance Is The Least**
> **Restrictive Means.**

Attempting to resurrect *King* from its constitutional grave yet again, the City contends that

the Ordinance is narrowly tailored because it need not "employ the least restrictive means" to

satisfy its burden. (Opp. at 9) (quoting *King*, 767 F.3d at 238)). Once again, however, the City's

reliance on *King* is utterly misplaced. *King* did not require a least restrictive means analysis

because it used intermediate, not the *Reed*-mandated strict, scrutiny. *King*, 767 F.3d at 238-40

("under intermediate scrutiny, New Jersey is not required to employ the least restrictive means.").

As demonstrated *supra*, *Reed* mandates that the Ordinance survive strict, rather than intermediate,

scrutiny. Under that most exacting scrutiny, the City is absolutely required to demonstrate that the

Ordinance uses the least restrictive means available.

Indeed, to satisfy its burden of proving that the Ordinance is narrowly tailored, the City

must show that the challenged canon "does not unnecessarily circumscribe protected expression."

*Republican Party of Minn. v. White*, 536 U.S. 765, 775 (2002); *see also Weaver v. Bonner*, 309 F.3d 1312, 1319 (11th Cir. 2002) (a law fails the narrow tailoring analysis when it "does not afford the requisite breathing space to protected speech"). The City also must show that "**proposed alternatives will not be as effective as**" the Ordinance, *Ashcroft*, 542 U.S. at 665, meaning that "proposed less restrictive alternatives are less effective than enforcing" the Ordinance. *Id.* at 666. What this boils down to is that, on strict scrutiny review, the City must employ **the least restrictive alternative** available to meet the stated compelling interest. *See Boos v. Berry*, 485 U.S. 312, 329 (1988) (when content-based restrictions on speech are analyzed under strict scrutiny, an ordinance "is not narrowly tailored [where] a less restrictive alternative is readily available"); *Ward v. Rock Against Racism*, 491 U.S. 781, 798 n.6 (1989) (noting that under "the most exacting scrutiny" applicable to content-based restrictions on speech, the government must employ the least restrictive alternative to pass narrow tailoring).

The City has not and cannot show that the Ordinance is narrowly tailored as the least restrictive alternative to meet its purported legitimate interests. While the City contends that informed consent provisions were rejected as less restrictive alternatives in *King* (Opp. at 10), *King*'s analysis is inapposite given *Reed*'s requirement that the Ordinance survive strict scrutiny. *Supra* Section I.A. Thus, the City cannot seriously contend that an alternative that has been considered effective and less restrictive of speech by large mental health professional organizations is somehow ineffective to achieve its purported (albeit flawed) purpose. Indeed, when similar legislation was considered in California, numerous mental health organizations wrote to the legislature arguing that informed consent was a better and less speech restrictive approach. (VC ¶ 120 and Ex. E). Contrary to a limited approach requiring minors seeking such counseling to receive accurate information concerning such counseling and give informed consent, **the**

**Ordinance bans all SOCE counseling, irrespective of the impact (or lack thereof) of the speech on minors or whether the minors seek out and consent to such counseling**. The Ordinance is not limited in any manner whatsoever, as it is a complete prohibition on any counseling that seeks to change a minor's unwanted same-sex attractions, behaviors, or identity regardless of the minor's religious beliefs, counseling goals, or consent. If this is narrowly tailored, that term has no meaning.

### 3. The City's Purported Rejection of Informed Consent Alternatives is Pretextual, Contradicts the Ordinance, Violates Florida Law, and Violates the United States Constitution.

The City now contends that informed consent is insufficient to protect its purported interest because a minor cannot consent to SOCE counseling. (Opp. at 10). Initially, this argument is pretextual and irrelevant here because, as shown in the next section, **the City never actually considered this while debating the Ordinance**. Clever argument of counsel after-the-fact does not supplant the close and serious consideration of less restrictive alternatives which the City was constitutionally required to undertake **before** enacting the Ordinance. (*See* Section I.C.4, *infra*).

Even more fatal to the City's belated argument, it fails for three additional, independent reasons: (1) it contradicts the terms of the Ordinance, (2) it violates Florida law, and (3) it is itself a constitutional violation.

First, under the Ordinance, a minor is unquestionably presumed to be able to (and indeed can) consent to counseling if such services include counseling related to the minor "undergoing gender transition." (VC ¶ 26, and Ex. A at §4(a)). Thus, under the City's argument, minors are perfectly capable of making the decision to seek radical alteration of their biological anatomy, or undergo radical gender hormone therapy, and consent to counseling helping them to undergo such efforts. Under that scenario, the City has no problem whatsoever with a minor's ability to consent

10

to counseling. But, if a minor seeks counseling the City disagrees with, the ability to consent somehow magically vanishes, and the City alleges it must be concerned with those minors' ability to give informed consent. Indeed, for those minors who wish to merely sit down with a licensed counselor to talk about reducing or eliminating unwanted same-sex attractions, behaviors, or identity, the City's confidence in minor consent disappears. The City cannot have it both ways, and its arguments demonstrate that it is merely targeting one form of counseling with its disparate understanding of a minor's ability to make informed choices concerning such counseling.

Second, Florida law permits minors to consent to mental health counseling. Indeed, any minor over the age of thirteen has the right to request, consent to, and receive mental health counseling when they deem it necessary. *See* Fla. Stat. Ann. § 394.4784(2) (minors over the age of 13 "**shall have the right to request, consent to, and receive outpatient crisis intervention services including individual psychotherapy, group therapy, counseling, or other forms of verbal therapy provided by a licensed mental health professional**" (emphasis added)); *see also* Fla. Stat. Ann. § 397.501(7)(e)(1) ("a minor **acting alone** has the legal capacity to voluntarily apply for and obtain substance abuse treatment" (emphasis added)). Florida law also permits a minor to request, consent to, and obtain medical services related to pregnancy. *See* Fla. Stat. Ann. § 743.065 ("An unwed pregnant minor may consent to the performance of medical or surgical care relating to her pregnancy."). Thus, the City's contentions that a minor is somehow wholly unable to provide consent to any medical or mental health counseling because of their tender age defies State law. The State has explicitly granted permission to minors to seek mental health counseling when they deem it necessary, and the City's attempts to strip minors of the authority to make that decision as to only SOCE counseling is not only unlawful, but absurd.

Finally, and most fatal for the City, the City's contention itself represents yet another gross

constitutional violation. **It is "unconstitutional for a legislature to presume that all minors are incapable of providing informed consent**." *Thompson v. Oklahoma*, 487 U.S. 815, 854 (1988) (citing *Planned Parenthood of Cent. Mo. v. Danforth*, 428 U.S. 52, 74-75 (1976) (emphasis added)). Here, the City contends that it has the authority to presume minors are incapable of consenting to only one form of counseling: SOCE counseling. This runs roughshod over the rights of those minors in the City who voluntarily seek SOCE counseling. Indeed, "[c]onstitutional rights do not mature and come into being magically only when one attains the state-defined age of majority. **Minors, as well as adults, are protected by the Constitution and possess constitutional rights**." *Danforth*, 528 U.S. at 74 (emphasis added). Plainly, the City is attempting to justify one constitutional violation (the Ordinance) with another constitutional violation of equal proportions (removal of minors' consent). The City's attempt to circumvent black letter law and eliminate a minor's ability to consent to SOCE counseling violates the Constitution and must be rejected.

**4.     The City Has Not Shown that it has Seriously Considered Less Speech-Restrictive Alternatives and Ruled them Out for Good Reason.**

The City also flunks the narrow tailoring strict scrutiny test for yet another, even more compelling reason. In connection with its narrow tailoring burden, the City must also show that "it **seriously** undertook to address the problem with less intrusive tools readily available to it," meaning "**that it considered different methods that other jurisdictions have found effective**." *McCullen v. Coakley*, 134 S. Ct. 2518, 2539 (2014) (emphasis added). "To meet the requirement of narrow tailoring, the government must demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interests, not simply that the chosen route is easier." *Id.* at 2540. Thus, the City "would have to show either that **substantially less-restrictive alternatives were tried and failed**, or that the **alternatives were closely**

**examined and ruled out for good reason**." *Bruni v. City of Pittsburgh*, 824 F.3d 353, 370 (3d Cir. 2016) (emphasis added).

The City has done neither, nor does the legislative record upon which it seeks to rely include one second of discussion concerning potential alternatives. Indeed, astoundingly absent from the **660 pages** submitted to this Court by the City is any mention of any consideration or discussion of any other alternative. Indeed, the only debate whatsoever concerning the Ordinance and proposed changes was how large the fine should be for counselors found in violation of it. (*See* Dkt. 26-2, at 38-46). There was no discussion at all concerning informed consent, no discussion of alternatives that other government bodies have undertaken or considered, no discussion of the existing ethical codes that prohibit licensed counselors from engaging in harmful practices, no discussion of anything other than the desire to punish licensed counselors for engaging in protected speech because the City was opposed to the counseling offered in such a scenario. Because the City failed to discuss, consider, or try less restrictive alternatives, it cannot satisfy the demanding burden placed upon it by the Supreme Court in *McCullen*. The Ordinance therefore fails strict scrutiny at every level and must be enjoined.

> **D.    The Ordinance Is A Presumptively Unconstitutional Prior Restraint On Speech.**

The City devotes a total of two sentences out of its **660 pages** of submissions to this Court to address a presumptively unconstitutional prior restraint. (Opp. at 15). In that meager showing, the City contends that the Ordinance does not represent a total prohibition on speech, so it is not a prior restraint. (*Id.*). Not only is this contention baseless given the Ordinance's flat and total prohibition on SOCE counseling, it is simply a regurgitation of the rejected assertion that mere deterrents, rather than total prohibitions, on speaking are not unconstitutional prior restraints. As the Supreme Court has recognized numerous times, even deterrents from speaking, such as

monetary penalties for engaging in prohibited speech, are prior restraints on speech regardless of whether they constitute a total prohibition. *See, e.g.*, *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 211 n. 8 (1975) ("[A] deterrent, although it might not result in a total suppression of [speech], is a restraint on free expression."); *Speiser v. Randall*, 357 U.S. 513, 518 (1958) (deterring an individual from engaging in speech is a restraint on that speech); *Freedman v. State of Maryland*, 380 U.S. 51, 58 (1965) the entire problem with prior restraints is their deterrent effect on speech); *City of Littleton v. Z.J. Gifts D-4, LLC*, 541 U.S. 774, 779 (2004) (same).

As the Supreme Court has long recognized, the hallmark of a prior restraint is the government "*forbidding* certain communications issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550 (1993) (italics original). The *Alexander* Court noted that the constitutional infirmity of prior restraints arises from the fact that the government prohibitions on certain speech are perpetual. *Id.* (citing *Near v. Minnesota*, 263 U.S. 697 (1931) (striking down the government's "perpetual" preemptive prohibitions on speech); *Vance v. Universal Amusement Co.*, 445 U.S. 308 (1980) (striking down statute authorizing government prohibitions on speech "of indefinite duration")).

Here, the Ordinance operates identically to the government restraints found unconstitutional in *Alexander*, *Near*, and *Vance*. Indeed, the Ordinance preemptively prohibits Plaintiffs from engaging in certain speech (SOCE counseling), and its prohibition is perpetual. Such a government-imposed preemptive prohibition on speech is a classic prior restraint. *See, e,g.*, *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 390 (1973) ("The special vice of a prior restraint is that communication will be suppressed, either directly or by inducing excessive caution in the speaker."); *Cooper v. Dillon*, 403 F.3d 1208, 1215 (11th Cir. 2005) ("A prior restraint on speech prohibits or censors speech before it can take place."); *id.* (prior

restraints "silence [the speaker] before he could speak"). The Ordinance operates not only to chill, censor, and prohibit Plaintiffs from engaging in protected speech, it goes a step further and entirely freezes their speech on certain topics. There is no question that such a prohibition on speech is a prior restraint. *See CBS, Inc. v. Davis*, 510 U.S. 1315, 1317 (1994) (a "prior restraint freezes [speech]" prior to it occurring). That is precisely what the Ordinance does.

The Ordinance also constitutes a prior restraint under *Weaver v. Bonner*, 309 F.3d 1312 (11th Cir. 2002). As the Eleventh Circuit noted, the reason the prohibition on an individual's speech was a prior restraint was because it bore all the classic hallmarks of a prior restraint. Indeed, the request issued pursuant to the challenged law "prohibits a judicial candidate from engaging in speech," "prohibits *future* statements," and "leads to a dramatic chilling effect on speech." *Id.* at 1323-24 (italics original). Here, the Ordinance likewise bears all such characteristics. The Ordinance prohibits Plaintiffs and all licensed counselors from engaging in any counseling that includes discussion of a single topic: desires to change unwanted same-sex attractions, behaviors, or identity. (VC ¶ 26). The Ordinance imposes its proscription beginning on the operative date, so there can be no dispute that the Ordinance was intended to prohibit **future** speech concerning SOCE counseling. Finally, there can be no dispute that the Ordinance has led to a dramatic chilling of Plaintiffs' speech. Indeed, it has frozen it completely. (*Id.* ¶¶ 93-95, 97-104). Thus, all of the traditional hallmarks present in *Weaver* are equally present in the Ordinance here.

At the end of the day, preemptive prohibitions on speech are unconstitutional prior restraints regardless of whether they come in the form of an injunction (*Near*), a statute (*Vance*), or a professional regulation (*Weaver*). *See also In re Goode*, 821 F.3d 553, 560-62 (5th Cir. 2016) (holding that a professional regulation prohibiting certain speech by a lawyer was unconstitutional prior restraint). The City has no answer to this compelling and binding precedent. Indeed, the

City's silence on a critical element of its presumptively unconstitutional prior restraint is astounding. First Amendment rights deserve more than two sentences of slapdash treatment. The City's failure to address this issue with any precedent, or even discussion, evinces its inability to overcome the presumption that the Ordinance's imposition of a prior restraint is a flagrant violation of the First Amendment. The Ordinance must be enjoined.

## II. PLAINTIFFS HAVE DEMONSTRATED THAT THEY ARE SUFFERING IRREPARABLE INJURY.

The City's contentions regarding Plaintiffs' irreparable injury boil down to the notion that they can simply go somewhere else. (Opp. at 23) (arguing that Plaintiffs cannot demonstrate irreparable injury because they can engage in SOCE counseling "outside the City"). The City's argument is essentially that licensed counselors can and do shed their constitutional rights at the City limits. This contention is not only offensive to a free society, it is an egregious affront to the promises of the First Amendment. The First Amendment cannot be jurisdictionally confined at the whims of City officials who dislike certain forms of expression taking place in their locale.

As the mountain of First Amendment precedent has universally held, governments are not empowered to create "First Amendment Free Zones," like the City attempts to do here. *See, e.g.*, *Bd. of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 574 (1987) (striking down local government's attempt to prohibit protected expression and create a "First Amendment Free Zone."); *United States v. Stevens*, 559 U.S. 460, 470 (2010) (the government in not empowered to create First Amendment free zones with respect to certain categories of speech); *id.* ("The First Amendment's guarantee of free speech does not extend only to categories of speech that survive an ad hoc balancing of relative social costs and benefits."). Saying that Plaintiffs may avoid the irreparable injury being imposed upon them by the Ordinance by simply "going somewhere else" ignores the premise of the First Amendment. Indeed, "[a]s a free-floating test for First Amendment

coverage, that sentence is startling and dangerous." *Stevens*, 559 U.S. at 470.

Not only is the City's invitation for Plaintiffs to go somewhere else offensive and baseless as a matter of settled law, it also evinces the fact that the City has no understanding that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Indeed, the mere allegation of First Amendment violations represents irreparable injury. *See, e.g.*, *Awad v. Ziriax*, 670 F.3d 1111, 1125 (10th Cir. 2012); *see also* 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane*, Federal Practice & Procedure* §2948.1 (2d ed. 1995) ("When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."). The City's protestations to the contrary are plainly without merit. Plaintiffs have suffered, are suffering, and will continue to suffer immediate and irreparable injury absent injunctive relief.

## III.   PLAINTIFFS HAVE DEMONSTRATED THAT AN INJUNCTION FAVORS THE PUBLIC INTEREST AND THAT THE CITY SUFFERS NO HARM.

This being a First Amendment case, the likelihood of success on the merits is dispositive of the issuance of injunctive relief. *See e.g.*, *Scott v. Roberts*, 612 F.3d 1279, 1297 (11th Cir. 2010). This is because a law that is likely to be unconstitutional *ipso facto* imposes irreparable harm and is not in the public interest. *See id*. Indeed, the inability to punish Plaintiffs and other licensed counselors for engaging in a form of counseling that has benefitted thousands of people, is desired by their clients, and is consented to by informed clients "does not outweigh the serious loss of first amendment freedoms." *ACLU of Fla., Inc. v. The Florida Bar*, 744 F. Supp. 1094, 1099 (N.D. Fla. 1990). The City suffers no harm by being forced to comply with the dictates of the First Amendment. Indeed, protection of First Amendment rights is always in the public interest, while violating First Amendment rights at the whim of ideological opponents does not serve the public. *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006).

17

## IV.   PLAINTIFFS' WELL-PLEADED ALLEGATIONS SURVIVE DISMISSAL AND ENTITLE THEM TO RELIEF.

The City's motion to dismiss is similarly without merit and should be denied. "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but a plaintiff must meet his "obligation to show the grounds of his entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Supreme Court does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face" and enough facts to "nudge[] [plaintiffs'] claims across the line from conceivable to plausible." *Id.* at 570; *see also Ashcroft*, 556 U.S. at 679 ("a complaint that states a plausible claim to relief survives a motion to dismiss"). A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses. *See* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990). The pleading standard "simply call[s] for enough fact to raise a reasonable expectation that discovery will reveal evidence of [unlawful actions]." *Bell Atl.*, 550 U.S. at 556.

A district court cannot dismiss a complaint under Rule 12(b)(6) unless **after accepting all well-pleaded allegations in the plaintiff's complaint as true** and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears **certain** that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief. *Spanish Broad. Sys. Of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1070 (11th Cir. 2004). Indeed, "[t]he threshold sufficiency that a complaint must meet to survive of motion to dismiss is **exceedingly low**." *Id.* (emphasis added). The City cannot overcome its extraordinarily high burden to prevail on its

18

motion to dismiss. It is axiomatic that motions to dismiss under Rule 12(b)(6) are **highly disfavored** and **rarely granted**. *See, e.g.*, *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("We hasten to add that this motion is viewed with disfavor and rarely granted."). Indeed, "[d]ismissal of a claim on the basis of barebone pleadings is a precarious disposition with a high mortality rate." *Id.* (quoting *Int'l Erectors, Inc. v. Wilhoit Steel Erectors & Rental Serv.*, 400 F.2d 465, 471 (5th Cir. 1968)).

Dismissal is highly disfavored "even if the face of the pleadings indicate that recovery is very remote." *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981). "And, of course, **a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of facts is improbable, and that a recovery is very remote and unlikely**." *Bell Atl.*, 550 U.S. at 556 (emphasis added) (internal quotations omitted). Plaintiffs' well-pleaded complaint easily satisfies this minimal threshold, and the City's motion to dismiss should be denied.

### A.     Plaintiffs Have Sufficiently Pled Standing To Challenge The Ordinance.

### 1.     Vazzo Has Sufficiently Pled Standing.

The City does not contest, and therefore concedes, that Vazzo has Article III standing to challenge the Ordinance. (MTD at 5). This is not surprising either. To demonstrate standing,

> the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) "actual or imminent, not 'conjectural' or 'hypothetical,' " . . . . Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." . . . . Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations omitted).

Vazzo unquestionably has a concrete and immediate injury as a result of the Ordinance. He is prohibited from engaging in counseling with minors that willingly seek it from him, he is

prohibited from expressing a single viewpoint in such counseling, and he is subject to an unconstitutional prior restraint. (VC ¶¶ 114-117). His injuries are solely caused by the Ordinance because it is the only thing standing between his desire to engage in constitutionally protected expression with his clients. (*Id.* ¶¶ 93-95, 97-104). Indeed, the State's licensing board does not prohibit Vazzo from offering SOCE counseling in Florida, only the Ordinance does that. (*Id.* ¶ 194). Finally, there can be no dispute that a favorable decision from this Court enjoining the Ordinance would eliminate the only obstacle to Vazzo's ability to offer SOCE counseling to his minor clients in the City. (*Id.* ¶¶ 93-95, 97-104).

### 2.    Pickup Has Sufficiently Pled Standing.

The City protests that Pickup may not maintain his action in this Court because he has no standing. (MTD at 9-10). However, the City's concession that Vazzo has Article III standing to challenge the Ordinance is fatal to its effort to dismiss Pickup from this matter. Once the Court establishes the standing of at least one plaintiff for the relief sought, it need not consider the standing of other plaintiffs in the action. *See, e.g., Carey v. Population Serv., Int'l*, 431 U.S. 678, 682 (2010) (once standing of one plaintiff is established, the court need not decide the standing of the other plaintiffs); *Vill. of Arlington Heights v. Metro Housing Dev. Corp.*, 429 U.S. 252, 264 & n.9 (1977) (where "we have at least one individual plaintiff who has demonstrated standing to assert these rights as his own," "we need not consider whether the other individual and corporate plaintiffs have standing to maintain suit"); *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1003 n.10 (11th Cir. 2004) (holding that it is "sufficient if one plaintiff has standing"); *Planned Parenthood Ass'n of Altanta Area, Inc. v. Miller*, 934 F.2d 1462, 1465 n.2 (11th Cir. 1991) ("Since Dr. Moore has standing, we need not consider the standing of the other parties"); *In re Florida Cement & Concrete Antitrust Litig.*, No. 09-2387-CIV-ALTONAGA/Brown, 2011 WL 13174536,

*1 (S.D. Fla. Feb. 24, 2011) ("**It is settled law that as long as one plaintiff has standing, the Court has subject matter jurisdiction over the case**." (emphasis added)).

Here, because Vazzo has Article III standing, the complaint may not be dismissed under Rule 12(b)(1). Indeed, Rule 12 permits a court to dismiss a complaint for lack of subject matter jurisdiction. "The key word in the Rule is 'complaint.' **By its terms, Rule 12(b)(1) permits the Court to dismiss a *complaint* not a *complainant*.**" *In re Florida*, 2011 WL 13174536 at *1 (emphasis added). Thus, the City's efforts to dismiss Pickup from the instant litigation while conceding that Vazzo has standing to pursue the requested relief is utterly devoid of merit and cannot be countenanced by this Court.

### 3.   Plaintiffs Have Standing to Challenge the Ordinance on Behalf of their Clients.

The Supreme Court and the Eleventh Circuit have long recognized the rights of doctors and mental health professionals to bring constitutional challenges on behalf of their patients and clients. *See, e.g.*, *Singleton v. Wulff*, 428 U.S. 106 (1976); *Doe v. Bolton*, 410 U.S. 179 (1973); *Planned Parenthood Ass'n of Atlanta Area, Inc. v. Miller*, 934 F.2d 1462, 1465 n.2 (11th Cir. 1991); *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328 (5th Cir. 1981). Plaintiffs' assertion of their clients' constitutional rights is consistent with Article III standing requirements because their clients' "enjoyment of the right is inextricably bound up with the activity the litigant wishes to pursue." *Singleton*, 428 U.S. at 114-15. As such, "the relationship between the litigant and the third party [is] such that the former is fully, or very nearly, as effective a proponent of the right as the latter." *Id.* at 115. The Eleventh Circuit has noted that a doctor or mental health professional has standing to bring claims on behalf of their clients when (1) the plaintiff has suffered concrete injury, (2) the plaintiff and the third party have a close relationship, and (3) the

third party faces some obstacles to asserting his own rights. *Miller*, 934 F.2d at 1465 n.2. Plaintiffs easily satisfy each of these elements.

### a. Plaintiffs have suffered concrete and irreparable injury.

As Plaintiffs' Complaint demonstrates, Plaintiffs are currently suffering irreparable injury. (VC ¶¶ 93-111). Indeed, the Ordinance is currently prohibiting Plaintiffs from engaging in SOCE counseling with minor clients who desire to receive it, and the Ordinance is unconstitutionally prohibiting such counseling on the basis of its content and viewpoint. (*Id.* ¶¶ 115-117). Plaintiffs are also currently suffering irreparable injury under the yoke of a presumptively unconstitutional prior restraint. (*Id.* ¶ 114); *see also supra* Sections I-III. Plaintiffs are therefore suffering concrete injury sufficient to satisfy Article III and thus satisfy the first requirement.

### b. Plaintiffs and their clients have the requisite close relationship.

It has long been held that the relationship of a doctor and patient satisfies the requisite relationship for purposes of third party standing. *See, e.g.*, *Singleton*, 428 U.S. at 117 ("the physician is uniquely qualified to litigate the constitutionality of the [government's] interference with, or discrimination against" medical decision); *Miller*, 934 F.2d at 1465 n.2 (holding that the relationship between doctor and patient is sufficiently close for standing); *Deerfield*, 661 F.2d at 334 (same); *Planned Parenthood Se., Inc. v. Bentley*, 951 F. Supp. 2d 1280, 1284 (M.D. Ala. 2013) ("federal courts routinely recognize a [doctor's] standing to assert the claims of its patients"); *Reproductive Health Servs. v. Strange*, 204 F. Supp. 3d 1300, 1320 (M.D. Ala. 2016) (permitting doctor to assert claims on behalf of minor patient); *see also Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, (2d Cir. 2016) ("**a physician or other professional may raise the *constitutional* rights of his or her patients**" (bold emphasis added; italics original)); *Aid for Women v. Foulston*, 441 F.3d 1101, 1112 (10th Cir. 2006) (same); *Nasir v. Morgan*, 350 F.3d 366,

376 (3d Cir. 2003) (close relationships arise "in professional contexts, where the right of the potential plaintiff and third-party plaintiff neatly align." (emphasis added)). The constitutionally protected right to make decisions concerning one's mental health and health care is "one in which the physician is intimately involved." *Singleton*, 428 U.S. at 117. Indeed, "[t]he closeness of the relationship is patent." *Id.*; *see also Miller*, 934 F.2d at 1465 n.2 (same).

Here, Plaintiffs and their clients establish a therapeutic alliance in their counseling and the relationship between them is sufficiently close. Indeed, Plaintiffs' clients have specifically sought them out because they offer counseling consistent with their religious beliefs. (VC ¶ 68). This relationship is inherently close and sufficient for Article III standing. *See Penn. Psychiatric Soc'y v. Green Springs Health Serv., Inc.*, 280 F.3d 278, 289 (3d Cir. 2002) ("Psychiatrists clearly have the kind of relationship with their patients which lends itself to advancing claims on their behalf. This intimate relationship and the resulting mental health treatment ensures psychiatrists can effectively assert their patients' rights."). Therefore, Plaintiffs have—by the very nature of their counseling relationship with their patients—satisfy the second requirement. *Id.* at 290 ("the psychiatrist-patient relationship would satisfy the second criterion for third-party standing").

### c.    Plaintiffs' clients face obstacles to litigation.

Plaintiffs' clients face substantial obstacles to bringing these claims. Indeed, "[f]or one thing, [they] may be chilled from such assertion by a desire to protect the very privacy of [their] decision from the publicity of a court suit." *Singleton*, 428 U.S. at 117. "[T]he psychotherapist-patient privilege is rooted in the imperative need for confidence and trust." *Jaffree v. Redmond*, 518 U.S. 1, 10 (1996). "[D]isclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace. For this reason, the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment." *Id.*

"The stigma associated with receiving mental health services presents a considerable deterrent to litigation." *Penn. Psychiatric Soc'y*, 280 F.3d at 290 (citing *Parham v. J.R.*, 442 U.S. 584 (1979) (Stewart, J., concurring)). This consideration is only increased when such counseling involves intimate details concerning a minor's development, growth, and identity. Indeed, even the fear of stigmatization associated with bringing claims in a public forum "operates as a powerful deterrent to bringing suit." *Id.* As the Tenth Circuit has held, "**adolescents seeking health care related to sexuality or mental health care may be chilled from asserting their own rights by a desire to protect the very privacy of the care they seek from the publicity of a court suit**." *Aid for Women*, 441 F.3d at 1114 (emphasis added). The desire to keep the intimate details associated with SOCE counseling and fundamental concepts such as identity are clearly obstacles to bringing their claims in public court. The mere fact that the City passed the Ordinance is *ipso facto* proof that Plaintiffs' clients are likely to be stigmatized and subjected to opprobrium for seeking the kind of counseling that offends the City's sensibilities. Therefore, Plaintiffs have standing to assert their patients' constitutional claims.

**B.      Plaintiffs' Have Sufficiently Pled A Violation Of The First Amendment.**

The City's Motion to Dismiss mirrors in full the City's Opposition to Plaintiffs' Motion for Preliminary Injunction. (*Compare* MTD at 5-14, *with* Opp. at 5-16). Thus, for all the reasons stated *supra* Sections I-III, the City cannot meet its demanding burden of obtaining the rarely granted remedy of dismissal.

However, even were this Court to determine that Plaintiffs are not entitled to preliminary injunctive relief, which it should not hold, the standards applicable to the City's motion to dismiss are wholly different and require that Plaintiffs only meet an "exceedingly low" threshold. *See Spanish Broad.*, 376 F.3d at 1070. Plaintiffs easily satisfy that threshold. First, Plaintiffs have

24

plainly alleged that the Ordinance is viewpoint and content-based (VC ¶¶ 115-117), a contention as to which even the City's own authorities find "little doubt." *King v. Governor of New Jersey*, 767 F.3d 216 (3d Cir. 2014). Plaintiffs have alleged that the Ordinance has chilled them in their expression. (VC ¶¶ 93-95, 97-104). Plaintiffs have alleged that the Ordinance cannot withstand the requisite constitutional scrutiny. (*Id.* ¶¶ 118-119). These allegations suffice to demonstrate that Plaintiffs have pled a First Amendment challenge, but coupled with Plaintiffs' demonstration that they are likely to succeed on the merits of their First Amendment claim, there can be no doubt that Plaintiffs have stated a claim. The City's contentions to the contrary are without merit.

### C. Plaintiffs' Have Sufficiently Pled That The Ordinance Is *Ultra Vires*.

The City also contends that Plaintiffs fail to state a claim under Article VIII, §2(b) of the Florida Constitution. (MTD at 18). The City is once again incorrect.

First, the City's entire justification is that the State has not preempted the field of mental health professionals. (*Id.* at 19-20). Such a determination is inappropriate for a motion to dismiss. Resolution of preemption necessarily requires a factual record, and is therefore inappropriate for a motion to dismiss. Indeed, in determining whether the State's regulation impliedly preempts local governments from regulating mental health professionals licensed by the State, the court must look at the provisions of the policy as a whole, the nature of power exercised by the legislature, the object sought to be attained by the statute, and the character of the obligations imposed by the statute. *Classy Cycles, Inc. v. Bay Cnty.*, 201 So.3d 779, 784 (Fla. 2016). The object and purpose of a statute or statutory scheme is necessarily fact intensive and inappropriate for a motion to dismiss. *See, e.g.*, *Mississippi State Chapter, Operation Push, Inc. v. Mabus*, 932 F.2d 400, 408 (5th Cir. 1991) (a legislature's purpose in enacting a law "is a question of fact"). The City's attempt to dismiss Plaintiffs' claim before any factual inquiry is undertaken cannot be countenanced.

Second, the City's attempt to limit the analysis to whether the State has enacted a specific statute prohibiting a locality from enacting a ban on SOCE counseling ignores the proper question at issue under Article VIII, §2(b). The proper question is whether the State has "preempted **a particular subject area**," not one individual form of counseling. *Sarasota Alliance For Fair Elections, Inc. v. Browning*, 28 So.3d 880, 886 (Fla. 2010) (emphasis added). The City contends that the question should be whether there is any "legislative statement expressly prohibiting local governments in the state from enacting ordinances **prohibiting conversion therapy**." (MTD at 20) (emphasis added). The subject area in this matter is regulation of mental health professionals, not the narrow view of the State's regulation the City urges. Under the City's logic, a municipality would be empowered to enact any regulation it so desires if the State has not passed minute legislation prohibiting the regulation of a specific act, regardless of whether the statutory scheme regulating a particular **area** is overwhelmingly pervasive. This simply is not the law.

Finally, the City ignores the fact that this Court must accept Plaintiffs' allegations as true for the purposes of a motion to dismiss and resolve all inferences in its favor. *See, e.g.*, *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (court must construe all facts alleged in light most favorable to plaintiff). Here, Plaintiffs have plainly alleged that the State has enacted a pervasive scheme regulating mental health professionals. (VC ¶ 191). Indeed, Plaintiffs have alleged that the State is the only entity that licenses professionals in the State. (*Id.* ¶ 195). The State licenses mental health counselors, regulates their conduct, and solely controls the disciplinary proceedings against such professionals. (*Id.* ¶ 191) ("Florida has preempted the field of regulation of mental health professionals through enactment of Florida Statutes, Title XXXII, Chapter 491); (*Id.* ¶ 192) ("Florida has preempted the field of disciplinary actions for licensed mental health professionals"). This regulatory scheme, which covers all licensed medical and mental health

professionals in the State, is unquestionably pervasive and evinces an intent to maintain sole

control of licensed professionals in the State. (*See* PI Motion at 21-23).

> **D.      Plaintiffs Have Sufficiently Pled A Violation Of The Patient's Bill Of Rights and Responsibilities.**

The City's attempt to escape liability under the Florida Patient's Bill of Rights and

Responsibilities fairs no better. (MTD at 22). The City contends that Plaintiffs cannot be "health

care practitioners" because that term **only** applies to "physicians licensed under chapter 458,

osteopathic physicians licensed under chapter 459, or podiatric physicians licensed under chapter

491" (*Id.*). This argument defies the plain language of the statute. As the statute makes plain,

> a patient has the right to access any mode of treatment that is, in his or her own judgment and the judgment of his or her health care practitioner, in the best interests of the patient, including complementary or alternative health care treatments, **in accordance with the provisions of §456.41**.

Fla. Stat. Ann. §381.026(4)(d)(3) (emphasis added).

Thus, the statutory road map requires an analysis of what the provisions of Section 456.41

offer to a patient seeking such treatment and from whom he may seek such treatment. Section

456.41 answers this question in an abundantly clear manner: "[i]t is the intent of the legislature

that **health care practitioners** be able to offer complimentary or alternative health care

treatments." Fla. Stat. Ann. § 456.61(1) (emphasis added). Thus, if the Patient's Bill of Rights and

Responsibilities permits patients to seek complimentary or alternative health care treatments "in

accordance with the provisions of §456.41," Fla. Stat. Ann. § 381.026(4)(d)(3), and Section

456.41's plain language explicitly states that a client has the right to receive such treatment from

a "health care practitioner," then there can be no dispute that health care practitioners are included

in this analysis. Therefore, to determine exactly what a "health care practitioner" is for purposes

of Section 381.026(4)(d)(3) and Section 456.41, and whether Plaintiffs are included in that

definition, the Court must determine what Section 456.41 defines as a "health care practitioner." This is an easy task, because, under Section 456.41(2)(b): "[h]ealth care practitioner means any health care practitioner as defined in §456.001(4)," which includes marriage and family therapists licensed under Fla. Stat. Ann. § 491.003(5). The City's futile attempts to ignore the plain roadmap laid out by these statutes has no merit and should be rejected.

The City's only other refuge for attempting to escape liability under Count VII is that Plaintiffs do not have standing to challenge the rights of their clients under the Patient's Bill of Rights and Responsibilities. (MTD at 24). The City concedes, as it must, that Plaintiffs' clients could bring a claim under the statute. (*Id.* at 24). Thus, it must retreat to its previously debunked argument that Plaintiffs may not bring such claims on their patients' behalf because they lack standing to do so. As demonstrated *supra* Section IV.A.3, this argument, too, falls far short of the mark. The City's motion to dismiss should be denied.

## CONCLUSION

Because Plaintiffs have demonstrated a likelihood of success on the merits, irreparable injury, that the balance of the equities favors injunctive relief, and that the public interest favors an injunction, the preliminary injunction should issue.

Because the City has not and cannot demonstrate that Plaintiffs lack standing to bring their claims or show that Plaintiffs' allegations fail to meet their exceedingly low threshold, its motion to dismiss should be denied.

Respectfully submitted,

/s/ Daniel J. Schmid
Mathew D. Staver
Horatio G. Mihet
Roger K. Gannam
Daniel J. Schmid*
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
Phone: (407) 875-1776
Fax: (407) 875-0770
Email: dschmid@lc.org

*Attorneys for Plaintiffs*

*Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of January, 2018, I caused a true and correct copy of the foregoing to be filed electronically with this Court. Service will be effectuated on all counsel of record via this Court's ECF/electronic service system.

/s/ Daniel J. Schmid
Daniel J. Schmid*
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
Phone: (407) 875-1776
Fax: (407) 875-0770
Email: dschmid@lc.org

*Attorneys for Plaintiffs*

*Admitted *pro hac vice*

29