IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF FLORIDA
Tampa Division

| | | |
|---|---|---|
| ROBERT L. VAZZO, LMFT, individually and on behalf of his patients, DAVID H. PICKUP, LMFT, individually and on behalf of his patients, and SOLI DEO GLORIA INTERNATIONAL, INC. d/b/a NEW HEARTS OUTREACH TAMPA BAY, individually and on behalf of its members, constituents and clients, | ) ) ) ) ) ) ) ) ) | Civil Action No. 8:17-cv-02896-CEH-AAS |
| Plaintiffs, | ) ) | **INJUNCTIVE RELIEF SOUGHT** |
| v. | ) ) | |
| CITY OF TAMPA, FLORIDA, and SAL RUGGIERO, in his official capacity as Manager of the City of Tampa Neighborhood Enhancement Division, | ) ) ) ) ) | |
| Defendants | ) | |

**FIRST AMENDED VERIFIED COMPLAINT FOR DECLARATORY,
PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, AND DAMAGES**

For their VERIFIED COMPLAINT against Defendants CITY OF TAMPA, FLORIDA ("City") and SAL RUGGIERO, in his official capacity as Manager of the City of Tampa Neighborhood Enhancement Division, ("Ruggiero") (collectively "Defendants"), Plaintiffs ROBERT L. VAZZO, LMFT, individually and on behalf of his patients ("Vazzo"), DAVID H. PICKUP, LMFT, individually and on behalf of his patients ("Pickup"), and SOLI DEO GLORIA INTERNATIONAL, INC. d/b/a/ NEW HEARTS OUTREACH TAMPA BAY, individually and on behalf of its members, constituents and clients ("New Hearts Outreach") (collectively "Plaintiffs"), by and through the undersigned counsel, allege and aver as follows:

**INTRODUCTION**

1.      Since time immemorial, the relationship between clients and their licensed mental health professionals has represented a sacred trust. In this vital relationship, mental health professionals are tasked with providing essential care to their clients and forming critical therapeutic alliances that represent the unique relationship between professional and client. This therapeutic alliance is designed to facilitate the foundational principle of all mental health counseling: the client's fundamental right to self-determination. Throughout the history of this learned profession, clients have provided mental health professionals with their goals, desires, and objectives that conform to their sincerely held desires and concept of self, and mental health professionals have provided counseling that aligns with the clients' right to self-determination. That unique relationship has, until now, been protected, revered, and respected as sacrosanct and inviolable. Now, the City of Tampa has seen fit to storm the office doors of mental health professionals, thrust itself into the therapeutic alliance, violate the sacred trust between client and counselor, and run roughshod over the fundamental right of client self-determination and the counselor's cherished First Amendment liberties. The City's purported justification for such unconscionable actions: it does not like the goals, objectives, or desires of certain clients when it comes to one type of counseling. The First Amendment demands more, and the City's actions have caused, are causing, and will continue to cause irreparable injury to Plaintiffs' fundamental and cherished liberties.

2.      Plaintiffs bring this civil action to challenge the constitutionality of Tampa City Ordinance 2017-47, "An Ordinance Of The City Of Tampa, Florida, Relating To Conversion Therapy On Patients Who Are Minors," ("Ordinance" or "Ordinance 2017-47"), to prevent the Ordinance from violating their respective federal and state constitutional guarantees of Freedom

of Speech and Free Exercise of Religion, as well as the corresponding rights of their minor patients, members, constituents and clients, as the case may be. This law came into full effect immediately upon being approved by Mayor Bob Buckhorn on April 10, 2017, and thus time is of the essence to obtain judicial relief because Plaintiffs and their patients, members, constituents or clients have suffered, are currently suffering, and will continue to suffer immediate and irreparable injury to their most cherished constitutional liberties.

3.      Plaintiffs engage in licensed, ethical, and professional counseling that honors their clients' autonomy and right to self-determination, that permits clients to prioritize their religious and moral values above unwanted same-sex sexual attractions, behaviors, or identities, and that enables clients to align their values with a licensed counselor who can address these values. Plaintiffs have First Amendment and state constitutional rights to facilitate, engage in and provide counseling consistent with their and their clients' sincerely held religious beliefs, and their clients have First Amendment and state constitutional rights to receive such counseling free from the viewpoint-based intrusion of the City into the sacrosanct therapeutic alliance.

4.      By preventing minors from seeking counseling to address the conflict about or questions concerning their unwanted same-sex sexual attractions, behaviors, and identities and from seeking to reduce or eliminate their unwanted same-sex sexual attractions, behaviors, or identities through counseling, such as sexual orientation change efforts ("SOCE counseling"), the Ordinance denies or severely impairs Plaintiffs' clients and all minors their right to self-determination, their right to prioritize their religious and moral values, and their right to receive effective counseling consistent with those values.

5.      By denying Plaintiffs' clients and all minors access to counseling from licensed counselors that can help minors who desire to reduce or eliminate their unwanted same-sex

attractions, behaviors, or identity, the Ordinance infringes on the fundamental rights of Plaintiffs' clients, and the rights of the parents of Plaintiffs' clients to direct the upbringing and education of their children, which includes the right to meet each child's individual counseling, developmental, and spiritual needs.

6.      By prohibiting them from engaging in any efforts that seek to eliminate or reduce unwanted same-sex attractions, behaviors, or identity, even when the client, the parents, and the licensed mental health professional all consent to such counseling, the Ordinance also violates the Plaintiffs' constitutional rights.

7.      Despite the value and benefit that Plaintiffs have provided by offering SOCE counseling, the Ordinance prohibits SOCE counseling to minors by licensed professionals, which is causing immediate and irreparable harm to Plaintiffs and Plaintiffs' clients.

8.      The Ordinance harms licensed counselors and their clients by prohibiting minors and their parents from obtaining the counseling services they choose, after receiving full disclosure and providing informed consent, to resolve, reduce, or eliminate unwanted same-sex sexual attractions, behaviors, or identity and harms counselors by placing them in a Catch-22 in which they will be forced to choose between violating ethical codes by complying with the Ordinance or violating the law by failing to comply with the Ordinance.

9.      By denying minors the opportunity to pursue a particular course of action that can most effectively help them address the conflicts between their sincerely held religious beliefs and goals to reduce or eliminate their unwanted same-sex attractions, behaviors, or identity, the Ordinance is causing those minors confusion and anxiety over same-sex sexual attractions, behaviors, and identity, and it is infringing on their free speech and religious liberty rights.

10.     Plaintiffs seek preliminary and permanent injunctive relief against the Defendants, their agents, servants, departments, divisions, employees, and those acting in concert and with actual notice, enjoining the enforcement of the Ordinance because it violates: (1) the rights of Plaintiffs and their clients to freedom of speech and free exercise of religion, guaranteed by the First and Fourteenth Amendments to the United States Constitution, (2) the rights of Plaintiffs to liberty of speech and free exercise and enjoyment of religion, guaranteed by Article I, §§3, 4 of the Florida Constitution, (3) the Florida Patient's Bill of Rights and Responsibilities, Fla. Stat. Ann. § 381.026, and the Florida Religious Freedom Restoration Act, Fla. Stat. Ann. § 761.03.

11.     Plaintiffs also seek preliminary and permanent injunctive relief enjoining the City from enforcing the Ordinance because the Ordinance is void *ab initio* as an *ultra vires* act in excess of the City's authority under Article VIII, Section 2(b) of the Florida Constitution.

12.     Plaintiffs also pray for declaratory relief from this Court declaring that the Ordinance, both on its face and as-applied, is an unconstitutional violation of the First and Fourteenth Amendments to the United States Constitution and is void *ab initio* as an *ultra vires* act in excess of the City's authority under Article VIII, Section 2(b) of the Florida Constitution.

13.     An actual controversy exists between the parties involving substantial constitutional issues, in that the Ordinance, both facially and as-applied by the City, violates Plaintiffs and their clients' rights to free speech and free exercise under the First Amendment.

## PARTIES

14.     Plaintiff, Robert L. Vazzo, LMFT, is a licensed marriage and family therapist and is licensed to practice mental health counseling in California, Florida, Nevada, and Ohio.

15.     Plaintiff, David H. Pickup, LMFT, is a licensed marriage and family therapist and is licensed to practice mental health counseling in California and Texas, and is currently undergoing the necessary requirements to obtain his license in Florida.

16.     Plaintiff Soli Deo Gloria International, Inc. d/b/a/ New Hearts Outreach Tampa Bay is a non-profit organizations incorporated under the laws of the State of Florida, with its principal place of business in Tampa, Florida.

17.     Defendant, City of Tampa, is a municipal corporation and political subdivision of the State of Florida, with authority to sue and be sued.

18.     Defendant, Sal Ruggiero, is the Manager of the City of Tampa Neighborhood Enhancement Division, which is responsible for enforcing all of the City's non-criminal ordinances, including Ordinance 2017-47. Mr. Ruggiero is sued in his official capacity.

## JURISDICTION AND VENUE

19.     This action arises under the First and Fourteenth Amendments to the United States Constitution and is brought pursuant to 42 U.S.C. § 1983. This action also arises under Article I, §§ 3, 4 of the Florida Constitution. This action also arises under the Florida Patient's Bill of Rights and Responsibilities, Fla. Stat. Ann. § 381.026, and the Florida Religious Freedom Restoration Act, Fla. Stat. Ann. § 761.03.

20.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

21.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because the City is situated in this judicial district, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

22.     This Court is authorized to grant declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201-02, implemented through Rule 57 of the Federal Rules of Civil Procedure, and is authorized to grant injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure.

23.     This Court is authorized to grant Plaintiffs' prayer for relief regarding costs, including a reasonable attorney's fee, pursuant to 42 U.S.C. § 1988.

## GENERAL ALLEGATIONS

### A.     ORDINANCE 2017-47

24.     On April 6, 2017, the City Council enacted Ordinance 2017-47. A copy of the Ordinance is attached to Plaintiffs' Verified Complaint (dkt. 1) as EXHIBIT A and incorporated herein.

25.     On April 10, 2017, Mayor Bob Buckhorn signed and approved the Ordinance.

26.     The Ordinance immediately went into effect upon its adoption and approval. (*See* dkt. 1, Exhibit A at 7, § 11) ("this Ordinance shall take effect immediately upon its adoption").

27.     Section 5 of the Ordinance states that "[i]t shall be unlawful for any Provider to practice conversion therapy efforts on any individual who is a minor regardless of whether the Provider receives monetary compensation in exchange for such services." (Dkt. 1, Ex. A at 6, § 5).

28.     Section 4 of the Ordinance defines "conversion therapy efforts" ("SOCE counseling") as:

> any counseling, practice, or treatment performed with the goal of changing an individual's sexual orientation or gender identity, including, but not limited to, efforts to change behaviors, gender identity, or gender expression, or to eliminate or reduce sexual or romantic attractions or feelings toward individuals of the same gender or sex. Conversion therapy does not include counseling that provides assistance to a person undergoing gender transition or counseling that provides acceptance, support, and understanding of a person or facilitates a person's coping, social support, and development, including sexual orientation-neutral interventions

to prevent or address unlawful conduct or unsafe sexual practices, as long as such counseling does not seek to change sexual orientation or gender identity.

(Dkt. 1, Ex. A at 5, § 4(a)).

29.     Section 4 of the Ordinance defines "Provider" as:

any person who is licensed by the State of Florida to provide professional counseling, or who performs counseling as part of his or her professional training . . . including but not limited to medical practitioners, osteopathic practitioners, psychologists, psychotherapists, social workers, marriage and family therapists, and licensed counselors.

(Dkt. 1, Ex. A at 6, § 4(c)).

30.     The Ordinance states that all purported violations of this Ordinance constitute a separate offense, that the fine for the first offense is $1,000.00 and for each and every subsequent violation the fine is $2,000.00.

## B.     RESEARCH ON SOCE COUNSELING

31.     The Ordinance cites the Report of the 2009 American Psychological Association's Task Force on Appropriate Therapeutic Responses to Sexual Orientation ("APA Report") for the proposition that SOCE counseling is harmful. (Dkt. 1, Ex. A at 1).

32.     The City intentionally misrepresents the findings of the APA Report and ignores the substantial limitations the APA Report noted extensively throughout its findings. A copy of the APA Report is attached to Plaintiffs' Verified Complaint (dkt. 1) as EXHIBIT B and incorporated herein.

33.     Despite the City's claims that SOCE counseling was found to be harmful to minors, the APA Report specifically noted that "sexual orientation issues in children are **virtually unexamined**." (Dkt. 1, Ex. B at 91) (emphasis added).

34.     The APA Report stated that "[t]here is a lack of published research on SOCE among children." (*Id.* at 72).

35.     The APA Report also noted that it could make no conclusions about SOCE counseling for those adolescents who request such counseling. (*Id.* at 73) ("We found no empirical research on adolescents who request SOCE."); (*id.* at 76) (noting that its conclusions are not based on specific studies from individuals, including minors, who request SOCE counseling and stating that its conclusions were thus necessarily limited).

36.     The APA Report also concluded that "there is a dearth of scientifically sound research on the safety of SOCE. **Early and recent research studies provide no clear indication of the prevalence of harmful outcomes**." (*Id.* at 42) (emphasis added).

37.     But, from the research the APA Report examined, it found evidence of benefits achieved from SOCE counseling, while noting that there was "some" evidence of certain harm for others. (*Id.* at 91).

38.     Because it noted that there was evidence of benefits for some, the APA Report concluded that "it is still unclear which techniques or methods may or may not be harmful." (*Id.*).

39.     The APA Report also specifically noted that "for some, sexual orientation identity [is] fluid or has an indefinite outcome." (*Id.* at 2).

40.     In fact, the APA Report found among its studies that "[s]ome individuals report that they went on to lead outwardly heterosexual lives, developing a sexual relationship with an other-sex partner, and adopting a heterosexual identity." (*Id.* at 3).

41.     The APA Report therefore does not support the City's purported premise for adopting the Ordinance.

42.     The APA Report itself is also highly partisan and politicized as a result of its researchers. Although many qualified conservative psychologists were nominated to serve on the task force, all of them were rejected.

43.     The director of the APA's Lesbian, Gay and Bisexual Concerns Office, Clinton Anderson, stated that such practitioners were rejected because the group could not take into account what are fundamentally negative religious perceptions of homosexuality because they do not fit into the APA's worldview.

44.     In seeking to reach conclusions in the APA Report, the APA operated with a litmus test when considering task force membership—the only views of homosexuality that were tolerated were those that uniformly endorsed same-sex behavior as a moral good. Thus, from the outset of the task force, it was predetermined that conservative or religious viewpoints would only be acceptable when they fit within their pre-existing worldview.

45.     One example of this is the Report's failure to recommend any religious resources that adopt a traditional or conservative approach to addressing conflicts between religious beliefs and sexual orientation. This bias can hardly be said to respect religious diversity and had predictable consequences for how the task force addressed its work.

46.     The APA Report contains a significant contrast between the exceptionally rigorous methodological standards applied to SOCE outcomes and the considerably less rigorous and uneven standards applied to the question of harm. With regard to SOCE outcomes, the APA Report dismisses most of the relevant research because of methodological limitations, which are outlined in great detail (Dkt. 1, Ex. B, at 26-34).

47.     Studies pertaining to SOCE outcomes that fall short of the task force's rigorous standards were deemed unworthy of examination and dismissed as containing no evidence of value to the questions at hand. But, the APA Report appears to adopt very different evidentiary standards for making statements about alleged harms attributed to SOCE.

48.     The standard as regards efficacy ruled out allegedly substandard studies as irrelevant; however, no such efficacy standards were employed in considering studies purporting to document harm. Additionally, the APA Report uses the absence of evidence to argue that SOCE is unlikely to produce change and thus strongly questions the validity of SOCE, but shows no parallel reticence to endorse affirmative therapy despite acknowledging that such therapy "has not been evaluated for safety and efficacy" (Dkt. 1, Ex. B at 91).

49.     Dr. Nicolas Cummings, former president of the American Psychological Association, has also noted that SOCE counseling can provide enormous benefits. A copy of Dr. Cummings article discussing SOCE counseling is attached to Plaintiffs' Verified Complaint (dkt. 1) as EXHIBIT C and incorporated herein.

50.     Dr. Cummings noted that the City's premise for adopting the Ordinance is damaging and incorrect. (*See* dkt. 1, Ex. C. at 1) ("The sweeping allegation that [SOCE counseling] must be a fraud because homosexual orientation can't be changed is damaging.").

51.     Dr. Cummings personally counseled countless individuals in his years of mental health practice, and he reported that hundreds of those individuals seeking to reduce or eliminate their unwanted same-sex attractions, behaviors, or identity were successful. (*Id.*) ("Of the patients I oversaw who sought to change their orientation, **hundreds were successful**." (emphasis added)).

52.     Dr. Cummings said that the assertion that same-sex sexual attractions, behaviors, or identity is one identical inherited characteristic is unsupported by scientific evidence and that "**contending that all same-sex attraction is immutable is a distortion of reality**." (*Id.* at 2) (emphasis added).

53.     Dr. Cummings went on to criticize efforts to prohibit SOCE counseling as violative of the client's right to self-determination and therapeutic choice. (*Id.*) ("Attempting to characterize

all sexual reorientation therapy as unethical violates patient choice and gives an outside party a veto over patients' goals for their own treatment.").

54.     Dr. Cummings concluded that "[a] political agenda shouldn't prevent gays and lesbians who desire to change from making their own decisions." (*Id.*).

55.     Dr. Cummings concluded by condemning political efforts to prohibit SOCE counseling as harmful to clients and counselors. (*Id.*) ("Whatever the situation at an individual clinic, accusing professionals from across the country who provide treatment to fully informed persons seeking to change their sexual orientation of perpetrating a fraud **serves only to stigmatize the professional and shame the patient**." (emphasis added)).

56.     The American College of Pediatricians has noted that the political position statements of numerous mental health organizations, including many relied upon by the City here, have "no firm basis" in evidentiary support. A copy of the American College of Pediatricians statement on SOCE counseling is attached to Plaintiffs' Verified Complaint (dkt. 1) as EXHIBIT D and incorporated herein.

57.     The American College of Pediatricians noted that, "[t]he scientific literature, however, is clear: **Same-sex attractions are more fluid than fixed, especially for adolescents— many of whom can and do change**." (Dkt. 1, Ex. D) (emphasis added).

58.     The American College of Pediatricians also noted that "there is a body of literature demonstrating a variety of positive outcomes from SOCE." (*Id.*).

59.     Like Dr. Cummings, the American College of Pediatricians concluded that SOCE counseling is beneficial and that laws, such as the Ordinance here, that prohibit such counseling serve only to impose harm on minors who seek it. (*Id.*) ("Banning change therapy or SOCE will threaten the health and well-being of children wanting therapy.").

### C.    SOCE COUNSELING.

60.    Many of the position statements and studies referenced in the Ordinance improperly attempt to conflate practices allegedly used by some in the past with the practices that Plaintiffs Vazzo and Pickup, along with all ethical SOCE practitioners, use in their counseling and therapy practices with clients who wish to reduce or eliminate same-sex sexual attractions, behaviors, or identity. The Ordinance indiscriminately bans both types.

61.    Plaintiffs Vazzo and Pickup do not engage in aversive techniques, nor are they aware of any practitioner who engages in such practices with clients seeking to reduce or eliminate their unwanted same-sex attractions, behaviors, or identity.

62.    In their practices, Plaintiffs Vazzo and Pickup help clients with their unwanted same-sex attractions, behaviors, and identity by talking with them about root causes, about gender roles and identities, and about their anxieties and confusion that arises from these attractions.

63.    Speech is the only tool that Vazzo and Pickup use in their counseling with minors seeking to reduce or eliminate their unwanted same-sex attractions, behaviors, or identity. The only thing that happens in their counseling sessions is speech. They sit down with their clients and talk to their clients about the clients' goals, objectives, religious beliefs, desires, and identity.

64.    Throughout the Ordinance, the position statements refer to SOCE counseling as that counseling with the single goal of changing an individual's sexual orientation or gender identity. But, Plaintiffs Vazzo and Pickup do not begin counseling with any predetermined goals other than those that the clients themselves identify and set. This is consistent with the clients' fundamental right of self-determination.

65.     Plaintiffs Vazzo and Pickup employ speech to help clients understand and identify their anxiety or confusion regarding their attractions, or identity and then to help the client formulate the method of counseling that will most benefit that particular client.

66.     Often times, a client is not ready or does not desire to immediately begin to seek to reduce or eliminate their unwanted same-sex attraction, behaviors, or identity. When that is the case, Vazzo and Pickup focus on helping the client and parents to heal any wounds or frustrations and to begin to work on loving and accepting the minor client despite any challenges that arise from the unwanted same-sex attractions, behaviors, or identity.

67.     The presumptions of the Ordinance that all such counseling from Vazzo and Pickup is premised on the notion that homosexuality is an illness, defect, or shortcoming does not accurately reflect Vazzo's and Pickup's practices, and it ignores the fact that Vazzo and Pickup seek to treat the anxiety and confusion that arises from a client's unwanted same-sex attractions, behaviors, or identity.

68.     The presumption of the Ordinance that Vazzo and Pickup seek to "cure" a client of same-sex attractions are false, because Vazzo and Pickup seek only to assist a client with their stated desires and objectives in counseling, which sometime include reducing or eliminating the client's unwanted same-sex attractions.

69.     The presumption of the Ordinance that SOCE counseling and Vazzo and Pickup view homosexuality as an "illness" does not reflect the truth of such counseling, and it ignores the point of mental health counseling in general.

70.     The only relevant consideration in Vazzo's and Pickup's counseling is that same-sex attractions, behaviors, or identity are an adaption that the client has anxiety or distress over, and that the client seeks to eliminate that anxiety or distress.

71.     This is the same relevant consideration in all forms of mental health counseling, and is true of many things that clients seek counseling for, including many that are not mental illnesses but that nevertheless impose great stress, anxiety, confusion, or grief on the client.

**D.     CURRENT ETHICAL OBLIGATIONS PROTECTING MINOR CLIENTS IN MENTAL HEALTH COUNSELING.**

72.     The Ordinance falsely asserts that there are no other effective means, including state statutes, to protect minors from the purported harms of SOCE counseling. (Dkt. 1, Ex. A at 4).

73.     Licensed marriage and family therapists, such as Vazzo and Pickup, are already prohibited by law from engaging in false, deceptive, or misleading advertisements relating to their practice of marriage and family therapy. Fla. Stat. Ann. § 491.009(1)(d).

74.     Licensed marriage and family therapists, such as Vazzo and Pickup, are already prohibited from "[m]aking misleading, deceptive, untrue, or fraudulent representations in the practice of any profession licensed, registered, or certified" by Florida's Marriage and Family Therapy Board. Fla. Stat. Ann. § 491.009(1)(l).

75.     Licensed marriage and family therapists, such as Vazzo and Pickup, are already prohibited by law from engaging in any practice that is harmful to clients or patients, such as "[f]ailing to meet minimum standards of performance in professional activities when measured against generally prevailing peer performance." Fla. Stat. Ann. 491.009(1)(r).

76.     Licensed marriage and family therapists, such as Vazzo and Pickup, are already prohibited by law from violating other ethical regulations governing the practice of marriage and family therapy. Fla. Stat. Ann. § 491.001(1)(t).

77.     Failure of licensed marriage and family therapists, such as Vazzo and Pickup, to abide by the legal requirements imposed upon them by Florida law or other ethical regulations

subjects them to significant fines, suspension of licensing, and permanent revocation of licensing depending on the nature and extent of the violation. Fla. Admin. Code § 64B4-5.001.

78.     Other ethical regulations imposed upon marriage and family therapists, such as the American Association of Marriage and Family Therapists Code of Ethics ("AAMFT Code"), prohibit licensed marriage and family therapists from engaging in practices that harm clients or patients, and also prohibit them from refusing to recognize their clients' right to self-determination and informed consent.

79.     Standard 1 of the AAMFT Code requires that licensed marriage and family therapists, such as Vazzo and Pickup, "advance the welfare of families and individuals and make reasonable efforts to find the appropriate balance between conflicting goals."

80.     Standard 1.1 of the AAMFT Code prohibits licensed marriage and family therapists, such as Vazzo and Pickup, from discriminating against clients based on their sexual orientation or gender identity.

81.     Standard 1.2 of the AAMFT Code mandates that licensed marriage and family therapists, such as Vazzo and Pickup, obtain "appropriate informed consent to therapy or related procedures" and that they inform the clients regarding all information necessary for the client to make such a decision.

82.     Standard 1.8 of the AAMFT Code requires licensed marriage and family therapists, such as Vazzo and Pickup, to "respect the rights of clients to make decisions and help them understand the consequences of these decisions."

83.     Standard 1.9 of the AAMFT Code prohibits licensed marriage and family therapists, such as Vazzo and Pickup, from continuing any therapeutic relationship if it becomes reasonably clear that the clients are not benefitting from the relationship.

84. Thus, under existing Florida law regulating licensed mental health counselors and the other ethical obligations imposed upon such counselors, the City's stated rationale for adopting the Ordinance is demonstrably fallacious and unsupported by any government interest.

### E. VAGUENESS PROBLEMS WITH THE ORDINANCE

85. Despite the Ordinance's presumptions that same-sex attractions, behaviors, or identity are easily understandable and measurable, there are actually tremendous difficulties in measuring sexual orientation or gender identity.

86. Because of the difficulty in measuring sexual orientation or gender identity, the prohibitions in the Ordinance are hopelessly vague and leave Plaintiffs guessing at what practices are permitted or prohibited.

87. Even in the City's own cited study, the APA Report, the difficulty in understanding exactly what is prohibited by the Ordinance is recognized. The APA Report states that "[s]ame-sex sexual attractions occur in the context of a variety of sexual orientations and sexual orientation identities, and for some, sexual orientation identity (i.e., individual or group membership and affiliation, self-labeling) **is fluid or has an indefinite outcome**." (Dkt. 1, Ex. B at 2 (emphasis added)).

88. The Ordinance prohibits Vazzo and Pickup under any circumstances from engaging in any practice that seeks to reduce or eliminate same-sex sexual attractions, behaviors, or identity. This prohibition is virtually impossible for Vazzo and Pickup to comply with because it is well understood in the mental health profession, and conceded by the City's own references, that sexual orientation and gender identity are difficult to define and encompass a number of factors, including behavior, practices, identity, attractions, sexual fantasy, romantic attractions, and erotic desires.

89.     Given that sexual orientation is considered "fluid," even among the references the City cites in the Ordinance, Vazzo and Pickup are left to guess at what counseling practices might constitute a violation of the Ordinance.

90.     The Ordinance does not specify which clients would be classified as seeking to "change" and those that would merely be deemed conforming their behavior with their original "sexual orientation." As Vazzo's and Pickup's clients do not always immediately present wanting to "change," they are left to guess at which point any of their counseling practices would be deemed to constitute efforts to reduce or eliminate unwanted same-sex attractions.

91.     Sexual orientation is also nearly impossible to measure, and there is no agreement on whether sexual orientation is a categorical construct or exists on a continuum. A client's motives, attractions, identification, and behaviors vary over time and circumstances with respect to one another, which makes them dynastically changing features of an individual's concept of self and sexual orientation.

92.     Despite the difficulty in measuring sexual orientation and its fluid and changing nature, Vazzo and Pickup must now put their professional licenses in jeopardy when even discussing something that could be perceived as "changing" sexual orientation or identity.

93.     The Ordinance also permits licensed counselors to provide counseling that provides "acceptance, support, and understanding" of a client's unwanted same-sex attractions, behaviors, or identity. This presents another major source of confusion, uncertainty, and vagueness for Vazzo and Pickup.

94.     Under the Ordinance, it is impossible for Vazzo and Pickup to provide acceptance and support to a client who comes in for counseling and requests assistance in seeking to eliminate unwanted same-sex attractions, behaviors, or identity.

95.     Many of Vazzo's and Pickup's clients do not initially request counseling to specifically reduce or eliminate their unwanted same-sex attractions, behaviors, or identity, but instead want help and counseling to understand the sources, causes, and origins of their anxiety over such feelings.

96.     During the course of such counseling, and without ever specifically setting out to reduce or eliminate unwanted same-sex attractions, behaviors, or identity, many clients will experience a change in their sexual attractions, behaviors, or identity, and this is true despite never specifically seeking to experience such a change or elimination of their unwanted feelings.

97.     Vazzo and Pickup are left to guess at whether counseling simply discussing the confusion, anxiety, conflict, or stress a client feels about their unwanted same-sex attractions, behaviors, or identity, without specifically seeking to reduce or eliminate such feelings, runs afoul of the Ordinance's prohibitions.

98.     As the APA Report upon which the Ordinance relies admits, same-sex attractions, behaviors, or identities are fluid and can often spontaneously disappear, particularly in minors. If Vazzo and Pickup are merely counseling an individual to understand the origins of their attractions or helping them to understand and resolve the conflict with their religious beliefs, they are unable to know whether such counseling may result in a spontaneous change for the minor client, even though it was not the topic or goal of their counseling.

99.     Plaintiffs Vazzo and Pickup are left to guess at what topics are permissible when a minor client presents with anxiety, confusion, distress, or conflict over their unwanted same-sex attractions, behaviors, or identity, and the Ordinance provides no clear guideposts on such issues.

### F.      PLAINTIFF ROBERT L. VAZZO, LMFT

100.     Plaintiff, Robert L. Vazzo, LMFT, is a licensed marriage and family therapist and is licensed to practice mental health counseling in California, Florida, Nevada, and Ohio. Vazzo is also a Licensed Professional Counselor in California.

101.     Vazzo received his Master of Marriage and Family Therapy from the University of Southern California in 2004. He is a member of the American Association of Marriage & Family Therapists, the California Association of Marriage and Family Therapists, the Alliance for Therapeutic Choice, and the National Task Force for Therapeutic Equality.

102.     In his current practice, Vazzo specializes in SOCE counseling, including the areas of unwanted same-sex attractions, pedophilia, hebephilia, ephebophilia, and transvestic fetishism. His practice includes approximately 17-25 clients each week and ten percent of those clients are minors seeking SOCE counseling.

103.     Prior to engaging in SOCE counseling with any client, Vazzo provides them with an extensive informed consent form and requires them to review and sign it prior to commencing SOCE counseling. This informed consent form outlines the nature of SOCE counseling, explains the controversial nature of SOCE counseling, including the fact that some therapists do not believe sexual orientation can or should be changed, and informs the client of the potential benefits and risks associated with SOCE counseling.

104.     Many of Vazzo's clients who desire SOCE counseling profess to be Christians with a sincerely held religious belief that homosexuality is harmful and destructive and therefore seek SOCE counseling in order to live a lifestyle that is in congruence with their faith and to conform their identity, concept of self, attractions, and behaviors to their sincerely held religious beliefs.

105.     Vazzo has never received any complaint or report of harm from any of his clients seeking and receiving SOCE counseling, including the many minors that he has counseled. In fact, all of Vazzo's clients who have engaged in SOCE counseling for at least one year have experienced some degree of positive change with respect to their unwanted same-sex attractions, behaviors, or identity.

106.     Vazzo does not coerce his clients into engaging in SOCE counseling, but respects the clients' right of self-determination and treats each client with unconditional positive respect regardless of the client's concept of self or feelings of unwanted same-sex attractions, behaviors, or identity.

107.     Vazzo has had many clients who decided that their same-sex attractions were not unwanted. Even though they knew his personal views about the effectiveness of SOCE counseling for unwanted same-sex attractions, behaviors, or identity, they chose to remain in counseling with him because of the fact that his counseling has helped them in dealing with other issues and has been an extremely positive experience and helpful for their concept of self.

108.     Vazzo has had numerous clients in Florida, provides counseling to clients in Florida, and constantly receives inquiries from all over the State concerning SOCE counseling.

109.     Vazzo has been contacted by individuals in the City who desire to discuss and engage in SOCE counseling with Vazzo.

110.     Vazzo currently has a minor client who is fifteen years old and desires SOCE counseling from Vazzo in the City. Vazzo's client desires to receive SOCE counseling from a licensed professional counselor with expertise in this particular area.

111.    Vazzo's client struggles with unwanted same-sex attractions, behaviors, and identity and desires to engage in SOCE counseling with Vazzo to assist in helping to reduce or eliminate those unwanted same-sex attractions, behaviors, and identity.

112.    Vazzo is prohibited from engaging in SOCE counseling with his minor client because of the Ordinance, and his client is currently prohibited from receiving such counseling from a licensed professional.

### G.    PLAINTIFF DAVID H. PICKUP, LMFT

113.    Plaintiff, David H. Pickup, LMFT, is a licensed marriage and family therapist and is licensed to provide mental health counseling in California and Texas. Pickup is also currently seeking licensure in Florida and is currently engaged in the process required for licensure as a marriage and family therapist in Florida.

114.    Pickup has only one more requirement to complete to satisfy the requirements for becoming a licensed marriage and family therapist in Florida, which is taking the National Marriage and Family Therapist Exam. Pickup is sitting for this examination in August 2018, which has a testing window of August 18-August 25. Pickup has completed all other requirements for licensure in Florida as a Licensed Marriage and Family Therapist. Pickup will be licensed to provide marriage and family therapy in Florida immediately after passing the August examination.

115.    Pickup has a Master of Arts degree in Counseling Psychology. He is a member of the National Association of Research and Therapy of Homosexuality ("NARTH"), where he served as the Chairman of the NARTH Clients Rights Committee; a member of the California Association of Marriage and Family Therapists; an associate member of the American Psychological Association; the Co-founder of the National Task Force for Therapy Equality; and a member of the American Association of Christian Counselors.

116.    In his professional practice, Pickup specializes in providing heterosexual minors and adults with authentic Reparative Therapy, which includes the psychological industry standards of Psychodynamic, Cognitive-Behavioral and EMDR methods to help them reduce or eliminate unwanted same-sex attractions, behaviors, or identity due to emotional and/or sexual abuse during childhood and beyond. The specific therapy that Pickup specializes in would fall under the category of SOCE counseling prohibited by the Ordinance.

117.    Pickup has particular expertise and experience in the area of SOCE counseling and received and benefitted from counseling that would fall under the City's definition of SOCE counseling.

118.    Pickup's practice arises from personal experience and success with reparative therapy for unwanted same-sex attractions, behavior, or identity. When he was 5 years old, he was sexually molested by a 16-year-old high school boy. As a child, he also suffered severe emotional abuse at the hands of other children. When he reached puberty and for many years after it, he was sexually attracted to men. For all of those years, he carried a feeling of immense and crushing shame for his same-sex attractions.

119.    For 20 years following puberty, Pickup became clinically depressed twice, dealt with tremendous anxiety, experienced obsessive compulsive disorder, and knew that he was very confused about his sexual orientation and gender identity. In the latter years of that 20-year period, Pickup found a course of counseling that was tremendously helpful to his mental health issues. Pickup engaged in authentic Reparative Therapy with the late Dr. Joseph Nicolosi, which is a form of counseling that would be considered SOCE counseling under the City's Ordinance.

120.    Pickup participated in Dr. Nicolosi's counseling for many years and credits it with saving his life. This counseling, a form of SOCE counseling, helped him get rid of the shame that

he had for experiencing same-sex attractions and led to the dissipation of his same-sex attraction. Dr. Nicolosi's counseling helped Pickup solidify his gender identity, which resulted in a profound increase in his self-confidence as a man and in his self-esteem.

121.     Dr. Nicolosi's counseling allowed Pickup to understand the nature and source of his same-sex attractions and allowed him to do the deep emotional work that he needed to do to understand those unwanted feelings. As part of the counseling, Pickup learned the importance of healthy male relationships and his sexual attractions to women increased.

122.     Pickup saw a real and profound change in his sexuality that resulted from Dr. Nicolosi's counseling, and he pursued training to offer others the chance to achieve the profound and live-saving assistance he found in such counseling.

123.     Many of Pickup's clients who desire SOCE counseling profess to be Christians with a sincerely held religious belief that homosexuality is harmful and destructive. They seek SOCE counseling in order to live a lifestyle that is in congruence with their faith, and to conform their identity, concept of self, attractions, and behaviors to their sincerely held religious beliefs.

124.     Pickup has never received any complaint or report of harm from any of his clients seeking and receiving SOCE counseling, including the many minors that he has counseled. In fact, all of Pickup's clients who have engaged in SOCE counseling for at least one year have experienced some degree of positive change with respect to their unwanted same-sex attractions, behaviors, or identity.

125.     Pickup does not coerce his clients into engaging in SOCE counseling, but respects the clients' right of self-determination and treats each client with unconditional positive respect regardless of the client's concept of self or feelings of unwanted same-sex attractions, behaviors, or identity.

### H.    PLAINTIFF NEW HEARTS OUTREACH

126.    New Hearts Outreach is a confidential healing and discipleship ministry fostering sexual and relational wholeness in people's lives through the hope of Jesus Christ.

127.    New Hearts Outreach practices a three-fold approach to recovery: (a) one-on-one mentoring, (b) weekly support group participation, and (c) daily accountability with trusted members of the body of Christ.

128.    New Hearts Outreach began in 1996 when Mark Culligan, its Founder and Chief Executive Officer, caught a vision for a large, spiritual renewal center designed and equipped for the restoration and healing of people experiencing emotional, sexual, and relational problems and hurts.

129.    New Hearts Outreach is dedicated to bringing businesses, schools, churches, counselors and Christian organizations together to aid individuals in need and who are hurting.

130.    New Hearts Outreach is dedicated to sharing the hope of the Gospel of love of Jesus Christ to those who choose to pursue sexual and relational wholeness.

131.    New Hearts Outreach is an unapologetically Christian organization that has sincerely held religious beliefs founded on the Bible and its teachings.

132.    New Hearts Outreach's mission is glorifying God by connecting the sexually and relationally challenged to Jesus Christ.

133.    As part of its ministry, New Hearts Outreach offers referrals to individuals, including minors, who are struggling with unwanted same-sex attractions, behaviors, and identity.

134.    New Hearts Outreach is approached by minors desiring to receive counseling to reduce or eliminate their unwanted same-sex attractions, behaviors, or identity, and many of those minors desire to receive counseling from licensed mental health professionals.

135.    New Hearts Outreach desires to be able to refer these minors and their families to Plaintiffs Vazzo and Pickup, but are unable to offer such referrals because Vazzo and Pickup are prohibited from offering such counseling under the Ordinance.

136.    As part of its ministry, New Hearts Outreach offers its annual Pastors and Counselors Luncheon, which is an event provided to families in Tampa free of charge.

137.    During the Pastors and Counselors Luncheon, New Hearts Outreach invites speakers, licensed counselors, and ministry leaders to speak to families and minors who attend about relational and sexual wholeness in Jesus Christ.

138.    In 2018, New Hearts Outreach's Pastors and Counselors Luncheon included father and son speakers who shared their testimony of how Jesus Christ changed the son's life and was able to redeem him and restore the relationship with his father.

139.    New Hearts Outreach's Pastors. and Counselors Luncheon involves speakers, such as those in 2018, who share Biblical teaching on sexuality and offer expertise on reducing and/or eliminating unwanted same-sex attractions, behaviors, or identity.

140.    New Hearts Outreach's Pastor and Counselors Luncheon has also frequently included licensed mental health counselors who provide teaching and discussion on helping individuals, including minors, from reducing and/or eliminating their unwanted same-sex attractions, behaviors, or identity.

141.    New Hearts Outreach desires to continue to offer such speakers at the Pastors and Counselors Luncheon, but cannot do so because the Ordinance prohibits licensed mental health counselors from providing such teaching and discussion to minors and their families in attendance.

142.    Because a licensed counselor speaking at the Pastors and Counselors Luncheon would be engaging in efforts aimed at reducing or eliminating the unwanted same-sex attractions,

behaviors, or identity of those in the audience, including minors, such counselors would run afoul of the prohibitions of the Ordinance.

143.    By prohibiting such discussion from licensed counselors, the Ordinance has diminished and hindered New Hearts Outreach's ability to effectively communicate its message to its constituents, and has chilled its ability to carry out its core mission of assisting those individuals who desire the hope that Jesus Christ offers them.

144.    New Hearts Outreach's Founder, Mark Culligan, founded New Hearts Outreach to minister to individuals and minors seeking to reduce and/or eliminate their unwanted same-sex attractions, behaviors, and identity because of his own experience with successfully eliminating his unwanted same-sex attractions.

145.    Mr. Culligan experienced same-sex attractions while a teenager in high school, and he continued to experience and act on such feelings for 20 years of his life.

146.    Mr. Culligan became spiritually convicted of such attractions, behaviors, and identity and sought answers on how to conform his attractions, behaviors, and identity to his sincerely held religious beliefs.

147.    Mr. Culligan himself sought the assistance of professional counselors to help him conform his attractions and behaviors to his religious beliefs.

148.    Mr. Culligan believes that the journey of conforming his attractions, behaviors, and identity to his sincerely held religious beliefs was extraordinarily rewarding, beneficial, and gave him a growing and deepening relationship with Jesus Christ.

149.    Mr. Culligan believes that the counseling he received from professional counselors provided him the tools necessary to reduce and/or eliminate his unwanted same-sex attractions,

and that conforming his sexual attractions and behaviors to his religious convictions gave him a peace that passes understanding.

150.    Mr. Culligan knows from his own personal experience that SOCE counseling can assist minors and others who struggle with unwanted same-sex attractions, behaviors, and identity, and provide them great benefits, positive outcomes, and the saving grace of Jesus Christ.

## I.    IRREPARABLE HARM TO VAZZO, PICKUP, THEIR CLIENTS, AND NEW HEARTS.

151.    Vazzo and Pickup have incurred monetary expense to lease office space in the City to offer and provide SOCE counseling to clients in the City, including minors.

152.    Consistent with his First Amendment rights, Vazzo desires to advertise his counseling, including SOCE counseling, to clients and potential clients in the City, including minors. When he finishes his licensing requirements, Pickup desires to advertise his counseling, including SOCE counseling, to clients and potential clients in the City, including minors.

153.    Consistent with his First Amendment rights, Vazzo desires to offer his counseling, including SOCE counseling, to clients and potential clients in the City, including minors. When he finishes his licensing requirements, Pickup desires to offer his counseling, including SOCE counseling, to clients and potential clients in the City, including minors.

154.    Consistent with his First Amendment rights, Vazzo desires to provide his counseling, including SOCE counseling, to clients and potential clients in the City, including minors. When he finishes his licensing requirements, Pickup desires to provide his counseling, including SOCE counseling, to clients and potential clients in the City, including minors.

155.    Consistent with their First Amendment rights, Vazzo and Pickup would like to be able to inform religious leaders, organizations, and ministries that there is help from licensed

mental health professionals with expertise in this area and that it is available to individuals desiring assistance in the area of unwanted same-sex attractions, behaviors, and identity.

156. Both Vazzo and Pickup have received inquiries from various potential clients in the City, including minors, who desire to receive SOCE counseling.

157. Because of the Ordinance, Vazzo and Pickup are prohibited from advertising SOCE counseling to clients and potential clients, including minors, in the City.

158. Because of the Ordinance, Vazzo and Pickup are prohibited from offering SOCE counseling to clients and potential clients, including minors, in the City.

159. Because of the Ordinance, Vazzo and Pickup are prohibited from engaging in SOCE counseling with clients and potential clients, including minors, in the City.

160. Because of the Ordinance, Vazzo and Pickup have been unable to take advantage of the office space they lease in the City.

161. Because of the Ordinance, Vazzo and Pickup are restricted from engaging in constitutionally protected speech, including advertising their SOCE counseling to clients and potential clients in the City.

162. Because of the Ordinance, Vazzo and Pickup are prohibited from engaging in constitutionally protected speech, including offering their SOCE counseling to clients and potential clients in the City.

163. Because of the Ordinance, Vazzo and Pickup are prohibited from engaging in constitutionally protected speech, including providing their SOCE counseling to clients and potential clients in the City.

164. Because of the Ordinance, New Hearts Outreach is unable to engage in constitutionally protected expression, invite licensed mental health counselors to speak at its

Pastors and Counselors Luncheon, and is unable to provide the referrals to licensed mental health counselors in Tampa that its clients desperately desire to receive.

165.   Because of the Ordinance, Plaintiffs have been chilled in their constitutionally protected expression.

166.   Because of the Ordinance, Vazzo and Pickup are prohibited from engaging in constitutionally protected speech, including providing their SOCE counseling to clients and potential clients in the City in violation of their clients and potential clients' First Amendment right to receive information.

167.   Because of the Ordinance, Vazzo and Pickup have been and will be forced to deny SOCE counseling to their clients and potential clients in violation of their and their clients' sincerely held religious beliefs.

168.   Because of the Ordinance, Vazzo and Pickup have been and will be forced to deny SOCE counseling to their clients and potential clients in violation of the clients' fundamental rights to self-determination.

169.   Because of the Ordinance, Vazzo is currently prohibited from providing SOCE counseling to his minor client, who is fifteen years old and desires to obtain SOCE counseling from a licensed professional with knowledge and expertise in this area.

170.   Because of the Ordinance, Plaintiffs have suffered, are suffering, and will continue to suffer ongoing, immediate, and irreparable injury to their cherished First Amendment rights to freedom of speech.

171.   Because of the Ordinance, Plaintiffs have suffered, are suffering, and will continue to suffer ongoing, immediate, and irreparable injury to their cherished First Amendment rights to free exercise of religion.

172.    Because of the Ordinance, Vazzo and Pickup's clients have suffered, are suffering, and will continue to suffer ongoing, immediate, and irreparable injury to their cherished First Amendment rights to receive information.

173.    Because of the Ordinance, Vazzo's current minor client, who if fifteen years old, is currently prohibited from receiving the SOCE counseling that the client desires to obtain from a licensed professional with expertise in this area.

174.    Vazzo's minor client has thus suffered, is suffering, and will continue to suffer ongoing, immediate, and irreparable injury to the client's cherished First Amendment rights to receive information.

175.    Because of the Ordinance, Vazzo and Pickup's clients have suffered, are suffering, and will continue to suffer ongoing, immediate, and irreparable injury to their cherished First Amendment rights to free exercise of religion.

176.    Plaintiffs and their clients and potential clients have no adequate remedy at law to protect the ongoing, immediate, and irreparable injury to their cherished First Amendment liberties.

## COUNT I – ORDINANCE 2017-47 VIOLATES PLAINTIFFS' RIGHT TO FREEDOM OF SPEECH UNDER THE FIRST AMENDMENT.

177.    Plaintiffs hereby reiterate and adopt each and every allegation in paragraphs 1-176.

178.    The Free Speech Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits Defendants from abridging Plaintiffs' freedom of speech.

179.    Ordinance 2017-47, on its face and as applied, is an unconstitutional prior restraint on Plaintiffs' speech.

180.    Ordinance 2017-47, on its face and as applied, unconstitutionally discriminates on the basis of viewpoint.

181.    Ordinance 2017-47, on its face and as applied, authorizes only one viewpoint on SOCE counseling and unwanted same-sex sexual attractions, behaviors, and identity by forcing Plaintiffs to present only one viewpoint on the otherwise permissible subject matter of same-sex attractions, behaviors, or identity. The Ordinance also forces Plaintiffs' clients and their parents to receive only one viewpoint on this otherwise permissible subject matter.

182.    Ordinance 2017-47, on its face and as applied, discriminates against Plaintiffs' speech on the basis of the content of the message they offer and that Plaintiffs' clients seek to receive.

183.    Defendants lack a compelling, legitimate, significant, or even rational governmental interest to justify Ordinance 2017-47's infringement of the right to free speech.

184.    Ordinance 2017-47, on its face and as applied, is not the least restrictive means to accomplish any permissible government purpose sought to be served by the law.

185.    Informed consent provisions outlining the required disclosure prior to engaging in SOCE counseling with a minor would have been far less restrictive of Plaintiffs' speech, and mental health counseling organizations have written letters in the past with similar legislation urging that the legislature adopt informed consent provisions. A copy of the California mental health organizations' letter to the California legislature concerning legislation virtually identical to Ordinance 2017-47 is attached to Plaintiffs' Verified Complaint (dkt. 1) as EXHIBIT E and incorporated herein.

186.    Ordinance 2017-47 does not leave open ample alternative channels of communication for Plaintiffs.

187.    Ordinance 2017-47, on its face and as applied, is irrational and unreasonable and imposes unjustifiable and unreasonable restrictions on constitutionally protected speech.

188.    Ordinance 2017-47, on its face and as applied, unconstitutionally chills and abridges the right of Plaintiffs to freely communicate information pertaining to unwanted same-sex sexual attractions, behaviors, or identity.

189.    Ordinance 2017-47, on its face and as applied, unconstitutionally chills and abridges the right of Plaintiffs' clients to freely receive information pertaining to unwanted same-sex sexual attractions, behaviors, or identity.

190.    Ordinance 2017-47's prohibition on licensed mental health counselors offering SOCE counseling that could change, reduce, or otherwise address a minor client's unwanted same-sex attractions, behaviors, or identity, which would include a referral to someone who offers SOCE counseling, on its face and as applied, abridges Plaintiffs' right to offer and Plaintiffs' clients right to receive information.

191.    Ordinance 2017-47 vests unbridled discretion in government officials, including Defendants, to apply or not apply the Ordinance in a manner to restrict free speech, and subjects Plaintiffs to ethical code violations.

192.    Ordinance 2017-47, on its face and as applied, is impermissibly vague as it requires licensed professionals subject to its dictates and government officials tasked with enforcing it to guess at its meaning and differ as to its application.

193.    Ordinance 2017-47, on its face and as applied, is under-inclusive by limiting the prohibition on using SOCE counseling to minors.

194.    Ordinance 2017-47, on its face and as applied, is unconstitutionally overbroad as it chills and abridges the free speech rights of all licensed mental health providers in the City of

Tampa who use counseling techniques to provide assistance to a minor seeking to reduce or eliminate his or her unwanted same-sex attractions, behaviors, or identity and does not leave open alternative methods of communication.

195.     On its face and as applied, Ordinance 2017-47's violation of Plaintiffs' rights of free speech has caused, is causing, and will continue to cause Plaintiffs and their clients to suffer undue and actual hardship and irreparable injury.

196.     Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their most cherished constitutional liberties.

WHEREFORE, Plaintiffs respectfully pray for the relief against Defendants as hereinafter set forth in their prayer for relief.

## COUNT II – ORDINANCE 2017-47 VIOLATES PLAINTIFFS' CLIENTS' FIRST AMENDMENT RIGHT TO RECEIVE INFORMATION

197.     Plaintiffs hereby reiterate and adopt each and every allegation in paragraphs 1-176.

198.     The First Amendment, as applied to the states by the Fourteenth Amendment, protects an individual's freedom of speech, and the corollary to that right, the right to receive information.

199.     To withstand constitutional scrutiny, restrictions on the fundamental right of Plaintiffs' clients to receive information must be supported by a compelling government interest and must be narrowly tailored to meet that end.

200.     Plaintiffs' clients have sincerely held religious beliefs that shape their desire to receive SOCE counseling and the information that Plaintiffs can provide on reducing or eliminating unwanted same-sex attractions, behaviors, and identity.

201.    Ordinance 2017-47 prevents Plaintiffs' clients from receiving SOCE counseling and deprives them of the opportunity to even obtain the information about SOCE counseling from a licensed mental health professional in the City.

202.    Ordinance 2017-47 is not supported by a compelling government interest.

203.    Even if Ordinance 2017-47 were supported by a compelling government interest, it is not narrowly tailored to achieve that purpose and therefore violates the fundamental rights of Plaintiffs' clients to receive information.

204.    Ordinance 2017-47's violation of the fundamental rights of Plaintiffs' clients has caused, is causing, and will continue to cause undue and actual hardship and irreparably injury.

205.    Plaintiffs' clients have no adequate remedy at law to correct the continuing deprivation of their most cherished constitutional liberties.

WHEREFORE, Plaintiffs pray for the relief against Defendants as hereinafter set forth in their prayer for relief.

## COUNT III – ORDINANCE 2017-47 VIOLATES PLAINTIFFS' RIGHT TO FREE EXERCISE OF RELIGION

206.    Plaintiffs hereby reiterate and adopt each and every allegation in paragraphs 1-176.

207.    The Free Exercise Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits Defendants from abridging Plaintiffs' right to free exercise of religion.

208.    Many of Plaintiffs' clients have sincerely held religious beliefs that same-sex sexual attractions, behaviors, or identity are wrong, and they seek to resolve these conflicts between their religious beliefs and their attractions in favor of their religious beliefs.

209.    Plaintiffs Vazzo and Pickup also have sincerely held religious beliefs to provide spiritual counsel and assistance to their clients who seek such counsel. Plaintiffs hold sincerely

held religious beliefs that they should counsel clients on the subject matter of same-sex attractions, behaviors, or identity from a religious viewpoint that aligns with their religious beliefs and those of their clients.

210.    Plaintiff New Hearts Outreach also has sincerely held religious beliefs that it should aid those struggling with sexual and relationship issues, that it should offer and facilitate mentoring and counseling from a Christian perspective on such issues, and that its ministry should help minors struggling with unwanted same-sex attractions, behaviors, or identity to reduce and/or eliminate them and conform their attractions, behaviors, and identity to Biblical teachings.

211.    Ordinance 2017-47, on its face and as applied, targets Plaintiffs' and their clients' beliefs regarding human nature, gender, ethics, morality, and SOCE counseling, which are informed by the Bible and constitute central components of their sincerely held religious beliefs. Ordinance 2017-47 causes them a direct and immediate conflict with their religious beliefs by prohibiting them from offering, referring, and receiving counseling that is consistent with their religious beliefs.

212.    Ordinance 2017-47, on its face and as applied, has impermissibly burdened Plaintiffs' and their clients' sincerely held religious beliefs and compels them to both change those religious beliefs and to act in contradiction to them. Ordinance 2017-47 has also forced Plaintiffs and their clients to choose between the teachings and requirements of their sincerely held religious beliefs and the City-imposed value system.

213.    Ordinance 2017-47 places Plaintiffs and their clients in an irresolvable conflict between compliance with their sincerely held religious beliefs and compliance with Ordinance 2017-47.

214.    Ordinance 2017-47 puts substantial pressure on Plaintiffs to violate their sincerely held religious beliefs by ignoring the fundamental tenets of their faith concerning same-sex attractions, behaviors, or identity.

215.    Ordinance 2017-47, on its face and as applied, is neither neutral nor generally applicable, but rather specifically and discriminatorily targets the religious speech, beliefs, and viewpoint of those individuals who believe change is possible, and thus expressly on its face and as applied constitutes a substantial burden on sincerely held religious beliefs that are contrary to the City-approved viewpoint on same-sex attractions, behavior, or identity.

216.    The City's alleged interest in protecting minors from the so-called harm of SOCE counseling is unsubstantiated and does not constitute a compelling government interest.

217.    No compelling government interest justifies the burdens Defendants impose upon Plaintiffs and their clients' rights to the free exercise of religion.

218.    Even if Ordinance 2017-47's provisions were supported by a compelling government interest, they are not the least restrictive means to accomplish any permissible government purpose which Ordinance 2017-47 seeks to serve.

219.    Ordinance 2017-47, both on its face and as-applied, has failed and refused to accommodate Plaintiffs' sincerely held religious beliefs.

220.    Ordinance 2017-47, both on its face and as-applied, specifically targets religion for disparate treatment and has set up a system of individualized exemptions that permits certain counseling on same-sex attractions, behaviors, or identity while denying religious counseling on the same subjects.

221.    Ordinance 2017-47, both on its face and as-applied, constitutes a religious gerrymander.

222.     On its face and as applied, Ordinance 2017-47's violation of Plaintiffs' and their clients' rights to free exercise of religion has caused, is causing, and will continue to cause Plaintiffs and their clients to suffer undue and actual hardship and irreparable injury.

223.     Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their most cherished constitutional liberties.

WHEREFORE, Plaintiffs respectfully pray for the relief against Defendants as hereinafter set forth in their prayer for relief.

## COUNT IV – ORDINANCE 2017-47 VIOLATES PLAINTIFFS' RIGHTS TO LIBERTY OF SPEECH UNDER ARTICLE 1, SECTION 4 OF THE FLORIDA CONSTITUTION

224.     Plaintiffs hereby reiterate and adopt each and every allegation in paragraphs 1-176.

225.     Article I, §4 of the Constitution of the State of Florida states, "Every person may speak, write and publish sentiments on all subjects but shall be responsible for the abuse of that right. No law shall be passed to restrain or abridge the liberty of speech or of the press."

226.     Ordinance 2017-47, on its face and as applied, is an unconstitutional prior restraint on Plaintiffs' speech.

227.     Ordinance 2017-47, on its face and as applied, unconstitutionally discriminates on the basis of viewpoint.

228.     Ordinance 2017-47, on its face and as applied, authorizes only one viewpoint on SOCE counseling and unwanted same-sex sexual attractions, behaviors, and identity by forcing Plaintiffs to present only one viewpoint on the otherwise permissible subject matter of same-sex attractions, behaviors, or identity. The Ordinance also forces Plaintiffs' clients to receive only one viewpoint on this otherwise permissible subject matter.

229.    Ordinance 2017-47, on its face and as applied, discriminates against Plaintiffs' speech on the basis of the content of the message they offer or that Plaintiffs' clients seek to receive.

230.    Defendants lack a compelling, legitimate, significant, or even rational governmental interest to justify Ordinance 2017-47's infringement of the right to free speech.

231.    Ordinance 2017-47, on its face and as applied, is not the least restrictive means to accomplish any permissible government purpose sought to be served by the law.

232.    Informed consent provisions outlining the required disclosure prior to engaging in SOCE counseling with a minor would have been far less restrictive of Plaintiffs' speech, and mental health counseling organizations have written letters in the past with similar legislation urging that the legislature adopt informed consent provisions. (*See* Dkt. 1, Ex. E).

233.    Ordinance 2017-47 does not leave open ample alternative channels of communication for Plaintiffs.

234.    Ordinance 2017-47, on its face and as applied, is irrational and unreasonable and imposes unjustifiable and unreasonable restrictions on constitutionally protected speech.

235.    Ordinance 2017-47, on its face and as applied, unconstitutionally chills and abridges the right of Plaintiffs to freely communicate information pertaining to unwanted same-sex sexual attractions, behaviors, or identity.

236.    Ordinance 2017-47, on its face and as applied, unconstitutionally chills and abridges the right of Plaintiffs' clients to freely receive information pertaining to unwanted same-sex sexual attractions, behaviors, or identity.

237.    Ordinance 2017-47's prohibition on licensed mental health counselors offering SOCE counseling that could change, reduce, or otherwise address a minor client's unwanted same-

sex attractions, behaviors, or identity, which would include a referral to someone who offers SOCE counseling, on its face and as applied, abridges Plaintiffs' right to offer and Plaintiffs' clients' right to receive information.

238.     Ordinance 2017-47 vests unbridled discretion in government officials, including Defendants, to apply or not apply the Ordinance in a manner to restrict free speech, and subjects Plaintiffs to ethical code violations.

239.     Ordinance 2017-47, on its face and as applied, is impermissibly vague as it requires licensed professionals subject to its dictates and government officials tasked with enforcing it to guess at its meaning and differ as to its application.

240.     Ordinance 2017-47, on its face and as applied, is under-inclusive by limiting the prohibition on using SOCE counseling to minors.

241.     Ordinance 2017-47, on its face and as applied, is unconstitutionally overbroad as it chills and abridges the free speech rights of all licensed mental health providers in the City of Tampa who use counseling techniques that have the potential help a minor reduce or eliminate his or her unwanted same-sex attractions, behaviors, or identity and does not leave open alternative methods of communication.

242.     On its face and as applied, Ordinance 2017-47's violation of Plaintiffs' rights of free speech has caused, is causing, and will continue to cause Plaintiffs and their clients to suffer undue and actual hardship and irreparable injury.

243.     Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their most cherished constitutional liberties.

WHEREFORE, Plaintiffs respectfully pray for the relief against Defendants as hereinafter set forth in their prayer for relief.

**COUNT V – ORDINANCE 2017-47 VIOLATES PLAINTIFFS' RIGHT TO FREE
EXERCISE AND ENJOYMENT OF RELIGION UNDER ARTICLE I, SECTION 3 OF
THE FLORIDA CONSTITUTION**

244.     Plaintiffs hereby reiterate and adopt each and every allegation in paragraphs 1-176.

245.     Article I, § 3 of the Florida Constitution states, "There shall be no law respecting the establishment of religion or prohibiting or penalizing the free exercise thereof."

246.     Many of Plaintiffs' clients have sincerely held religious beliefs that same-sex sexual attractions, behaviors, or identity are wrong, and they seek to resolve these conflicts between their religious beliefs and their attractions in favor of their religious beliefs.

247.     Plaintiffs Vazzo and Pickup also have sincerely held religious beliefs to provide spiritual counsel and assistance to their clients who seek such counsel. Plaintiffs hold sincerely held religious beliefs that they should counsel clients on the subject matter of same-sex attractions, behaviors, or identity from a religious viewpoint that aligns with their religious beliefs and those of their clients.

248.     Plaintiff New Hearts Outreach also has sincerely held religious beliefs that it should aid those struggling with sexual and relationship issues, that it should offer and facilitate counseling from a Christian perspective on such issues, and that its ministry should help minors struggling with unwanted same-sex attractions, behaviors, or identity to reduce or eliminate them and conform their attractions, behaviors, and identity to Biblical teachings.

249.     Ordinance 2017-47, on its face and as applied, targets Plaintiffs and their clients' beliefs regarding human nature, gender, ethics, morality, and SOCE counseling, which are informed by the Bible and constitute central components of their sincerely held religious beliefs. Ordinance 2017-47 will cause them a direct and immediate conflict with their religious beliefs by

prohibiting them from offering, referring, and receiving counseling that is consistent with their religious beliefs.

250. Ordinance 2017-47, on its face and as applied, has impermissibly burdened Plaintiffs' and their clients' sincerely held religious beliefs and compels them to both change those religious beliefs and to act in contradiction to them. Ordinance 2017-47 has also forced Plaintiffs and their clients to choose between the teachings and requirements of their sincerely held religious beliefs and the City-imposed value system.

251. Ordinance 2017-47 places Plaintiffs and their clients in an irresolvable conflict between compliance with their sincerely held religious beliefs and compliance with Ordinance 2017-47.

252. Ordinance 2017-47 puts substantial pressure on Plaintiffs to violate their sincerely held religious beliefs by ignoring the fundamental tenets of their faith concerning same-sex attractions, behaviors, or identity.

253. Ordinance 2017-47, on its face and as-applied, is neither neutral nor generally applicable, but rather specifically and discriminatorily targets the religious speech, beliefs, and viewpoint of those individuals who believe change is possible. The Ordinance, expressly on its face and as applied, constitutes a substantial burden on sincerely held religious beliefs that are contrary to the City-approved viewpoint on same-sex attractions, behavior, or identity.

254. The City's alleged interest in protecting minors from the so-called harm of SOCE counseling is unsubstantiated and does not constitute a compelling government interest.

255. No compelling government interest justifies the burdens Defendants impose upon Plaintiffs' and their clients' rights to the free exercise of religion.

256.     Even if Ordinance 2017-47's provisions were supported by a compelling government interest, they are not the least restrictive means to accomplish any permissible government purpose which Ordinance 2017-47 seeks to serve.

257.     Ordinance 2017-47, both on its face and as-applied, has failed and refused to accommodate Plaintiffs' sincerely held religious beliefs.

258.     Ordinance 2017-47, both on its face and as-applied, specifically targets religion for disparate treatment and has set up a system of individualized exemptions that permits certain counseling on same-sex attractions, behaviors, or identity while denying religious counseling on the same subject.

259.     Ordinance 2017-47, both on its face and as-applied, constitutes a religious gerrymander.

260.     On its face and as applied, Ordinance 2017-47's violation of Plaintiffs' and their clients' rights to free exercise of religion has caused, is causing, and will continue to cause Plaintiffs and their clients to suffer undue and actual hardship and irreparable injury.

261.     Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their most cherished constitutional liberties.

WHEREFORE, Plaintiffs respectfully pray for the relief against Defendants as hereinafter set forth in their prayer for relief.

## COUNT VI – THE CITY HAD NO AUTHORITY TO ENACT ORDINANCE 2017-47 AND ITS ADOPTION IS THUS *ULTRA VIRES* UNDER ARTICLE VIII, SECTION 2(B) OF THE FLORIDA CONSTITUTION

262.     Plaintiffs hereby reiterate and adopt each and every allegation in paragraphs 1-176.

263.     Article VIII, §2(b) of the Florida Constitution provides that "[m]unicipalities shall have governmental, corporate and proprietary powers to enable them to conduct municipal

government, perform municipal functions and render municipal services, and may exercise any power for municipal purposes except as otherwise provided by law."

264.   Fla. Stat. Ann. § 166.021(1) provides: "municipalities shall have the governmental, corporate, and proprietary powers to enable them to conduct municipal government, perform municipal functions, and render municipal services, and may exercise any power for municipal purposes, except when expressly prohibited by law."

265.   Fla. Stat. Ann. § 166.021(2) defines "municipal purpose" as "any activity or power which may be exercised by the state or its political subdivisions."

266.   Fla. Stat. Ann. § 166.021(3)(c) states that the legislative body of each municipality has the power to enact legislation concerning any subject matter upon which the state Legislature may act, except "[a]ny subject expressly preempted to state or county government by the constitution or by general law."

267.   As a municipality in the State of Florida, the City is limited to enacting ordinances for "municipal purposes" as provided in Fla. Stat. Ann. § 166.021(2), but only to the extent that said purposes do not seek to impose regulations on any subject that has been preempted by the State of Florida.

268.   The Legislature of the State of Florida has pre-empted the field of regulation of mental health professionals, through enactment of Florida Statutes, Title XXXII, Chapter 491.

269.   More particularly, the Legislature of the State of Florida has pre-empted the field of disciplinary actions for licensed mental health professionals in Fla. Stat. Ann. § §491.009 and the regulations promulgated thereunder, Fla. Admin. Code Ann. r. 64B-5001.

270.     Fla. Admin. Code Ann. r. 64B-5001 sets forth procedures for determining whether a licensed mental health professional in the State of Florida has engaged in conduct that is subject to discipline, and establishes schedules of fees and penalties for said conduct.

271.     The Legislature of the State of Florida has not prohibited the use of so-called "conversion therapy" or SOCE counseling or otherwise included the use of such counseling in the list of conduct that can subject a licensed mental health professional to disciplinary action under Fla. Stat. Ann. §491.009 or Fla. Admin. Code Ann. r. 64B-5001.

272.     In fact, in its capacity as the sole regulator of mental health professionals in the State of Florida, the Legislature has specifically declined to adopt such restrictions on SOCE counseling. Indeed, H.B. 137, 2016 Leg. (Fla. 2016) and S.B. 258 2016 Leg. (Fla. 2016), which were both proposals to prohibit SOCE counseling, were defeated in committee and thus not adopted by the sole regulator of mental health professionals in Florida.

273.     Ordinance 2017-47 prohibits licensed mental health professionals from practicing a type of mental health counseling that is not prohibited by the state and that the state specifically chose not prohibit when it had the opportunity.

274.     The City had no authority to adopt any ordinance or provision that exceeded state law in a preempted field, and its action is void *ab initio* as an *ultra vires* act in violation of the Constitution of the State of Florida.

275.     Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their most cherished constitutional liberties.

WHEREFORE, Plaintiffs respectfully pray for the relief against Defendants as hereinafter set forth in their prayer for relief.

**COUNT VII – ORDINANCE 2017-47 VIOLATES PLAINTIFFS' RIGHTS
UNDER THE FLORIDA PATIENT'S BILL OF RIGHTS AND RESPONSIBILITIES**

276.    Plaintiffs hereby reiterate and adopt each and every allegation in paragraphs 1-176.

277.    Plaintiffs' clients have the "right to impartial access to medical treatment or accommodations, regardless of . . . religion." Fla. Stat. Ann. § 381.026(4)(d)(1).

278.    Plaintiffs' clients have the "right to access any mode of treatment that is, in his or her own judgment and the judgment of his or her health care practitioner, in the best interests of the patient, including complementary or alternative health care treatments, in accordance with the provisions of § 456.41." Fla. Stat. Ann. § 381.026(4)(d)(3).

279.    Plaintiffs Vazzo and Pickup are "health care practitioners" under the Florida Patient's Bill of Rights and Responsibilities because they are health care practitioners under Fla. Stat. Ann. § 456.41. *See* Fla. Stat. Ann. §456.41(2)(b) (defining "health care practitioner" as that terms is defined in Fla. Stat. Ann. § 456.001(4), which includes marriage and family therapist licensed under Fla. Stat. Ann. § 491.003(5)).

280.    Fla. Stat. Ann. § 456.41 states that "[i]t is the intent of the Legislature that citizens be able to choose from all health care options, including the prevailing or conventional treatment methods as well as other treatments designed to complement or substitute for the prevailing or conventional treatment methods." Fla. Stat. Ann. § 456.41(1).

281.    Fla. Stat. Ann. § 456.41 states that "[i]t is the intent of the Legislature that health care practitioners be able to offer complementary or alternative health care treatments." *Id.*

282.    "Complementary or alternative health care treatment means **any treatment** that is designed to provide patients with an effective option to the prevailing or conventional treatments methods." Fla. Stat. Ann. § 456.41(2)(a) (emphasis added).

283.    If SOCE counseling is considered "complementary or alternative health care treatment," Plaintiff have a right to offer and their clients have a right to receive such counseling under Florida law.

284.    Plaintiffs Vazzo and Pickup desire to offer SOCE counseling in the City to those minor clients who desire such counseling and are seeking their expertise in engaging in such counseling.

285.    Plaintiffs Vazzo and Pickup comply with all requirements of Fla. Stat. Ann. § 456.41(3) by providing all required information to their clients prior to engaging in SOCE counseling and obtaining informed consent from the client.

286.    In Plaintiffs Vazzo and Pickup's informed and best judgment SOCE counseling is in the best interest of those clients experiencing unwanted same-sex attractions, behaviors, or identity.

287.    In Plaintiffs' clients' informed and best judgment, SOCE counseling is in their best interest.

288.    By prohibiting SOCE counseling, the Ordinance violates Plaintiffs Vazzo and Pickup's right to offer SOCE counseling in compliance with Fla. Stat. Ann. § 381.026(d)(2) and Fla. Stat. Ann. § 456.41.

289.    By prohibiting SOCE counseling, the Ordinance violates Plaintiffs' clients' right to receive SOCE counseling under Fla. Stat. Ann. § 381.026(d)(3).

290.    Plaintiffs' clients have sincerely held religious beliefs that they should seek counseling to aid them in reducing or eliminating their unwanted same-sex attractions, behaviors, and identity, and Plaintiffs Vazzo and Pickup have sincerely held religious beliefs that they should

offer such counseling to those clients who seek such counseling to conform their attractions, behaviors, and identity to their sincerely held religious beliefs.

291.    By prohibiting SOCE counseling, the Ordinance violates Plaintiffs' clients' right to impartial access of medical treatment and accommodations based on their religious beliefs under Fla. Stat. Ann. § 381.026(d)(1).

WHEREFORE, Plaintiffs respectfully pray for the relief against Defendants as hereinafter set forth in their prayer for relief.

## COUNT VIII – ORDINANCE 2017-47 VIOLATES PLAINTIFFS' RIGHTS UNDER THE FLORIDA RELIGIOUS FREEDOM RESTORATION ACT

292.    Plaintiffs hereby reiterate and adopt each and every allegation in paragraphs 1-176.

293.    Fla. Stat. Ann. § 761.03 prohibits the government from substantially burdening a person's exercise of religion, "even if the burden result from a rule of general applicability." Fla. Stat. Ann. § 761.03(1).

294.    If the government does burden an individual's exercise of religion, it must demonstrate that "application of the burden to the person: (a) Is in furtherance of a compelling government interest; and (b) Is the least restrictive mean of furthering that compelling government interest." Fla. Stat. Ann. § 761.03(1)(a)-(b).

295.    Any person whose religious beliefs were burdened by the government "may assert that violation as a claim or defense in a judicial proceeding." Fla. Stat. Ann. § 761.03(2).

296.    Plaintiffs and their clients have sincerely held religious beliefs that same-sex sexual attractions, behaviors, or identity are wrong, and they seek to resolve these conflicts between their religious beliefs and their attractions in favor of their religious beliefs.

297.    Plaintiffs Vazzo and Pickup also have sincerely held religious beliefs to provide spiritual counsel and assistance to their clients who seek such counsel. Plaintiffs hold sincerely

held religious beliefs that they should counsel clients on the subject matter of same-sex attractions, behaviors, or identity from a religious viewpoint that aligns with their religious beliefs and those of their clients.

298.    Plaintiff New Hearts Outreach also has sincerely held religious beliefs that it should aid those struggling with sexual and relationship issues, that it should offer and facilitate counseling from a Christian perspective on such issues, and that its ministry should help minors struggling with unwanted same-sex attractions, behaviors, or identity to reduce or eliminate them and conform their attractions, behaviors, and identity to Biblical teachings.

299.    Ordinance 2017-47, on its face and as applied, targets Plaintiffs' and their clients' beliefs regarding human nature, gender, ethics, morality, and SOCE counseling, which are informed by the Bible and constitute central components of their sincerely held religious beliefs. Ordinance 2017-47 causes them a direct and immediate conflict with their religious beliefs by prohibiting them from offering, referring, and receiving counseling that is consistent with their religious beliefs.

300.    Ordinance 2017-47, on its face and as applied, has substantially and impermissibly burdened Plaintiffs' and their clients' sincerely held religious beliefs and compels them to both change those religious beliefs and to act in contradiction to them. Ordinance 2017-47 has also forced Plaintiffs and their clients to choose between the teachings and requirements of their sincerely held religious beliefs and the City-imposed value system.

301.    No compelling government interest justifies the burdens Defendants impose upon Plaintiffs and their clients' rights to the free exercise of religion.

302.     Even if Ordinance 2017-47's provisions were supported by a compelling government interest, they are not the least restrictive means to accomplish any permissible government purpose which Ordinance 2017-47 seeks to serve.

303.     Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their most cherished constitutional liberties.

WHEREFORE, Plaintiffs respectfully pray for the relief against Defendants as hereinafter set forth in their prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

A.     That this Court issue a Preliminary Injunction enjoining Defendants, Defendants' officers, agents, employees, attorneys, and all other persons acting in active concert or participation with it, from enforcing Ordinance 2017-47 so that:

i.     Defendants will not use Ordinance 2017-47 in any manner to infringe Plaintiffs' constitutional and statutory rights in the counseling of their clients or from offering a viewpoint on an otherwise permissible subject matter;

ii.     Defendants will not use Ordinance 2017-47 in any manner to prohibit Plaintiffs from engaging in SOCE counseling with those minor clients who seek such counseling;

iii.     Defendants will not use Ordinance 2017-47 to prohibit Plaintiffs' clients from seeking or receiving SOCE counseling for unwanted same-sex sexual attractions, behaviors, or identity; and

        iv.    Defendants will not use Ordinance 2017-47 in any manner to punish Plaintiffs or their clients for engaging, referring to, seeking, or receiving SOCE counseling.

B.      That this Court issue a Permanent Injunction enjoining Defendants, Defendants' officers, agents, employees, attorneys, and all other persons acting in active concert or participation with them, from enforcing Ordinance 2017-47 so that:

        i.    Defendants will not use Ordinance 2017-47 in any manner to infringe Plaintiffs' constitutional and statutory rights in the counseling of their clients or from offering a viewpoint on an otherwise permissible subject matter;

        ii.    Defendants will not use Ordinance 2017-47 in any manner to prohibit Plaintiffs from engaging in SOCE counseling with those minor clients who seek such counseling;

        iii.    Defendants will not use Ordinance 2017-47 to prohibit Plaintiffs' clients from seeking or receiving SOCE counseling for unwanted same-sex sexual attractions, behaviors, or identity; and

        iv.    Defendants will not use Ordinance 2017-47 in any manner to punish Plaintiffs or their clients for engaging, referring to, seeking, or receiving SOCE counseling.

C.      That this Court render a Declaratory Judgment declaring Ordinance 2017-47 and Defendants' actions in applying Ordinance 2017-47 unconstitutional under the United States Constitution and Florida Constitution, and declaring that:

i.   Defendants violated Plaintiffs' and their clients' right to freedom of speech by prohibiting them from providing, referring to, seeking, or receiving information concerning SOCE counseling;

ii.  Defendants violated Plaintiffs' and their clients' right to free exercise of religion by prohibiting Plaintiffs from providing, referring to, seeking, or receiving information concerning SOCE counseling in accordance with their sincerely held religious beliefs;

iii. Defendants acted without authority under Article VIII, § 2(b) of the Florida Constitution, and that its *ultra vires* actions in adopting and approving Ordinance 2017-47 were thus void *ab initio* such that Ordinance 2017-47 is of no force and effect;

iv.  Defendants violated Fla. Stat. Ann. § 381.026(d)(3) by infringing Plaintiffs' right to offer, and their clients' right to receive, available methods of treatment that Plaintiffs and their clients believe are in their best interest;

v.   Defendants violated Fla. Stat. Ann. § 381.026(d)(1) by infringing Plaintiffs' clients' right to receive medical treatment regardless of their religious beliefs; and

vi.  Defendants violated Fla. Stat. Ann. § 763.01 by substantially burdening Plaintiffs' free exercise of religion, that Defendants had no compelling interest in enacting Ordinance 2017-47, and that Ordinance 2017-47 is not narrowly tailored to achieve any government interest.

D.   That this Court award Plaintiffs nominal damages for the violation of Plaintiffs' constitutional rights.

E.      That this Court award Plaintiffs actual damages in an amount to be determined at trial;

F.      That this Court adjudge, decree, and declare the rights and other legal relations with the subject matter here in controversy so that such declaration shall have the force and effect of final judgment;

G.      That this Court retain jurisdiction of this matter for the purpose of enforcing this Court's order;

H.      That this Court award Plaintiffs the reasonable costs and expenses of this action, including a attorney's fee, in accordance with 42 U.S.C. § 1988.

I.      That this Court grant such other and further relief as this Court deems equitable and just under the circumstances.

Respectfully submitted,

/s/ Horatio G. Mihet
_____
Mathew D. Staver (FL Bar 0701092)
Horatio G. Mihet (FL Bar 026581)
Roger Gannam (FL Bar 240450)
Daniel J. Schmid*
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
Phone: (407) 875-1776
Facsimile: (407) 875-0770
Email: court@lc.org

*Attorneys for Plaintiffs*

*Admitted pro hac vice

**VERIFICATION**

I, Robert L. Vazzo, LFMT, am over the age of 18 and one of the Plaintiffs in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, based upon my personal knowledge (unless otherwise indicated), and if called upon to testify as to their truthfulness, I would and could do so competently. I declare under penalties of perjury, under the laws of the United States, that the foregoing statements are true and correct.

Executed this 25th day of May, 2018

Robert L. Vazzo

**VERIFICATION**

I, David H. Pickup, LFMT, am over the age of 18 and one of the Plaintiffs in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, based upon my personal knowledge (unless otherwise indicated), and if called upon to testify as to their truthfulness, I would and could do so competently. I declare under penalties of perjury, under the laws of the United States, that the foregoing statements are true and correct.

Executed this 25th day of May, 2018

_____
David H. Pickup

## VERIFICATION

I, Mark Culligan, am over the age of 18 and one of the Plaintiffs in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, based upon my personal knowledge (unless otherwise indicated), and if called upon to testify as to their truthfulness, I would and could do so competently. I declare under penalties of perjury, under the laws of the United States, that the foregoing statements are true and correct.

Executed this 25th day of May, 2018

_Mark Culligan_
Mark Culligan

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of June, 2018, I caused a true and correct copy of the foregoing to be filed electronically with this Court. Service will be effectuated on all counsel of record via this Court's ECF/electronic service system.

Original service of process will be effectuated upon the new defendant, SAL RUGGIERO, in his official capacity as Manager of the City of Tampa Neighborhood Enhancement Division, unless counsel for Defendant City of Tampa agrees in writing to accept service on his behalf.

/s/ Horatio G. Mihet
Horatio G. Mihet

*Attorney for Plaintiffs*