IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT L. VAZZO, LMFT, individually
and on behalf of his patients, DAVID H.
PICKUP, LMFT, individually and on
Behalf of his patients, and SOLI DEO
GLORIA INTERNATIONAL, INC.
d/b/a NEW HEARTS OUTREACH
TAMPA BAY, individually and on behalf
Of its members, constituents and clients,

        Plaintiffs,

v.

CITY OF TAMPA, FLORIDA, and
SAL RUGGIERO, in his official capacity
As Manager of the City of Tampa
Neighborhood Enforcement Division,

        Defendants

This is a Dispositive Motion

Case No. 8:17-cv-02896- CEH-AAS

---

**DEFENDANT CITY OF TAMPA'S MOTION TO DISMISS FIRST AMENDED
COMPLAINT WITH PREJUDICE, AND MEMORANDUM
OF LAW IN SUPPORT THEREOF**

Defendant, City of Tampa ("City"), moves the Court, pursuant to Fed. R. Civ. P.

12(b)(1) and 12(b)(6), for entry of an order dismissing the First Amended Complaint

("Amended Complaint") with prejudice for lack of standing and because it fails to state claims

for relief.  The grounds for this motion are set forth below.

## The Ordinance

On April 6, 2017, Tampa City Council passed Ordinance No. 2017-47, relating to

conversion or reparative therapy to patients who are minors ("the Ordinance").  On April 10,

2017, Mayor Buckhorn approved the Ordinance.  The City has provided the Court with a

certified copy of the Ordinance (Doc. 24, Ex. 1-7), and the Court has issued an Order stating

that "it is appropriate to take judicial notice of the City's certified copy of Ordinance 2017-

47." (Doc 51, p.4.) Consistent with the Court's earlier order, the City is requesting that the

Court take judicial notice of the certified copy of the Ordinance in connection with its review

of the within Motion to Dismiss.  The intent of the Ordinance is expressly set forth in § 14-310

and provides as follows:

> The Intent of this Ordinance is to protect the physical and psychological well-
> being of minors, including but not limited to lesbian, gay, bisexual, transgender
> and/or questioning youth from exposure to the serious harms and risks caused by
> conversion therapy or reparative therapy by licensed providers, including but not
> limited to licensed therapists. These provisions are exercise of police power of the
> City for the public safety, health, and welfare; and its provisions shall be liberally
> construed to accomplish that purpose.

(Doc. 24-1, p.5.)  The Ordinance cites to numerous medical and mental health organizations

that have found that sexual orientation change efforts ("SOCE") therapy, including conversion

therapy and reparative therapy, may pose a serious threat to the health and well-being of the

affected persons. Moreover, according to the Ordinance, many such organizations have also

concluded that there is a lack of credible evidence that SOCE therapy is effective. Specifically,

the Ordinance cites to articles, reports, position statements, policy statements, a resolution and

other publications, from such prominent  medical and mental health organizations as the

American Academy of Pediatrics, the American Psychiatric Association, the American

Psychological Association's Task Force on Appropriate Therapeutic Responses to Sexual

Orientation,[1] the American Psychological Association, the American Psychoanalytic

---

[1] Although Plaintiffs cite to select portions of the 2009 Report of the American Psychological Association Task Force on Appropriate Therapeutic Responses to Sexual Orientation ("APA Report") in support of their position, there are other portions of the APA Report that support the City's concerns that SOCE therapy can pose serious health risks.  For example, and without limitation, in the summary of the APA  Report  it states that "studies …

Association, the American Academy of Child & Adolescent Psychiatry, the Pan American

Health Organization, the American School Counselor Association, the Substance Abuse and

Mental Health Services Administration (a division of the U.S. Department of Health and

Human Services), the American College of Physicians, the American Medical Association, the

World Psychiatric Association, the National Association of Social Workers, and the Agency

for Healthcare Research and Quality.[2] (The articles, reports, position statements, policy

statements, resolution, and other publications, which are cited in the Ordinance, are attached

to the certified copy of the Ordinance previously filed of record by the City[3]). The Ordinance

also cites to two federal appellate decisions wherein the courts upheld the validity of a statute

prohibiting licensed professionals from engaging in SOCE therapy with minors.[4]

The Ordinance further provides in pertinent part that:

> … City Council hereby finds the overwhelming research demonstrating that sexual orientation and gender identity change efforts can pose critical health risks to lesbian, gay, bisexual, transgender or questioning persons, and that being lesbian, gay, bisexual, transgender or questioning is not a mental disease, mental disorder, mental illness, deficiency, or shortcoming ….

---

indicate that attempts to change sexual orientation may cause or exacerbate distress and poor mental health in some individuals, including depression and suicidal thoughts." (Doc. 24-2, p.9.)  In the conclusion of the APA Report, it further provides that "We found that there was some evidence to indicate that individuals experienced harm from SOCE." (Doc. 24-2, p.10.) The APA Report also provides that: "the peer-refereed empirical research on the outcome of efforts to alter sexual orientation provides little evidence of efficacy and some evidence of harm." (Doc. 24-2, p.2.) Moreover, to the extent that there is a lack of absolute certainty as to the adverse impact of conversion therapy, it would be imprudent to require the City to conduct studies on children, subjecting them to conversion therapy, to prove with certainty that conversion therapy poses serious harms. *See FCC v. Fox Television Stations, Inc*., 129 S. Ct. 1800, 1813 (2009) (Supreme Court refused to require Congress to present studies where minors were intentionally exposed to indecent television broadcasts, isolated from all other indecency, to establish the harmful effects of the broadcasts).

[2] *See* "Whereas Clauses" on pages 1-4 of the Ordinance which, pursuant to section 1 of the Ordinance, are incorporated therein by reference. (Doc. 24-1, p.2-5.)

[3] Doc. 24, Ex. 1-6.

[4] *See* page 4 of the Ordinance (Doc. 24-1, p.5), citing to *King v. Governor of the State of New Jersey*, 767 F.3d 216 (3d Cir. 2014) and *Pickup v. Brown*, 740 F.3d 1208 (9th Cir. 2013).  Doc. 24-1, p. 5. fn. 15.  These two appellate decisions are also attached to the certified copy of the Ordinance under fn. 15 (Doc. 24, Ex. 6, p. 59-64, and Ex. 7, p. 1-44).

(Doc. 24-1, p.5) The Ordinance also goes on to state that the City has a "compelling interest in protecting the physical and psychological well-being of minors, including but not limited to lesbian, gay, bisexual, transgender and questioning youth, and in protecting its minors against exposure to serious harm caused by sexual orientation and gender identity change efforts …."[5]

The Ordinance further provides that:

> … the City does not intend to prevent mental health providers from speaking to the public about SOCE; expressing their views to patients; recommending SOCE to patients; administering SOCE to any person who is 18 years of age or older; or referring minors to unlicensed counselors, such as religious leaders. This ordinance does not prevent unlicensed providers, such as religious leaders, from administering SOCE to children or adults; nor does it prevent minors from seeking SOCE from mental health providers in other political subdivisions or states outside of the City ….

(Doc. 24-1, p.5.)  In addition, the Ordinance made the following findings:

> … the City Council finds minors receiving treatment from licensed therapists in the City of Tampa, Florida, who may be subject to conversion or reparative therapy are not effectively protected by other means, including, but not limited to, other state statutes, local ordinances, or federal legislation ….

(Doc. 24-1, p.5.) Turning to the definitions in the Ordinance, the term "Conversion therapy or reparative therapy" is defined as follows:

> *Conversion therapy or reparative therapy* means, interchangeably, any counseling, practice, or treatment performed with *the goal of changing an individual's sexual orientation or gender identity*, including, but not limited to, efforts to change behaviors, gender identity, or gender expression, or to eliminate, or reduce sexual or romantic attractions or feelings toward individuals of the same gender or sex. **Conversion therapy does not include counseling that provides support and assistance to a person undergoing gender transition or counseling that provides acceptance, support, and understanding of a person or facilitates a person's coping, social support, and development, including sexual orientation-neutral interventions to prevent or address unlawful conduct or unsafe sexual practices, as long as such counseling does not seek to change sexual orientation or gender identity.**

---

[5] Doc. 24-1, p. 5.

(Doc. 24-1, p.6.) (Emphasis supplied.)   The term "Minor" is defined "to mean any person less than 18 years of age." (Doc. 24-1, p.7.)   The term "Provider" is defined as follows:

> Provider means any person who is licensed by the State of Florida to provide professional counseling, or who performs counseling as part of his or her professional training under chapters 456, 458, 459, 490 or 491 of the Florida Statutes, as such chapters may be amended, including but not limited to, medical practitioners, osteopathic practitioners, psychologists, psychotherapists, social workers, marriage and family therapists, and licensed counselors. **A Provider does not include members of the clergy who are acting in their roles as clergy or pastoral counselors and providing religious counseling to congregants, as long as they do not hold themselves out as operating pursuant to any of the aforementioned Florida Statutes licenses**.

(Doc. 24-1, p.7.) (Emphasis supplied.) Finally, with respect to the "conversion therapy prohibited," the Ordinance states:   "It shall be unlawful for any Provider to practice conversion therapy efforts ***on any individual who is a minor*** regardless of whether the Provider receives monetary compensation in exchange for such services." (Doc. 24-1, p.7.) (Emphasis supplied).

<u>Legal Argument</u>

<u>Introduction</u>

The Amended Complaint fails to state a claim upon which relief can be granted and should be dismissed with prejudice pursuant to Rule 12(b)(6), Fed. R. Civ. P.  In addition, Plaintiffs Vazzo and Pickup lack standing to assert claims on behalf of their purported minor patients, Plaintiff  Soli Deo Gloria International, Inc. lacks standing to assert claims on behalf of its members, constituents, and clients, and Plaintiff Pickup lacks standing to assert claims on his own behalf. As such, Plaintiffs' claims  on behalf of their  minor patients, members,

constituents, and clients, and the claims of Plaintiff Pickup, should also be dismissed pursuant to Rule 12(b)(1), Fed. R. Civ. P.

With respect to Plaintiffs' federal constitutional challenges in counts I-III of the Amended Complaint, there are four decisions of the United States Court of Appeals - including two in the Third Circuit[6] and two in the Ninth Circuit[7] - which have addressed the constitutionality of statutes prohibiting licensed professionals from engaging in SOCE therapy with minors. In each of these cases, the courts have found the statutes to pass constitutional muster. Moreover, in each of these cases, the Supreme Court has denied the petitions for writ of certiorari. The Third Circuit's decision in *King, supra*, is directly on point and provides the better analytical framework for the Court's resolution of this motion.

In *King*, the court applied an intermediate scrutiny test in upholding the constitutionality of the statute as it related to a challenge under the First Amendment right to free speech, 767 F.3d at 237, and the court applied a rational basis review in rejecting the claim that the statute violated the First Amendment right to the free exercise of religion. 767 F. 3d at 243.

The decision in *King* remains good law today and, indeed, *King* was recently cited with favor in *Chamber of Commerce for Greater Philadelphia v. City of Philadelphia*, 2018 WL 2010596 (E.D. Pa. 2018). Moreover, anticipating the Plaintiffs' response, the City submits that the decisions in *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015) and *Wollschlaeger v. Governor of Florida,* 848 F.3d 1293 (11th Cir. 2017) do not undermine the validity of the

---

[6] *King v. Governor of the State of New Jersey*, 767 F.3d 216 (3d Cir. 2014) *cert. den.* 135 S. Ct. 2048 (2015); *Doe v. Governor of the State of New Jersey*, 783 F.3d 150 (3d Cir. 2015) *cert. den.* 136 S. Ct. 1155 (2016).
[7] *Pickup v. Brown*, 740 F.3d 1208 (9th Cir. 2014) *cert. den.* 134 S. Ct. 2871 (2014); *Welch v. Brown*, 834 F.3d 1041 (9th Cir. 2016) *cert. den.* 137 S. Ct. 2093 (2017).

Court's holding in *King*.  More specifically, *Reed* did not deal with professional or commercial speech. Even more important, *Reed* does not overrule the Supreme Court decision in *Central Hudson Gas & Elec. Corp v. Public Serv. Comm. Of New York*, 447 U.S. 557 (1980) or its progeny wherein the Supreme Court has applied the intermediate scrutiny test to both commercial and professional speech cases. Unless and until the Supreme Court explicitly and directly overrules its decision in *Central Hudson* and its progeny, it would be premature and inappropriate for this Court to curtail the precedence and application of the intermediate scrutiny test in *Central Hudson* to cases involving commercial or professional speech. *See Flanigan's Enterprises, Inc. of Ga. v. City of Sandy Springs, Ga.*, 703 Fed. Appx. 929, 935-936 (11th Cir. 2017) *cert. den.*  - S. Ct. - , 2018 WL 1116319 (June 11, 2018).

Also instructive is the Eleventh Circuit's holding in *Dana's R.R. Supply v. Attorney Gen., Fla.*, 807 F.3d 1235 (11th Cir. 2015) *cert. den.* 137 S. Ct. 1452 (2017) (which was decided after *Reed)*.   In that decision, while acknowledging the decision in *Reed,* the Court stated:

> **Content-based restrictions on certain categories of speech such as commercial and professional speech**, though still protected under the First Amendment, **are given more leeway because of the robustness of the speech and the need for regulatory flexibility in those areas** … **For these categories of speech, the inquiry is more flexible, yet still searching standard of intermediate scrutiny.** *See Cent. Hudson Gas v. Pub. Serv. Common of N.Y.*, 447 U.S. 557, 564, 100 S. Ct. 2343, 2350, 65 L.Ed.2d 341 (1980) (describing the test for commercial speech); *Wollschlaeger,* 797 F.3d F. 3d at 893-897 (applying the same test to professional speech). Under intermediate scrutiny 'restrictions directed at commerce or conduct' may be upheld – assuming they further a substantial government interest and are narrowly tailored – even if they impose incidental burdens on speech.' *Sorrell*, 564 U.S. at -, 131 S. Ct. at 2664-65.

807 F.3d at 1246. (Emphasis supplied.) (Citations omitted.)

*Wollschlaeger* is also instructive**.**  There, the majority opinion does not criticize the *King* decision and, moreover, avoids addressing the effect of *Reed* on professional speech.

Indeed, the majority opinion in *Wollschlaeger*, although acknowledging the existence of *Reed*, ultimately applied heightened scrutiny (similar to intermediate scrutiny), and expressly stated that "we need not decide whether strict scrutiny applies here, because … provisions …fail even under heightened scrutiny as articulated in *Sorrell*, 564 U.S. at 569-70, 131 S. Ct. 2653…" 848 F.3d at 1308. The Eleventh Circuit, moreover, reiterates this later in its majority opinion where it states; "We therefore need not decide whether strict scrutiny should apply." 848 F.3d at 1311. In *Wollschlaeger* the Eleventh Circuit also noted that: "When a statute is 'susceptible' to an interpretation that avoids constitutional difficulties, that is the reading we must adopt." *Id.* at 1317.

In its most recent decision on the level of scrutiny to be applied, *Ocheese Creamery v. Putnam*, 851 F.3d 1228 (11th Cir. 2017) (decided after *Wollschlaeger),* the Eleventh Circuit also acknowledged that in *Wollschlaeger* it applied "intermediate scrutiny"; and further stated: "Challenges to restrictions on commercial speech are evaluated according to rubric set forth by the Court in *Central Hudson Gas & Electric Corp. v. Public Service Commission,* 447 U.S. 557, 100 S. Ct. 2343, 65 L. Ed 2d 341 (1980)." 851 F.3d at 1234-35.

In summary, the correct standard by which the court should analyze the Plaintiff's constitutional challenge is the "intermediate scrutiny" standard set forth in *Central Hudson* applied in the *King* case.  Applying that standard to the Ordinance, it clearly passes constitutional muster.

31821503 v1

The City also notes that, although numerous jurisdictions have enacted laws prohibiting licensed professionals from engaging in SOCE therapy with a minor,[8] the City is unaware of any judicial decision which has found these laws to be unconstitutional or invalid.

Plaintiffs' state law claims are also without merit. Plaintiffs' constitutional challenges under the Florida Constitution, in Counts IV-V of the Amended Complaint, fail for the reasons that the federal constitutional challenges must be rejected. Therefore, Count VI, VII, and VIII also fail to state claims upon which relief can be granted.

---

[8] Jurisdictions that have enacted laws prohibiting licensed professionals from engaging in SOCE therapy or conversion therapy  with a minor  include, but are not limited to, the following: (a) at least  eleven states comprising California, Connecticut, Illinois, Maryland, Nevada, New Hampshire,  New Jersey, New Mexico, Oregon, Rhode Island, and Vermont; (b) the District of Columbia; (c) at least seventeen local governments in Florida comprising  City of Boca Raton, City of Boynton Beach, City of Delray Beach, City of Greenacres, City of Key West, City of Lake Worth, City of Miami, City of Miami Beach, City of North Bay Village, City of Oakland Park, Palm Beach County, City of Rivera Beach, Town of Bay Harbor Islands, Village of El Portal, Village of Wellington, City of West Palm Beach, and City of Wilton Manors; and (d) at least ten out-of-state local governments comprising  City of Allenton, City of Athens, City of Cincinnati, City of Columbus, City of Dayton, City of Philadelphia, Pima County, City of Pittsburgh, City of Seattle, and City of Toledo. *See,* respectively, §§ 865.1, 865.2, Cal. Bus. & Prof. Code.; P.A. 17-5, §§ 1-4, Conn. Gen. Stat.; Chp. 405, Act 48, §5, Ill. Comp. Stat.; SB 201, §1.5, Maryland Code Ann. Ch. 685, sec. 1-212, Nev. Admin. Code; §§ 45:1–54, –55, New Hampshire Chapter 332-L, N.J. Stat. Ann.; §§ 61-1-33, 61-3-28, 61-6-15, 61-9-13, 61-9A-26, 61-10-151, 61-31-17, N.M. Stat.; §§ 675.070, 675.850, Or. Rev. Stat.; §§ 23-91-1, 23-91-2, 23-91-3, 23-91-4, 23-91-5, R.I. Code; 3 V.S.A. §129a, 18 V.S.A. §§ 8351-8353, 26 V.S.A. §§ 1354(a), 1842(b), 3016, 3210, 3271, 4042, 4062, 4132; §§ 7-1231.02, 7-1231.14a, D.C. Code; City of Boca Raton, Fla., Code of Ordinances, §§9-104, 9-105, 9-106, 9-107; City of Boynton Beach, Fla., Code of Ordinances, §§ 15-134, 15-135, 15-136, 15-137; City of Delray Beach, Fla., Code of Ordinances, § 133.02; City of Greenacres, Fla., Code of Ordinances, § 8-74; City of Key West, Fla., Code of Ordinances, § 42-18; City of Lake Worth, Fla., Code of Ordinances, §§ 15-91, 15-92, 15-93, 15-94; City of Miami, Fla., Code of Ordinances, § 37-13; City of Miami Beach, Fla., Code of Ordinances, §§ 70-405, 70-406, 70-407; City of North Bay Village, Fla., Code of Ordinances, §§ 137.01, 137.02, 137.03; City of Oakland Park, Fla., Code of Ordinances, §§ 8-126, 8-127, 8-128, 8-129; Palm Beach County, Fla., Code of Ordinances, Ordinance No. 2017-046; City of Rivera Beach, Fla., Code of Ordinances, § 1-8; Town of Bay Harbor Islands, Fla., Code of Ordinances, § 23-5.2; Village of El Portal, Fla., Code of Ordinances, Ordinance No. 2016-08; Village of Wellington, Fla., Code of Ordinances, §§ 36-35, 36-46, 36-47, 36-48; City of West Palm Beach, Fla., Code of Ordinances, §§ 54-172, 54-173, 54-174; City of Wilton Manors, Fla., Code of Ordinances, §§ 12-11, 12-12, 12-13; City of Allenton, Pa., Code of Ordinances, §§ 320.01, 320.02, 320.03, 320.04; City of Athens, Ohio, Code of Ordinances, §§ 3.12.01, 3.12.02, 3.12.03; City of Cincinnati, Ohio, Code of Ordinances, §§ 769-1, 769-3, 769-99; City of Columbus, Ohio, Code of Ordinances, § 2331.10; City of Dayton, Ohio, Code of Ordinances, §§ 135.03, 135.04, 135.05; City of Philadelphia, Pa., Code of Ordinances, § 9-903; Pima County, Ariz., Code of Ordinances, §§ 9.90.010, 9.90.020, 9.90.030, 9.90.040, 9.90.050; City of Pittsburgh, Pa., Code of Ordinances, §§ 628.01, 628.02; City of Seattle, Wash., Code of Ordinances, §§ 14.21.010, 14.21.020, 14.21.030, 14.21.040, 14.21.050; City of Toledo, Ohio, Code of Ordinances, §§ 554.01, 554.06, 555.99.

<u>Plaintiffs Vazzo and Pickup Lack Standing to Assert Claims on Behalf of Minor Patients
and Plaintiff Soli Deo Gloria International, Inc. Lacks Standing to Assert Claims on
Behalf of its Members, Constituents and Clients</u>

In *King*, the plaintiffs argued that the District Court erred by concluding that they lacked standing to bring claims on behalf of their minor clients**.** The Third Circuit rejected that argument and concluded that "Plaintiffs lack standing to pursue claims on behalf of their minor clients." 767 F.3d at 244. In reaching that conclusion, the Third Circuit first addressed the limited circumstances in which one can obtain third-party standing:

> "It is a well-established tenet of standing that 'a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties.'" *Pennsylvania Psychiatric Soc'y v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 288 (3d Cir. 2002) (quoting *Powers v. Ohio*, 499 U.S. 400, 410, 111 S. Ct. 1364, 113 L. Ed.2d 411 (1991)). Yet the prohibition is not invariable and our jurisprudence recognizes third-party standing under certain circumstances.' *Id.* (citations omitted.) To establish third party standing, a litigant must demonstrate that (1) she has suffered an 'injury in fact' that provides her with a sufficiently concrete interest in the outcome of the case in dispute'; (2) she has a 'close relation to the third party'; and (3) there exists 'some hindrance to the third party's ability to protect his or her own interests.' *Powers,* 499 U.S. at 411, ….

767 F.3d at 243. The Third Circuit went on to state: "Plaintiffs have failed to establish that their clients are 'hindered' in their ability to bring suit themselves … Further, we note that minor clients have been able to file suit pseudonymously in both *Pickup* and *Doe v. Christie*, - F. Supp.3d -, 2014 WL 3765310 (D.N.J. July 31, 2014)…." 767 F.3d at 244.

In this case, Plaintiffs have failed to allege each of the elements necessary to obtain third-party standing. Moreover, pursuant to the analysis in *King,* the fact that minor clients could file suit pseudonymously, supports the conclusion that Plaintiffs Vazzo and Pickup lack standing to assert claims on behalf of minor patients, and Plaintiff Soli Deo Gloria International, Inc. lacks standing to assert claims on behalf of its members, constituents and clients.

<u>Plaintiff Pickup lacks standing</u>

The Amended Complaint alleges that Plaintiff Pickup is "currently seeking licensure in Florida…." (Doc. 78, p. 22, ¶113.) Thus, Plaintiff Pickup's claims are premature at best because, currently, he lacks standing to challenge the validity of the Ordinance in a jurisdiction where he is not licensed to practice.

The Supreme Court, in addressing the requirements for standing, has held that:

> To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.' … Although imminence is a concededly somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes–that the injury is *certainly impending*.'…Thus, we have repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that [a]llegations of *possible* future injury' are not sufficient.

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis in original) (citations omitted). In applying these requirements to the Amended Complaint it is impossible to know when Plaintiff Pickup will successfully complete all necessary requirements and when, if at all, the State of Florida may provide him with a license. Accordingly, Plaintiff Pickup fails to satisfy the requirements for standing as articulated by the Supreme Court in *Clapper*.

<u>Count I of the Amended Complaint Should Be Dismissed With Prejudice</u>

Count I of the Amended Complaint, which alleges the Ordinance violates Plaintiffs' right to freedom of speech under the First Amendment, fails to state a claim upon which relief can be granted. In *King,* the Third Circuit held that the enactment of a statute, prohibiting licensed counselors from engaging in SOCE therapy with clients under age eighteen, did not violate the counselors' First Amendment free speech rights.  In reaching that conclusion, the court applied the intermediate scrutiny standard of review utilized in *Central Hudson* and

found that the statute advanced the government's interest of protecting minors from ineffective and/or harmful professional services and was not more extensive than necessary to serve that interest. The Third Circuit stated in relevant part:

> …**Even when applying intermediate scrutiny, however, we do not review a legislature's empirical judgment *de novo* – our task is merely to determine whether the legislature has 'drawn reasonable inferences based on substantial evidence**.' *Turner Broad Sys., Inc. v. F.C.C*., 520 U.S. 180, 195, 117 S. Ct. 1174, 137 L. Ed.2d 369 (1997) ….

> We conclude that New Jersey has satisfied this burden. The legislative record demonstrates that over the last few decades a number of well-known, reputable professional and scientific organizations have publicly condemned the practice of SOCE, expressing serious concerns about its potential to inflict harm …. Many such organizations have also concluded that there is no credible evidence that SOCE counseling is effective….

> We conclude that this evidence is substantial. **Legislatures are entitled to rely on the empirical judgments of independent professional organizations that possess specialized knowledge and experience concerning the professional practice under review ….**

> … a state legislature is not constitutionally required to wait for conclusive scientific evidence before acting to protect its citizens from serious threats of harm. *See United States v. Playboy Entm't Grp, Inc.,* 529 U.S. 803, 822 (2000) …. It is not too far a leap in logic to conclude that a minor client might suffer psychological harm if repeatedly told by an authority figure that her sexual orientation – a fundamental aspect of her identity – is an undesirable condition. Further if SOCE counseling is ineffective – which, as we have explained, is supported by substantial evidence – it would not be unreasonable for a legislative body to conclude that a minor would blame herself if the counselor's efforts failed…. We therefore conclude that [the statute] 'directly advances' New Jersey's stated interest in protecting minor citizens from harmful professional practices.

> Lastly, we must determine whether [the statute] is more extensive than necessary to protect this interest. To survive this prong of intermediate scrutiny, New Jersey 'is not required to employ the least restrictive means conceivable, but it must demonstrate narrow tailoring of the challenged regulation to the asserted interest.' *Greater New Orleans Broad Ass'n, Inc. v. United States*, 527 U.S. 173, 188, 119 S. Ct. 1923, 144 L. Ed.2d 161 (1999) (citing *Board of Tr. Of State Univ. of New York v. Fox*, 492 U.S. 469, 480, 109 S. Ct.. 3028, 106 L. Ed.2d 388 (1989)).  Thus, New Jersey must establish a fit that is not necessarily perfect, but reasonable; that

represents not necessarily the single best disposition but one whose scope is in proportion to the interest served.' *Id.* (*quoting Fox*, 492 U.S. at 480, 109 S. Ct. 3028); *See also Heffner v. Murphy*, 745 F.3d 56, 92-93 (3d Cir. 2014) (upholding regulation of commercial speech while acknowledging that the fit between the statute and its interest was 'imperfect') ….

Plaintiffs argue that [the statute's] ban is overly burdensome, and that New Jersey's objectives could be accomplished in a less restrictive manner via a requirement that minor clients give their informed consent before undergoing SOCE counseling. We are not convinced, however, that an informed consent requirement would adequately serve New Jersey's interests. Minors constitute an 'especially vulnerable population,' … and may feel pressured to receive SOCE counseling by their families and their communities despite their fear of being harmed….

767 F.3d at 238-240 (footnote omitted) (emphasis supplied.). In *King*, the court also rejected

plaintiffs' argument that the statute was unconstitutionally vague and overbroad. 767 F.3d at

240-241.

As noted above, the Court's rationale in *King* is extremely relevant to resolving this

case because of three critical factors: (1) the legislative findings of City Council - which are

contained in the certified copy of the Ordinance of which this Court has taken judicial notice

(Doc. 51, p. 4) - reflect that a number of medical and mental health organizations have found

that SOCE therapy may pose a serious threat to the health and well–being of the affected

persons, and many such organizations have concluded that there is a lack of credible evidence

that such therapy is effective; (2) the Ordinance expressly articulates a compelling interest in

protecting the physical and psychological well-being of minors against exposure to serious

harms caused by SOCE therapy; and (3) the Ordinance is narrowly tailored to advance the

compelling governmental interest.   Consistent with *King*, Tampa City Council was also

entitled to rely on the empirical judgments of the numerous independent professional

organizations which are identified in the legislative findings of the Ordinance, and that possess specialized knowledge concerning the conversion therapy that is the subject of the Ordinance.

The assertion by Plaintiffs, that "informed consent" would be a less restrictive means to achieve the City's interest, is an argument that was rejected in *King*. 767 F.3d at 240. Moreover, in a number of other cases, federal and state courts have recognized that  minors, because of their young age, cannot consent to - or make informed decisions on - a variety of matters; that parents do not have unfettered rights concerning their children; and that  the government has a compelling interest in protecting the physical and psychological well-being of minors.[9]  Accordingly, the Ordinance should clearly pass constitutional muster under the intermediate scrutiny standard of review applied in *King*.

_____

[9] *See Hodgson v. Minnesota*, 497 U.S. 417, 444 (1990)  ("The State has a strong and legitimate interest in the welfare of its young  citizens, whose immaturity, inexperience, and lack of judgment may sometimes impair their ability to exercise their rights wisely.");  *Sable Commc'ns of Cal., Inc v. FCC,* 492 U.S. 115, 126 (1989) (the state has a "compelling interest in protecting the physical and psychological well-being of minors," which "extends to shielding minors from the influence of literature that is not obscene by adult standards."); *City of Dallas v. Stanglin*, 109 S. Ct. 1591 (1989) (city ordinance did not  infringe on First Amendment rights in restricting admission to certain dance halls to persons between ages of 14 and 18, and  a rational relationship existed between age restrictions for dance halls and  city's interest in promoting the welfare of teenagers);  *Parham v. J.R.*, 442 U.S. 584, 603 (1979) ("state is not without constitutional control over parental discretion in dealing with children when their physical or mental health is jeopardized."); *McKeiver v. Pennsylvania*, 403 U.S. 528, 550 (1971) (plurality opinion)  ("State is entitled to adjust its legal system to account for children's vulnerability and their need for 'concern, … and paternal attention"); *Prince v. Massachusetts*, 321 U.S. 158, 168-169 (1944) (Supreme Court upheld statute prohibiting boys under  age 12 and girls under age 18  from selling magazines, etc., on the street and held that  state's authority  over children's activities is broader than that over like actions of adults. In reaching that conclusion, the Court stated that:

> … the family itself is not beyond regulation in the public interest, as against a claim of religious liberty. *Reynolds v. United States*, 98 U.S. 145, 25 L.Ed. 244; *Davis v. Beason*, 133 U.S. 333, 10 S. Ct. 299, 33 L.Ed. 637. And neither rights of religion nor rights of parenthood are beyond limitation. Acting to guard the general interest in youth's well being, the state as parens patriae may restrict the parent's control by requiring school attendance, regulating or prohibiting the child's labor, and in many other ways. Its authority is not nullified merely because the parent grounds his claim to control the child's course of conduct on religion or conscience. Thus, he cannot claim freedom from compulsory vaccination for the child more than for himself on religious grounds. The right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death.

321 U.S. at 166-167 (footnotes omitted); *Parker v. Hurley*, 514 F.3d 87 (1st Cir. 2008) (where parents. individually and on behalf of their children, brought a §1983 and state law action against school district officials and employees, alleging curriculum materials intended to encourage respect for gay person and couples violated both

Finally, *Keeton v. Anderson-Wiley*, 664 F.3d 865 (11th Cir. 2011) is also instructive. *Keeton* involved a graduate student who alleged violations of her First Amendment free speech and free exercise rights.  In affirming the denial of a motion for preliminary injunction the Eleventh Circuit recognized that requiring adherence to professional standards prohibiting conversion therapy does not constitute viewpoint discrimination.

<u>Count II of the Amended Complaint Should Be Dismissed With Prejudice</u>

Count II of the Amended Complaint, which alleges that the Ordinance violates Plaintiffs' clients' First Amendment right to receive information, fails to state a claim upon which relief can be granted. In *Doe v. Governor of the State of New Jersey*, 783 F.3d 150 (3d Cir. 2015) *cert. den*. 136 S. Ct. 1155 (2016), where a minor child and his parents brought an action against the Governor of New Jersey, challenging the constitutionality of a New Jersey statute that prohibited licensed counselors from engaging in SOCE therapy with minors, and plaintiffs alleged in their complaint that the statute violated their First Amendment right to receive information, the Third Circuit rejected that argument. 783 F.3d at 155-156. In reaching that conclusion, the court stated in relevant part:

> …the First Amendment protects both the speaker and the recipient of information. *See Va. State Bd. Of Pharm. v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756-57, 96 S. Ct. 1817, 48 L. Ed.2d 346 (1976).  However, the cases interpreting the First Amendment do not contemplate that some speech may be restricted as to

---

their free exercise right and their right to raise their children as they wished, the  First Circuit affirmed the district court's granting defendant's motion to dismiss the federal claims for failure to state a claim upon which relief could be granted, and dismissed the state claims without prejudice); *American Booksellers v. Webb*, 919 F.2d 1493 (11th Cir. 1990) (Eleventh Circuit held state may, absent impermissible burden on adults, deny minors all access in any form to materials obscene as to them, but acceptable for adults; that minors have no right to view or in any way consume such material, even if they do not purchase or otherwise take control of it; and that state's interest in protecting its youth justifies limited burden on free expression); *Schmitt v. State*, 590 So.2d 404, 410-411  (Fla. 1991) (Florida Supreme Court held "it is evident beyond all doubt that any type of sexual conduct involving a child constitutes an intrusion upon the rights of that child, whether or not the child consents and whether or not that conduct originates from a parent.")

the speaker but not the listener. The listener's right to receive information is reciprocal to the speaker's right to speak. *See id.; Bd. Of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico,* 457 U.S. 853, 867, 102 S. Ct. 2799, 73 L. Ed.2d 435 (1982) ([T]he right to receive ideas follows ineluctably from the sender's First Amendment right to send them.')  As we concluded in *King,* [the statute] does not violate the counselor's right to speak, *see* 767 F.3d at 240, and, as a result, it does not violate Appellants' right to receive information.

783 F.3d at 155. Applying this holding to the allegations of the Amended Complaint, Count II must also be dismissed.

<u>Count III of the Amended Complaint Should Be Dismissed With Prejudice</u>

Count III of the Amended Complaint, which alleges that the Ordinance violates Plaintiffs' right to free exercise of religion, fails to state a claim upon which relief can be granted. In *King,* where plaintiffs' second constitutional claim asserted that the statute there violated their First Amendment right to free exercise of religion, the Third Circuit concluded that this claim also lacked merit. In reaching that conclusion, the court stated in relevant part:

Under the Religion Clauses of the First Amendment, 'Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof.' The right to freely exercise one's religion, however, is not absolute. *McTernan v. City of York,* 577 F.3d 521, 532 (3d Cir. 2009).  If a law is 'neutral' and 'generally applicable,' it will withstand a free exercise challenge so long as it is 'rationally related to a legitimate governmental objective.' *Brown v. City of Pittsburgh*, 586 F.3d 263, 284 (3d Cir. 2009) (citation omitted).  This is so even if the law 'has the incidental effect of burdening a particular religious practice or group.' Id. at 284 (*quoting Church of the Lukumi Babalu Aye, Inc. v. City of Hialea*h, 508 U.S. 520, 531, 113 S. Ct. 2217, 124 L. Ed.2d 472 (1993)).

The issue before us, then, is whether [the statute] is 'neutral' and 'generally applicable.' A law is 'neutral' if it does not target religiously motivated conduct either on its face or as applied in practice.' …' A law fails the general applicability requirement if it burdens a category of religiously motivated conduct but exempts or does not reach a substantial category of conduct that is not religiously motivated and that undermines the purposes of the law to at least the same degree as the covered conduct that is religiously motivated….'

> As a preliminary matter, [the statute] makes no explicit reference to any religion or religious beliefs, and is therefore neutral on its face. *See Lukumi,* 508 U.S. at 533-34, 113 S. Ct. 2217.  Nevertheless, Plaintiffs argue that [the statute] covertly targets their religion …..
>
> None of [the] 'exemptions,' however, demonstrate that [the statute] covertly targets religiously motivated conduct….
>
> Accordingly, we conclude that [the statute] is neutral and generally applicable, and therefore triggers only rational basis review….

767 F.3d 216, 241-243. Similarly, in *Welch,* the Ninth Circuit held a statute, prohibiting licensed mental health providers from providing SOCE therapy to minors, did not excessively entangle the state with religion in violation of mental health providers' rights under the First Amendment's Establishment Clause. 834 F.3d at 1044-1047.

   In applying the aforesaid legal principles, the Ordinance must also pass muster where the Ordinance (1) is neutral and generally applicable, and does not target religiously motivated conduct either on its face or as applied in practice,[10] and (2) serves a compelling governmental interest and is narrowly tailored to advance a compelling governmental interest.  On its face, the Ordinance passes both of these requirements.

---

[10] The Ordinance does not make any explicit reference to any religion or religious beliefs. Moreover, none of the exemptions to the Ordinance covertly target religiously motivated conduct. To the contrary, the Ordinance expressly states: "A Provider does not include members of the clergy who are acting in their roles as clergy or pastoral counselors and providing religious counseling to congregants, as long as they do not hold themselves out as operating pursuant to any of the aforementioned Florida Statutes licenses." (Doc. 24-1, p. 7.) The Ordinance further states that "the City does not intend to prevent mental health providers from … referring minors to unlicensed counselors, such as religious leaders. This ordinance does not prevent unlicensed providers, such as religious leaders, from administering SOCE to children or adults …." (Doc. 24-1, p. 5.)  The City would also note that the prohibition in the Ordinance against SOCE therapy with minors by licensed providers is neutral and expressly applies to "any individual who is a minor". (Doc. 24-1, p. 7.)   Finally, the City would once again commend the Court's consideration of *Keeton*, discussed *supra*.

Count IV of the Amended Complaint Should Be Dismissed With Prejudice

Count IV of the Amended Complaint, which alleges that the Ordinance violates Plaintiffs' rights to liberty of speech under Article I, Section 4 of the Florida Constitution, fails to state a claim upon which relief can be granted.   Article I, § 4, of the Florida Constitution, which  provides that "[n]o law shall be passed to restrain or abridge the liberty of speech," is similar to the language in the First Amendment to the United States Constitution which provides that "Congress shall make no law … abridging freedom of speech." In *Simmons v. State of Florida*, 944 So.2d 317, 323 (Fla. 2006), the Supreme Court of Florida stated that the provision of the First Amendment of the United States Constitution, providing that Congress shall make no law abridging freedom of speech, is similar to article I, section 4 of the Florida Constitution which provides that "[n]o law shall be passed to restrain or abridge the liberty of speech." The Second District Court of Appeal has further held that the scope of the guarantees of freedom of speech under the Florida Constitution and the First Amendment to the United States Constitution are the same and, accordingly, the court would not treat them separately. *Florida Canners Association v. State of Florida,* 371 So.2d 503, 517 (Fla. 2d DCA 1979). The federal court, in  *Warner v. City of Boca Raton*, 64 F. Supp. 2d 1272, 1295 (S.D. Fla. 1999) *aff'd* 420 F.3d 1308 (11th Cir. 2005),  has also held that "Florida Courts have generally construed their state constitutional guarantees to be coextensive with their federal counterparts."

Accordingly, the same analysis that is applied in adjudicating count I of the Amended Complaint should also apply in determining whether count IV should be dismissed.  As such, the City incorporates by reference its arguments in support of dismissing count I of the

31821503 v1

Amended Complaint and, for all of the reasons set forth by the City as to why count I of the Amended Complaint must be dismissed, this Court should also dismiss count IV of the Amended Complaint.

Count V of the Amended Complaint Should Be Dismissed With Prejudice

Count V of the Amended Complaint, which alleges that the Ordinance violates Plaintiffs' right to free exercise and enjoyment of religion under Article I, Section 3 of the Florida Constitution, fails to state a claim upon which relief can be granted.  Florida courts have interpreted the guarantees contained in Florida's Free Exercise Clause as co-equal to the federal counterpart in the Free Exercise Clause of the First Amendment to the United States Constitution. *See Toca v. State*, 834 So. 2d 204, 208 (Fla. 2d DCA 2002) (citing Commentary to Art. I, § 3, 1968 Revision of the Florida Constitution for the premise "that Florida's Free Exercise Clause parallels the First Amendment"); *Allen v. Allen*, 622 So. 2d 1369 (Fla. 1st DCA 1993).

Accordingly, the same analysis that is applied in determining whether to dismiss count III of the Amended Complaint - wherein Plaintiffs allege violations of the right to free exercise of religion under the Free Exercise Clause of the First Amendment - should also be applied relative to dismissing count V of the Amended Complaint. To that end, the City incorporates herein by reference it arguments in support of dismissing count III of the Amended Complaint.

Count VI of the Amended Complaint Should Be Dismissed With Prejudice

Plaintiffs allege in count VI of the Amended Complaint that the City has no authority to enact the Ordinance because the Legislature preempted the "field of regulation of mental health professionals" and the "field of disciplinary actions for licensed mental health

professionals" pursuant to Chapter 491 (particularly § 491.009) and "Fla. Admin. Code Ann. R. 64B-5001." (Doc. 78, p. 44, ¶ 268-269.)[11] Plaintiffs fail to state a claim upon which relief can be granted.

Florida acknowledges two types of preemption: express and implied. *See D'Agastino v. City of Miami,* 220 So. 3d 410, 421 (Fla. 2017); *Sarasota Alliance for Fair Elections, Inc. v. Browning,* 28 So. 3d 880, 886 (Fla. 2010). Express preemption requires a specific legislative statement that cannot be implied or inferred, and must be accomplished by clear language stating an intended preemption. *Browning,* 28 So. 3d at 886; *City of Hollywood v. Mulligan,* 934 So. 2d 1238, 1243 (Fla. 2006). Implied preemption occurs when "the legislative scheme is so pervasive as to virtually evidence an intent to preempt the particular area, and where strong public policy reasons exist for finding such an area to be preempted by the Legislature." *D'Agastino,* 220 So. 3d at 421; *Browning,* 28 So. 3d at 886. "In determining if implied preemption applies, the court must look 'to the provisions of the whole law, and to its object and policy.'" *Browning,* 28 So. 3d at 886 (quoting *State v. Harden,* 938 So. 2d 489, 486 (Fla. 2006)). However, courts "must be careful and mindful in attempting to impute intent to the Legislature to preclude a local elected governing body from exercising its home rule powers," and findings of implied preemption are generally "disfavored." *D'Agastino,* 220 So. 3d at 421, 423; *see also Exile v. Miami-Dade County,* 35 So. 3d 118, 119 (Fla. 3d DCA 2010) (noting the "severely restricted and strongly disfavored doctrine of implied preemption"); *Randolph v. Family Network on Disabilities of Florida, Inc.,* 2012 WL 71719 (M.D. Fla. 2012) (District

---

[11] The City is unable to locate section 64B-5001 of the Administrative Code. Thus, the City assumes that Plaintiffs intended to rely on Florida Administrative Code Rule 64B4-5.001, entitled "Disciplinary Guidelines."

Court, in granting defendant's motion to dismiss, upheld the enforcement of a Leon County ordinance prohibiting discrimination on the basis of sexual orientation despite an argument that it was impliedly preempted by the Florida's Civil Rights Act. In reaching that conclusion, the court stated "Because the ordinance and statute can coexist, there is no preemption.") *Id.* at 71719*3.).

Irrespective of whether one applies an express preemption analysis or an implied preemption analysis, Plaintiffs cannot state a claim upon which relief can be granted. Plaintiffs fail to allege any actual legislative statement expressly prohibiting local governments in the state from enacting ordinances prohibiting conversion therapy. In addition, an examination of the provisions cited by Plaintiffs - Chapter 491 of the Florida Statutes and Section 64B4 of the Florida Administrative Code[12] - reflect that they are completely silent as to any pervasive scheme evidencing a legislative attempt to preempt the City from prohibiting conversion therapy within its jurisdiction. Chapter 491 reflects, moreover, that the intent is directed to "establishing minimum qualifications for entering into and remaining in the respective professions." Section 491.002, Fla. Stat.[13]

---

[12] Plaintiffs make a passing reference to proposed SOCE legislation that died in the Florida House and Florida Senate during the 2016 legislative session. *(*Doc. 78, p.45 ¶ 272.) Plaintiffs have not, however, cited to any authority for the proposition that a municipality is prohibited from adopting a provision simply because the state legislature declined to adopt the provision.

[13] Section 491.009, Fla. Stat., also addresses various acts constituting grounds for denial of a license or disciplinary action. Although none of the acts identified specifically deal with conversion therapy, or reparative therapy or SOCE therapy, there is a generic provision under subsection (q) which addresses "performing any treatment or prescribing any therapy which by the prevailing standards of the mental health professions in the community, would constitute experimentation on human subjects, without first obtaining full, informed, and written consent." To the extent that Plaintiffs were to argue that this generic provision could potentially apply to conversion therapy, or reparative therapy, or SOCE therapy, it should be noted that in *King, supra,* the court stated that "We are not convinced, however, that an informed consent requirement would adequately serve New Jersey's interests. Minors constitute an 'especially vulnerable population,' … and may feel pressured to receive SOCE counseling by their families and their communities despite their fear of being harmed…." 767 F.3d at 240.

Finally, it is important to note that the Court has recognized "the regulation of health and safety matters is primarily, and historically, a matter of **local** concern." *Hillsborough Cty v. Automated Med Labs Inc*., 471 U.S. 707, (1985). (Emphasis supplied); *See Craig v. Boren,* 97 S. Ct. 451, 458 (1976) ("the protection of public health and safety represents an important function of state and **local** governments.") (Emphasis supplied.)   *See also City of Dallas v. Stanglin*, 109 S. Ct. 1591 (1989) (upholding City ordinance promoting the welfare of teenagers).

Accordingly, the Ordinance can coexist with Chapter 491 and section 64B4 of the Florida Administrative Code; and, consistent with the case law discussed in the within Motion, the City can and should   protect the health and safety of children.

<u>Count VII of the Amended Complaint Should Be Dismissed With Prejudice</u>

Plaintiffs allege in count VII  that the Ordinance violates the Florida Patient's Bill of Rights and Responsibilities Act, § 381.026, Fla. Stat. Based on Plaintiffs' lack of standing, and inability to state a cause of action, the Court should dismiss count VII with prejudice.

Plaintiffs' reliance on, and application of, § 456.41 is misplaced because Plaintiffs are not "health care providers" under § 381.026, they are not "patients" to whom the Florida Patient's Bill of Rights and Responsibilities Act applies, and § 456.41 does not provide them with any cognizable action pursuant to the well-articulated restrictions of § 381.026(3). Rather, § 381.026(2) states that, "[a]s used in this section," the term ¶"'[h]ealth care provider' means a physician licensed under chapter 458, an osteopathic physician licensed under chapter 459, or a podiatric physician licensed under chapter 461." Section 381.026(2)(c), Fla. Stat. While the Legislature could have added "marriage and family therapists" under Chapter 491 as defined

"health care providers," it chose not to despite numerous revisions to § 381.026 following its enactment in 1991, and the same definition of "marriage and family therapist" existing under § 491.003(5) since 1987. *See* Laws of Fla., ch. 87-252 § 15.

An examination of the Florida Patient's Bill of Rights and Responsibilities Act reflects the statutory purpose of § 381.026 is the "well-being of the patients of health care providers and health care facilities."  Plaintiffs are not, and cannot be considered, "health care providers" under the plain definition of the statute.  *See Lawson v. Suwannee Fruit & S.S. Co*., 336 U.S. 198, 201 (1949); *Baker v. State,* 636 So. 2d 1342, 1343–44 (Fla. 1994); *see also Biddle v. Prison Health Services, Inc.,* 2010 WL 11553188, at *2 (S.D. Fla.  2010).

The City recognizes that subsection (4)(d)(3) of § 381.026 cite to § 456.41 and the term "health care practitioner." However, the mere mention of "health care practitioner" in this subsection - and only this subsection - through the Legislature's addition of subsection (4)(d)(3) in 2001, Laws of Fla., ch. 2001-116,  §2, does not mean the statutory definition of "health care practitioner" under § 456.41(2)(b) and 456.001(4) is somehow inserted into the definition of "health care provider" or that "marriage and family therapists" can be considered "health care providers" under § 381.026.  Such an interpretation would violate a basic statutory rule of interpretation that there is no reason to resort to rules of statutory construction when the "the language of the statute is clear and unambiguous and conveys a clear and definite meaning." *Holly v. Auld*, 450 So.2d 217, 219 (Fla. 1984). It also ignores the plain language of § 456.41, which limits its definitions "as used in" that particular section, and § 456.001 and 491.003 which limit their definitions "as used in" Chapter 456 and Chapter 491, respectively. Accordingly, Plaintiffs are not "health care providers" under § 381.026.

Further, the clear language of subsections (4)(d)(1), (2), and (3) apply to rights of *patients*; not Plaintiffs. Plaintiffs do not have standing to raise patient-specific claims of subsections (4)(d)(1), (2), and (3) under a statute that is clearly delineated as a patient bill of rights with the purpose "to promote the interests and well-being of the patients of health care providers and health care facilities."§ 381.026(3), Fla. Stat. (emphasis supplied); *see also Langbehn v. Pub. Health Tr. of Miami-Dade County*, 661 F. Supp. 2d 1326, 1342 (S.D. Fla. 2009)*; Powers v. Ohio*, 499 U.S. 400, 410 (1991).

Finally, it is important to note that the language in § 381.026(3) expressly states that "[t]**his section shall not be used for any purpose in any civil or administrative action**…." (Emphasis supplied); *see also Langbehn,* 661 F. Supp. 2d at 1342–43. Hence, Plaintiffs lack any cognizable right to bring any action under § 381.026**.** Thus, the Court should dismiss Count VII with prejudice.

<u>Count VIII of the Amended Complaint Should Be Dismissed With Prejudice</u>

Count VIII of the Amended Complaint fails to state a claim upon which relief can be granted. First and foremost, the Ordinance does not substantially burden a person's exercise of religion. To the contrary, the Ordinance expressly provides that:

> **… This Ordinance does not prevent unlicensed providers, such as religious leaders, from administering SOCE to children or adults; nor does it prevent minors from seeking SOCE from mental health providers in other political subdivisions or states outside of the City of Tampa, Florida**…

(Doc. 24-1, p. 5.) (Emphasis supplied.). Secondly, the Ordinance furthers a compelling governmental interest. Indeed, the Ordinance expressly states that:

> … City of Tampa has a **compelling interest** in protecting the physical and psychological well-being of minors, including but not limited to lesbian, gay, bisexual, transgender and questioning youth, and in protecting its minors against

exposure to serious harms caused by sexual orientation and gender identity change efforts….

(Doc. 24-1, p.5.)  (Emphasis supplied). Finally, the Ordinance is narrowly tailored to advance the compelling governmental interest. The Ordinance states, at Doc. 24-1, p. 5:

> … the City does not intend to prevent mental health providers from speaking to the public about SOCE; expressing their views to patients; recommending SOCE to patients; administering SOCE to any person who is 18 years of age or older; or referring minors to unlicensed counselors, such as religious leaders. This ordinance does not prevent unlicensed providers, such as religious leaders, from administering SOCE to children or adults; nor does it prevent minors from seeking SOCE from mental health providers in other political subdivisions or states outside of the City….

<u>Severability</u>

Section 9 of the Ordinance provides that: "Should any section or provision of this Ordinance or any portion, paragraph, sentence, or word be declared invalid by a court of competent jurisdiction, such decision shall not affect the validity of the remainder of this Ordinance." (Doc. 24-1, p.8.)  Thus, although it is the City's position that  the entire Ordinance should be found to be valid, in the event that this Court were to find any portion thereof to be invalid, that finding should not affect the validity of the remainder of the Ordinance.  *See Wollschlaeger,* 848 F.3d at 1318 ("It is our 'affirmative duty to preserve the validity of legislative enactments when it is at all possible to do so,' ….) *(quoting Coral Springs  St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1347-48 (11th Cir. 2004)).

<u>**CONCLUSION**</u>

For all of the above reasons, the City respectfully requests that this Honorable Court grant the above Motion and dismiss the Amended Complaint with prejudice, grant oral argument, and provide such further relief necessary to protect the City's rights.

31821503 v1

/s/ *Robert V. Williams*
Robert V. Williams, Esq.
Florida Bar No. 144720
**Burr & Forman, LLP**
201 N. Franklin Street, Ste. 3200
Tampa, Florida 33602
Telephone: (813) 221-2626
Facsimile: (813) 221-7335
Primary:  rwilliams@burr.com
Secondary:  pturner@burr.com
*Attorneys for Defendants, City of Tampa and
Sal Ruggiero, in his official capacity as
Manager of the City of Tampa Neighborhood
Enforcement Division*

And

Jerry M. Gewirtz, Esquire
Florida Bar No. 0843865
Primary:  Jerry.Gewirtz@tampagov.net
Secondary:Kimber.Spitsberg@tampagov.net
Robin Horton Silverman, Esquire
Florida Bar No. 0027934
Primary:Robin.Horton-silverman@tampagov.net
Secondary: Laytecia.McKinney@tampagov.net
5th Floor, City Hall, 315 E. Kennedy Blvd.
Tampa, Florida  33602
Telephone:  (813) 274-8996
Facsimile:  (813) 274-8809

*Attorneys for Defendant, City of Tampa*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of June, 2018 I caused a true and correct

copy of the foregoing to be filed electronically with the Clerk of Court.  Service will be

effectuated on all counsel of record via the Court's ECF/Electronic Service System.

/s/ *Robert V. Williams*
Robert V. Williams, Esquire

26