IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF FLORIDA
Tampa Division

| | | |
|---|---|---|
| ROBERT L. VAZZO, LMFT, individually and on behalf of his patients, DAVID H. PICKUP, LMFT, individually and on behalf of his patients, SOLI DEO GLORIA INTERNATIONAL, INC., d/b/a NEW HEARTS OUTREACH TAMPA BAY, individually and on behalf of its members, constituents, and clients, | ) ) ) ) ) ) ) ) ) | Civil Action No.: 8:17-cv-02896-CEH-AAS |
| Plaintiffs, | ) ) | **INJUNCTIVE RELIEF SOUGHT** |
| v. | ) ) | |
| CITY OF TAMPA, FLORIDA, and SAL RUGGIERO, in his official capacity as Manager of the City of Tampa Neighborhood Enhancement Division | ) ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTIONS TO DISMISS**

**AND PLAINTIFFS' REPLY IN SUPPORT OF
THEIR RENEWED MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................ii

TABLE OF AUTHORITIES.........................................................................................vi

INTRODUCTION..........................................................................................................1

LEGAL ARGUMENT....................................................................................................2

I.      PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR FIRST AMENDMENT CHALLENGE TO THE ORDINANCE. ................................2

      A.      Defendants' Efforts To Characterize Plaintiffs' Speech As Conduct And Thereby Evade First Amendment Review Is A "Dubious Constitutional Enterprise" That Fails As A Matter Of Binding Law.................................2

            1.      Defendants could have regulated only conduct, but chose instead to also regulate Plaintiffs' pure speech............................................3

            2.      Supreme Court precedent compels a finding that Plaintiffs' "talk therapy" is speech.........................................................................4

            3.      Binding en banc Eleventh Circuit precedent requires a finding that Plaintiffs' "talk therapy" is speech................................................5

            4.      Defendants' own authorities mandate a finding that Plaintiffs' "talk therapy" is speech...............................................................8

      B.      Defendants' Attempt To Characterize Plaintiffs' Speech As Commercial And Thereby Avoid The First Amendment's Most Exacting Scrutiny Ignores The Plain Text Of The Ordinance And Fails As A Matter Of Binding Law................................................................................................9

      C.      Defendants Fail To Escape The Constitutional Infirmity Of The Ordinance's Viewpoint Discrimination....................................................11

      D.      The *NIFLA*, *Reed*, And *Wollschlaeger* Triumvirate Mandate The Application Of Strict Scrutiny Which The Ordinance Cannot Survive...................13

            1.      Defendants' Continued Reliance on *King* And *Pickup* Is Utterly Misplaced Because The Supreme Court Has Abrogated Both Of Those Authorities.......................................................................13

2.      Under Strict Scrutiny, It Is Defendants' Burden To Demonstrate That The Ordinance Is Supported By A Compelling Interest And That It Is The Least Restrictive Means To Achieve That Interest...............15

3.      The Ordinance's Prohibition On Voluntary SOCE Counseling Is Not Supported By A Compelling Interest. .................................................16

    a.      Defendants' assertion that this Court must defer to the legislature's findings of harm is inapplicable in the First Amendment context......................................................................16

    b.      Defendants cannot meet their burden of producing concrete evidence of actual harm from voluntary SOCE counseling............19

4.      The Ordinance Is Not Narrowly Tailored. .................................................21

    a.      Defendants cannot meet their burden of proving narrow tailoring because they cannot show that the Ordinance is the least restrictive means ..................................................................21

    b.      Defendants' rejection of informed consent alternatives is pretextual, contradicts the Ordinance, violates Florida law, and violates the United States Constitution.....................................23

    c.      Defendants have not shown that they seriously considered less speech-restrictive alternatives and ruled them out for good reason.................................................................................26

II.     PLAINTIFFS HAVE DEMONSTRATED THAT THEY ARE SUFFERING IRREPARABLE INJURY. ...........................................................................................27

III.    PLAINTIFFS HAVE DEMONSTRATED THAT THE CITY SUFFERS NO HARM FROM INJUNCTIVE RELIEF AND THAT THE PUBLIC INTEREST FAVORS AN INJUNCTION...............................................................................................29

IV.     PLAINTIFFS' WELL-PLEADED ALLEGATIONS SURVIVE DISMISSAL AND ENTITLE THEM TO RELIEF................................................................................30

A.      Plaintiffs Have Sufficiently Pled Standing To Challenge The Ordinance.............30

1.      Defendants Do Not Challenge And Therefore Concede That Vazzo and New Hearts Have Standing To Challenge The Ordinance...................30

2.      Pickup Has Sufficiently Pled Standing........................................................30

3.      Plaintiffs Have Standing to Challenge The Ordinance On Behalf Of

Their Clients.......................................................................................31

    a.    Plaintiffs have suffered concrete and irreparable injury.................32

    b.    Plaintiffs and their clients have the requisite close relationship......................................................................................32

    c.    Plaintiffs' clients face obstacles to litigation.................................33

B.    As The Government Official Tasked With Enforcing The Ordinance, Ruggiero Is A Proper Defendant.............................................................34

C.    Plaintiffs Have Sufficiently Pled A Violation Of The First Amendment Free Speech Clause....................................................................................35

D.    Plaintiffs Have Sufficiently Pled A Violation Of The First Amendment Free Exercise Clause....................................................................................36

    1.    Plaintiffs' allegations demonstrate sincerely held religious beliefs...........37

    2.    Plaintiffs' allegations demonstrate that the Ordinance violates their sincerely held religious beliefs..................................................38

    3.    Plaintiffs' allegations demonstrate the Ordinance's hostility towards religious beliefs. .......................................................................38

    4.    Plaintiffs' allegations demonstrate that the Ordinance contains individualized exemptions and religious gerrymanders...........................38

E.    Plaintiffs Have Sufficiently Pled That The Ordinance Is *Ultra Vires*....................40

    1.    Preemption analysis is inappropriate at the motion to dismiss stage..........40

    2.    Florida has enacted a pervasive regulatory scheme concerning the entire subject area of mental health professionals, not simply the City's erroneous circumscription to individual issues...............................41

    3.    Plaintiffs' well-pled allegations demonstrate the regulation of mental health professionals is preempted by the State...............................42

F.    Plaintiffs Have Sufficiently Pled That The Ordinance Violates The Florida Patient's Bill Of Rights And Responsibilities...........................................43

G.    Plaintiffs Have Sufficiently Pled That The Ordinance Violates The Florida Religious Freedom Restoration Act........................................................44

CONCLUSION..............................................................................................................45

# TABLE OF AUTHORITIES

**Cases**

*ACLU of Fla., Inc. v. The Florida Bar*, 744 F. Supp. 1094 (N.D. Fla. 1990)................................29

*ACLU v. The Florida Bar*, 999 F.2d 1486 (11th Cir. 1993)..........................................................35

*Aid for Women v. Foulston*, 441 F.3d 1101 (10th Cir. 2006)......................................................34

*Am. Booksellers v. Webb*, 919 F.2d 1493 (11th Cir. 1990)........................................................25

*Ashcroft v. ACLU*, 542 U.S. 656 (2004)....................................................................................16

*Awad v. Ziriax*, 670 F.3d 1111 (10th Cir. 2012) ......................................................................28

*Bd. of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569 (1987)........................................28

*Betancur v. Fla. Dep't of Health*, 296 F. App'x 761 (11th Cir. 2008)........................................42

*Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60 (1983)..........................................................9

*Boos v. Berry*, 485 U.S. 312 (1988)........................................................................................22

*Bowen v. Roy*, 476 U.S. 693 (1986)........................................................................................37

*Bruni v. City of Pittsburgh*, 824 F.3d 353 (3d Cir. 2016)..........................................................27

*Carey v. Population Serv., Int'l*, 431 U.S. 678 (2010)................................................................30

*Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472 (11th Cir. 1991)..........................39

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993)..............36, 37, 38

*City of Dallas v. Stanglin*, 490 U.S. 19 (1989)..........................................................................41

*Classy Cycles, Inc. v. Bay Cnty.*, 201 So.3d 779 (Fla. 2016) ....................................................40

*Comcast Cablevision of Broward Cnty., Inc. v. Broward Cnty.*,
124 F. Supp. 2d 685 (S.D. Fla. 2000).......................................................................................19

*Craig v. Boren*, 429 U.S. 190 (1976)......................................................................................41

*Dana's R.R. Supply v. Attorney General*, 807 F.3d 1235 (11th Cir. 2015)....................................9

*Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328 (5th Cir. 1981)........................31, 32

*Dent v. West Virginia*, 129 U.S. 114 (1889)................................................................42

*Doe v. Bolton*, 410 U.S. 179 (1973)............................................................................31

*Edenfield v. Fane*, 507 U.S. 761 (1993)..............................................17, 18, 19, 21

*Elrod v. Burns*, 427 U.S. 347 (1976) .........................................................................28

*Emp't Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872 (1990)........................37

*Gillette v. United States*, 401 U.S. 437 (1971)............................................................37

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006)....................16

*Heller v. Carnival Corp.,* 191 F. Supp. 3d 1352 (S.D. Fla. 2016)..............................39

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010)...........................................4

*Hunnings v. Texaco, Inc.*, 29 F.3d 1480 (11th Cir. 1994)............................................42

*Jaffree v. Redmond*, 518 U.S. 1 (1996).......................................................................33

*Janus v. Am. Fed'n of State, Cnty. & Mun. Emps., Council 31*, 138 S. Ct. 2448 (2018)................17

*Jouria v. CE Res., Inc.*, No. 0:15-cv-61165-WPD,
2017 WL 3868422 (S.D. Fla. July 17, 2017)............................................................40

*Keeton v. Anderson-Wiley*, 664 F.3d 865 (11th Cir. 2011)......................................11, 12

*Kevin Harrington Enter., Inc. v. Bearwolf*, No. 98-1039-Civ-UNGARO-BENAGES,
1998 WL 798164 (S.D. Fla. Aug. 5, 1998)................................................................40

*KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261 (11th Cir. 2006). ...................30

*King v. Governor of New Jersey*, 767 F.3d 216 (3d Cir. 2014) ................................*passim*

*Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707 (1985).....................41

*Hodgson v. Minnesota*, 497 U.S. 417 (1990)...............................................................25

*In re Florida Cement & Concrete Antitrust Litig.*, No. 09-2387-CIV-ALTONAGA/Brown,
2011 WL 13174536 (S.D. Fla. Feb. 24, 2011)...........................................................31

*In re T.W.*, 551 So.2d 1186 (Fla. 1989).......................................................................25

*Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829 (1978)........................................................18

*Legal Servs. Corp. v. Valazquez*, 531 U.S. 533 (2001) ........................................................5, 12, 13

*Lenz v. Winburn*, 51 F.3d 1540 (11th Cir. 1995)........................................................25

*Locke v. Shore*, 634 F.3d 1185 (11th Cir. 2011)........................................................6

*Mason v. Florida Bar*, 208 F.3d 952 (11th Cir. 2000)........................................................18, 19

*McCullen v. Coakley*, 134 S. Ct. 2518 (2014)........................................................26, 27

*McNaughton v. Johnson*, 242 U.S. 344 (1917)........................................................42

*Mississippi State Chapter, Operation Push, Inc. v. Mabus*, 932 F.2d 400 (5th Cir. 1991)............40

*NAACP v. Button*, 371 U.S. 415 (1963) ........................................................5

*National Institute for Family & Life Advocates v. Becerra,*, 138 S. Ct. 2361 (2018)...............*passim*

*N. Fla. Women's Health & Counseling Servs., Inc. v. State*, 866 So.2d 612 (Fla. 2003)...............25

*Parham v. J.R.*, 442 U.S. 584 (1979)........................................................25, 34

*Parker v. Hurley*, 514 F.3d 87 (1st Cir. 2008)........................................................25

*Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993 (11th Cir. 2004)........................................................31

*Penn. Psychiatric Soc'y v. Green Springs Health Serv., Inc.*, 280 F.3d 278 (3d Cir. 2002).....33, 34

*Pickup v. Brown,* 740 F. 3d 1208 (9th Cir. 2014) ........................................................1, 5, 8

*Planned Parenthood Ass'n of Altanta Area, Inc. v. Miller*, 934 F.2d 1462 (11th Cir. 1991)...........31

*Planned Parenthood Se., Inc. v. Bentley*, 951 F. Supp. 2d 1280 (M.D. Ala. 2013).........................32

*Planned Parenthood of Cent. Miss. v. Danforth*, 428 U.S. 52 (1976)........................................................25, 26

*Prince v. Massachusetts*, 321 U.S. 158 (1944)........................................................25

*Pullman-Standard v. Swint*, 456 U.S. 273 (1982)........................................................39

*Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015) ........................................................4, 13, 14, 15

*Russell v. Lundergan-Grimes*, 784 F.3d 1037 (6th Cir. 2015)........................................................35

*Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115 (1989) ...................................................18, 25

*Sarasota Alliance For Fair Elections, Inc. v. Browning*, 28 So.3d 880 (Fla. 2010).......................41

*Singleton v. Wulff*, 428 U.S. 106 (1976)...........................................................................31, 32, 33

*Socialist Workers Party v. Leahy*, 145 F.3d 1240 (11th Cir. 1998).........................................34, 35

*Thompson v. Oklahoma*, 487 U.S. 815 (1988)............................................................................26

*Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622 (1994)...............................................................17

*United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803 (2000)................................................16

*United States v. Stevens*, 559 U.S. 460 (2010).........................................................................28

*Va. State Bd. of Pharm. v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748 (1976)..................9

*Vill. of Arlington Heights v. Metro Housing Dev. Corp.*, 429 U.S. 252 (1977)............................30

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) .................................................................22

*Warner v. City of Boca Raton*, 887 So.3d 1023 (Fla. 2004)..........................................................45

*Watson v. Maryland*, 218 U.S. 173 (1910)................................................................................42

*Wollschlaeger v. Florida*, 848 F.3d 1293 (11th Cir. 2017) ................................................*passim*

**Statutes**

Fla. Stat. Ann. §381.026(4)(d)(3)...........................................................................................43, 44

Fla. Stat. Ann. § 456.61..........................................................................................................43, 44

Fla. Stat. Ann. §491.003............................................................................................................44

Fla. Stat. Ann. § 761.02............................................................................................................44

## INTRODUCTION

"[R]egulating the content of professionals' speech poses the inherent risk that the Government seeks not to advance a legitimate regulatory goal, but to suppress unpopular ideas or information." *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2374 (2018) ("NIFLA") (internal alterations and citation omitted). "Throughout history, governments have manipulated the content of doctor-patient discourse to increase state power and suppress minorities." *Id*. To the long list of faraway despotic regimes the Supreme Court condemned for this practice, *id*., a new one, much closer to home, may now be added: Defendant City of Tampa, Florida ("City"). By prohibiting licensed therapists from providing **voluntary** Sexual Orientation Change Efforts ("SOCE") counseling – consisting **solely** of pure speech – to minors who **request** and **wish** to receive it, Defendant City, and its chief enforcer Defendant Sal Ruggiero ("Ruggiero") (collectively, "Defendants") have done exactly what the Supreme Court has condemned – they have "fail[ed] to preserve an uninhibited marketplace of ideas in which truth will ultimately prevail." *Id*.

The Supreme Court in *NIFLA* did far more than just condemn Defendants' authoritarian scheme in the abstract. It **abrogated** the two cases upon which Defendants built that entire scheme – *King v. Governor of New Jersey*, 767 F.3d 216, 232 (3d Cir. 2014) and *Pickup v. Brown*, 740 F.3d 1208, 1227–1229 (9th Cir. 2014) – because those cases purported to permit what the First Amendments cannot allow: the classification of speech uttered by professionals as "conduct," for the purpose of prohibiting it while evading constitutional scrutiny. *NIFLA*, 138 S. Ct. at 2371-72.

Left without any cover for their unconstitutional Ordinance 2017-47 ("Ordinance"), Defendants are so committed to suppressing the speech and viewpoint of Plaintiffs Robert Vazzo ("Vazzo") and David Pickup ("Pickup") (collectively, "Plaintiffs"), that even now they do not abandon it. Instead, they contort the Supreme Court's clear teaching in *NIFLA* beyond recognition,

pretend that *King* and *Pickup* are still good law, and incredibly maintain that the voluntary SOCE counseling provided by Plaintiffs to their minor clients who request and wish to receive it is merely "professional conduct" – a constitutional orphan – even though it consists solely and entirely of **speech**, and even though the en banc Eleventh Circuit has denounced this tactic as a "dubious constitutional enterprise." *Wollschlaeger v. Florida*, 848 F.3d 1293, 1309 (11th Cir. 2017) (en banc).

Stripped to its essence, Defendants' arguments are nothing short of a brazen invitation for this Court to overrule the en banc Eleventh Circuit and the Supreme Court, and resurrect the interred logic of *King* and *Pickup*, so that Defendants can go on suppressing Plaintiffs' speech they abhor. At the end of the day, however, the Constitution must prevail, because "the best test of truth is the power of the thought to get itself accepted in the competition of the market, and the people lose when the government is the one deciding which ideas should prevail." *NIFLA*, 138 S. Ct. at 2375.

For the reasons that follow, Plaintiffs' First Amended Verified Complaint (dkt. 78) ("FAVC") doesn't just adequately state cognizable claims for relief, but warrants the injunctive relief sought by Plaintiffs, because they are likely to succeed on the merits. Accordingly, the motions to dismiss filed by the City (dkt. 84) ("City MTD") and Ruggiero (dkt. 91) ("Ruggiero MTD") should be dismissed, and Plaintiffs' Renewed Motion for Preliminary Injunction (dkt. 85) granted.

## LEGAL ARGUMENT

I.   **PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR FIRST AMENDMENT CHALLENGE TO THE ORDINANCE.**

   A.   **Defendants' Efforts To Characterize Plaintiffs' Speech As Conduct And Thereby Evade First Amendment Review Is A "Dubious Constitutional Enterprise" That Fails As A Matter Of Binding Law.**

Although a deluge of flood waters from binding precedent have risen around them, Defendants cling to the flimsy raft they have constructed that Plaintiffs' talk therapy is solely "professional conduct" which Defendants have free-floating authority to regulate without scrutiny

under the First Amendment. (Defendants' Opposition to Plaintiffs' Renewed Motion for Preliminary Injunction (dkt. 99) ("PI Opp."), at 16). Defendants' contention is not surprising given that it had been previously espoused by other government entities attempting to silence SOCE counselors, but binding and unequivocal precedent from the Supreme Court and the en banc Eleventh Circuit, and even the out-of-circuit authority on which Defendants principally rely, **require** this Court to reject and sink Defendants' argument.

> **1.      Defendants could have regulated only conduct, but chose instead to also regulate Plaintiffs' pure speech.**

Defendants and their amicus purposefully conflate hypothetical therapy that takes place through conduct (which, to Plaintiffs' knowledge, no one engages in within the field of SOCE counseling), with counseling that takes place only through speech (which Plaintiffs engage in). Defendants justify the Ordinance's indiscriminate ban on the latter by pretending that it is the former.

To be sure, if Defendants had wanted to ban only "conduct," they could have enacted an ordinance that bans so-called "aversive techniques," such as the hypothetical (and ridiculous) practice of hooking patients up to electrodes and administering electrical shock therapy to rid them of certain thoughts or behaviors. If Defendants had banned only **that** kind of therapy, then their "conduct" argument might have a theoretical leg to stand on. More importantly, if Defendants had banned only **that** type of therapy, Plaintiffs would not have needed to file this lawsuit, since neither Plaintiffs nor any therapist they have ever heard of engages in this type of SOCE therapy. (FAVC ¶¶ 60-61).

What Defendants banned instead is pure speech. Plaintiffs have demonstrated in their Verified Complaint that they "help clients with their unwanted same-sex attractions, behaviors, and identity **by talking with them**," (FAVC ¶ 62 (emphasis added)), that "**[s]peech is the only tool** that

3

Vazzo and Pickup use in their counseling with minors seeking to reduce or eliminate their unwanted same-sex attractions, behaviors, or identity," (*id.* at ¶ 63 (emphasis added)), and that "**[t]he only thing that happens in their counseling sessions is speech**." (*Id.* (emphasis added)). Plaintiffs have also demonstrated that they do not seek to impose their viewpoints, values, or beliefs on their clients, but instead conduct client-directed and client-centered counseling, where the **clients'** goals and fundamental right to **self**-determination are paramount. (*Id.* at ¶¶ 64-66, 68, 70, 106-07, 125).

Neither the Defendants, nor their amicus dispute that **this** is the true nature of Plaintiffs' counseling. Nor could they. And, neither the Defendants, nor their amicus dispute that the Ordinance indiscriminately bans **this** type of speech, along with any hypothetical conduct. Nor could they, because the Ordinance clearly defines banned "conversion therapy" to include "**any counseling**" and not just any "practice or treatment." (FAVC at Exhibit A p. 5, Ordinance 2017-47, Section 14-311(a)).

It is therefore crucially important for the Court to know that every time Defendants and their amicus refer to "professional conduct" or just "conduct," they purport to include Plaintiffs' pure speech, because that is what the Ordinance bans. As demonstrated in the next sections, however, Defendants labor in vain to categorize and lump in Plaintiffs' speech with "conduct."

## 2. Supreme Court precedent compels a finding that Plaintiffs' "talk therapy" is speech.

The Supreme Court has, on numerous occasions, held that a state cannot simply label the **speech** of professionals as **conduct** and obtain some free-floating power to restrain it without scrutiny. *See, e.g.*, *National Institute for Family & Life Advocates v. Becerra,*, 138 S. Ct. 2361, 2371-72 (2018) ("this Court has not recognized 'professional speech' as a separate category of speech. Speech is not unprotected merely because it is uttered by professionals."); *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2229 (2015) (same); *Holder v. Humanitarian Law Project*, 561 U.S. 1, 27

(2010) (government may not concoct some alternative label on protected speech to evade First Amendment review, when the only "conduct" at issue is speech); *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533 (2001) (same); *NAACP v. Button*, 371 U.S. 415, 438 (1963) ("a state may not, under the guise of prohibiting professional misconduct, ignore constitutional rights.").

Indeed, as the *NIFLA* Court recently reiterated, permitting the government to slap a clever label on a professional's speech would eviscerate the protections afforded to doctors, lawyers, nurses, mental health professionals, and many others.

> All that is required to make something a profession . . . is that it involves personalized services and requires a professional license from the State. But that gives the States unfettered power to reduce a group's First Amendment rights by simply imposing a licensing requirement. **States cannot choose the protection that speech receives under the First Amendment**, as that would give them a powerful tool to impose invidious discrimination on disfavored subjects.

*NIFLA*, 138 S. Ct. at 2372 (emphasis added).

### 3.  Binding en banc Eleventh Circuit precedent requires a finding that Plaintiffs' "talk therapy" is speech.

While the Supreme Court's numerous and unequivocal statements alone should have demonstrated to Defendants the constitutional error of their way, the en banc Eleventh Circuit drove a stake through the heart of Defendants' attempt to deploy a labeling scheme to evade the condemnation of the First Amendment. In *Wollschlaeger v. Florida*, 848 F.3d 1293, 1309 (11th Cir. 2017) (en banc), the entire Eleventh Circuit rejected, **word-for-word**, what Defendants proffer here, because "**characterizing speech as conduct is a dubious constitutional enterprise**." (emphasis added). Defendants entirely ignore this development, and continue instead their rote reliance on the contrary holding of *Pickup v. Brown*, 740 F.3d 1208 (9th Cir. 2014) (*e.g.*, PI Opp. at 19, 33-34), even though, in the same breath, the en banc Eleventh Circuit relegated *Pickup* to the dustbin of constitutional history: "There are serious doubts about whether *Pickup* was correctly decided."

*Wollschlaeger*, 848 F.3d at 1309.

In *Wollschlaeger*, much like Defendants here, the government argued that "the First Amendment is not implicated because any effect on speech is merely incidental to the regulation of professional conduct." *Id.* at 1308. But, as does the Ordinance here, the law in question "expressly limit[ed] the ability of certain speakers—doctors and medical professionals—to write and speak about a certain topic—the ownership of firearms—and thereby restrict[ed] their ability to communicate and/or convey a message." *Id.* The Eleventh Circuit had no doubt these restrictions "trigger First Amendment scrutiny. '[S]peech is speech, and it must be analyzed as such for the purposes of the First Amendment.'" *Id.* at 1308 (quoting *King v. Governor of New Jersey*, 767 F.3d 216, 229 (3d Cir. 2014)) (emphasis added). Indeed, "[w]hat the Supreme Court said in concluding its analysis in *Button* seems to **fit like a glove here**: "A state may not, under the guise of prohibiting professional misconduct, ignore constitutional rights." *Id.* (quoting *Button*, 372 U.S. at 439 (emphasis added)).

Defendants' only answer to the unquestionably fatal holding of *Wollschlaeger* is to note that *Locke v. Shore*, 634 F.3d 1185 (11th Cir. 2011) was "favorably cited" in *Wollschlaeger* and permits the government to "incidentally burden" the speech of licensed professionals in their regulations. (PI Opp. at 13). First, *Locke* was not "favorably cited" in *Wollschlaeger*, as Defendants contend, but rather was explicitly found to be "of not much help" to the restriction of what a medical professional could say in the course of their treatment of a patient. *Wollschlaeger*, 848 F.3d at 1309. More importantly, however, is the Eleventh Circuit's condemnation of the rationale that Defendants try to extrapolate from *Locke* to save the Ordinance here. Indeed, "[s]aying that restrictions on writings and speaking are merely incidental to speech is like saying that limitations on walking and running are merely incidental to ambulation." *Id.* The Ordinance here is not some "mere incidental"

regulation of speech – it is a flat prohibition on **the only tool** that Plaintiffs employ in the exercise of their profession – **speech**. (*See* FAVC ¶ 63). As far as Plaintiffs are concerned, the Ordinance only impacts what they **say**, not what they **do**, because – as alleged in the Verified Complaint and recapitulated in Section I.A.1., *supra* – they don't do anything in therapy sessions with minor clients other than **speak**. (FAVC ¶¶ 60-71). What Plaintiffs say to their minor clients is therefore as "incidental" to speech as walking is to ambulation. *Wollschlaeger*, 848 F.3d at 1309.

Stripped down to its essence, Defendants' argument is nothing short of an invitation for this Court to overrule the en banc Eleventh Circuit's clear mandate in *Wollschlaeger*, based upon Defendants' (mis)understanding of other case law. This, Defendants cannot do, because this is not how precedent works. Defendants cannot skip over the Eleventh Circuit to avoid a decision they don't like. This is because, "[w]ithout a *clearly contrary* opinion of the Supreme Court or of this court sitting en banc, we cannot overrule a decision of a prior panel of this court," let alone the entire court sitting en banc. *Garrett v. Univ. of Alabama at Birmingham Bd. of Trustees*, 344 F.3d 1288, 1292 (11th Cir. 2003) (quoting *National Labor Relations Board v. Datapoint Corp.,* 642 F.2d 123, 129 (5th Cir. Unit A Apr. 1981) (italics in original)). "Even if the reasoning of an intervening high court decision is at odds with a prior appellate court decision, that does not provide the appellate court with a basis for departing from its prior decision," let alone the trial court with a basis for overruling the appellate court. *United States v. Vega-Castillo*, 540 F.3d 1235, 1237 (11th Cir. 2008).

The Eleventh Circuit's en banc rejection of Defendants' "speech is professional conduct" argument in *Wollschlaeger* **mandates** a rejection of that same argument by this Court. Plaintiffs' speech is speech.

**4.     Defendants' own authorities mandate a finding that Plaintiffs' "talk therapy" is speech.**

Interestingly, despite Defendants' almost exclusive reliance on *King* throughout a brief that virtually copies and pastes *King* from cover to cover, the only section Defendants seemingly left out of the plethora of block quotes from *King* is the section rejecting the exact same argument that Defendants raise here. If the Supreme Court and en banc Eleventh Circuit precedents were not constitutionally sufficient to eviscerate Defendants' contentions, which they are, even Defendants' own authority destroys their constitutionally infirm proposition. *See King*, 767 F.3d at 224 ("The District Court . . . label[ed] SOCE counseling as conduct that receives no protection under the First Amendment. **We disagree, and hold that the verbal communication that occurs during SOCE counseling is speech**." (emphasis added)); *id.* at 224-25 ("We hold that these communications are speech for the purposes of the First Amendment."); *id.* at 225 ("Given that the Supreme Court had no difficulty characterizing legal counseling as 'speech,' we see no reason here to reach the counter-intuitive conclusion that the verbal communications that occur during SOCE counseling are 'conduct.'"); *id.* at 227 ("the government's *ipse dixit* cannot transform 'speech' into 'conduct' that it may more freely regulate" (citing *Pickup v. Brown*, 740 F.3d 1208, 1216 (9th Cir. 2014) (O'Scannlain, J., dissenting)); *id.* at 228 ("**the enterprise of labeling certain written or verbal communications 'speech' and others conduct is unprincipled and susceptible to manipulation**." (emphasis added)).

Reading Defendants' briefs, however, it would appear these passages were somehow left out of their copy of the *King* opinion. Indeed, Defendants provide not one passing reference to the unequivocal conclusions of the Third Circuit rejecting *Pickup* and Defendants' exact position here, yet Defendants still rely upon *King* as if it was the last word, and as if it supports rather than eviscerates their contention. Nevertheless, as the deluge of recent precedent dictates, this Court is

not authorized to credit Defendants' constitutionally dubious enterprise of labeling the speech of licensed mental health professionals as conduct. Binding precedent requires a finding that the Ordinance regulates speech.

### B. Defendants' Attempt To Characterize Plaintiffs' Speech As Commercial And Thereby Avoid The First Amendment's Most Exacting Scrutiny Ignores The Plain Text Of The Ordinance And Fails As A Matter Of Binding Law.

Defendants' alternative escape hatch from strict scrutiny fairs no better. In fact, Defendants' second argument is merely a different incarnation of their first "dubious" labeling enterprise – this time attaching the different but equally unconstitutional label of "commercial speech" to Plaintiffs' counseling. Defendants' attempt to evade the clear import of *NIFLA* and *Wollschlaeger* by shoehorning Plaintiffs' speech-only counseling into "commercial speech" is not only foreclosed as a matter of binding precedent, but also ignores the plain text of their own Ordinance.

First, commercial speech is that speech which "does no more than propose a commercial transaction." *Va. State Bd. of Pharm. v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976); *see also Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983) (commercial speech is that which can be "characterized merely as proposals to engage in commercial transaction"); *Dana's R.R. Supply v. Attorney General*, 807 F.3d 1235, 1246 (11th Cir. 2015) (same). Here, Plaintiffs' speech cannot be so circumscribed. Indeed, Plaintiffs' speech-only counseling or talk therapy represent no proposal for economic activity at all. (FAVC ¶ 63) ("They sit down with their clients and talk to their clients **about the client's goals, objectives, religious beliefs, desires, and identity**." (emphasis added)); (*Id.* ¶ 65) ("Plaintiffs Vazzo and Pickup employ speech **to help clients understand and identify their anxiety or confusion** regarding their attractions or identity, and then help the client to formulate the method of counseling that will most benefit that particular client." (emphasis added)).

9

Notably absent from Plaintiffs' counseling are "proposals for economic activity." Yet, that

point seems irrelevant to Defendants' position because their contention appears to be that any speech

of a licensed professional in the course of their profession must always be "commercial speech." (PI

Opp. at 16). But, this proposition ignores reality and binding Eleventh Circuit precedent. Indeed,

> [a]lthough a professional may be viewed as engaged in the transaction of selling his
> professional advice, **one must, of course, distinguish between the offer and the**
> **actual presentation of professional advice**, **which is no more a commercial**
> **transaction that is the actual writing or reading of a book or newspaper that is**
> **available for sale**.

*Wollschlaeger*, 848 F.3d at 1309 n.4 (quoting Daniel Halberstam, *Commercial Speech, Professional*

*Speech, and the Constitutional Status of Social Institutions*, 147 U. Pa. L. Rev. 771, 840-841 (1999))

(emphasis added). Here, the mere fact that Plaintiffs may receive compensation for their professional

services does not render talk therapy that contains no economic proposals "commercial speech."

Defendants' contentions to the contrary are utterly without merit.

Second, even if Defendants' attempt to make all of Plaintiffs' speech "commercial" and

thereby subject to lesser scrutiny was legally sound, which it is not, such a contention is belied by

the plain language of the Ordinance. Defendants were not content to ban only talk therapy provided

for a fee, but instead prohibited Plaintiffs from offering or engaging in voluntary, speech-only SOCE

counseling **regardless of whether any financial compensation is received**. (FAVC ¶ 27 and Ex.

A at 6, §5) ("[i]t shall be unlawful for any Provider to practice conversion therapy efforts on any

individual who is a minor **regardless of whether the Provider receives monetary compensation**

in exchange for such service." (emphasis added)). Thus, a transaction that has no economic element

whatsoever (*i.e.*, SOCE counseling without Plaintiffs even discussing, let alone actually receiving,

monetary compensation) is still commercial speech according to Defendants. Such is not the law.

Defendants' labeling arguments have no merit.

**C.    Defendants Fail To Escape The Constitutional Infirmity Of The Ordinance's Viewpoint Discrimination.**

Defendants rely principally on *Keeton v. Anderson-Wiley*, 664 F.3d 865 (11th Cir. 2011) to assert that the Ordinance – which indisputably bans a viewpoint – is nevertheless not viewpoint discriminatory. (PI Opp. at 17). *Keeton*, however, is wholly inapposite because it did not address "requiring adherence to professional standards prohibiting conversion therapy" or whether such requirements are viewpoint neutral, as Defendants suggest. (*Id.*).[1] Instead, *Keeton* dealt with a counseling student who was asked to participate in an educational remediation plan because the student "expressed an intent **to impose her personal religious views on her clients**, in violation of the ACA Code of Ethics." *Id.* at 872 (emphasis added). Indeed, the remediation plan itself stated that "the intent of the remediation plan is not necessarily to alter your views about sexual orientation," but instead to help Keeton "be aware of her views and not impose them on others." *Id.* The evidentiary record in the case also demonstrated that the school's intent in asking *Keeton* to complete a remediation program was "teaching Keeton not to impose her values on clients." *Id.* at 873. Such educational requirements were viewpoint neutral, according the Eleventh Circuit, because the focus of the entire education program was to instruct students that "all graduate students, regardless of personal beliefs, must counsel clients in accordance with the ACA Code of Ethics." *Id.* at 874. The Eleventh Circuit concluded by noting that the plan was viewpoint neutral because it was "aim[ed] at Keeton's unwillingness to comply with the ACA code of ethics" for students engaged in the practicum, not at her religious viewpoints. *Id.*

---

[1]    Importantly, even if Defendants' contention were correct, which it is not, there are no such "professional standards prohibiting conversion therapy" in Florida, so *Keeton* would still be inapposite. (*See* FAVC ¶¶ 271-272) (noting that the sole regulator of mental health professionals in Florida does not prohibit SOCE counseling and has rejected efforts to impose such a restriction on professionals' speech).

*Keeton* provides no refuge for Defendants because the Ordinance here does not simply prohibit Plaintiffs from imposing their views on minor clients. If that is all the Ordinance had done, it would have been unnecessary, since professional standards already prohibit therapists, including Plaintiffs, from imposing their viewpoints on unwilling clients. (FAVC ¶¶ 78-82). Moreover, if that is all the Ordinance had done, Plaintiffs would not have needed to file this lawsuit, since they have no interest in imposing their views, beliefs, or values upon any of their clients, minors included. (*Id.* at ¶¶ 64-66, 68, 70, 106-07, 125).

Plaintiffs seek only to conduct client-directed and client-centered counseling where the **clients'** goals and fundamental right to **self**-determination are paramount. (*Id.*) Defendants' Ordinance prohibits Plaintiffs' speech-only SOCE counseling even when the clients themselves present with unwanted same-sex attractions, behaviors or identity, even when the clients themselves have the viewpoint that change is possible, and even when the clients themselves request and want Plaintiffs' talk therapy. *Keeton* therefore is wholly inapposite, because the Ordinance doesn't merely prohibit Plaintiffs from **imposing** their viewpoints on their clients, but also prohibits Plaintiffs from **sharing** their viewpoints with their clients, and, more importantly, prohibits the clients themselves from seeking and receiving counseling that matches the clients' viewpoint. (*Id.* ¶¶ 27-28).

Defendants also labor in vain to escape the unquestionable import of *Legal Services Corp. v. Velazquez*, 531 U.S. 533 (2001). Defendants' only contention is that *Velazquez* is "inapposite" because it did not "address conversion therapy, reparative therapy, or SOCE." (PI Opp. at 17). Defendants seem to suggest that if the precise factual scenarios are not identical, then the precedent's legal reasoning is of no consequence. Such is not the law. Precedent sets a general rule that is to be followed in factually similar instances, not a rigid formula that can only apply in identical factual patterns. *Velazquez* confirmed that the universal prohibition on viewpoint discrimination is equally

applicable in the context of professional speech. 531 U.S. at 537-38 (holding that restricting what speech a lawyer is permitted to engage in during the course of his representation of a client is unconstitutional viewpoint discrimination). Because the Ordinance prohibits the speech of licensed mental health professionals based on the viewpoint that they **and their clients** espouse, it is unconstitutional. (*See* PI Motion at 7-11).

      **D.**      **The *NIFLA*, *Reed*, And *Wollschlaeger* Triumvirate Mandate The Application Of Strict Scrutiny Which The Ordinance Cannot Survive.**

          **1.**      **Defendants' Continued Reliance On *King* And *Pickup* Is Utterly Misplaced Because The Supreme Court Has Abrogated Both Of Those Authorities.**

Defendants maintain their steadfast reliance on *King* and *Pickup* for the notion that a content-based restriction on the speech of licensed mental health professionals need only satisfy minimal or intermediate constitutional scrutiny. (PI Opp. at 10) (asserting that *King* is "extremely relevant" to the issue here). Fatally for Defendants, the relevant portions of *King* and *Pickup* were abrogated by the Supreme Court in *NIFLA*. And, even if *NIFLA* had not put the final nail in the constitutional coffin of *King* and *Pickup*, which it did, *Reed* and *Wollschlaeger* alone would suffice to entomb any remnants of their unconstitutional underpinnings.

The first nail in the *King-Pickup* coffin was hammered by *Reed*. There, the Supreme Court handed down the firm rule: <u>**all content-based restrictions of speech must survive strict scrutiny**</u>. *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015). Indeed, "a law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of animus towards the ideas contained in the regulated speech." *Id.* In handing down that firm rule, the Supreme Court unequivocally stated that it applied equally to **any** content-based regulation of the speech of licensed professionals. *Id.* at 2229 ("it is no answer to say that the purpose of these regulations was merely to insure high professional standards"). This post-*King* and

post-*Pickup* precedent from the Supreme Court eviscerated any notion that a content-based restriction on the speech of licensed professionals needed only satisfy lesser constitutional scrutiny. Fatally for Defendants' contentions, that is precisely the constitutional error *King* made in applying intermediate scrutiny. *See King*, 767 F.3d at 236 ("although we agree with Plaintiffs that A3371 discriminates on the basis of content, it does so in a way that does not trigger strict scrutiny."). Defendants continue to cite this proposition as though it remains good law. (PI Opp. at 8-9). **It is not**. A finding that a law is content-based on its face – which is of "little doubt" with ordinances banning SOCE counseling, *see King*, 767 F.3d at 236 n. 20 – is dispositive and mandates the application of strict scrutiny post-*Reed*.

Following *Reed*'s firm rule, the Eleventh Circuit secured the *King-Pickup* constitutional coffin even further by declaring that regulations of the speech of licensed professionals is not subject to lesser scrutiny simply by deploying a labeling scheme. *See* Section I.A.3, *supra*. Indeed, try as they have, Defendants cannot retreat to the principle that the Ordinance regulates only "professional conduct" and thereby evade scrutiny. *See Wollschlaeger*, 848 F.3d at 1309 ("**characterizing speech as conduct is a dubious constitutional enterprise**." (emphasis added)).

Defendants try to escape the import of *Wollschlaeger* by quipping that it nonetheless applied intermediate, not strict, scrutiny to a professional regulation. (PI Opp. at 12). However, *Wollschlaeger* did not apply intermediate scrutiny because it was the constitutionally appropriate level of scrutiny. On the contrary, *Wollschlaeger* noted that it did not even need to subject the content-based regulation of licensed medical professionals' speech to the *Reed*-required strict scrutiny, because it failed even under intermediate scrutiny. 848 F.3d 1308 (noting that the challenged law "fail[s] even under heightened scrutiny"). Thus, *Wollschlaeger* did not contradict *Reed*, as Defendants appear to suggest, not that the Eleventh Circuit could even contradict the

14

Supreme Court.

Lastly, the stake through the heart of Defendants' no-strict-scrutiny argument was driven by *NIFLA*. In *NIFLA*, the Supreme Court affirmed *Reed*'s firm rule mandating strict scrutiny for all content-based restrictions of speech, expressly abrogated *King*'s and *Pickup*'s erroneous conclusions that content-based regulations of so-called "professional speech" do not receive strict scrutiny, and condemned the invidious discrimination inherent in bans on the speech of licensed professionals. *NIFLA*, 138 S. Ct. at 2371 (all content-based restrictions on speech receive strict scrutiny). Indeed, gutting *King* and *Pickup* **by name**, *NIFLA* stated that "[s]o defined, these courts except professional speech from the rule that content-based regulations of speech are subject to strict scrutiny . . . . **But, this Court has not recognized professional speech as a separate category of speech. Speech is not unprotected merely because it is uttered by professionals**." *Id.* at 2371-72 (emphasis added). And, confirming that content-based restrictions on the speech of licensed professionals receive strict scrutiny, *NIFLA* held that "States cannot choose the protection that speech receives under the First Amendment, as that would give them a powerful tool to impose invidious discrimination of disfavored subjects," such as any counseling that seeks to help a minor reduce or eliminate their unwanted same-sex attractions, behaviors, and identity. *Id.* at 2375.

Thus, in the aftermath of the *Reed*, *Wollschlaeger*, and *NIFLA* triumvirate, there is **nothing** left of the unconstitutional regime established in *King* and *Pickup*. Defendants' continued reliance on *King* and *Pickup* is woefully misplaced. What the Supreme Court and the en banc Eleventh Circuit have permanently interred, Defendants cannot now resurrect.

2.     **Under Strict Scrutiny, It Is Defendants' Burden To Demonstrate That The Ordinance Is Supported By A Compelling Interest And That It Is The Least Restrictive Means To Achieve That Interest.**

Even on a motion for preliminary injunction, Defendants unquestionably bear the burden of demonstrating that the Ordinance is narrowly tailored. As the Supreme Court has held: "the burdens at the preliminary injunction stage track the burdens at trial." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006). As such, on a preliminary injunction motion, **the government** – not the movant – bears the burden of proof on narrow tailoring, because **the government** bears that burden at trial. *Ashcroft v. ACLU*, 542 U.S. 656, 665 (2004) (on preliminary injunction motion, "**the burden is on the government** to prove that the proposed alternatives will not be as effective as the challenged statute." (emphasis added)).

Defendants indisputably bear the burden of proving narrow tailoring at trial. *See, e.g.*, *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000) ("When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions."); *id.* at 2540 ("To meet the requirement of narrow tailoring, **the government must demonstrate** that alternative measures that burden substantially less speech would fail to achieve the government's interests, not simply that the chosen route is easier" (emphasis added)). Thus, Defendants also bear – and fall woefully short of meeting – the burden of proving narrow tailoring here. *Gonzales*, 546 U.S. at 429; *Ashcroft*, 542 U.S. at 665.

3.     **The Ordinance's Prohibition On Voluntary SOCE Counseling Is Not Supported By A Compelling Interest.**

a.     **Defendants' assertion that this Court must defer to the legislature's findings of harm is inapplicable in the First Amendment context.**

Defendants once again rely on abrogated law – this time to contend that this Court must give substantial deference to the City's legislative "findings." (PI Opp. at 18). But, as demonstrated

above, *King* is no longer good law. Even if *King* were still good law, Defendants would still fail to meet the legislative deference standard it employed. While *King* held that the government could rely on "empirical judgments of independent professional organizations," 767 F.3d at 238, the studies and position statements of the APA and others relied upon by Defendants do **not** provide any empirical judgments as to **voluntary** SOCE counseling which minors request and wish to receive. (*See* FAVC, Ex. A at 73). Indeed, the APA Report – the primary basis for Defendants' assertion that SOCE counseling is harmful – unequivocally states that there is **no empirical evidence** of harm and that the studies were woefully inadequate to support any findings as to minors. (*Id.*) ("**We found no empirical research on adolescents who request SOCE**." (emphasis added)); (*id.* at 91) ("sexual orientation issues in children are virtually unexamined"); (*id.* at 72) ("there is a lack of published research on SOCE among children"). Thus, even if *King* were still good law, it provides no refuge where, as here, Defendants have no empirical evidence of the harm they are purporting to correct.

*King*, however, is not good law, and does not supply the correct standard. In the First Amendment context, much more is required and the government is not entitled to substantial deference in making speech-restrictive determinations. When "[a] speech-restrictive law with widespread impact" is at issue, "**the government must shoulder a correspondingly heavier burden and is entitled to considerably less deference in its assessment that a predicted harm justifies a particular impingement on First Amendment rights**." *Janus v. Am. Fed'n of State, Cnty. & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2472 (2018) (emphasis added). Here, because the Ordinance infringes upon the free speech rights of licensed medical professionals, the government "must do more than simply posit the existence of the disease sought to be cured. **It must demonstrate that the recited harms are real, not merely conjectural**." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 664 (1994); *see also Edenfield v. Fane*, 507 U.S. 761, 770 (1993)

17

(regulation of professional speech must still demonstrate that the alleged harm is not "mere speculation or conjecture"); *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 841 (1978) (same). This is so because "[d]eference to legislative findings cannot limit judicial inquiry when First Amendment rights are at stake." *Landmark Commc'ns*, 435 U.S. 843.

Courts have not hesitated to invalidate ordinances that impose restrictions on speech based on supposition and conjecture, rather than empirical evidence. In *Edenfield*, where the government sought to restrict the speech of licensed accountants, the government "presented no studies" and relied upon a record that "contain[ed] nothing more than a series of conclusory statements that add little if anything" to the government's effort to regulate certain speech. 507 U.S. at 771. Also, the government relied upon a report of an independent organization to bolster its claims of harm, but – exactly as the APA Report does in this case – the report there admitted that it was "**unaware of the existence of any empirical data supporting the theories**" of alleged harm. *Id.* at 772 (emphasis added). Because of the lack of evidence of harm, the Supreme Court invalidated the restriction as a violation of the accountants' First Amendment rights.

In *Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115 (1989), the Supreme Court again confronted a record (like here) where there was nothing more than anecdote and suspicion of harm behind a total prohibition on the targeted speech. 492 U.S. at 129. There was no record evidence "aside from conclusory statements during the debates by proponents of the bill" and the record "contain[ed] no evidence" concerning the alleged effectiveness of other alternatives. *Id.* Because of that failure, the Supreme Court invalidated the ban. *Id.*

The Eleventh Circuit, too, has invalidated laws regulating professional speech when the alleged harm purportedly being addressed was unsupported by **concrete evidence**. In *Mason v. Florida Bar*, 208 F.3d 952 (11th Cir. 2000), the government attempted to regulate the speech of

attorneys, but "presented no studies, nor **empirical evidence** of any sort to suggest" that the harm they were positing was real, rather than merely conjectural. *Id*. at 957 (emphasis added). The Eleventh Circuit held that, to survive scrutiny, the government "has the burden . . . of producing **concrete evidence**" of the alleged harm prior to restricting the protected speech of licensed professionals. *Id.* at 958 (emphasis added). Indeed, it held that when there are "glaring omissions in the record of identifiable harm," the government has not satisfied "its burden to identify a **genuine threat of danger**." *Id.* (emphasis added).

> **b.    Defendants cannot meet their burden of producing concrete evidence of actual harm from voluntary SOCE counseling.**

Defendants have not produced any evidence that anyone was ever harmed in their jurisdiction by any SOCE counseling, let alone voluntary SOCE counseling that minors request and want to receive. **Plaintiffs have propounded pre-hearing discovery requests on Defendants**, and expect to be able to show the Court at the hearing that Defendants' abject failure is not accidental – Defendants really have **no evidence of any complaints**, let alone actual harm, occurring to anyone from any of the voluntary SOCE counseling they have indiscriminately banned.

Without any evidence – empirical or otherwise – of any harm occurring in the City, Defendants are left to justify their Ordinance with **a single study**, the APA Report, which unequivocally says quite the opposite of what Defendants are required to show: "**We found no empirical research on adolescents who request SOCE**." (FAVC, Ex. A at 72-73, 91 (emphasis added)). Thus, like in *Mason* and *Edenfield*, the City has conducted no independent inquiry into the alleged harm and has proffered no substantial or concrete evidence demonstrating that the actual harm exists. (*See* PI Motion at 13-17). Because of that failure, the Ordinance fails strict scrutiny. *See, e.g.*, *Comcast Cablevision of Broward Cnty., Inc. v. Broward Cnty.*, 124 F. Supp. 2d 685, 697-98 (S.D. Fla. 2000) (where government's alleged harm "appears to be non-existent," where the

government "conducted no inquiry," and "proffered no substantial evidence demonstrating that actual harm exists," the government fails its burden and the regulation of speech cannot survive First Amendment scrutiny). Defendants' reliance on one empirical study that found no empirical support of harm to minors from voluntary counseling does not and cannot serve as a compelling interest.

Defendants and Equality Florida attempt to mask the fact that the single study they cite actually refutes the notion of empirical harm, by parroting the self-serving language they inserted in their Ordinance, that SOCE harms are supposedly documented by "overwhelming research." (MTD at 2-3; EF PI Amicus 5-6). Besides the APA Report, **not a single one** of the other statements, reports, or position papers cited in the Ordinance ever discussed, much less reached a conclusion on, whether voluntary SOCE counseling which minors request and wish to receive is harmful. Indeed, Defendants' "overwhelming research" **is not research at all, but represents mere policy and political statements of organizations opposed to SOCE counseling**. (*See, e.g.*, Dkt. 24-3, at 53 to dkt. 24-4 at 1-4 (citing American Psychoanalytic Association "Position Statement"); (dkt. 24-4, at 6) (citing American Academy of Child & Adolescent Psychiatry review of articles and position papers); (dkt. 24-4, at 27-29) (citing Pan American Health Organization "Position Statement" on SOCE counseling); (dkt. 24-4, at 31-32) (citing American School Counselor Association "Position Statement" on SOCE Counseling); (dkt. 24-4, at 34-51, 24-5, at 1-48, dkt. 24-6, 1-10) (citing a Substance Abuse and Mental Health Services Administration "review paper" discussing policy statements and research of other academics on SOCE counseling); (dkt. 24-6, at 12-25) (citing American College of Pediatricians "Position Paper" on SOCE counseling); (dkt. 24-6, at 27-32) (citing American Medical Association "policy statement"); (dkt. 24-6, at 34-38) (citing policy statement of World Psychiatric Association); (dkt. 24-6, at 40-43) (citing policy statement of the National Association of Social Workers); (dkt. 24-6, at 45-57 (citing the Agency for Healthcare

Research and Quality policy preference guidelines)).

Astoundingly silent in all of these political, ideological, and opinion statements is any discussion whatsoever of **concrete evidence** of actual harm or **empirical research** discussing anything related to voluntary SOCE counseling that is not forced upon unwilling minors. That silence is deafening. Indeed, as the Supreme Court condemned in *Edenfield*, these represent "nothing more than a series of conclusory statements that add little if anything" to Defendants' effort to outlaw Plaintiffs' speech. 507 U.S. at 771. Position statements and policy preference of ideological opponents of SOCE counseling, that provide no empirical research on voluntary SOCE counseling, do not and cannot support a complete prohibition on such counseling. The First Amendment demands more.

> **4.    The Ordinance Is Not Narrowly Tailored.**
>
> > **a.    Defendants cannot meet their burden of proving narrow tailoring because they cannot show that the Ordinance is the least restrictive means.**

Plaintiffs "**must be deemed likely to prevail unless the government has shown that [Plaintiffs'] proposed less restrictive alternatives are less effective than enforcing the act**." *Ashcroft*, 542 U.S. at 666 (emphasis added). Defendants cannot do so.

Attempting to resurrect *King* from its constitutional grave yet again, Defendants contend that the Ordinance is narrowly tailored because it need not "employ the least restrictive means." (PI Opp. at 9) (quoting *King*, 767 F.3d at 238)). *King* did not require a least restrictive means because it erroneously used intermediate scrutiny, not the *Reed-NIFLA-Wollschlaeger* mandated strict scrutiny. *King*, 767 F.3d at 238-40 ("under intermediate scrutiny, New Jersey is not required to employ the least restrictive means."). As demonstrated above, *Reed*, *NIFLA* and *Wollschlaeger* mandate that the Ordinance survive strict, rather than intermediate, scrutiny. Under strict scrutiny,

Defendants are absolutely required to demonstrate that the Ordinance is the least restrictive means available. *See Boos v. Berry*, 485 U.S. 312, 329 (1988) (when content-based restrictions on speech are analyzed under strict scrutiny, an ordinance "is not narrowly tailored [where] a less restrictive alternative is readily available"); *Ward v. Rock Against Racism*, 491 U.S. 781, 798 n.6 (1989) (noting that under "the most exacting scrutiny" applicable to content-based restrictions on speech, the government must employ the least restrictive alternative to pass narrow tailoring).

Defendants cannot show that the Ordinance is narrowly tailored as the least restrictive alternative to meet their purported interests. For example, if Defendants were genuinely concerned about the purported harms of subjecting unwilling minors to involuntary SOCE counseling – forcing them to participate against their will – they could have banned **that** practice. Plaintiffs would not have needed to file this lawsuit, since they only provide voluntary SOCE counseling that minors request and wish to receive. (FAVC at ¶¶ 64-66, 68, 70, 106-07, 125).

Yet another less restrictive means would have been to ban only aversive techniques or other **conduct**, in the genuine sense – not Defendants' contrived definition – of that word. If Defendants were genuinely concerned about the harms of electroshock therapy, or beatings, or induced vomiting, or any other bizarre and imagined "therapy" carried out through conduct, as opposed to pure speech, Defendants could have banned **those** practices. Plaintiffs would not have needed to file this lawsuit, since they engage in speech-only talk therapy. (FAVC at ¶¶ 64-66, 68, 70, 106-07, 125).

And another less restrictive alternative Defendants could have employed was to require informed consent from minors and their parents who seek voluntary SOCE counseling. While Defendants contend that informed consent provisions were rejected as less restrictive alternatives in *King* (PI Opp. at 10), *King*'s analysis is inapposite given *Reed* and *NIFLA*. Defendants cannot

22

seriously contend that an alternative that has been considered effective and less restrictive of speech by large mental health professional organizations is somehow ineffective to achieve their purported purpose. Indeed, when similar legislation was considered in California, numerous mental health organizations wrote to the legislature arguing that informed consent was a better and less restrictive approach. (FAVC ¶ 185 and Ex. E). Defendants ignored this alternative, along with all of the others.

> **b.    Defendants' rejection of informed consent alternatives is pretextual, contradicts the Ordinance, violates Florida law, and violates the United States Constitution.**

Defendants now contend that informed consent is insufficient to protect their purported interest because minors cannot consent to SOCE counseling. (PI Opp. at 10). Initially, this argument is pretextual and irrelevant here because, as shown in the next section, **Defendants never actually considered this while debating the Ordinance**. Clever argument of counsel after-the-fact does not supplant the close and serious consideration of less restrictive alternatives which Defendants were constitutionally required to undertake **before** enacting the Ordinance. (*See* Section I.D.4.c., *infra*).

Even more fatal to the City's belated argument, it fails for four additional, independent reasons: (1) it is a strawman argument that ignores the ability of parents to consent for their minor children, and contradicts the terms of the Ordinance, (2) it violates Florida law, (3) it is contradicted by the case law, including Defendants' own authority, and (4) it is itself a constitutional violation.

First, Defendants ignore the undisputed fact that parents can provide informed consent for their minor children who wish to receive SOCE counseling. Moreover, under the Ordinance, a minor and his or her parent are unquestionably presumed to be able to (and indeed can) consent to counseling if such services include counseling related to the minor "undergoing gender transition." (FAVC ¶ 28, and Ex. A at §4(a)). According to Defendants, minors (and perhaps their parents) are perfectly capable of making the decision to seek radical alteration of their biological anatomy, or

undergo radical gender hormone therapy, and may consent to counseling helping them to undergo such efforts. But, if a minor (and his or her parents) seek counseling Defendants disagree with, the ability to consent somehow magically vanishes. Indeed, for those minors who wish to merely sit down with a licensed counselor to talk about reducing or eliminating unwanted same-sex attractions, behaviors, or identity, Defendants cannot allow consent, **even if the minors have their parents' approval**. Defendants cannot have it both ways, and their arguments demonstrate that they are merely targeting one form of counseling with which they disagree. Defendants easily could have required SOCE counselors to obtain the informed consent of minors **and their parents** before engaging in voluntary SOCE counseling with those minors who request and wish to receive it. Defendants ignored this less restrictive alternative, in favor of a total ban.

Second, even taking parents out of the picture, as Defendants' consent argument inexplicably does, Florida statutory law permits minors to consent to mental health counseling. Minors over the age of thirteen have the right to request, consent to, and receive mental health counseling when necessary. *See* Fla. Stat. Ann. § 394.4784(2) (minors over the age of 13 "**shall have the right to request, consent to, and receive outpatient crisis intervention services including individual psychotherapy, group therapy, counseling, or other forms of <u>verbal therapy</u> provided by a licensed mental health professional**" (emphasis added)); *see also* Fla. Stat. Ann. § 397.501(7)(e)(1) ("a minor **acting alone** has the legal capacity to voluntarily apply for and obtain substance abuse treatment" (emphasis added)). Florida law also permits a minor to request, consent to, and obtain medical services related to pregnancy. *See* Fla. Stat. Ann. § 743.065 ("An unwed pregnant minor may consent to the performance of medical or surgical care relating to her pregnancy."). Thus, Defendants' contentions that a minor is somehow wholly unable to provide consent to any medical or mental health counseling because of their tender age defies State law.

24

Third, abundant precedent from the Supreme Court, the Eleventh Circuit, and the Florida Supreme Court evidences the ability of minors to give informed consent to medical treatment. *See, e.g.*, *Planned Parenthood of Cent. Miss. v. Danforth*, 428 U.S. 52, 75 (1976) (holding that constitutional rights do not mature and come into being magically only when one attains the state-defined age of majority, and noting that minors can consent to certain medical procedures); *Lenz v. Winburn*, 51 F.3d 1540, 1548 (11th Cir. 1995) (noting that minors are able to give consent for purposes of the Fourth Amendment); *N. Fla. Women's Health & Counseling Servs., Inc. v. State*, 866 So.2d 612, 622 (Fla. 2003) (noting that a minor is fully capable and statutorily permitted to give informed consent to medical services); *In re T.W.*, 551 So.2d 1186, 1195 (Fla. 1989) (noting that Florida law permits minors to give informed consent for significant medical decisions, even when such decisions have "dire possible consequence").

Indeed, Defendants' own authorities also recognize the ability of minors to give informed consent. Defendants rely on *Hodgson v. Minnesota*, 497 U.S. 417 (1990), to suggest that minors cannot give informed consent. (PI Opp. at 11 n.7). *Hodgson* actually stands for the opposite proposition, noting that the constitutional rights of minors do not mature and come into being magically only when one attains the age of majority, and that minors have the ability to give informed consent to medical services relating to pregnancy. 497 U.S. at 448-49.[2] Additionally, while

---

[2]     Defendants also devote a lengthy footnote citing to a litany of cases having nothing to do with a minor's ability to consent to medical care. Defendants' cited authorities actually stand for nothing more than the unremarkable contention that the government has an interest in protecting minors. *See, e.g.*, *Parham v. J.R.*, 442 U.S. 584 (1979) (involuntary commitment for minors representing a danger to themselves); *Prince v. Massachusetts*, 321 U.S. 158 (1944) (child labor laws); *Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115 (1989) (restrictions on dial-a-porn access for children); *City of Dallas v. Stnglin*, 490 U.S. 19 (1989) (restriction on teenagers patronizing certain dance halls); *Parker v. Hurley*, 514 F.3d 87 (1st Cir. 2008) (school curriculum); *Am. Booksellers v. Webb*, 919 F.2d 1493 (11th Cir. 1990) (obscene materials). Defendants' reliance on the unremarkable proposition that the state has an interest in protecting children lends no support for the notion that minors can never consent to medical treatment.

Defendants place much reliance on the APA Task Force Report for asserting that SOCE counseling should somehow be banned, they once again seem to be missing pages from their copy. As the APA Task Force Report itself states: "**It is now recognized that adolescents are cognitively able to participate in some health care treatment decisions**." (Dkt. 1, Ex. A at 130). (emphasis added).

Fourth and finally, and perhaps most fatal for Defendants, their contention itself represents yet another constitutional violation. **It is "unconstitutional for a legislature to presume that all minors are incapable of providing informed consent**." *Thompson v. Oklahoma*, 487 U.S. 815, 854 (1988) (citing *Planned Parenthood of Cent. Mo. v. Danforth*, 428 U.S. 52, 74-75 (1976) (emphasis added)). Here, Defendants contend that they have the authority to presume minors are incapable of consenting to only one form of counseling: SOCE counseling. This runs roughshod over the rights of those minors in the City who voluntarily seek SOCE counseling.

In sum, there are no barriers, legal or otherwise, to the informed consent alternatives that Defendants never considered and failed to adopt. Even without, but especially with, their parents, minors can consent to voluntary SOCE counseling that they request and wish to receive. Defendants' failure to consider informed consent as an alternative means that they flunk the narrow tailoring test.

> **c.** **Defendants have not shown that they seriously considered less speech-restrictive alternatives and ruled them out for good reason.**

Defendants also flunk the narrow tailoring strict scrutiny test for yet another, even more compelling reason. In connection with their narrow tailoring burden, Defendants must show that they "**seriously** undertook to address the problem with less intrusive tools readily available to [them]," meaning that they "**considered different methods that other jurisdictions have found effective**." *McCullen v. Coakley*, 134 S. Ct. 2518, 2539 (2014) (emphasis added). "To meet the requirement of narrow tailoring, the government must demonstrate that alternative measures that

burden substantially less speech would fail to achieve the government's interests, not simply that the chosen route is easier." *Id.* at 2540. Thus, Defendants "would have to show either that **substantially less-restrictive alternatives were tried and failed**, or that the **alternatives were closely examined and ruled out for good reason**." *Bruni v. City of Pittsburgh*, 824 F.3d 353, 370 (3d Cir. 2016) (emphasis added).

Defendants have done neither, nor does the legislative record upon which they seek to rely include one second of discussion concerning potential alternatives. Indeed, astoundingly absent from the **nearly 700 pages** submitted to this Court by Defendants is any mention of any consideration or discussion of any other alternative. Indeed, the only debate whatsoever concerning the Ordinance and proposed changes was how large the fine should be for counselors found in violation of it. (*See* Dkt. 26-2, at 38-46). There was no discussion at all concerning informed consent, no discussion of alternatives that other government bodies have undertaken or considered, no discussion of the existing ethical codes that prohibit licensed counselors from engaging in harmful practices, and no discussion of anything other than the desire to punish licensed counselors for engaging in voluntary SOCE counseling.

**Plaintiffs have propounded pre-hearing discovery requests directed at Defendants' failure to consider other alternatives**, and expect to be able to show the Court at the hearing that Defendants' failure to adduce evidence on this critical point is not accidental – Defendants have none. Because Defendants failed to discuss, consider, or try less restrictive alternatives, they cannot satisfy the demanding burden placed upon them by the Supreme Court in *McCullen*. The Ordinance therefore fails strict scrutiny at every level and must be enjoined.

## II. PLAINTIFFS HAVE DEMONSTRATED THAT THEY ARE SUFFERING IRREPARABLE INJURY.

Defendants' contentions regarding Plaintiffs' irreparable injury boil down to the absurd

notion that Plaintiffs can simply go somewhere else. (PI Opp. at 29) (arguing that Plaintiffs cannot demonstrate irreparable injury because they can engage in SOCE counseling "outside the City"). Defendants' argument is essentially that licensed counselors shed their constitutional rights at the City limits. This contention is not only offensive to a free society, it is an egregious affront to the promises of the First Amendment. The First Amendment cannot be jurisdictionally confined at the whims of City officials who dislike certain forms of expression taking place in their locale.

Governments are not empowered to create "First Amendment Free Zones" within their borders, like Defendants have done here. *See, e.g.*, *Bd. of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 574 (1987) (striking down local government's attempt to prohibit protected expression and create a "First Amendment Free Zone."); *United States v. Stevens*, 559 U.S. 460, 470 (2010) (government in not empowered to create First Amendment free zones with respect to certain categories of speech). Saying that Plaintiffs may avoid irreparable injury by simply "going somewhere else" ignores the central premise of the First Amendment.

Not only is Defendants' invitation for Plaintiffs to go somewhere else offensive and baseless as a matter of settled law, it also betrays Defendants' failure to understand that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Indeed, First Amendment violations are **presumed** to impose irreparable injury. *See, e.g.*, *Awad v. Ziriax*, 670 F.3d 1111, 1125 (10th Cir. 2012); *see also* 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice & Procedure* §2948.1 (2d ed. 1995) ("When an alleged constitutional right is involved, most courts hold that **no further showing of irreparable injury is necessary**." (emphasis added)).

At least Defendants' amicus, Equality Florida, agrees with Plaintiffs that "First Amendment injuries always are irreparable." (EF PI Amicus at 4). Equality Florida thus concedes, as it must,

28

that its curious argument that Defendants waited too long to file this lawsuit, and its argument that "Plaintiffs' only other asserted injuries are purely economic," are both dependent on its erroneous premise that Plaintiffs cannot state any First Amendment claim or show a First Amendment injury. (*Id*.) However, since Plaintiffs can and have shown that they are likely to succeed on their First Amendment claims, irreparable injury is presumed, as even Equality Florida concedes.

### III.   PLAINTIFFS HAVE DEMONSTRATED THAT THE CITY SUFFERS NO HARM FROM INJUNCTIVE RELIEF AND THAT THE PUBLIC INTEREST FAVORS AN INJUNCTION.

This being a First Amendment case, the likelihood of success on the merits is dispositive of the issuance of injunctive relief. *See e.g.*, *Scott v. Roberts*, 612 F.3d 1279, 1297 (11th Cir. 2010). This is because a law that is likely to be unconstitutional *ipso facto* imposes irreparable harm and is not in the public interest. *See id*. Indeed, the inability to punish Plaintiffs and other licensed counselors for engaging in a form of counseling that has benefitted thousands of people and is desired by their clients "does not outweigh the serious loss of first amendment freedoms." *ACLU of Fla., Inc. v. The Florida Bar*, 744 F. Supp. 1094, 1099 (N.D. Fla. 1990).

The City suffers no harm by being forced to comply with the dictates of the First Amendment. Importantly, the **City has not identified a single person being harmed** within the City by any SOCE counseling, let alone voluntary SOCE counseling that the person requests and is willing to receive. **Plaintiffs have propounded discovery on this point to Defendants, and expect to be able to demonstrate at the hearing that Defendants' failure is not accidental** – Defendants have never received any complaints of any SOCE-related harm to their citizens. Accordingly, Defendants will not suffer any harm if their unconstitutional Ordinance is enjoined. Their citizens were not being harmed prior to the enactment Ordinance, and they will not be harmed while the preliminary injunction is in effect and this litigation plays out.

Finally, protection of First Amendment rights is always in the public interest, while violating First Amendment rights at the whim of ideological opponents does not serve the public. *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006)**.**

## IV.   PLAINTIFFS' WELL-PLEADED ALLEGATIONS SURVIVE DISMISSAL AND ENTITLE THEM TO RELIEF.

"The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is **exceedingly low**." *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1070 (11th Cir. 2004) (emphasis added). A court cannot dismiss a complaint unless – after "**accept[ing] the factual allegations in the complaint as true and mak[ing] all reasonable inferences in favor of the non-moving party**" – "it appears **beyond doubt** that [the pleader] can prove no set of facts which would entitle it to relief." *Id*. (emphasis added). Plaintiffs' Complaint easily clears the exceedingly low threshold for surviving Defendants' motions to dismiss.

### A.   Plaintiffs Have Sufficiently Pled Standing To Challenge The Ordinance.

#### 1.   Defendants Do Not Challenge And Therefore Concede That Vazzo and New Hearts Have Standing To Challenge The Ordinance.

Defendants do not contest, and therefore concede, that Vazzo and New Hearts have Article III standing to challenge the Ordinance on their own behalf. (MTD at 10-11).

#### 2.   Pickup Has Sufficiently Pled Standing.

Defendants contend that Pickup has no standing. (MTD at 11). However, Defendants' concession that Vazzo and New Hearts have standing is fatal to their effort to dismiss Pickup. Once the Court establishes the standing of at least one plaintiff for the relief sought, it need not consider the standing of other plaintiffs. *See, e.g.*, *Carey v. Population Serv., Int'l*, 431 U.S. 678, 682 (2010) (once standing of one plaintiff is established, the court need not decide the standing of other plaintiffs); *Vill. of Arlington Heights v. Metro Housing Dev. Corp.*, 429 U.S. 252, 264 & n.9 (1977)

(where "we have at least one individual plaintiff who has demonstrated standing to assert these rights as his own," "we need not consider whether the other individual and corporate plaintiffs have standing to maintain suit"); *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1003 n.10 (11th Cir. 2004) (holding that it is "sufficient if one plaintiff has standing"); *In re Florida Cement & Concrete Antitrust Litig.*, No. 09-2387-CIV-ALTONAGA/Brown, 2011 WL 13174536, *1 (S.D. Fla. Feb. 24, 2011) ("**It is settled law that as long as one plaintiff has standing, the Court has subject matter jurisdiction over the case.**" (emphasis added)).

Indeed, Rule 12 permits a court to dismiss a complaint for lack of subject matter jurisdiction. "The key word in the Rule is 'complaint.' By its terms, Rule 12(b)(1) permits the Court to dismiss a *complaint* not a *complainant*." *In re Florida*, 2011 WL 13174536 at *1 (italics in original). Defendants were made aware of these authorities in the briefing on Plaintiffs' first preliminary injunction motion. They have nothing to say in response, yet they still waste the Court's time with unnecessary arguments foreclosed by the law.

### 3. Plaintiffs Have Standing to Challenge The Ordinance On Behalf Of Their Clients.

The Supreme Court and the Eleventh Circuit have long recognized the rights of doctors and mental health professionals to bring constitutional challenges on behalf of their clients. *See, e.g.*, *Singleton v. Wulff*, 428 U.S. 106 (1976); *Doe v. Bolton*, 410 U.S. 179 (1973); *Planned Parenthood Ass'n of Atlanta Area, Inc. v. Miller*, 934 F.2d 1462, 1465 n.2 (11th Cir. 1991); *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328 (5th Cir. 1981). Plaintiffs' assertion of their clients' constitutional rights is consistent with Article III standing requirements because their clients' "enjoyment of the right [to receive the SOCE counseling they seek] is inextricably bound up with the activity the litigant wishes to pursue." *Singleton*, 428 U.S. at 114-15. As such, "the relationship between the litigant and the third party [is] such that the former is fully, or very nearly, as effective

a proponent of the right as the latter." *Id.* at 115. The Eleventh Circuit has noted that doctor or mental health professionals have standing to bring claims on behalf of their clients when (1) plaintiff has suffered concrete injury, (2) plaintiff and the third party have a close relationship, and (3) the third party faces some obstacles to asserting his own rights. *Miller*, 934 F.2d at 1465 n.2. Plaintiffs easily satisfy each of these elements, especially on a motion to dismiss, where their allegations are presumed true. Defendants have not challenged, and therefore concede, the first two elements (City MTD at 10), but out of an abundance of caution Plaintiffs will briefly address all three.

### a.   Plaintiffs have suffered concrete and irreparable injury.

As Plaintiffs' FAVC demonstrates, Plaintiffs are currently suffering irreparable injury. (FAVC ¶¶ 151-176). Indeed, the Ordinance is prohibiting Plaintiffs from engaging in, providing or facilitating voluntary, speech-only SOCE counseling with minor clients and constituents who desire to receive it, and the Ordinance is unconstitutionally prohibiting such counseling on the basis of its content and viewpoint. (*Id.* ¶¶ 180-182). Plaintiffs are also currently suffering irreparable injury under the yoke of a presumptively unconstitutional prior restraint. (*Id.* ¶ 179); *see also supra* Sections I-III. Plaintiffs have clearly alleged more than sufficient concrete injury to satisfy Article III.

### b.   Plaintiffs and their clients have the requisite close relationship.

It has long been held that the relationship of a health professional and patient satisfies the requisite relationship for third party standing. *See, e.g.*, *Singleton*, 428 U.S. at 117 ("the physician is uniquely qualified to litigate the constitutionality of the [government's] interference with, or discrimination against" medical decision); *Miller*, 934 F.2d at 1465 n.2 (holding that the relationship between doctor and patient is sufficiently close for standing); *Deerfield*, 661 F.2d at 334 (same); *Planned Parenthood Se., Inc. v. Bentley*, 951 F. Supp. 2d 1280, 1284 (M.D. Ala. 2013) ("federal

courts **routinely** recognize a [doctor's] standing to assert the claims of its patients" (emphasis added)); *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016) ("**a physician or other professional may raise the *constitutional* rights … of his or her patients**" (bold emphasis added; italics original)). The constitutionally protected right to make decisions concerning one's mental health and health care is "one in which the physician is intimately involved." *Singleton*, 428 U.S. at 117. Indeed, "[t]he closeness of the relationship is patent." *Id.*; *see also Miller*, 934 F.2d at 1465 n.2 (same).

Here, Plaintiffs and their clients establish a therapeutic alliance in their counseling and the relationship between them is sufficiently close. Indeed, Plaintiffs' clients have specifically sought them out because they offer counseling consistent with the clients' religious beliefs. (FAVC ¶¶ 104, 123). This relationship is inherently close and sufficient for Article III standing. *See Penn. Psychiatric Soc'y v. Green Springs Health Serv., Inc.*, 280 F.3d 278, 289 (3d Cir. 2002) ("Psychiatrists clearly have the kind of relationship with their patients which lends itself to advancing claims on their behalf. This intimate relationship and the resulting mental health treatment ensures psychiatrists can effectively assert their patients' rights.").

### c.    Plaintiffs' clients face obstacles to litigation.

Plaintiffs' clients face substantial obstacles to bringing these claims. Indeed, "[f]or one thing, [they] may be chilled from such assertion by a desire to protect the very privacy of [their] decision from the publicity of a court suit." *Singleton*, 428 U.S. at 117. "[T]he psychotherapist-patient privilege is rooted in the imperative need for confidence and trust." *Jaffree v. Redmond*, 518 U.S. 1, 10 (1996). "[D]isclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace. For this reason, the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment." *Id.*

"The stigma associated with receiving mental health services presents a considerable deterrent to litigation." *Penn. Psychiatric Soc'y*, 280 F.3d at 290 (citing *Parham v. J.R.*, 442 U.S. 584 (1979) (Stewart, J., concurring)). This consideration is only increased when such counseling involves intimate details concerning a minor's development, growth, and sexuality. Indeed, even the fear of stigmatization associated with bringing claims in a public forum "operates as a powerful deterrent to bringing suit." *Id.* As the Tenth Circuit has held, "**adolescents seeking health care related to sexuality or mental health care may be chilled from asserting their own rights by a desire to protect the very privacy of the care they seek from the publicity of a court suit**." *Aid for Women v.  Foulston*, 441 F.3d 1101, 1114 (10th Cir. 1990) (emphasis added).

The desire to keep private the intimate details associated with SOCE counseling are clearly obstacles for Plaintiffs' clients and constituents to bring their claims in public court. The mere fact that the City passed the Ordinance is *ipso facto* proof that Plaintiffs' clients are likely to be stigmatized and subjected to opprobrium for seeking the kind of counseling that offends the City's sensibilities. And, to make matters worse, Plaintiffs' clients are minors and thus face a separate set of obstacles to litigation.

In sum, Plaintiffs' allegations are more than sufficient to establish standing at this initial juncture. However, in the event the Court deems that any additional allegations are necessary regarding the obstacles to litigation faced by Plaintiffs' clients, or regarding any other aspect, Plaintiffs stand ready to provide them in an amended complaint and request that ability.

### B.      As The Government Official Tasked With Enforcing The Ordinance, Ruggiero Is A Proper Defendant.

"[W]here the plaintiff seeks a declaration of the unconstitutionality of a state statute and an injunction against its enforcement, a state officer, in order to be a proper defendant, must, at a minimum, have **some connection with enforcement** of the provision at issue." *Socialist Workers*

*Party v. Leahy*, 145 F.3d 1240, 1248 (11th Cir. 1998) (emphasis added). Whenever a government official is statutorily required to enforce certain provisions being challenged, that individual is a proper party. *See id.* at 1246-47; *see also ACLU v. The Florida Bar*, 999 F.2d 1486 (11th Cir. 1993).

In *Socialist Workers*, the Eleventh Circuit held that a statutory obligation to enforce a law represents "a credible threat of application." 145 F.3d at 1246. The Eleventh Circuit rejected an argument virtually identical to Ruggiero's, by holding that statutory (or even apparent statutory) authority to apply and enforce a statute was sufficient to subject that official to suit. *See id.* at 1246-47.

Here, the Ordinance expressly tasks Ruggiero, as the director of the Department of Code Enforcement (now known as the Neighborhood Enhancement Division) with enforcing the Ordinance. (Dkt. 1, Ex. A at 6, §7). The well-pled allegations of the Complaint make abundantly clear that Ruggiero is responsible for enforcing all provisions of the Ordinance. (FAVC ¶ 18). Thus, contrary to Defendants' contentions (Ruggiero MTD at 3), Ruggiero is a necessary and therefore proper defendant. *ACLU*, 999 F.2d at 1490; *see also, e.g.*, *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015) (holding that government official with a statutory mandate to enforce certain charges had requisite connection to challenged statute, even though his authority was concurrent with other government officials).

### C.    Plaintiffs Have Sufficiently Pled A Violation Of The First Amendment Free Speech Clause.

The City's Motion to Dismiss mirrors in full the City's Opposition to Plaintiffs' Motion for Preliminary Injunction. (*Compare* City MTD at 5-14, *with* Opp. at 5-16). Thus, for all the reasons stated in Sections I-III, *supra*, the City cannot meet its demanding burden of obtaining the rarely granted remedy of dismissal. Even were this Court to determine that Plaintiffs are not entitled to preliminary injunctive relief, which it should not hold, the standards applicable to Defendants'

motions to dismiss are wholly different and require that Plaintiffs only meet an "exceedingly low" threshold. *Spanish Broad.*, 376 F.3d at 1070. Plaintiffs easily satisfy that threshold. First, Plaintiffs have sufficiently alleged that the Ordinance is viewpoint and content-based (FAVC ¶¶ 115-117), a contention as to which even the City's own authorities find "little doubt." *King v. Governor of New Jersey*, 767 F.3d 216, 236 n.20 (3d Cir. 2014). Plaintiffs have sufficiently alleged that the Ordinance has chilled them in their expression. (FAVC ¶¶ 156-159, 161-166). Plaintiffs have alleged that the Ordinance cannot withstand the requisite constitutional scrutiny. (*Id.* ¶¶ 183-184). These allegations on their own suffice to plead a First Amendment challenge. Coupled with Plaintiffs' demonstration that they are likely to succeed on the merits of their First Amendment claim, the allegations leave no doubt that Plaintiffs have stated a claim.

### D. Plaintiffs Have Sufficiently Pled A Violation Of The First Amendment Free Exercise Clause.

Defendants contend that Count III of Plaintiffs' FAVC fails to state a claim upon which relief can be granted because the Ordinance is neutral and generally applicable, does not target religion or religiously motivated conduct, and serves a compelling interest. (City MTD at 17). These contentions, however, fly in the face of the well-pled allegations of Plaintiffs' FAVC, which are presumed true on a motion to dismiss.

It is axiomatic that hostility toward religious beliefs is unconstitutional. "The principle that government may not enact laws that suppress religious belief or practice is so well understood that few violations are recorded in our opinions." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 523 (1993). Plaintiffs have plainly alleged, and are entitled to adduce evidence at trial to prove, that Defendants' Ordinance was motivated by animus and displays hostility towards the religious convictions of Plaintiffs and their clients. "Although a law targeting religious beliefs as such is never permissible . . . if the object of the law is to infringe upon or restrict

36

practices because of their religious motivation, the law is not neutral." *Id.* at 533 (citations omitted). Although neutral laws of general applicability receive deferential treatment, *Emp't Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 879 (1990), "[a] law failing to satisfy these requirements must be justified by a compelling government interest and must be narrowly tailored to advance that interest." *Lukumi*, 508 U.S. at 531-32. Defendants' Ordinance therefore "must undergo the most rigorous of scrutiny." *Id.* at 546. A law "will survive strict scrutiny **only in rare cases**." *Id.* (emphasis added). As *Lukumi* made abundantly clear, "[t]he Free Exercise Clause . . . extends beyond facial discrimination. The Clause 'forbids subtle departures from neutrality,' [and] 'covert suppression of particular religious beliefs.'" *Id.* at 534 (quoting *Gillette v. United States*, 401 U.S. 437, 452 (1971); *Bowen v. Roy*, 476 U.S. 693 (1986)). "The Free Exercise Clause protects against government hostility which is masked, as well as overt." *Id.* Plaintiffs' well-pled allegations are sufficient.

### 1.     Plaintiffs' allegations demonstrate sincerely held religious beliefs.

Plaintiffs have plainly alleged that they and their clients have sincerely held religious beliefs concerning human sexuality and same-sex attractions, behaviors, and identity. (FAVC ¶ 104) (alleging that many of Vazzo's clients profess to be Christians who desire SOCE counseling to aid them in living a life consistent with their sincerely held religious beliefs); (*Id.* ¶ 123) (alleging that many of Pickup's clients uphold a Biblical worldview and believe that same-sex attractions, behaviors, and identity are inconsistent with their sincerely held religious beliefs); (*Id.* ¶¶ 208) (alleging that Plaintiffs' clients have sincerely held religious beliefs that same-sex attractions, behaviors, and identity are wrong and inconsistent with their religious beliefs; (*Id.* ¶ 209-210) (alleging that Vazzo, Pickup and New Hearts have sincerely held religious beliefs that they should counsel their clients from a religious viewpoint, and help clients align their attractions, behaviors,

and identity to the clients' sincerely held religious beliefs).

### 2. Plaintiffs' allegations demonstrate that the Ordinance violates their sincerely held religious beliefs.

Plaintiffs' well-pled allegations also demonstrate that the Ordinance violates their sincerely held religious beliefs. (FAVC ¶ 211) (alleging that the Ordinance causes direct and immediate conflict with Plaintiffs' and their clients' sincerely held religious beliefs, and prohibits them from offering or receiving counseling consistent with those religious beliefs); (*Id.* ¶ 212) (alleging that the Ordinance impermissibly burdens Plaintiffs' and their clients' religious beliefs and compels them to change their religious beliefs or act in contradiction to them); (*Id.* ¶ 213) (alleging that the Ordinance placed Plaintiffs and their clients in an irresolvable conflict between their sincerely held religious beliefs and compliance with the Ordinance); (*Id.* ¶ 214) (alleging that the Ordinance has put substantial pressure on Plaintiffs to violate their sincerely held religious beliefs).

### 3. Plaintiffs' allegations demonstrate the Ordinance's hostility towards religious belief.

Plaintiffs allegations also demonstrate that the Ordinance explicitly targets and shows hostility towards their religious beliefs. (VC ¶ 215) (alleging that the Ordinance "specifically and discriminatorily targets religious speech, beliefs, and viewpoint of those individuals who believe change is possible"); (*Id.* ¶ 219) (alleging that the Ordinance has "failed and refused to accommodate Plaintiffs' sincerely held religious beliefs"); (*Id.* ¶ 220) (alleging that the Ordinance "specifically targets religion for disparate treatment").

### 4. Plaintiffs' allegations demonstrate that the Ordinance contains individualized exemptions and religious gerrymanders.

A system of individualized or categorical exemptions from the general prohibitions of a statute demonstrate that it is not neutral or generally applicable. *See Lukumi*, 508 U.S. at 536-38. Laws that target substantially similar conduct but unevenly proscribe the conduct purporting to

cause the harm constitute an impermissible "religious gerrymander." *Id.* Defendants contend that the Ordinance is neutral and generally applicable, that the Ordinance does not target religious motivated conduct, and that the City did not intend to regulate religiously motivated conduct. (City MTD at 17 and n.10). Defendants' argument fails for two reasons: (1) it is premature and improper to determine motives or the government's purpose for enacting a law on a motion to dismiss, and (2) Defendants' contentions are contradicted by the well-pled allegations of Plaintiffs' Complaint.

Whether or not the City intended to target religious beliefs, to suppress the religious exercise of counselors and individuals who seek SOCE counseling to align their attractions, behaviors, and identity to their sincerely held religious beliefs, to target specific religious speech, or to exhibit hostility towards religion, are all questions of fact, inappropriate for resolution on a motion to dismiss. Indeed, questions of intent are pure factual questions. *See, e.g.*, *Pullman-Standard v. Swint*, 456 U.S. 273, 289 (1982) (government's intent to discriminate is a pure question of fact); *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1476 (11th Cir. 1991) ("a party's state of mind (such as knowledge or intent) is a question of fact for the factfinder"); *Katsaris v. United States*, 684 F.2d 758, 762 (11th Cir. 1982) ("Intent is a question of fact."); *id.* ("More particularly, intent is a question of ultimate fact and proof of intention is of necessity, largely circumstantial). Thus, resolving the factual question of Defendants' intent is premature and improper at this stage. *See Heller v. Carnival Corp.,* 191 F. Supp. 3d 1352, 1365 (S.D. Fla. 2016) ("it is premature to rule on [a party's intent] at a motion to dismiss").

In addition to being impermissibly premature, Defendants' contentions are also belied by the well-pled allegations of Plaintiffs' FAVC. Plaintiffs' allegations demonstrate that the Ordinance sets up a system of individualized exemptions and unconstitutionally imposes a gerrymander on Plaintiffs' free exercise rights. (*See* FAVC ¶¶ 220-221). Thus, Plaintiffs have plainly alleged a

violation of their free exercise rights

**E.      Plaintiffs Have Sufficiently Pled That The Ordinance Is *Ultra Vires*.**

The City also contends that Plaintiffs fail to state a claim under Article VIII, §2(b) of the Florida Constitution. (MTD at 21). This is incorrect for three reasons: (1) preemption analysis is fact intensive and inappropriate for resolution at the motion to dismiss stage, (2) the City improperly limits the relevant inquiry into the State's pervasive regulatory scheme, and (3) the City's argument fails to acknowledge the well-pled allegations of Plaintiffs' FAVC.

**1.      Preemption analysis is inappropriate at the motion to dismiss stage.**

First, resolution of preemption necessarily requires a factual record, and is therefore inappropriate for a motion to dismiss. *Jouria v. CE Res., Inc.*, No. 0:15-cv-61165-WPD, 2017 WL 3868422, *3 (S.D. Fla. July 17, 2017) (preemption analysis involves a fact-intensive inquiry); *see also Kevin Harrington Enter., Inc. v. Bearwolf*, No. 98-1039-Civ-UNGARO-BENAGES, 1998 WL 798164, *1 (S.D. Fla. Aug. 5, 1998) (holding it is improper to resolve the fact-intensive inquiry of preemption at the motion to dismiss stage).

Indeed, in determining whether the State's regulation impliedly preempts local governments from regulating mental health professionals licensed by the State, the court must look at the provisions of the policy as a whole, the nature of power exercised by the legislature, the object sought to be attained by the statute, and the character of the obligations imposed by the statute. *Classy Cycles, Inc. v. Bay Cnty.*, 201 So.3d 779, 784 (Fla. 2016). The object and purpose of a statute or statutory scheme is necessarily fact intensive and inappropriate for a motion to dismiss. *See, e.g.*, *Mississippi State Chapter, Operation Push, Inc. v. Mabus*, 932 F.2d 400, 408 (5th Cir. 1991) (a legislature's purpose in enacting a law "is a question of fact").

2.    **Florida has enacted a pervasive regulatory scheme concerning the entire subject area of mental health professionals, not simply the City's erroneous circumscription to individual issues.**

Second, the City's attempt to limit the analysis to whether the State has enacted a specific statute prohibiting a locality from enacting a ban on SOCE counseling ignores the proper question at issue under Article VIII, §2(b). The proper inquiry is whether the State has "preempted **a particular subject area**," not one individual form of counseling. *Sarasota Alliance For Fair Elections, Inc. v. Browning*, 28 So.3d 880, 886 (Fla. 2010) (emphasis added). The City contends that the question should be whether there is any "legislative statement expressly prohibiting local governments in the state from enacting ordinances **prohibiting conversion therapy**." (City MTD at 21) (emphasis added). The subject area in this matter is regulation of mental health professionals, not the narrow view the City urges, *i.e.*, one subset of an entire course of counseling for one subset of a particular issue relating to that course of counseling. Under the City's logic, a municipality would be empowered to enact any regulation it desires if the State has not passed minute legislation prohibiting a specific act, regardless of whether the statutory scheme regulating a particular **area** is overwhelmingly pervasive. This is not the law.

The City attempts to evade the import of the pervasive regulatory scheme Florida has adopted by citing a general proposition that community health and safety are matters of both state and local concern. (City MTD at 22). But the City's proposition is simply not supported. That local governments have some authority over the health and safety of a community does not translate into expansive powers to superimpose their regulations over those of the state. The City relies upon *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707 (1985), *Craig v. Boren*, 429 U.S. 190 (1976), and *City of Dallas v. Stanglin*, 490 U.S. 19 (1989) to support its contention that local governments have authority to regulate medical professionals. Yet, one searches in vain to find even

a kernel of support for the City's contentions in these cases. Indeed, **not one of these cases even remotely implicates, let alone mentions, a local government regulating the occupation of a licensed medical professional, or any licensed professional whatsoever**.

The Court should not be surprised by such a lack of support, because the City's contention is demonstrably fallacious as a matter of well-settled law. Indeed, since time immemorial it has been recognized that the regulation of licensed professionals, including medical and mental health professionals, has always been a matter of **state concern**. *See, e.g.*, *Watson v. Maryland*, 218 U.S. 173, 176 (1910) ("It is too well settled to require discussion at this day that the police power of the **states** extends to the regulation of certain trades and callings, particularly those which closely concern the public health." (emphasis added)); *Dent v. West Virginia*, 129 U.S. 114, 122 (1889) ("it has been the practice of different **states**, from time immemorial, to exact in many pursuits a certain degree of skill and learning" to practice a profession (emphasis added)); *McNaughton v. Johnson*, 242 U.S. 344, 348-49 (1917) ("It is established that **a state** may regulate the practice of medicine." (emphasis added); *see also Betancur v. Fla. Dep't of Health*, 296 F. App'x 761, 763 (11th Cir. 2008) ("**States** retain the police power to regulate professions, such as the practice of medicine." (emphasis added)). Thus, the City's contention that the regulation of mental health professionals is primarily a local concern is historically, legally, and logically incorrect.

> **3.**    **Plaintiffs' well-pled allegations demonstrate the regulation of mental health professionals in preempted by the State.**

Finally, the City ignores the fact that this Court must accept Plaintiffs' allegations as true for the purposes of a motion to dismiss and resolve all inferences in Plaintiffs' favor. *See, e.g.*, *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (court must construe all facts alleged in light most favorable to plaintiff). Here, Plaintiffs have plainly alleged that the State has enacted a pervasive scheme regulating mental health professionals. (FAVC ¶¶ 268-269). Indeed, Plaintiffs

have alleged that the State is the only entity that licenses professionals in the State. (*Id.* ¶¶ 268, 269, 272). The State licenses mental health counselors, regulates their conduct, and solely controls the disciplinary proceedings against such professionals. (*Id.* ¶¶ 268-69). This regulatory scheme, which covers all licensed medical and mental health professionals in the State, is pervasive and evinces an intent to maintain sole control of licensed professionals in the State. (*See* PI Motion at 22-24).

> **F.     Plaintiffs Have Sufficiently Pled That The Ordinance Violates The Florida Patient's Bill Of Rights And Responsibilities.**

The City's attempt to escape liability under the Florida Patient's Bill of Rights and Responsibilities fairs no better. (City MTD at 22). The City contends that Plaintiffs cannot be "health care practitioners" because that term **only** applies to "physicians licensed under chapter 458, osteopathic physicians licensed under chapter 459, or podiatric physicians licensed under chapter 491" (*Id.*). This argument defies the plain language of the statute. As the statute makes plain,

> a patient has the right to access any mode of treatment that is, in his or her own judgment and the judgment of his or her health care practitioner, in the best interests of the patient, including complementary or alternative health care treatments, **in accordance with the provisions of §456.41**.

Fla. Stat. Ann. §381.026(4)(d)(3) (emphasis added).

Thus, the statutory road map requires an analysis of what the provisions of Section 456.41 offer to a patient seeking such treatment and from whom he may seek such treatment. Section 456.41 answers this question in an abundantly clear manner: "[i]t is the intent of the legislature that **health care practitioners** be able to offer complimentary or alternative health care treatments." Fla. Stat. Ann. § 456.61(1) (emphasis added). Thus, if the Patient's Bill of Rights and Responsibilities permits patients to seek complimentary or alternative health care treatments "in accordance with the provisions of §456.41," Fla. Stat. Ann. § 381.026(4)(d)(3), and Section 456.41's plain language explicitly states that a client has the right to receive such treatment from a "health care practitioner,"

43

then there can be no dispute that health care practitioners are included in this analysis. Therefore, to determine exactly what a "health care practitioner" is for purposes of Section 381.026(4)(d)(3) and Section 456.41, and whether Plaintiffs are included in that definition, the Court must determine what Section 456.41 defines as a "health care practitioner." This is an easy task, because, under Section 456.41(2)(b): "[h]ealth care practitioner means any health care practitioner as defined in §456.001(4)," which includes marriage and family therapists licensed under Fla. Stat. Ann. § 491.003(5). The City's futile attempts to ignore the plain roadmap laid out by these statutes has no merit and should be rejected.

### G.     Plaintiffs Have Sufficiently Pled That The Ordinance Violates The Florida Religious Freedom Restoration Act.

Defendants also contend that Plaintiffs fail to state a claim under the Florida Religious Freedom Restoration Act ("FRFRA") because the Ordinance does not substantially burden any exercise of religion. This argument ignores the text of FRFRA and ignores the allegations of Plaintiffs' FAVC.

First, FRFRA defines "exercise of religion" as "an act or refusal to act that is substantially motivated by a religious belief, whether or not the religious exercise is compulsory or central to a larger system of religious belief." Fla. Stat. Ann. § 761.02(3). Plaintiffs have plainly alleged that their counseling practices, including SOCE counseling, are motivated by their sincerely held religious beliefs that they should help their clients align their attractions, behaviors, and identity to the clients' own beliefs. (FAVC ¶ 296) ("Plaintiffs and their clients have sincerely held religious beliefs that same-sex sexual attractions, behaviors, or identity are wrong, and they seek to resolve these conflicts between their religious beliefs and their attractions in favor of their religious beliefs."); (*id.* ¶ 297) (alleging that Plaintiffs Pickup and Vazzo have sincerely held religious beliefs "to provide spiritual counsel and assistance to their clients who seek such counsel" and that they

should "counsel clients on the subject matter of same-sex attractions, behaviors, or identity from a religious viewpoint"); (*id.* ¶ 299) (alleging that Plaintiffs and their clients' religious beliefs concerning same-sex attractions, behaviors, or identity are "central components of their faith"). Thus, Plaintiffs have plainly alleged sincerely held religious beliefs at odds with the Ordinance.

Second, Defendants' Ordinance substantially burdens those practices by forbidding Plaintiffs and their clients from making decisions consistent with their sincerely held religious beliefs. As the Florida Supreme Court has held, "a substantial burden on the free exercise of religion is one that either compels the religious adherent to engage in conduct that his religion forbids or forbids him to engage in conduct that his religion requires." *Warner v. City of Boca Raton*, 887 So.3d 1023, 1033 (Fla. 2004). As Plaintiffs' allegations make plain, the Ordinance **forbids** them and their clients from engaging in counseling that is consistent with sincerely held religious beliefs, **compels** them and their clients to change their religious beliefs, and **compels** them and their clients to act in contradiction to their sincerely held religious beliefs. (FAVC ¶ 299) ("The Ordinance causes them a direct and immediate conflict with their religious beliefs by **prohibiting** them from offering, referring, or receiving counseling that is consistent with their religious beliefs." (emphasis added)); (*id.* ¶ 300) (alleging that the Ordinance "**compels** them to both change their religious beliefs and to act in contradiction to them" (emphasis added)).

Plaintiffs have plainly alleged a violation of FRFRA by alleging sincerely held religious beliefs that are substantially burdened by the Ordinance. Count VIII states a claim for relief.

## CONCLUSION

For the foregoing reasons, and those detailed in Plaintiffs' Renewed Motion for Preliminary Injunction and Memorandum in Support, the Court should grant the injunctive relief requested by Plaintiffs and deny Defendants' motions to dismiss.

Respectfully submitted,

/s/ Horatio G. Mihet
Mathew D. Staver
Horatio G. Mihet
Roger K. Gannam
Daniel J. Schmid
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
Phone: (407) 875-1776
Fax: (407) 875-0770
Email: dschmid@lc.org

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of August, 2018, I caused a true and correct copy of the foregoing to be filed electronically with this Court. Service will be effectuated on all counsel of record via this Court's ECF/electronic service system.

/s/ Horatio G. Mihet
Horatio G. Mihet

*Attorney for Plaintiffs*

46