# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

ROBERT L. VAZZO,
DAVID H. PICKUP, SOLI DEO
GLORIA INTERNATIONAL, INC.
d/b/a NEW HEARTS OUTREACH
TAMPA BAY

      **Plaintiffs,**

v.                              **Case No. 8:17-cv-2896-T-02AAS**

CITY OF TAMPA,

      **Defendant,**

_____/

## REPORT AND RECOMMENDATION

The City of Tampa moves to dismiss the plaintiffs' first amended complaint. (Doc. 84). Amicus Equality Florida supports the City's motion to dismiss. (Doc. 92).

The plaintiffs—Robert Vazzo, David Pickup, and New Hearts Outreach—failed to state a plausible claim for relief under the Free Exercises Clauses of the federal and Florida constitutions. And the plaintiffs cannot state a claim for relief under the Florida Patient's Bill of Rights and Responsibilities. The plaintiffs, however, allege a plausible claim for relief on all other claims. The City's motion to dismiss, therefore, should be **GRANTED-IN-PART** and **DENIED-IN-PART**.

1

## I.   BACKGROUND

On April 6, 2017, the City adopted Ordinance 2017-47, which the mayor later signed and approved. (Doc. 24-1, pp. 2–8). Section 14-312 of that ordinance states the following:

### Sec. 14-312.—Conversion Therapy Prohibited

It shall be unlawful for any Provider to practice conversion therapy efforts on any individual who is a minor regardless of whether the Provider receives monetary compensation in exchange for such services.

(*Id.* at 7). The ordinance defines "conversion therapy" and "provider" as follows:

### Sec. 14-311.—Definitions.

(a)   *Conversion therapy* or *reparative therapy* means, interchangeably, any counseling, practice or treatment performed with the goal of changing an individual's sexual orientation or gender identity, including, but not limited to, efforts to change behaviors, gender identity, or gender expression, or to eliminate or reduce sexual or romantic attractions or feelings toward individuals of the same gender or sex. Conversion therapy does not include counseling that provides support and assistance to a person undergoing gender transition or counseling that provides acceptances, support, and understanding of a person or facilitates a person's coping, social support, and development, including sexual orientation-neutral interventions to prevent or address unlawful conduct or unsafe sexual practices, as long as such counseling does not seek to change sexual orientation or gender identity.

.   .   .

(c)   *Provider* means any person who is licensed by the State of Florida to provide professional counseling, or who performs counseling as part of his or her professional training under chapters 456, 458, 459, 490, or 491 of the Florida Statutes, as such chapters may be amended, including but not limited to, medical practitioners, osteopathic practitioners, psychologists, psychotherapists, social workers, marriage and family therapists, and licensed counselors. A Provider does not include members of the clergy who are acting in their roles as clergy or pastoral

2

counselors and providing religious counseling to congregants, as long as they do not hold themselves as operating pursuant to any of the aforementioned Florida Statutes licenses.

(Doc. 24-1, p. 6).

Messrs. Vazzo and Pickup are licensed marriage and family therapists whose practices include providing sexual-orientation-change-efforts (SOCE) counseling. (Doc. 78, ¶¶14–15, 102, 116). According to the plaintiffs, SOCE counseling is therapy provided to "clients who wish to reduce or eliminate same-sex sexual attractions, behaviors, or identity." (*Id.* at ¶60). Messrs. Vazzo and Pickup perform SOCE counseling by using "speech to help clients understand and identify their anxiety or confusion regarding their attractions, or identity and then help the client formulate the method of counseling that will most benefit that particular client." (*Id.* at ¶65). Mr. Vazzo is licensed to practice mental health counseling in Florida. (*Id.* at ¶14). Mr. Pickup is not licensed in Florida, but he is "undergoing the necessary requirements" to become licensed. (*Id.* at ¶15).

New Hearts Outreach is a Christian ministry in Tampa. (*Id.* at ¶¶16, 126). New Hearts Outreach's goal is to foster "sexual and relational wholeness in people's lives through the hope of Jesus Christ." (*Id.* at ¶126). New Hearts Outreach aims to connect "the sexually and relationally challenged to Jesus Christ." (*Id.* at ¶132). To achieve the goal of its ministry, New Hearts Outreach refers individuals, including minors, "struggling with unwanted same-sex attractions, behaviors, or identity" to licensed mental health professions to receive counseling. (Doc. 78, ¶¶133–34).

3

Mr. Vazzo is a "provider" under Ordinance 2017-47. (Doc. 78, ¶112). If Mr. Pickup becomes licensed in Florida, he will also be a "provider" under the ordinance. (*Id.* at ¶¶114, 116). Ordinance 2017-47 prohibits mental health counselors from providing SOCE counseling to minors. (*Id.* at ¶7). As a result, Messrs. Vazzo and Pickup cannot provide SOCE counseling to minors in Tampa. (*Id.* at ¶¶112, 116). Nor can New Hearts Outreach refer minors to Messrs. Vazzo and Pickup for SOCE counseling in Tampa. (*Id.* at ¶135).

The plaintiffs sued the City[1] and allege Ordinance 2017-47 violates their rights to freedom of speech under the First Amendment (Count I); their clients' rights to receive information under the First Amendment (Count II); the plaintiffs' rights to free exercise of religion under the First Amendment (Count III); the plaintiffs' rights to liberty of speech under the Florida Constitution (Count IV); the plaintiffs' rights to free exercise and enjoyment of religion under the Florida Constitution (Count V); Article VIII, Section 2(b) of the Florida Constitution (Count VI); the Florida Patient's Bill of Rights and Responsibilities (Count VII); and the Florida Religious Freedom and Restoration Act (Count VIII).

The City moves to dismiss all the plaintiffs' claims. (Doc. 84). Equality Florida,

---

[1] The plaintiffs originally sued Sal Ruggiero (manager of the City's Neighborhood Enhancement Division) too, but the plaintiffs later voluntarily dismissed their claims against him. (Docs. 137, 141).

4

a civil-rights organization participating in this case as amicus curiae,[2] supports the City's motion. (Doc. 92). The plaintiffs oppose the City's motion to dismiss. (Doc. 114). The undersigned will now address the City's motion.

## II. LEGAL STANDARD

A defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must include enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is facially plausible when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

The court must accept factual allegations in the complaint as true and view them most favorably to the nonmoving party. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007); *Cunningham v. Dist. Attorney's Office for Escambia Cty.*, 592 F.3d 1237, 1255 (11th Cir. 2010) (citation omitted). Although a complaint need not contain detailed factual allegations, conclusory allegations are not entitled to a presumption of truth. *Twombly*, 550 U.S. at 55, 570 (citations omitted); *Iqbal*, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. *Iqbal*, 556 U.S. at 679.

A court may properly dismiss a complaint that rests on "conclusory allegations,

---

[2] (*See* Doc. 60) (denying Equality Florida's motion to intervene and instead allowing Equality Florida to participate as amicus curiae).

unwarranted factual deductions, or legal conclusions masquerading as facts." *Infante v. Bank of Am. Corp.*, 468 F. App'x 918, 919 (11th Cir. 2012) (citations omitted). A complaint fails to state a plausible claim for relief when the plaintiffs' claims fail as a matter of law. *See GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1266 (11th Cir. 2012) (affirming district court's Rule 12(b)(6) dismissal of Section 1983 claim that failed to state a facial challenge under the Second Amendment as a matter of law).

When ruling on a motion to dismiss, the court is limited to analyzing the four corners of the complaint. *See Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1267 (11th Cir. 2002) (citations omitted) (stating when a judge considers matters outside the pleadings, a Rule 12(b)(6) motion to dismiss is converted to a Rule 56 motion for summary judgment). That said, the court may consider extrinsic documents when ruling on a Rule 12(b)(6) motion to dismiss if (1) the documents are central to the plaintiff's claim and (2) the documents' authenticity is not challenged. *U.S. ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 (11th Cir. 2015) (citations omitted). The court may also consider judicially-noticed documents. *Id.* (citation omitted).

The undersigned took judicial notice of the City's certified copy of Ordinance 2017-47 (Docs. 24-1; 24-2; 24-3; 24-4; 24-5; 24-6; 24-7), the City's Clerk file (Docs. 25-1, 25-2), the transcripts of the legislative proceedings about Ordinance 2017-47 (Docs. 26-1; 26-2; 26-3; 26-4), and the DVDs of the legislative proceedings (Doc. 54). (Doc. 51). The undersigned will therefore consider these materials when ruling on the City's motion to dismiss. But the undersigned takes no judicial notice of the truth of

the statements contained in the City's Clerk file, transcripts, or DVDs, consistent with the undersigned's previous ruling. (Doc. 51).

## III.   ANALYSIS

In its motion to dismiss, the City raises three arguments about the plaintiffs' standing. (Doc. 84, pp. 10–11).  The City first argues Messrs. Vazzo and Pickup lack standing to assert claims on behalf of their minor clients.[3]  (*Id.* at 10).  Second, the City argues New Hearts Outreach lacks standing to assert claims on behalf of its constituents. (*Id.*).  Third, the City argues Mr. Pickup lacks standing because he is not a licensed mental health provider in Florida. (*Id.* at 11).

The City also argues the plaintiffs' complaint fails to state a plausible claim for relief on all claims. (*Id.* at 11–25).  Equality Florida similarly argues the plaintiffs' complaint fails to state a claim for relief on all claims. (Doc. 92).

The undersigned will first address the City's arguments about standing before analyzing whether the plaintiffs' complaint alleges plausible claims for relief.

### A.    The Plaintiffs' Standing

Messrs. Vazzo and Pickup bring their claims individually and on behalf of their minor clients. (Doc. 78).  New Hearts Outreach similarly brings its claims on its

---

[3]  Although the amended complaint's caption states Messrs. Vazzo and Pickup bring claims individually and on behalf of their "patients," the plaintiffs more frequently refer to their patients as "clients." (*Compare* Doc. 78, p. 1) (stating Messrs. Vazzo and Pickup bring claims on behalf of their "patients") (*with* Doc. 78, ¶65) (alleging Messrs. Vazzo and Pickup use speech during SOCE counseling to help their "clients").  The undersigned therefore references the plaintiffs' "clients" throughout this report.

behalf and on behalf of its "members, constituents, and clients." (Doc. 78).

The City argues the plaintiffs failed to allege the elements necessary to establish third-party standing on behalf of their minor clients and minor constituents. (Doc. 84, p. 10). The City also argues Mr. Pickup lacks standing to bring his claims individually because he is not licensed to practice mental health counseling in Florida. (*Id.* at 11). The City does not dispute Mr. Vazzo's standing to bring his individual claims.

The jurisdiction of federal courts is constitutionally limited to certain "cases" and "controversies." U.S. Const. art. III., § 2; *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). To satisfy the case-or-controversy requirement, a plaintiff must establish he has standing to sue the defendants. *Clapper*, 568 U.S. at 408. To establish standing, a plaintiff's injury must be (1) concrete, particularized, and actual or imminent; (2) fairly traceable to the challenged action; and (3) redressable by a favorable ruling. *Id.* at 409 (quotation and citations omitted).

A plaintiff, who suffers concrete injury, may assert the rights of a third party if (1) the plaintiff and the third party have a close relationship and (2) the third party faces some obstacle to asserting his or her own rights. *Planned Parenthood Ass'n of Atlanta Area, Inc. v. Miller*, 934 F.2d 1462, 1465 n.2 (11th Cir. 1991) (citation omitted). A minor's physician is often a proper plaintiff to challenge legislation that restricts the minor's medical decisions, and the minor's physician is often an effective advocate for their minor clients. *See id.* (discussing Supreme Court decisions that

allowed doctors to assert causes of action on behalf of their patients) (citations omitted); *see also Singleton v. Wulff*, 428 U.S. 106, 117–18 (1976) (concluding physician could assert rights of third-party women patients, in part, because those women may be chilled from asserting their own rights because of privacy concerns over the medical procedures publicly challenged in court).

If one plaintiff establishes standing, a court need not consider whether co-plaintiffs established standing, and the lawsuit may continue. *Horne v. Flores*, 557 U.S. 433, 446–47 (2009) (citations omitted); *Ouachita Watch League v. Jacobs*, 463 F.3d 1163, 1170 (11th Cir. 2006) (citation omitted); *Bayou Lawn & Landscape Servs. v. Johnson*, 173 F. Supp. 3d 1271, 1281–82 (N.D. Fla. 2016) (citations omitted).

The court need not consider whether Mr. Pickup established individual standing or whether Mr. Pickup and New Hearts Outreach sufficiently established third-party standing because Mr. Vazzo has standing to maintain this suit individually and on behalf of his minor clients. Mr. Vazzo is a mental health counselor, licensed in Florida, who offers SOCE counseling to minor clients. (Doc. 78, ¶¶14, 100, 102). Ordinance 2017-47 prevents Mr. Vazzo from providing SOCE counseling to minor clients in Tampa. (*Id.* at ¶112). If he prevails and the court concludes Ordinance 2017-47 is unconstitutional, Mr. Vazzo could then provide SOCE counseling to minor clients in Tampa. The plaintiffs' amended complaint therefore establishes (1) Mr. Vazzo suffers actual injury (2) fairly traceable to Ordinance 2017-47 that (3) can be redressed by a favorable ruling. So, the amended complaint

establishes Mr. Vazzo has individual standing.

The amended complaint also sufficiently establishes Mr. Vazzo has standing to bring third-party claims on behalf of his minor client in Tampa. Most relevant here, the amended complaint alleges the following:

108.   Vazzo has had numerous clients in Florida, provides counseling to clients in Florida, and constantly receives inquiries from all over the state concerning SOCE counseling.

109.   Vazzo has been contacted by individuals in the City who desire to discuss and engage in SOCE counseling with Vazzo.

110.   Vazzo currently has a minor client who is fifteen years old and desires SOCE counseling from Vazzo in the City. Vazzo's client desires to receive SOCE counseling from a licensed professional counselor with expertise in this particular area.

.    .    .

112.   Vazzo is prohibited from engaging in SOCE counseling with his minor client because of the ordinance, and his client is currently prohibited from receiving such counseling from a licensed professional.

(Doc. 78, ¶¶108–10, 112).   These allegations establish that Mr. Vazzo has a close relationship with his minor client in Tampa. And, given the sensitive nature of SOCE counseling—which the amended complaint describes in detail—the plaintiffs sufficiently demonstrate the Tampa minor's privacy interest presents an obstacle to bringing claims on his or her own behalf. The plaintiffs sufficiently demonstrate Mr. Vazzo has standing to bring claims individually and on behalf of his minor client in Tampa. The court therefore need not consider the City's other challenges to standing.

### B.    Count I: First Amendment Freedom of Speech

The plaintiffs allege Ordinance 2017-47 violates the free-speech protection under the First Amendment because the ordinance is an unconstitutional prior restraint on the plaintiffs' speech (Doc. 78, ¶179); the ordinance constitutes viewpoint discrimination (*Id.* at ¶180); the ordinance is an unconstitutional content-based regulation (*Id.* at ¶182); the ordinance is unconstitutionally vague (*Id.* at ¶192); the ordinance is underinclusive (*Id.* at ¶193);[4] and the ordinance is unconstitutionally overbroad (*Id.* at ¶194).

The City and Equality Florida argue the plaintiffs' amended complaint fails to state a claim for relief as a matter of law under the First Amendment's free-speech protection.  (Doc. 84, pp. 11–15; Doc. 92, pp. 4–15).   The undersigned will analyze whether the plaintiffs sufficiently pleaded each of their free-speech claims in turn— albeit in a different order.

### 1.    The Plaintiffs' Claim that Ordinance 2017-47 is Unconstitutionally Content-Based

The City argues Ordinance 2017-47 is constitutional because it satisfies intermediate scrutiny.   (Doc. 84, pp. 11–15).   To support its argument, the City

---

[4]  Neither the City nor Equality Florida argue the plaintiffs failed to state a First Amendment claim under their "unconstitutionally-underinclusive" theory. (Docs. 84, 92).   Equality Florida only addresses the plaintiffs' "underinclusive" argument when, in its post-hearing supplement, Equality Florida argues Ordinance 2017-47 is narrowly tailored to promote a government interest. (Doc. 143, pp. 9–10).   Therefore, the undersigned and the court need not consider whether the plaintiffs stated a plausible claim for relief under an "unconstitutionally-underinclusive" theory.

11

primarily relies on *King v. Governor of the State of New Jersey*, 767 F.3d 216 (3rd Cir. 2014).  In *King*, the Third Circuit decided free-speech claims identical to the plaintiffs' claims here failed to state a claim for relief as a matter of law under the First Amendment's free-speech protection.  *Id.* at 220.  The City argues *King* should persuade the court that the plaintiffs have no free-speech claim under the First Amendment.  (Doc. 84, pp. 13–14).

Equality Florida similarly argues the plaintiffs cannot allege a free-speech violation as a matter of law.  (Doc. 92, pp. 4–15).  Equality Florida argues that, under Eleventh Circuit precedent, Ordinance 2017-47 satisfies both rational-basis scrutiny and heightened (intermediate) scrutiny.  (*Id.*).  According to Equality Florida, Ordinance 2017-47 satisfies rational-basis scrutiny because the ordinance incidentally limits speech while protecting the public from harmful practices.  (*Id.* at 4–8).  Equality Florida also argues Ordinance 2017-47 satisfies heightened (intermediate) scrutiny because the ordinance is narrowly tailored to serve a compelling interest, namely protecting children from harm.  (*Id.* at 8–12).  Therefore, Equality Florida concludes the plaintiffs cannot plead a free-speech violation under the First Amendment as a matter of law.  (*Id.*).

The First Amendment protects each individual's freedom of speech.  U.S. Const. amend. I; *see also* 42 U.S.C. § 1983 (prohibiting persons acting under color of any ordinance from violating individuals' constitutional rights).  Two types of laws commonly come into play in First Amendment challenges: content-neutral laws and

content-based laws. *Ward v. Rock Against Racism*, 491 U.S. 781 (1989); *R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992); *United States v. Playboy Ent. Grp.*, 529 U.S. 803 (2000); *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015).

The plaintiffs allege Ordinance 2017-47 is a content-based law. (Doc. 78, ¶182). A law is content-based if it "applies to particular speech because of the topic discussed or the idea or message expressed." *Reed*, 135 S. Ct. at 2227 (citations omitted). Content-based laws also include laws that cannot be justified without reference to the content of the regulated speech and laws the government adopted because it disagrees with the message the regulated speech conveys. *Id.*; *Ward*, 491 U.S. at 791 (citation omitted).

Content-based laws must satisfy strict-scrutiny analysis. *Playboy*, 529 U.S. at 813. That is, the law must be narrowly tailored to promote a compelling governmental interest. *Id.* If a less strict alternative would promote the government's compelling interest, the government must use that alternative. *Id.* Content-based laws are presumptively invalid. *R.A.V.*, 505 U.S. at 382 (citations omitted).

The plaintiffs sufficiently pleaded that Ordinance 2017-47 is a content-based law. The plaintiffs allege Ordinance 2017-47 prohibits licensed mental health professionals from providing conversion therapy, including SOCE counseling, to minors in Tampa. (Doc. 78, ¶7). The ordinance therefore prohibits Messrs. Vazzo and Pickup from providing SOCE counseling to minors in Tampa, according to the

13

plaintiffs.  (Doc. 78, ¶¶112, 116).  The plaintiffs also allege the ordinance prevents New Hearts Outreach from referring minors to Messrs. Vazzo and Pickup for SOCE counseling in Tampa.  (*Id.* at ¶135).

In their amended complaint, the plaintiffs allege Messrs. Vazzo and Pickup only use speech when they provide SOCE counseling to minors.  (*Id.* at ¶¶60–71). According to the plaintiffs, when Messrs. Vazzo and Pickup provide SOCE counseling "[t]hey sit down with their clients and talk to their clients about the clients' goals, objective, religious beliefs, desires, and identity."  (*Id.* at ¶63).  The plaintiffs allege Messrs. Vazzo and Pickup use speech to "assist a client with their [sic] stated desires and objectives in counseling, which sometimes can include reducing or eliminating the client's unwanted same-sex attractions."  (*Id.* at ¶69).  And the plaintiffs allege Ordinance 2017-47 prohibits Messrs. Vazzo and Pickup from providing SOCE counseling because of the content of their speech during SOCE counseling.  (*Id.* at ¶¶112, 116).

The plaintiffs also sufficiently pleaded that, as a content-based law, Ordinance 2017-47 fails strict-scrutiny analysis.  The plaintiffs allege that the City has no compelling interest that Ordinance 2017-47 promotes. (Doc. 78, ¶ 182).  The plaintiffs also allege that "[i]nformed consent provisions outlining the required disclosure prior to engaging in SOCE counseling with a minor would have been far less restrictive" of the plaintiffs' speech.  (Doc. 78, ¶185).  The plaintiffs' complaint, therefore, sufficiently alleges Ordinance 2017-47 violates the First Amendment because the

ordinance is a content-based law that fails strict-scrutiny analysis.

Contrary to the City's contention, *King* does not preclude the plaintiffs' content-based-law claim as a matter of law, especially in light of recent case law. *King* held that mental health counselor's speech during SOCE counseling is speech. 767 F.3d at 229 (stating that "speech is speech, and it must be analyzed as such for purposes of the First Amendment") (citations omitted).  But *King* also held that the counselor's speech during SOCE counseling was not subject to strict-scrutiny analysis because a counselor's speech during SOCE counseling is "professional speech."  *Id.* at 233.  Instead, *King* held that prohibitions on professional speech are constitutional if the law directly advances the government's interest "in protecting its citizens from harmful or ineffective professional practices and are no more extensive than necessary to serve that interest"—otherwise called intermediate-scrutiny analysis. *Id.*  Finding the New Jersey law that prohibited SOCE counseling satisfied intermediate scrutiny, *King* affirmed summary judgment against mental health counselors who challenged the law.  *Id.* at 247.

*King*'s holding that intermediate-scrutiny analysis applies to counselors' speech during SOCE counseling was later abrogated in *National Institute of Family and Life Advocates* (NIFLA) *v. Becerra*, 138 S. Ct. 2361 (2018).  *NIFLA* explicitly rejected *King*'s holding that professional speech is subject to different standards of review under the First Amendment than other speech.  *Id.* at 2371–2372.  *NIFLA* instead held that the traditional analyses that apply to content-based laws also apply

15

to professional speech that is neither commercial nor incidental to professional conduct. 138 S. Ct. at 2371–74.

Under *King* and *NIFLA*, the plaintiffs sufficiently pleaded Ordinance 2017-47 is an unconstitutional content-based law. *King* holds mental health counselors' speech during SOCE counseling is speech under the First Amendment. 767 F.3d at 229; *see also Wollschlaeger v. Governor, Florida*, 848 F.3d 1293 (2017) (holding doctor-patient communications about gun ownership are speech under the First Amendment). *NIFLA* holds traditional constitutional analyses, including strict-scrutiny analysis, applies to content-based regulations on professional speech. 138 S. Ct. at 2371. The plaintiffs' complaint sufficiently alleges that Ordinance 2017-47 is a content-based law that fails strict-scrutiny analysis. The City and Equality Florida's argument that the plaintiffs cannot plead a free-speech claim under the First Amendment as a matter of law is unsuccessful.

2.   The Plaintiffs' Claim that Ordinance 2017-47 is Unconstitutional Viewpoint Discrimination

The City argues Ordinance 2017-47 commits no viewpoint discrimination. (Doc. 84, p. 15). To supports its argument, the City relies on *Keeton v. Anderson-Wiley*, 664 F.3d 865 (11th Cir. 2011).

Equality Florida also argues[5] Ordinance 2017-14 commits no viewpoint

---

[5] Although the court allowed Equality Florida to appear as amicus in this case (Doc. 60), Equality Florida brings up issues the City failed to raise. (*See* Doc. 92, pp. 14–15) (arguing Ordinance 2017-47 is not overbroad); (Doc. 142) (introducing evidence neither the City nor the plaintiffs introduced at the November 15th hearing). Absent

discrimination because the ordinance prohibits the SOCE counseling procedure—not speech about SOCE counseling. (Doc. 92, pp. 12–13). Equality Florida also relies on *Keeton* to support Equality Florida's argument about viewpoint discrimination. (*Id.*).

Viewpoint discrimination occurs when the government targets specific views speakers have on a subject. *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995) (citation omitted). A content-based law can, in practice, be viewpoint discriminatory. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 571 (2011) (citations omitted); *RAV*, 505 U.S. at 391.

To prevail on a viewpoint-discrimination claim, the plaintiff must prove (1) the government law regulating his or her speech is unreasonable and (2) the law is not viewpoint neutral. *See Keeton*, 664 F.3d at 872 (discussing how courts analyze viewpoint-discrimination claims in nonpublic forums). The "crucial or ultimate fact" that determines whether a law is viewpoint discriminatory is the government's motivation for passing the law. *Id.* Laws that discriminate based on viewpoint are presumptively unconstitutional. *Rosenberger*, 515 U.S. at 828 (citation omitted).

---

exceptional circumstances, amici curiae may not expand the scope of issues presented by the parties to the court. *See Evans v. Ga. Reg'l Hosp.*, 850 F.3d 1248, 1257–58 (11th Cir. 2017) (quotation and citations omitted) (stating that amici curiae may not expand the scope of an appeal); *see also Resort Timeshare Resales, Inc. v. Stuart*, 764 F. Supp. 1495, 1500–01 (S.D. Fla. 1991) (quotation and citations omitted) (stating that amici appear for the benefit of the court and the court determines the extent and manner of participation by amici). So, the undersigned would not normally address new issues or arguments Equality Florida raises. But, given the procedural posture of this case and the City incorporating Equality Florida's arguments (Doc. 143, p. 5), the undersigned addresses Equality Florida's raised arguments.

The plaintiffs sufficiently pleaded Ordinance 2017-47 is unconstitutional viewpoint discrimination. The plaintiffs allege Ordinance 2017-47 is viewpoint discriminatory. (Doc. 78, ¶180). Specifically, the plaintiffs allege the ordinance "authorizes only one viewpoint on SOCE counseling and unwanted same-sex sexual attractions, behaviors, and identity by forcing Plaintiffs to present only one viewpoint on the otherwise permissible subject matter of same-sex attractions, behaviors, or identity." (*Id.* at ¶181). The plaintiffs further allege Ordinance 2017-47 "forces Plaintiffs' clients and their parents to receive only one viewpoint on this otherwise permissible subject matter." (*Id.* at ¶181).

The amended complaint alleges Ordinance 2017-47 is unreasonable because it "imposes unjustifiable and unreasonable restrictions" on the plaintiffs' speech. (*Id.* at ¶187). The plaintiffs also allege the City passed Ordinance 2017-47 because the City disagreed with the content of the communications that occur during SOCE counseling between the mental health therapist and the client. (*Id.* at ¶¶31–71). The plaintiffs therefore sufficiently pleaded necessary elements to bring a viewpoint-discrimination claim under the First Amendment.

The City and Equality Florida's argument that *Keeton* precludes the plaintiffs' viewpoint-discrimination claim is not convincing. In *Keeton*, a university required a graduate student, who believed homosexuality was a "personal choice subject to individual change," to participate in a remediation plan to improve her ability to work with "gay, lesbian, bisexual, transgender, and queer or questioning" clients. 664 F.3d

18

at 867–68.   The student claimed the remediation plan constituted viewpoint discrimination because she claimed the university imposed the plan because of her views on homosexuality. *Keeton*, 664 F.3d at 872.

*Keeton* held that evidence failed to support the student's viewpoint-discrimination claim. *Id.* at 872.   The university imposed the remediation plan on the student because she earlier expressed her intent to impose her religious beliefs on her client—not because the university disagreed with the student's viewpoint. *Id.* at 872.   *Keeton* held the university's remediation plan was not viewpoint discrimination because the ethical requirement that counselors not impose their values on their clients applied without reference to the content or viewpoint of the counselors' speech. *Id.* at 874 (citation omitted).

The plaintiffs here allege the City passed Ordinance 2017-47 because of its disagreement with the content of communications that occur during conversion therapy, including SOCE counseling—not because of ethical concerns that apply without reference to counselors' speech. (Doc. 78, ¶¶31–71).   So, *Keeton* does not preclude the plaintiffs' viewpoint-discrimination claim as a matter of law.

### 3. The Plaintiffs' Claim that Ordinance 2017-47 is Unconstitutionally Vague

Equality Florida argues Ordinance 2017-47 is not unconstitutionally vague as a matter of law because the ordinance sufficiently details which conduct is prohibited and which conduct is allowed. (Doc. 92, pp. 13–14).   Equality Florida also argues "conversion therapy" and "SOCE counseling" are terms of art in the counseling

19

community; so, counselors will understand what conduct the ordinance prohibits. (Doc. 92, pp. 13–14).

A law that imposes penalties for a new offense must sufficiently inform citizens what conduct will expose them to that law's penalties. *Connally v. Gen. Contr. Co.*, 269 U.S. 385, 391 (1926) (citations omitted). A plaintiff who claims that a law is unconstitutionally vague must prove either (1) the law fails to provide people of ordinary intelligence to understand what conduct the law prohibits or (2) the law authorizes or encourages arbitrary and discriminatory enforcement. *Konikov v. Orange Cty.*, 410 F.3d 1317, 1329 (11th Cir. 2005) (citations omitted).

The amended complaint sufficiently alleges Ordinance 2017-47 is unconstitutionally vague. The plaintiffs allege the ban on counseling aimed at reducing or eliminating sexual attractions, behaviors, or identity is vague because "sexual orientation and gender identity are difficult to define and encompass a number of factors, including behavior, practices, identity, attractions, sexual fantasy, romantic attractions, and erotic desires." (Doc. 78, ¶88). The plaintiffs allege Messrs. Vazzo and Pickup "are left to guess at what counseling practice might constitute a violation" because of the ordinance's vagueness. (*Id.* at ¶89).

The plaintiffs also allege Ordinance 2017-47 fails to "specify which clients would be classified as seeking to 'change' and those that would merely be deemed conforming their behavior with their original 'sexual orientation.'" (*Id.* at ¶90). The amended complaint also alleges the ordinance allows counselors to "provide

20

counseling that provides 'acceptance, support, and understanding' of a client's unwanted same-sex attractions, behaviors, or identity." (Doc. 78, ¶93).  But the plaintiffs allege, under the ordinance, Messrs. Vazzo and Pickup cannot "provide acceptance and support to a client who comes in for counseling and requests assistance in seeking to eliminate unwanted same-sex attractions, behaviors, or identity." (*Id.* at ¶94).

The plaintiffs' allegations plausibly claim Ordinance 2017-47 is unconstitutionally vague.

> 4.   The Plaintiffs' Claim that Ordinance 2017-47 is Unconstitutionally Overbroad

Equality Florida argues Ordinance 2017-47 is not overbroad.  (Doc. 92, pp. 14–15).  According to Equality Florida, the plaintiffs' claim that the ordinance is unconstitutionally overbroad is simply a disagreement with the City's legislative findings when it passed the ordinance.  (*Id.* at 15).

The overbreadth doctrine allows courts to invalidate laws that limit freedom of speech if the "impermissible applications of the law are substantial 'when judged in relation to the statute's plainly legitimate sweep.'" *City of Chicago v. Morales*, 527 U.S. 41, 52 (1999) (citation omitted); *Locke v. Shore*, 634 F.3d 1185, 1191 (11th Cir. 2011).  A law is overbroad when every application of the law creates the risk that ideas might be suppressed, such as when the law gives overly broad discretion to the person enforcing it. *Foryth Cty. v. Nationalist Movement*, 505 U.S. 123, 129–30 (1992) (citations omitted); *Catron v. City of St. Petersburg*, 658 F.3d, 1260, 1269 (11th Cir.

21

2011).  Invalidating a law because it is overbroad is a "strong medicine" and a "last resort." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973); *Locke*, 634 F.3d at 1192; *Catron*, 658 F.3d at 1260.

The plaintiffs' amended complaint sufficiently alleges Ordinance 2017-47 is unconstitutionally overbroad.  The plaintiffs allege the ordinance "vests unbridled discretion in government officials . . . to apply or not apply the ordinance in a manner to restrict free speech, and subjects Plaintiffs to ethical code violations." (Doc. 78, ¶191).  The plaintiffs further allege Ordinance 2017-47 is unconstitutionally overbroad because "it chills and abridges the free speech rights of all licensed mental health providers in the City of Tampa who use counseling techniques to provide assistance to a minor seeking to reduce or eliminate his or her unwanted same-sex attractions, behaviors, or identity and does not leave open alternative methods of communication." (*Id.* at ¶194).

The plaintiffs' allegations in their amended complaint are enough to plausibly claim Ordinance 2017-47 is unconstitutionally overbroad. The court should therefore allow the plaintiffs to proceed on their First Amendment claim that Ordinance 2017-47 is unconstitutionally overbroad.

    5. <u>The Plaintiffs' Claim that Ordinance 2017-47 is an Unconstitutional Prior Restraint on Their Free Speech</u>

The plaintiffs allege Ordinance 2017-47 is an unconstitutional prior restraint on their free speech.  (*Id.* at ¶179).  A prior restraint on speech is a governmental restriction on speech before its expression.  *Black's Law Dictionary* 1387 (10th ed.

22

2014).  There is a "heavy presumption" against prior-restraint laws.  *Forsyth*, 505 U.S. at 130 (citations omitted).

The plaintiffs' amended complaint sufficiently alleges Ordinance 2017-47 is an unconstitutional prior restraint on their speech because they allege the ordinance prohibits Messrs. Vazzo and Pickup from using speech necessary to provide SOCE counseling to minors.  (Doc. 78, ¶¶112, 116).

### C.   Count II: First Amendment Right to Receive Information

The plaintiffs allege Ordinance 2017-47 violates the rights of their minor clients and constituents to receive information under the First Amendment.  (Doc. 78, ¶¶197–205).   The City and Equality Florida argue the plaintiffs failed to sufficiently plead a right-to-receive-information claim because the plaintiffs failed to sufficiently plead a free-speech claim.  (Doc. 84, pp. 15–16; Doc. 92, p. 13).

The free-speech protection under the First Amendment applies to the speaker and the listener.  *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756–57 (1976) (citations omitted).  If a plaintiff plausibly alleges a free-speech claim, the plaintiff can also assert a right-to-receive-information claim.  *See id.* (stating "[i]f there is a right to advertise, there is a reciprocal right to receive the advertising, and it may be asserted") (footnote omitted); *see also Democracy Rising PA v. Celluci*, 603 F. Supp. 2d 780, 790–91 (M.D. Pa. 2009) (stating plaintiffs must establish willing speakers exist to maintain "right to listen" claim) (citation omitted).

The plaintiffs plausibly alleged Ordinance 2017-47 violates their clients' and

constituents' right to receive information under the First Amendment. The plaintiffs allege their clients and constituents have a "desire to receive SOCE counseling and the information that Plaintiffs can provide on reducing or eliminating unwanted same-sex attractions, behaviors, and identity." (Doc. 78, ¶200). The plaintiffs further allege Ordinance 2017-47 prohibits their clients and constituents from receiving SOCE counseling. (*Id.* at ¶201).

The plaintiffs' allegations supporting their right-to-receive-information claim, combined with the plaintiffs' allegations that sufficiently pleaded free-speech claims (explained in Section III(B) of this report and recommendation), demonstrate the plaintiffs have a plausible claim for relief on their right-to-receive-information claim. The court should therefore reject the City and Equality Florida's arguments that the plaintiffs failed to state a claim for relief on their right-to-receive information claim.

### D.      Count III: First Amendment Right to Free Exercise of Religion

The plaintiffs allege Ordinance 2017-47 violates their right to free exercise of religion under the First Amendment. (Doc. 78, ¶¶206–23).

The City argues the plaintiffs failed to state a claim for relief under the First Amendment's free-exercise clause because Ordinance 2017-47 is (1) neutral, generally applicable, and does not targets religiously motivated conduct and (2) narrowly tailored to serve a compelling governmental interest. (Doc. 84, pp. 16–17).

Equality Florida also argues the plaintiffs failed to state a claim for relief under the First Amendment's free-exercise clause. (Doc. 92, pp. 15–16). Like the

City, Equality Florida argues the ordinance is neutral, generally applicable, and does not target religious conduct. (Doc. 92, pp. 15–16). Equality Florida also points out Ordinance 2017-47 has an exemption for religious leaders who provide religious counseling. (*Id.* at 15). According to Equality Florida, the plaintiffs failed to allege facts to show the City was motivated by animus toward the plaintiffs' religious beliefs when the City passed Ordinance 2017-47. (*Id.* at 16). Equality Florida concludes that these facts, and the fact that strict-scrutiny analysis does not apply to free-exercise claims, establish the plaintiffs failed to state claim for relief under the First Amendment's free-exercise clause. (*Id.*).

The First Amendment protects the free exercise of religion. U.S. Const. amend. I. To satisfy the First Amendment's free-exercise clause, a law must be (1) neutral and (2) generally applicable. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993). The neutrality inquiry asks whether the object of the law is to infringe or restrict conduct because of its religious motivation. *Id.* at 533 (citations omitted). The general-applicability prong asks whether the government "in a selective manner impose[s] burdens only on conduct motivated by religious belief." *Id.* at 543 (citations omitted).

A law that is neutral and generally applicable need only satisfy rational-basis review. *Keeton*, 664 F.3d at 880 (citations omitted). That is, the law need only be rationally related to a legitimate governmental interest. *Id.* (citations omitted). Laws subject to rational-basis review are presumed constitutional. *Id.* (citation omitted).

25

If a law is neither neutral nor generally applicable, then the law must be narrowly

tailored to advance a compelling governmental interest (strict-scrutiny analysis).

*Lukumi*, 508 U.S. at 531.

Relevant to this analysis, the plaintiffs allege:

211. Ordinance 2017-47, on its face and as applied, targets Plaintiffs'
and their clients' beliefs regarding human nature, gender, ethics,
morality, and SOCE counseling, which are informed by the Bible and
constitute central components of their sincerely held religious beliefs.
Ordinance 2017-47 causes them a direct and immediate conflict with
their religious beliefs by prohibiting them from offering, referring, and
receiving counseling that is consistent with their religious beliefs.

.   .   .

215. Ordinance 2017-47, on its face and as applied, is neither neutral
nor generally applicable, but rather specifically and discriminatorily
targets the religious speech, beliefs, and viewpoint of those individuals
who believe change is possible, and thus expressly on its face and as
applied constitutes a substantial burden on sincerely held religious
beliefs that are contrary to the City-approved viewpoint on same-sex
attractions, behavior, or identity.

.   .   .

220.  Ordinance 2017-47, both on its face and as-applied, specifically
targets religion for disparate treatment and has set up a system of
individualizes exemptions that permits certain counseling on same-sex
attractions, behaviors, or identity while denying religious counseling on
the same grounds.

(Doc. 78, ¶¶211, 215, 220).

The plaintiffs' amended complaint fails to state a claim for relief under the

First Amendment's free-exercise clause.  The plaintiffs allege no facts showing the

City's object or goal in enacting Ordinance 2017-47 was to infringe upon or restrict

26

SOCE counseling because of any religious motivation.  The plaintiffs also failed to allege facts showing the City selectively imposes burdens on conduct motivated by religious belief.  The ordinance instead applies to all providers, regardless of religious belief or motivation.  So, the ordinance need only satisfy rational-basis scrutiny.

The City's stated interest in passing Ordinance 2017-47 is to protect "the physical and psychological well-being of minors." (Doc. 24-1, p. 5).  The government has a compelling interest in protecting the physical and psychological well-being of minors. *Sable Commc'ns of Calif., Inc. v. FCC*, 492 U.S. 115, 126 (1989).  Ordinance 2017-47, therefore, satisfies the rational-basis requirement of a legitimate governmental interest.

The ordinance also satisfies the other requirement of rational-basis analysis because the ordinance is rationally related to the City's interest in protecting the physical and psychological well-being of minors.  Under rational-basis review, "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314–15 (1993) (citations omitted).  The City determined, based on research conducted by organizations, like the American Psychological Association, that prohibiting conversion therapy, including SOCE counseling, would protect the physical and psychological well-bring of minors.  (Doc. 24-1, pp. 2–6).  Ordinance 2017-47 therefore goes beyond "rational speculation unsupported by evidence or empirical data."  So, the ordinance satisfies rational-basis analysis because the

ordinance is rationally related to a legitimate government interest.

The plaintiffs failed to state claims for relief under the Free Exercise Clause because the amended complaint includes no allegations that the object of the ordinance is to target religiously-motivated conduct.  The amended complaint also includes no allegations that the City selectively imposes burdens on conduct motivated by religious belief.  So, the plaintiffs failed to sufficiently plead that Ordinance 2017-47 is neither neutral nor generally applicable.  As a result, Ordinance 2017-47 is subject to rational-basis scrutiny, which the ordinance satisfies. The court should grant the City's motion to dismiss the plaintiffs' claim under the Free Exercise Clause (Count III).

### E.      Count IV: Florida Constitution Right to Liberty of Speech

The plaintiffs allege Ordinance 2017-47 violates their rights to liberty of speech under the Florida Constitution.  (Doc. 78, ¶¶224–43).  A city may not pass a law "to restrain or abridge the liberty of speech or of the press."  Art. I, § 4, Fla. Const.  The liberty-of-speech protection under the Florida Constitution mirrors the free-speech protection under the First Amendment.  *See Simmons v. State*, 944 So. 2d 317, 323–29 (Fla. 2006) (analyzing a claim under the First Amendment simultaneously with the Florida Constitution's liberty-of-speech protection); *Fla. Canners Ass'n v. State, Dept. of Citrus*, 371 So. 2d 503, 517–19 (Fla. 2d Dist. Ct. App. 1979) (same).

The plaintiffs sufficiently pleaded all their free-speech claims under the First Amendment for the reasons discussed in Section III(B) of this report.  The plaintiffs

therefore also sufficiently pleaded their liberty-of-speech claim under the Florida Constitution. The court should deny the City's motion to dismiss the plaintiffs' liberty-of-speech claim (Count IV).

### F.    Count V: Florida's Free Exercise Clause

The plaintiffs allege Ordinance 2017-47 violates the Florida Constitution's religious-freedom protection. (Doc. 78, ¶¶244–61). The Florida Constitution protects against laws that prohibit or penalize the free exercise of religion. Art. I, § 3, Fla. Const. Claims under Florida's Free Exercise Clause are analyzed the same as claims under the First Amendment. *See Toca v. State*, 834 So. 2d 204, 208 (Fla. 2d Dist. Ct. App. 2002) (stating the court found no authority to treat free-exercise claims under the First Amendment and Florida Constitution differently); *see also Bush v. Holmes*, 886 So. 2d 340, 365 (Fla. 1st Dist. Ct. App. 2004) (stating Florida courts generally interpret Florida's Free Exercise Clause "as coequal to the federal clause") (citation omitted).

The plaintiffs failed to allege a free-exercise claim under the First Amendment for the reasons stated in Section III(D) of this report. The plaintiffs therefore also failed to allege a free-exercise claim under the Florida Constitution. The court should grant the City's motion to dismiss the plaintiffs' free-exercise claim under the Florida Constitution (Count V).

### G.    Count VI: Preemption under Article VIII, Section 2(b) of the Florida Constitution

The plaintiffs allege Ordinance 2017-47 violates Article VIII, Section 2(b) of

the Florida Constitution because the City had no authority to adopt a law in a field preempted by the Florida Legislature—in this case, the field of regulating mental health professionals. (Doc. 78, ¶¶262–75).

The City argues the plaintiffs failed to state claims for relief under their preemption theory because the amended complaint has no allegations that the Florida Legislature expressly preempted laws that regulate mental health professionals. (Doc. 84, p. 21). The City also argues the plaintiffs failed to sufficiently allege implied preemption because the laws on which the plaintiffs rely for their claim "are completely silent as to any pervasive scheme evidencing a legislative attempt to preempt the City from prohibiting conversion therapy within its jurisdiction." (*Id.*). According to the City, regulation of health and safety matters are primarily left to local governments. (*Id.* at 22).

Equality Florida argues the City had the authority, under its home rule powers, to prevent mental health professionals from harming minors. (Doc. 92, p. 17). According to Equality Florida, nothing in the Florida Statutes the plaintiffs cited prevent municipalities from imposing civil penalties on mental health providers. (*Id.* at 18). Equality Florida argues the Florida Legislature intended for municipalities to regulate professions when appropriate. (*Id.*). So, Equality Florida concludes the plaintiffs cannot prove express or implied preemption applies to Ordinance 2017-47 and the plaintiffs failed to state a claim under Article VIII, Section 2(b) of the Florida Constitution as a matter of law. (Doc. 92, p. 20).

30

Article VIII, Section 2(b) of the Florida Constitution states the following:

POWERS. Municipalities shall have governmental, corporate and proprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services, and may exercise any power for municipal purposes except as otherwise provided by law. Each municipal legislative body shall be elective.

A city ordinance may be beyond the city's authority under the Florida Constitution if (1) the Legislature preempted a particular subject area or (2) the city ordinance conflicts with a state statute. *Sarasota Alliance For Fair Elections, Inc. v. Browning*, 28 So. 3d 880, 885–86 (Fla. 2010) (citation omitted); *Orange Cty. v. Singh*, No. SC18-79, ___So. 3d___, 2019 WL 98251, at *3 (Fla. Jan. 4, 2019) (citations omitted).[6]

The Florida Legislature can preempt an area of law in two ways: express or implied preemption. *Sarasota Alliance*, 28 So. 3d at 886. Express preemption requires a specific legislative statement—courts cannot imply or infer express preemption. *Id.* (citations omitted). The Florida Legislature accomplishes express preemption when the legislature uses clearing language stating its intent. *Id.* (citation omitted).

Implied preemption exists when "the legislature scheme is so pervasive as to evidence an intent to preempt the particular area, and where strong public policy

---

[6] *Singh* supersedes *Sarasota Alliance* because the ordinance at issue in *Singh* (challenged under preemption theory) was adopted in reaction to the holding in *Sarasota Alliance*. *See Singh*, 2019 WL 98251, at *3 (discussing the ordinance at issue). The legal standards *Sarasota Alliance* explained, however, remain unchanged. *See Singh*, 2019 WL 98241, at *4 (explaining the court's decision).

31

reasons exist for finding such an area to be preempted by the Legislature." *Sarasota Alliance*, 28 So. 3d at 886 (quotation marks and citation omitted).   The Florida Legislature impliedly preempts an area of law when local legislation might endanger the legislature's "pervasive regulatory scheme." *Id.* (citation omitted).

The court must look at the whole state regulation and the regulation's object and policy to determine if implied preemption applies.  *State v. Harden*, 938 So. 2d 480, 486 (Fla. 2006) (citation omitted).  "The nature of the power exerted by the legislature, the object sought to be attained by the statute at issue, and the character of the obligations imposed by the statute" are vital to determining if implied preemption applies. *Sarasota Alliance*, 28 So. 3d at 886 (citation omitted). Another crucial factor in determining whether implied preemption exists is whether the state's statutory scheme specifically recognizes the need for local control.  *See id.* at 887 (discussing *GLA and Assocs., Inc. v. City of Boca Raton*, 855 So. 2d 278 (Fla. 4th Dist. Ct. App. 2003).  Courts must be careful when imputing an intent that prohibits "a local elected governing body from exercising its home rule powers." *D'Agastino v. City of Miami*, 220 So. 3d 410, 421 (Fla. 2017) (citation omitted).

The plaintiffs sufficiently pleaded a claim for relief under an implied-preemption theory.   The amended complaint alleges the Florida Legislature preempted the field of regulating mental health professionals through Chapter 491, Florida Statutes.   (Doc. 78, ¶268).   The plaintiffs allege Chapter 491, and its accompanying regulation, outline procedures that apply to disciplining mental health

professionals. (*Id.* at ¶¶269–70).   The plaintiffs allege the City exceeded its authority when it adopted Ordnance 2017-47 because the state legislature preempted regulations of mental health professionals.   (*Id.* at ¶274).   These allegations are enough to state a plausible claim for relief under an implied-preemption theory.

The plaintiffs, however, failed to state claims for relief under an express-preemption theory.   In their complaint, the plaintiffs cite no express statement or specific language in Chapter 491, Florida Statutes, which governs "Clinical, Counseling, and Psychotherapy Services," in which the Florida Legislature expressly preempted local regulations over mental health counseling.   Nor does Chapter 491 have such an express statement.   *See* Fla. Stat. §§ 491.002–491.016 (listing laws that apply to mental health counseling).   The plaintiffs' amended complaint, therefore, fails to state claim for relief under an express-preemption theory.

The court should deny the City's motion to dismiss the plaintiffs' claim that Ordinance 2017-47 violates Article VIII, Section 2(b) of the Florida Constitution (Count VI).   The court should allow the plaintiffs to proceed under an implied-preemption theory—but not an express-preemption theory.

### H.   Count VII: Florida Patient's Bill of Rights and Responsibilities

The plaintiffs allege Ordinance 2017-47 violates the Florida Patient's Bill of Rights and Responsibilities. (Doc. 78, ¶¶276–291).   The City argues the plaintiffs fail to state a claim for relief under the Florida Patient's Bill of Rights because the plaintiffs are not "health care providers" under the statute; nor are the plaintiffs'

minor clients "patients" under the statute.  (Doc. 84, pp. 22–23).  The City further argues the Florida Patient's Bill of Rights expressly prohibits using the statute in civil actions.  (*Id.* at 24).

Equality Florida similarly argues the Florida Patient's Bill of Rights prohibits using the statute in civil actions.  (Doc. 92, p. 20).  Equality Florida also argues the plaintiffs fail to state a claim under the Patient's Bill of Rights because conversion therapy is not an effective treatment option under the statute.  (*Id.*).

In relevant part, the Florida Patient's Bill of Rights states:

1.  A patient has the right to impartial access to medical treatment or accommodations, regardless of race, national origin, religion, handicap, or source of payment.

2.  A patient has the right to treatment for any emergency medical condition that will deteriorate from failure to provide such treatment.

3.  A patient has the right to access any mode of treatment that is, in his or her own judgment and the judgment of his or her health care practitioner, in the best interests of the patient, including complementary or alternative health care treatments, in accordance with the provision of s. 456.41.

Fla. Stat. § 381.026(4)(d).  The purpose of the Florida Patient's Bill of Rights is to promote the interests and well-being of patients of health care providers and promote better communication between patients and health care providers. § 381.026(3).  The Patient's Bill of Rights, however, "shall not be used for any purpose in any civil or administrative action and neither expands nor limits any rights or remedies provided under any other law." § 381.026(3).

Private rights of action must be either express or clearly implied from the text of the statute. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, 313–17 (2012) (discussing the private-right canon that presumes against implied rights of action); *see also Cannon v. Univ. of Chicago*, 441 U.S. 677, 688 n.9 (1979) (discussing factors courts use to determine if a statute provides for a private remedy). The central inquiry is whether the legislature intended to create, either expressly or by implication, a private right of action. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575 (1979). Without statutory intent establishing the legislature wanted to create a private right of action, no cause of action exists and "courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001) (citations omitted).

The plaintiffs cannot state a claim for relief under the Florida Patient's Bill of Rights because that statute creates no private cause of action. The amended complaint contains no allegation that the Florida Patient's Bill of Rights has a statutory provision that allows for a private right of action. The Florida Patient's Bill of Rights has no such provision. *See* Fla. Stat. § 381.026 (listing the patient's rights). The "purpose" section instead expressly states the statue cannot be used in civil actions. § 381.026(3). The lack of a private-right provision and the statute's stated purpose establishes the Florida Legislature did not intend to create a private right of action under the Florida Patient's Bill of Rights and Responsibilities. The plaintiffs

35

therefore cannot bring a claim under that statute.  The court should grant the City's motion to dismiss the plaintiffs' claims under the Florida Patient's Bill of Rights and Responsibilities (Count VII).

## I.  Count VIII: Florida Religious Freedom and Restoration Act

The plaintiffs allege Ordinance 2017-47 violates the Florida Religious Freedom and Restoration Act (FRFRA).  (Doc. 78, ¶¶292–303).  The City argues the plaintiffs fail to state a claim for relief under FRFRA because the ordinance does not substantially burden the plaintiffs' exercise of religion. (Doc. 84, p. 24).  The City also argues Ordinance 2017-47 is narrowly tailored to further a compelling governmental interest.  (*Id.* at 24–25).

Equality Florida similarly argues the plaintiffs' amended complaint fails to allege Ordinance 2017-47 substantially burdens the free exercise of religion.  (Doc. 92, pp. 16–17).  According to Equality Florida, the plaintiffs allege no facts showing the ordinance either compels them to engage in activity their religion forbids or prohibits them from engaging in conduct their religion requires.  (*Id.* at 17).  Equality Florida instead argues the ordinance allows the plaintiffs to express and practice their religious views.  (*Id.*).

FRFRA states the following:

(1)    The government shall not substantially burden a person's free exercise of religion, even if the burden results from a rule of general applicability, except that government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person:

36

> (a) is in furtherance of a compelling governmental interest; and
>
> (b) is the least restrictive means of furthering that compelling governmental interest.

Fla. Stat. § 761.03.  Before a claimant can challenge a law under FRFRA, the claimant must establish he or she has a sincerely-held religious belief the law affects.  *Warner v. City of Boca Raton*, 887 So. 2d 1023, 1032 n.7 (2004) (quotation and citation omitted); *Freeman v. Dep't of Highway Safety and Motor Vehicles*, 924 So. 2d 48, 54 (Fla. 5th Dist. Ct. App. 2006).  The claimant must then establish the challenged law substantially burdens his or her sincerely-held religious belief.  *Freeman*, 924 So. 2d at 54.  A law substantially burdens a claimant's sincerely-held religious belief when the law "compels the religious adherent to engage in conduct his religion forbids or forbids him to engage in conduct that his religion requires."  *Warner*, 887 So. at 1033 (citation omitted).  After the claimant satisfies those requirements, the burden shifts to the government to establish that the law is the least restrictive means of furthering a compelling governmental interest.  *Id.* at 1034 (citation omitted).

The plaintiffs' amended complaint alleges a plausible claim for relief under FRFRA.  The plaintiffs allege they have sincerely-held religious beliefs that require them to provide counseling to minors who struggle "with unwanted same-sex attractions, behaviors, or identity."  (Doc. 78, ¶¶296–98).  The plaintiffs allege Ordinance 2017-47 prohibits them from offering counseling consistent with their religious beliefs.  (Doc. 78, ¶299).  And the plaintiffs allege Ordinance 2017-47 is not the least restrictive means of furthering any compelling governmental interest.  (*Id.*

at 301–02).  These allegations are enough to state a plausible claim for relief under FRFRA.  The court should deny the City's motion to dismiss the plaintiffs' cause of action under FRFRA (Count VIII).

## IV.    CONCLUSION

The plaintiffs' amended complaint fails to state a claim for relief under the Free Exercise Clauses under the federal and Florida constitutions (Counts III and V). The amended complaint also cannot state a claim for relief under the Florida Patient's Bill of Rights and Responsibilities (Count VII).  But the plaintiffs' amended complaint alleges plausible claims for relief on the remaining causes of action.  Therefore, the City's motion to dismiss (Doc. 84) should be **GRANTED-IN-PART** and **DENIED-IN-PART** as follows:

1.    The City's motion to dismiss to plaintiffs' freedom-of-speech claims under the First Amendment (Count I) should be **DENIED**.

2.    The City's motion to dismiss the plaintiffs' right-to-receive-information claim under the First Amendment (Count II) should be **DENIED**.

3.    The City's motion to dismiss the plaintiffs' religious-free-exercise claim under the First Amendment (Count III) should be **GRANTED**.

4.    The City's motion to dismiss the plaintiffs' liberty-of-speech claim under the Florida Constitution (Count IV) should be **DENIED**.

5.    The City's motion to dismiss the plaintiffs' religious-free-exercise claim under the Florida Constitution (Count V) should be **GRANTED**.

6.  The City's motion to dismiss the plaintiffs' preemption claim (Count VI) should be **DENIED**. The plaintiffs should be allowed to proceed on their implied-preemption theory—but not their express-preemption theory.

7.  The City's motion to dismiss the plaintiffs' claims under the Florida Patient's Bill of Rights and Responsibilities (Count VII) should be **GRANTED**.

8.  The City's motion to dismiss the plaintiffs' claims under the Florida Religious Freedom Restoration Act (Count VIII) should be **DENIED**.

**RECOMMENDED** in Tampa, Florida, on January 30, 2019.

AMANDA ARNOLD SANSONE
United States Magistrate Judge

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of this service bars an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. § 636(b)(1).