ROBERT L. VAZZO,
DAVID H. PICKUP, SOLI DEO
GLORIA INTERNATIONAL, INC.
d/b/a NEW HEARTS OUTREACH
TAMPA BAY

      Plaintiffs,

v.                             Case No. 8:17-cv-2896-T-02AAS

CITY OF TAMPA,

      Defendant,

_____/

## REPORT AND RECOMMENDATION

The plaintiffs—Robert Vazzo, David Pickup, and New Hearts Outreach—move for a preliminary injunction enjoining the City of Tampa from enforcing Ordinance 2017-47. (Docs. 85, 145). The City and amicus Equality Florida oppose the plaintiffs' motion. (Docs. 98, 99, 142, 143). The plaintiffs' motion for a preliminary injunction focuses on two of the eight claims in their first amended complaint: their free-speech claims under the First Amendment (Count I) and their claim that the City lacked the authority to enact Ordinance 2017-47 under the Florida Constitution (Count VI). (Docs. 85, 145).

The plaintiffs failed to establish a substantial likelihood of success on the merits of their claim that the City lacked the authority to enact Ordinance 2017-47

1

(Count VI).  But the plaintiffs established a substantial likelihood of success on the merits of their free-speech claims under the First Amendment (Count I).  The plaintiffs also established they will suffer irreparable injury if the court enters no injunction; the threatened injury to the plaintiffs outweighs the damage a limited injunction would cause the City; and a limited injunction against enforcing Ordinance 2017-47's ban against non-coercive, non-aversive SOCE counseling—that consists entirely of speech or "talk therapy"—is in the public interest.  Therefore, the plaintiffs' motion for a preliminary injunction should be **GRANTED-IN-PART** and **DENIED-IN-PART**.

## I.    GENERAL BACKGROUND

The plaintiffs move to enjoin the enforcement of Ordinance 2017-47, which prohibits mental health professionals from practicing conversion therapy on minors. (Doc. 85, Doc. 24-1).  The ordinance defines conversion therapy to include counseling or treatment aimed at changing an individual's sexual orientation or gender identity. (Doc. 24-1, p. 6).  Conversion therapy, under the ordinance, also includes counseling an individual with the goal of eliminating or reducing "sexual or romantic attractions or feelings toward individuals of the same gender or sex."  (*Id.*).

Messrs. Vazzo and Pickup are licensed marriage and family therapists[1] whose practices include providing sexual-orientation-change-efforts (SOCE) counseling.

---

[1]  Mr. Vazzo is licensed to practice mental health counseling in Florida.  (Doc. 78, ¶14).  Mr. Pickup is not licensed in Florida, but he is in the process of obtaining his Florida license.  (*Id.* at ¶15).

(Doc. 78, ¶¶14–15, 102, 116). According to the plaintiffs, SOCE counseling helps clients, including minors, "reduce or eliminate same-sex sexual attractions, behaviors or identity." (*Id.* at ¶60). During SOCE counseling, Messrs. Vazzo and Pickup use speech to help their clients "understand and identify their anxiety or confusion regarding their attractions, or identity and then help the client formulate the method of counseling that will most benefit that particular client." (*Id.* at ¶65).

According to the plaintiffs, clients, including minors, initiate SOCE counseling by giving their informed consent. (*Id.* at ¶8). The plaintiffs allege some clients request SOCE counseling to "address the conflicts between their sincerely held religious beliefs and goals to reduce or eliminate their unwanted same-sex attractions, behaviors, or identity." (Doc. 78, ¶9).

New Hearts Outreach is a Christian ministry in Tampa. (*Id.* at ¶¶16, 126). Part of its ministry is to refer individuals, including minors, "struggling with unwanted same-sex attractions, behaviors, and identity" to mental health professionals to receive SOCE counseling. (*Id.* at ¶¶132–34).

Messrs. Vazzo and Pickup cannot provide SOCE counseling to minors in Tampa under Ordinance 2017-47. (*Id.* at ¶¶112, 116). Nor can New Heart Outreach refer minors to Messrs Vazzo and Pickup for SOCE counseling in Tampa. (*Id.* at ¶135). If Messrs Vazzo and Pickup provided SOCE counseling to minors in Tampa, they would be subject to penalties of a $1,000 fine for the first violation and a $5,000 fine for each following violation. (Doc. 24-1, p. 7).

The plaintiffs sued the City and allege Ordinance 2017-47 violates their federal and state constitutional rights. (Doc. 78). Most relevant to their motion for preliminary injunction, the plaintiffs allege Ordinance 2017-47 violates their right to freedom of speech under the First Amendment (Count I). (*Id.* at ¶¶177–96). The plaintiffs also allege Ordinance 2017-47 violates the Florida Constitution because the state legislature preempted the field of regulating mental health professionals (Count VI). (*Id.* at ¶¶262–75).

Before turning to the substance of the plaintiffs' motion for a preliminary injunction, the undersigned will provide the procedural background leading to this point of the litigation.

## II.    PROCEDURAL BACKGROUND

The City adopted Ordinance 2017-47 on April 6, 2017, and the mayor approved the ordinance four days later. (Doc. 24-1, p. 8). The plaintiffs began this lawsuit against the City on December 4, 2017. (Doc. 1). At the same time they filed their complaint, the plaintiffs moved for a preliminary injunction enjoining the City's enforcement of Ordinance 2017-47. (Doc. 3).

After moving for an extension of time, which the undersigned granted, the City moved to dismiss the plaintiffs' original complaint on January 12, 2018. (Docs. 19, 22). The city also submitted its response to the plaintiffs' motion for preliminary injunction on January 12th. (Doc. 23). The plaintiffs moved to submit a consolidated response that would include a response to the City's motion to dismiss and a reply in

further support of their motion for preliminary injunction. (Doc. 37). The undersigned allowed the plaintiffs to submit a consolidated response, which the plaintiffs submitted on January 29, 2018, after asking for a one-day extension. (Docs. 39, 41, 43).

Between January and March 2018, the plaintiffs and Equality Florida—a civil-rights organization that helped draft Ordinance 2017-47—argued over whether the court should allow Equality Florida to intervene. (Docs. 30, 42, 45, 50). The plaintiffs and the City also argued over whether the court should allow the City to file DVDs and other documents of the legislative proceedings for Ordinance 2017-47. (Docs. 27, 44). On March 15, 2018, the undersigned granted the City's motion to file its DVDs and other documents. (Doc. 51). That same day, the undersigned issued a report that recommended allowing Equality Florida to participate in this litigation as amicus curiae. (Doc. 52). After the parties' two-week period to object to the undersigned's March 15th report and recommendation, the court adopted the undersigned's report and recommendation. (Doc. 60).

The plaintiffs and the City then jointly moved to stay discovery pending the court's ruling on the plaintiffs' motion for preliminary injunction and the City's motion to dismiss. (Doc. 49). The court denied the parties' motion to stay discovery. (Doc. 61). In the meantime, the undersigned scheduled a hearing on the plaintiffs' motion for preliminary injunction and the City's motion to dismiss. (Doc. 59). The undersigned scheduled the hearing for June 7, 2018, despite providing the parties

multiple dates in April because, according to the parties and Equality Florida, June 7th was the earliest date available for all parties. (Doc. 59, p. 2 n.2).

On May 25, 2018—less than two weeks before the scheduled hearing on the plaintiffs' motion for preliminary injunction and the City's motion to dismiss—the plaintiffs moved to amend their complaint. (Doc. 71). As a result, the undersigned cancelled the June 7th hearing. (Doc. 72). The court granted the plaintiffs' motion to submit an amended complaint and denied as moot the plaintiffs' original motion for preliminary injunction and the City's motion to dismiss. (Docs. 76, 79, 80).

The plaintiffs submitted their first amended complaint, the operative complaint, on June 12, 2018. (Doc. 78). The plaintiffs also submitted their current motion for preliminary injunction on June 26th—the same day the City moved to dismiss the plaintiffs' first amended complaint. (Docs. 84, 85).

Following the parties' joint request, the undersigned adopted the parties' proposed briefing schedule. (Doc. 88). Under that schedule, the last briefing concerning the plaintiffs' motion for preliminary injunction and the City's motion to dismiss was due August 10, 2018. (Doc. 87, p. 2). At the same time the undersigned adopted the parties' briefing schedule, the undersigned provided the parties multiple dates in August and September to hold the hearing on the motions. (Doc. 88, p. 2). The parties could not choose from the dates provided, so the undersigned provided dates in October to hold the hearing. (Doc. 94).

The parties eventually agreed to hold the hearing on October 10, 2018, which

the undersigned then scheduled. (Docs. 97, 99). But the parties then had discovery disputes, which resulted in the October 10th hearing being rescheduled to November 15, 2018. (Docs. 106, 111, 118, 119, 121, 125, 128, 130).

On November 15th, the undersigned finally held the hearing on the plaintiffs' motion for preliminary injunction and the City's motion to dismiss. (Doc. 136). At the conclusion of the hearing, the undersigned allowed the parties and Equality Florida to submit supplemental briefs by December 3, 2018, which they did. (Docs. 142, 143, 145). Undisputedly, the plaintiffs' motion for a preliminary injunction is fully ripe for the court's determination.

## III. LEGAL STANDARD

A party moving for a preliminary injunction must establish (1) the party has a likelihood of success on the merits; (2) the party will suffer irreparable injury if the court issues no injunction; (3) the threatened injury to the moving party outweighs whatever damage the injunction may cause the opposing party; and (4) the injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted); *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (citations omitted). The burden is on the moving party to clearly establish that all four factors for a preliminary injunction are met. *Siegel*, 234 F.3d at 1176 (citations omitted).[2]

---

[2] The Eleventh Circuit requires the party moving for a preliminary injunction to satisfy all four factors. *Siegel*, 234 F.3d at 1176 (citations omitted). A question exists whether the Supreme Court requires all four factors to be met. *See Winter*, 555 U.S.

A preliminary injunction is an extraordinary remedy. *Winter*, 555 U.S. at 24 (citation omitted). When a court enjoins a municipal ordinance, "the court overrules the decision of the elected representatives of the people and, thus, in a sense interferes with the processes of democratic government." *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990). As a result, courts must grant preliminary injunctions against municipal ordinances only if an injunction "is definitely demanded by the Constitution and by the other strict legal and equitable principles that restrain courts." *Id.* Courts must particularly consider the public consequences of issuing a preliminary injunction. *Winter*, 555 U.S. at 24.

The plaintiffs focused only on their free-speech claims under the First Amendment (Count I) and their claim that the City lacked authority to enact Ordinance 2017-47 under the Florida Constitution (Count VI) in their briefing in support of their motion for a preliminary injunction and at the November 15th hearing. Therefore, the undersigned will focus on those claims only and will not analyze the merits of issuing an injunction based on the plaintiffs' other six claims.

The undersigned's analysis will begin with determining whether the plaintiffs established a likelihood of success on the merits on their preemption and First

---

at 391–92 (Ginsburg, J., dissenting) (stating that preliminary-injunction analyses require a sliding-scale approach, which *Winter* did not reject). In this case, whether the court adopts the Eleventh Circuit's approach or a sliding-scale approach, the plaintiffs meet all four factors on their free-speech claim under the First Amendment.

Amendment claims. The undersigned will then turn to whether the plaintiffs satisfied the other requirements for a preliminary injunction

## IV. ANALYSIS

### A. Likelihood of Success on the Merits

#### 1. Count VI: The Plaintiffs' Claim that the City Lacked Authority to Enact Ordinance 2017-47

In their briefing and oral arguments concerning Count VI of the amended complaint, in which the plaintiffs allege the City lacked authority under the Florida Constitution to enact Ordinance 2017-47, the plaintiffs argue three theories: the Florida Legislature expressly preempted the area of regulating mental health professionals; the Florida Legislature impliedly preempted the area of regulating mental health professionals; and Ordinance 2017-47 conflicts with Florida law governing mental health professionals. (Docs. 85, 114, 145). The undersigned will address each argument, beginning with the plaintiffs' conflict-of-laws argument.

##### a. Conflict-of-Laws Argument

Although missing from Count VI of their amended complaint, the plaintiffs argue they are likely to succeed on a claim that Ordinance 2017-47 conflicts with Chapter 491, Florida Statutes, which governs "Clinical, Counseling, and Psychotherapy Services." (Doc. 85, pp. 23–24). The plaintiffs argue the ordinance conflicts with Chapter 491 because it imposes additional fees and penalties on conduct—in this case, SOCE counseling—legal in other parts of Florida. (*Id.* at 23).

The plaintiffs failed to allege a conflict-of-laws claim in their first amended

complaint. Their claim under Article VIII, Section 2(b) of the Florida Constitution focuses exclusively on preemption. (*See* Doc. 78, ¶¶262–75) (alleging Chapter 491, Florida Statutes, preempts regulation of mental health professionals). In fact, the plaintiffs only use the word "conflict" to describe the alleged conflict between clients' "unwanted same sex attractions, behaviors, or identity," clients' religious beliefs and Ordinance 2017-47. (*Id.* at ¶¶4, 9, 45, 79, 97–99, 208, 211, 213, 246, 249, 251, 296, 299). The plaintiffs cannot establish a likelihood of success on a claim they failed to plead in their amended complaint. A preliminary injunction based on a conflict-of-law claim—which the plaintiffs never alleged—is therefore inappropriate.

*b.      Express-Preemption Claim*

The plaintiffs allege Ordinance 2017-47 violates Article VIII, Section 2(b) of the Florida Constitution because the City had no authority to adopt a law in a field preempted by the Florida Legislature—in this case, the field of regulating mental health professionals. (*Id.* at ¶¶262–75).

Article VIII, Section 2(b) of the Florida Constitution states the following:

POWERS. Municipalities shall have governmental, corporate and proprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services, and may exercise any power for municipal purposes except as otherwise provided by law. Each municipal legislative body shall be elective.

A city ordinance may be beyond the city's authority under the Florida Constitution if the legislature preempted a particular subject area. *Sarasota Alliance For Fair Elections, Inc. v. Browning*, 28 So. 3d 880, 885–86 (Fla. 2010) (citation

omitted); *Orange Cty. v. Singh*, No. SC18-79, ___ So. 3d ___, 2019 WL 98251, at *3 (Fla. Jan. 4, 2019) (citations omitted).[3]

The Florida Legislature can preempt an area of law in two ways: express or implied preemption. *Sarasota Alliance*, 28 So. 3d at 886. Express preemption requires a specific legislative statement—courts cannot imply or infer express preemption. *Id.* (citations omitted). The Florida Legislature accomplishes express preemption when the legislature uses clear language stating its intent. *Id.* (citation omitted).

Finding express preemption "is a very high threshold to meet." *D'Agastino v. City of Miami*, 220 So. 3d 410, 422 (Fla. 2017) (citations omitted). If a preemption claim requires inferences, that claim fails the test for express preemption. *Id.* at 23 (citations omitted). Courts have little justification to create preemption in a state statute because the legislature can easily do so by including clear language that expressly preempts an area of law. *Phantom of Clearwater, Inc. v. Pinellas Cty.*, 894 So. 2d 1011, 1019 (Fla. 2d Dist. Ct. App. 2005) (citation omitted).

The plaintiff failed to establish a likelihood of success on the merits on an express-preemption claim. In their complaint, the plaintiffs cite no express statement or specific language in Chapter 491, Florida Statutes, which governs "Clinical,

---

[3] *Singh* supersedes *Sarasota Alliance* because the ordinance at issue in *Singh* (challenged under preemption theory) was adopted in reaction to the holding in *Sarasota Alliance*. *See Singh*, 2019 WL 98251, at *3 (discussing the ordinance at issue). The legal standards *Sarasota Alliance* explained, however, remain unchanged. *See Singh*, 2019 WL 98241, at *4 (explaining the court's decision).

Counseling, and Psychotherapy Services," in which the legislature expressly preempted local regulations over mental health counseling. Nor does Chapter 491 have such an express statement. *See* Fla. Stat. §§ 491.002–491.016 (listing laws that apply to mental health counseling). The plaintiffs' exemption claim instead requires inferences. (*See* Doc. 85, pp. 22–24) (arguing Chapter 491 creates a pervasive regulatory scheme). So, the plaintiffs can only plausibly claim the Florida Legislature impliedly preempted the field of regulating mental health professionals. A preliminary injunction based on an express-preemption claim is therefore inappropriate.

c.    *Implied-Preemption Claim*

The plaintiffs argue they are likely to succeed on the merits of their implied-preemption claim. (Doc. 85, pp. 22–24). The City argues the plaintiffs failed to demonstrate the Florida Legislature intended to preempt the area of regulating mental health professionals. (Doc. 99, pp. 22–25).

Implied preemption exists when "the legislature scheme is so pervasive as to evidence an intent to preempt the particular area, and where strong public policy reasons exist for finding such an area to be preempted by the Legislature." *Id.* (quotation marks and citation omitted). The Florida Legislature impliedly preempts an area of law when local legislation might endanger the legislature's "pervasive regulatory scheme." *Sarasota Alliance*, 28 So. 3d at 886 (citation omitted).

The court must look at the whole state regulation and the regulation's object

and policy to determine if implied preemption applies. *State v. Harden*, 938 So. 2d 480, 486 (Fla. 2006) (citation omitted). "The nature of the power exerted by the legislature, the object sought to be attained by the statute at issue, and the character of the obligations imposed by the statute" are vital to determining if implied preemption applies. *Sarasota Alliance*, 28 So. 3d at 886 (citation omitted). Another crucial factor in determining whether implied preemption exists is whether the state's statutory scheme specifically recognizes the need for local control. *See id.* at 887 (discussing *GLA and Assocs., Inc. v. City of Boca Raton*, 855 So. 2d 278 (Fla. 4th Dist. Ct. App. 2003)).

Courts must be careful when imputing an intent that prohibits "a local elected governing body from exercising its home rule powers." *D'Agastino*, 220 So. 3d at 421 (citation omitted); *see also Black's Law Dictionary*, 850 (10th ed. 2014) (defining "home rule" as the measure of autonomy state legislatures give local governments). A municipality in Florida has broad authority to exercise its home rule powers not expressly limited by the constitution, general or special law, or county charter. Fla. Stat. § 166.021(4); *Masone v. City of Aventura*, 147 So.3d 492, 494–95 (Fla. 2014) (citations omitted). Implied preemption is limited to areas where the Florida Legislature expressed its will to be the sole regulator. *Phantom of Clearwater*, 894 So. 2d at 1019 (quotation and citations omitted).

Some factors weigh in favor of concluding the Florida Legislature intended to preempt the area of regulating mental health professionals. To begin, Chapter 491

has no language expressly recognizing local regulation of mental health professionals. *See* Fla. Stat. §§ 491.002–491.016 (listing laws that apply to mental health counseling). Statutory language that expressly recognizes local regulation weighs against finding implied preemption. *See Sarasota Alliance*, 28 So. 3d at 887–88 (finding no implied preemption in the state Election Code, which "specifically delegates certain responsibilities and powers to local authorities"); *Phantom of Clearwater*, 894 So. 2d at 1019 (finding no implied preemption in Chapter 791, which regulates the sale of fireworks, because the statute "expressly delegates enforcement to local government" and "authorizes boards of county commissioner to set and require surety bonds" from fireworks vendors). The lack of language expressly recognizing local control in Chapter 491, therefore, weighs in favor of finding implied preemption.

Another factor that weighs in favor of finding implied preemption in Chapter 491 is the reluctance to allow municipalities to regulate an area traditionally left to the state. The state legislature has the power to regulate professions that affect the health, safety, and welfare of the public. *Gillett v. Fla. Univ. of Dermatology*, 197 So. 852, 855 (Fla. 1940). If doubt exists about whether a municipality has a specific power, that doubt is resolved against the municipality. *City of Miami Beach v. Fleetwood Hotel, Inc.*, 261 So. 2d 801, 803 (Fla. 1972) (citation omitted). A municipality has no power "in the absence of specific delegation of power" in its city charter. *Fleetwood Hotel*, 261 So. 2d at 803 (citation omitted). An area of statewide

concern is not the proper subject of a municipal government's legislation. *Lowe v. Broward Cty.*, 766 So. 2d 1199, 1204–05 (Fla. 4th Dist. Ct. App. 2000).

Mental health counseling is a profession the state legislature has the power to regulate. *See* Fla. Stat. § 491.002 (referring to mental health counseling as a profession). And the City failed to cite to a specific delegation of power in its charter that allows the City to regulate mental health counseling. These two facts, combined with the presumptive doubt against municipal powers, weigh in favor of finding implied preemption in Chapter 491.

Perhaps the most notable factor weighing in favor of finding implied preemption in Chapter 491 is the statute's disciplinary provision. *See* Fla. Stat. § 491.009 (listing "acts that constitute grounds for denial of a license or disciplinary action"). Section 491.009 states that mental health professionals can be penalized if they violate Section 456.072(1), Florida Statutes. Chapter 456 regulates health professions and occupations. Fla. Stat. §§ 456.001–456.50. Section 456.072 lists acts that constitute grounds for discipline and specifically states the following:

> The purpose of this section is to facilitate uniform discipline for those actions made punishable under this section and, to this end, a reference to this section constitutes a general reference under the doctrine of incorporation by reference.

Fla. Stat. § 456.001(8).[4]  When read together, Sections 491.009 and 456.001(8) state

---

[4] The doctrine of incorporation by reference requires some expression in a document of an intention to be bound by the referenced document. *See Kanter v. Boutin*, 624 So. 779, 781 (Fla. 4th Dist. Ct. App. 1993) (discussing the doctrine of incorporation by reference in the context of contract law).

the purpose of the disciplinary provisions in Section 491.009 is to have uniform discipline standards for mental health counselors.

The legislature's intent for uniform discipline is an important consideration in determining whether implied preemption exists. *See D'Agastino*, 220 So. 2d at 426 (concluding county's disciplinary proceedings conflicted with those outlined in state law); *Classy Cycles, Inc. v. Bay Cty.*, 201 So. 3d 779,788 (Fla. 1st Dist. Ct. App. 2016) (concluding the legislature impliedly preempted county ordinances, which included penalties for failure to obtain motorcycle insurance, because the legislature "created a pervasive scheme of regulation" for motor-vehicle insurance).

Ordinance 2017-47 threatens the legislature's desired uniformity because other municipalities may choose to allow mental health professionals to provide conversion therapy. A mental health professional could therefore be subject to discipline in Tampa for providing conversion therapy but subject to no discipline in a neighboring municipality within the same county. This potential threat to uniform discipline under Section 491.009 weighs in favor of finding implied preemption.

But factors also weigh against finding implied preemption in Chapter 491. Courts are notably hesitant to impute an intent to the legislature because the legislature knows how to expressly preempt an area of regulation. *See City of Hollywood v. Mulligan*, 934 So. 1238, 1245–46 (finding no express preemption in the Florida Contraband Forfeiture Act because the legislature removed previous statutory language that reserved power to regulate forfeiture to the state);

*D'Agostino*, 220 So. 3d at 423 (stating implied preemption involving a municipality's home rule powers is disfavored). So, the hesitancy to find implied preemption in state statutes weighs in favor of finding no implied preemption.

The plaintiffs also failed to cite a case in which a court concluded the Florida Legislature preempted regulation of a profession, like mental health counseling. Nor did the undersigned find such case law. These factors—courts' hesitation to conclude implied preemption exists and lack of case law concluding the state legislature preempted regulation of a profession—weigh in favor of concluding no implied preemption in Chapter 491—at least at this early stage of the litigation.

A plaintiff moving for a preliminary injunction establishes substantial likelihood of success on the merits when the plaintiffs shows a probability he or she will succeed on the merits. *Shatel Corp. v. Mao Ta Lumber and Yacht Corp.*, 697 F.2d 1352, 1354 n.2 (11th Cir. 1983) (citations omitted). "A probability signifies that an event has a better than fifty-percent chance of occurring." *Mercantile Texas Corp. v. Bd. of Gov. of Fed. Reserve Sys.*, 638 F.2d 1255, 1268 (5th Cir. Unit A 1981).[5] "[T]he word 'substantial' does not add to the quantum of proof required to show a likelihood of success on the merits." *Shatel Corp.*, 697 F.2d at 1354 n.2.

The undersigned concludes that, although the plaintiffs demonstrated they might succeed on the merits of their implied-preemption claim, the plaintiffs' success

---

[5] The former Fifth Circuit's decisions are binding precedent. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

is not necessarily likely nor probable considering the general reluctance to find implied intent and the lack of case law concluding the legislature preempted regulation of a profession like mental health counseling. The plaintiffs therefore failed to establish a likelihood of success on the merits of their implied-preemption claim based on the record currently available to the court.

A party moving for a preliminary injunction must establish all four factors needed for a preliminary injunction. *Siegel*, 234 F.3d at 1176 (citations omitted). The court should not grant a preliminary injunction based on the plaintiffs' implied-preemption claim because the plaintiffs failed to establish a likelihood of success on the merits. The court also need not consider whether the plaintiffs satisfied the other three factors for a preliminary injunction based on their implied-preemption claim because the plaintiffs failed to establish a likelihood of succeed on the merits.

\* \* \*

The plaintiffs cannot demonstrate a substantial likelihood of success on a claim that Ordinance 2017-47 conflicts with Florida law because the plaintiffs failed to allege a conflict-of-laws claim in their amended complaint. The plaintiffs also failed to demonstrate a likelihood of success on the merits of their claim that the Florida Legislature preempted the area of regulating mental health professionals. The court therefore should not enjoin enforcement of Ordinance 2017-47 based on the plaintiffs' claim that the City lacked authority to enact Ordinance 2017-47 (Count VI).

The undersigned will now turn to whether the plaintiffs demonstrated a

likelihood of success on the merits on their free-speech claims under the First Amendment.

2.      Count I: Plaintiffs' Claim that Ordinance 2017-47 Violates
        their Freedom of Speech under the First Amendment

Count I of the plaintiffs' first amended complaint, which alleges Ordinance 2017-47 violates the free-speech protections under the First Amendment, alleges six theories on why the ordinance is unconstitutional: Ordinance 2017-47 is an unconstitutional content-based law; the ordinance commits viewpoint discrimination; the ordinance is unconstitutionally vague; the ordinance is unconstitutionally overbroad; the ordinance is underinclusive; and the ordinance is an unconstitutional prior restraint on free speech. (Doc. 78, ¶¶179, 180, 182, 192–94).

In their briefing and oral arguments at the November 15th hearing, the plaintiffs focused on the likelihood of success on their claims that Ordinance 2017-47 is a content-based law; the ordinance commits viewpoint discrimination; the ordinance is unconstitutionally vague; the ordinance is unconstitutionally overbroad; and the ordinance is an unconstitutional prior restraint of free speech.   The undersigned will therefore focus on whether the plaintiffs demonstrated a substantial likelihood of success on those claims.

a.      *Content-Based-Law Claim*

The First Amendment protects freedom of speech. U.S. Const. amend. I; *see also* 42 U.S.C. § 1983 (prohibiting persons acting under color of any ordinance from violating individuals' constitutional rights).  Two types of laws commonly come into

play in First Amendment challenges: content-neutral laws and content-based laws. *Ward v. Rock Against Racism*, 491 U.S. 781 (1989); *R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992); *United States v. Playboy Ent. Group*, 529 U.S. 803 (2000); *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015).

A law is content-neutral when its restrictions "are justified without reference to the content of the regulated speech." *Clark v. Comm. for Creative Non-Violence*, 468 U.S. 288, 293 (1984) (citations omitted). A law that has an incidental effect on some speakers or messages is content-neutral if the regulation serves a purpose unrelated to the content of expression. *Ward*, 491 U.S. at 791 (citation omitted).[6]

A law is content-based if it "applies to particular speech because of the topic discussed or the idea or message expressed." *Reed*, 135 S. Ct. at 2227 (citations omitted). Content-based laws also include laws that cannot be justified without reference to the content of the regulated speech and laws the government adopted because it disagrees with the message the regulated speech conveys. *Id.*; *Ward*, 491 U.S. at 791 (citation omitted).

Content-based laws must satisfy strict-scrutiny analysis. *Playboy*, 529 U.S. at 813. That is, the law must be narrowly tailored to promote a compelling

---

[6] A content-neutral law must be narrowly tailored to serve a significant governmental interest. *Creative Non-Violence*, 468 U.S. at 293 (citations omitted). A law is narrowly tailored when it is "not substantially broader than necessary to achieve the government's interest." *Ward*, 491 U.S. at 799. The regulation need not be the least restrictive or least intrusive means of serving a significant governmental interest. *Id.* at 798–99. But the law must "leave open ample alternative channels" for communicating the affected speech. *Id.* at 791.

governmental interest. *Id.* If a less strict alternative would promote the government's compelling interest, the government must use that alternative. *Id.* Content-based laws are presumptively invalid. *R.A.V.*, 505 U.S. at 382 (citations omitted).

The plaintiffs argue Ordinance 2017-47 is an unconstitutional content-based law because the ordinance prohibits Messrs. Vazzo and Pickup from providing SOCE counseling, which "takes place only through speech." (Doc. 114, p. 3). According to the plaintiffs, the City adopted Ordinance 2017-47 because the City disagrees with the content of the speech that takes place during SOCE counseling. (*Id.* at 4; Doc. 85, p. 11). So, the plaintiffs argue strict-scrutiny analysis applies and the ordinance fails that test because it is not the least restrictive means of furthering a compelling governmental interest. (Doc. 114, pp. 16–27).

The City argues the plaintiffs failed to demonstrate a likelihood of success on their content-based-law claim because the ordinance is narrowly tailored to satisfy a significant governmental interest. (Doc. 99, pp. 8–19). Equality Florida similarly argues the plaintiffs failed to demonstrate a likelihood of success on their First Amendment claims. (Doc. 98, p. 4).

The undersigned concludes the plaintiffs demonstrated a likelihood of success on their content-based-law claim. To understand this conclusion, an overview of the four most relevant cases is necessary—two of which directly address bans on conversion therapy, including SOCE counseling.

21

The first case is *Pickup v. Brown*, 740 F.3d 1208 (9th Cir. 2014). *Pickup* addressed a California law banning SOCE counseling. *Id.* at 1221. The plaintiffs in *Pickup* included SOCE counselors, including David Pickup (also the plaintiff in this case), who claimed the California ban on SOCE counseling violated their free-speech rights under the First Amendment. *Id.* at 1224. *Pickup* held the state ban on SOCE counseling regulated conduct—not speech. *Id.* at 1229. *Pickup* then applied rational-basis review (meaning the law must bear a rational relationship to a legitimate state interest) to the California ban on SOCE counseling because any effect the ban had on the plaintiffs' speech during SOCE counseling was "merely incidental." *Id.* at 1231. Finding the state had a legitimate interest in protecting minors and the legislature reasonably relied on reports and opinions that asserted SOCE counseling was harmful and ineffective, *Pickup* held the state ban on SOCE counseling satisfied rational-basis review and was therefore constitutional. *Id.* at 1231–32.

The next case to consider is *King v. Governor of New Jersey*, 767 F.3d 216 (3d Cir. 2014). *King*, decided over eight months after *Pickup*, addressed a New Jersey law that banned SOCE counseling. *Id.* at 221–22. The plaintiffs in *King* also included counselors who brought free-speech claims under the First Amendment against the state law. *Id.* at 220–21. *King* disagreed with *Pickup* and held communications during SOCE counseling between the counselor and client are speech—not conduct— for First Amendment analyses. 767 F.3d at 224–29. *King* also held, however, speech during SOCE counseling is professional speech and laws prohibiting professional

speech "are constitutional only if they directly advance the state's interest in protecting its citizens from harmful or ineffective practices and are no more extensive than necessary to serve that interest." *Id.* at 223. *King* held the state ban was constitutional because the state had a substantial interest in protecting citizens from harmful professional practices; the legislature relied on substantial evidence when passing the state ban, including reports from professional and scientific organizations; and the plaintiffs provided no other adequate suggestion on how the state could protect minors. *Id.* at 236–40.

The first binding case most relevant here is the 2017 decision in *Wollschlaeger v. Governor, Florida*, 848 F.3d 1293 (11th Cir. 2017) (en banc). *Wollschlaeger* addressed Florida law provisions prohibiting doctors and medical professionals from asking patients whether they had firearms in their homes. *Id.* at 1303. *Wollschlaeger* holds a communication between a doctor and a patient about ownership of firearms is speech under the First Amendment. 848 F.3d at 1307 (citing *King*'s holding that communication during SOCE counseling is speech under the First Amendment). *Wollschlaeger* further holds prohibiting doctors from discussing firearm ownership with their patients is a content-based law. *Id.* But *Wollschlaeger* declined to decide whether heightened-scrutiny analysis or strict-scrutiny analysis applied to the doctors' speech about firearm ownership. *Id.* at 1308. Instead, *Wollschlaeger* did not need to reach strict-scrutiny analysis because the majority of the Eleventh Circuit, sitting en banc, concluded the prohibition on doctors asking about firearm ownership

23

failed heightened (intermediate) scrutiny because the challenged provision failed to address concerns identified by the six anecdotes the legislature relied on when passing the law. 848 F.3d at 1317.

The last, and most recent, case to consider is *National Institute of Family and Life Advocates* (NIFLA) *v. Becerra*, 138 S. Ct. 2361 (2018). At issue in *NIFLA* was a California law requiring pregnancy centers to post a notice advising patients the state provided free or low-cost abortions for women. *Id.* at 2369. The plaintiffs, including pregnancy centers devoted to opposing abortion, claimed the California law violated their free-speech protections under the First Amendment. *Id.* at 2370. In *NIFLA*, a divided Supreme Court held the California law was content-based because the law altered the pregnancy centers' speech by requiring the centers "to inform women how they can obtain state-subsidized abortion." *Id.* at 2371.

*NIFLA* expressly rejected the analyses in *Pickup* and *King* recognizing "professional speech" as a separate category of speech subject to different constitutional analysis. *Id.* at 2371–72.[7] Instead, professional speech is usually given less protection if it is commercial speech or if a law regulates professional conduct that incidentally involves speech. *NIFLA*, 138 S. Ct. at 2372. Although stating traditional strict-scrutiny analysis applies to a content-based law that regulates neither commercial speech nor conduct that incidentally involves speech, *NIFLA*

_____

[7] Although *NIFLA* rejected the free-speech analysis in *Pickup* and *King*, the Supreme Court denied petitions for writs of certiorari in *Pickup* and *King*. *Pickup v. Brown*, 134 S. Ct. 2871 (2014); *King v. Christie*, 135 S. Ct. 2048 (2015).

24

applied intermediate scrutiny to the California law requiring pregnancy centers to post notices. *See NIFLA*, 138 S. Ct. at 2375 (stating, "We need not [determine whether professional speech is exempt from ordinary First Amendment principles] because the licensed notice cannot survive even intermediate scrutiny").

These four cases taken together indicate strict-scrutiny analysis applies to laws banning SOCE counseling. The Ninth Circuit's holding in *Pickup* that SOCE counseling is conduct—not speech—was rejected by the Third Circuit in *King*, which held communications during SOCE counseling are speech under the First Amendment. 767 F.3d at 224–29. The Eleventh Circuit, sitting en banc, held in *Wollschlaeger* a doctor-patient communication about firearm ownership is speech under the First Amendment and approvingly cited *King*'s similar holding. 848 F.3d at 1307. And *NIFLA* held that traditional First Amendment analyses apply to professional speech that is neither commercial nor incidentally affected by a law regulating conduct. 138 S. Ct. at 2372.[8]

Importantly, the City and Equality Florida's arguments that SOCE counseling is conduct and therefore Ordinance 2017-47 regulates conduct is undermined by the

---

[8] *But see NIFLA*, 138 S. Ct. at 2373 (suggesting if speech is "tied to a procedure" it can be subject to content-based regulation) (citations omitted); *Planned Parenthood v. Casey*, 505 U.S. 845 (1992) (plurality) (rejecting free-speech claim under the First Amendment against state law that required doctors to give women information about abortion because the doctors' free-speech rights were affected "only as part of the practice of medicine, subject to reasonable . . . regulation by the state"); *Pickup*, 740 F.3d at 1229 (stating the law prohibiting SOCE counseling "bans a form of treatment").

language in Ordinance 2017-47 itself, which specifically refers to counseling as speech in a "whereas clause" adopted as part of Section One of the ordinance. (*See* Doc. 24-1, p. 4) (stating "courts found that counseling is professional speech, subject to a lower level of judicial scrutiny"); (Doc. 134-2, p. 10) (a city attorney's PowerPoint presentation on code enforcement refers to conversion therapy as professional speech); (*see also* Doc. 52, p. 10) (acknowledging Equality Florida's claim that it was "actively involved in the enactment of [Ordinance 2017-47]").

Under *King*, *Wollschlaeger*, and Ordinance 2017-47, a communication during SOCE counseling is speech. Under *King* and *Wollschlaeger*, laws that ban certain communications between medical professionals and their patients are content-based laws. And under *NIFLA*, content-based laws that prohibit professional speech that is neither commercial nor incidentally affected by a law regulating conduct are subject to traditional First Amendment analyses. *See also Wollschlaeger*, 848 F.3d at 1323–27 (Wilson, J., concurring) (stating strict-scrutiny analysis applies to the state law that prohibited doctors from asking patients about firearm ownership). Therefore, applying this case law, Ordinance 2017-47 is a content-based law subject to strict-scrutiny analysis. The plaintiffs must therefore establish Ordinance 2017-47 is not narrowly tailored to promote a compelling governmental interest.

The undersigned will now analyze whether the plaintiffs are likely to succeed in proving Ordinance 2017-47 fails strict scrutiny.

### i. Compelling Governmental Interest

The stated purpose of Ordinance 2017-47 is to protect the physical and psychological well-being of minors from harms caused by conversion therapy. (Doc. 24-1, p. 5). The government has a compelling interest in protecting the physical and psychological well-being of minors. *Sable Commc'ns of Calif., Inc. v. FCC*, 492 U.S. 115, 126 (1989). So, Ordinance 2017-47 serves a compelling governmental interest.

### ii. Narrowly Tailored

A content-based law must be narrowly tailored to serve a compelling governmental interest. *Reed*, 135 S. Ct. at 2231 (citation omitted). To meet the narrow-tailoring requirement, the government must prove plausible alternatives, which burden less speech than the enacted law, would fail to achieve the government's interest. *Ashcroft v. ACLU*, 542 U.S. 656, 665 (2004) (citation omitted); *see also McCullen v.* Coakley, 134 S. Ct. 2518, 2530 (2014) (stating the Court considered less-restrictive alternatives when analyzing whether a law is narrowly tailored).

The court will not assume plausible alternatives will fail to protect compelling interests; "there must be some basis in the record, in legislative findings or otherwise, establishing the law as enacted as the least restrictive means." *Denver Area Educ. Telecommuc'ns Consortium, Inc. v. FCC*, 518 U.S. 727 807 (1996) (citations omitted) (Kennedy & Ginsburg, JJ., concurring in part, concurring in the judgment in part, dissenting in part). If a less restrictive means would serve the compelling

governmental interest, the government must use that alternative. *Playboy*, 529 U.S. at 813 (citations omitted).

The plaintiffs sufficiently demonstrated they are likely to succeed in proving Ordinance 2017-47 is not narrowly tailored to serve the City's interest in protecting minors because the City considered no lesser restrictions on mental health professionals' speech. The City's designated party representative under Federal Rule of Civil Procedure 30(b)(6), who was also the City Council member who sponsored the ordinance, testified the City considered no alternatives to its total ban on conversion therapy. (Doc. 133-2, p. 98). Consistent with that testimony, the City put forward no evidence at the hearing to show it considered any alternatives to a complete ban on conversion therapy despite the ordinance's language that minors "are not effectively protected by other means." (Doc. 24-1, p. 5).

The plaintiffs, on the other hand, put forward suggested alternatives to Ordinance 2017-47's total ban on conversion therapy—none studied or considered by the City. For example, the plaintiffs argue the City could have enacted a ban on involuntary SOCE counseling—as opposed to the voluntary, consensual counseling the plaintiffs provide. (Doc. 114, p. 22). The plaintiffs also suggest the City could have more narrowly banned aversive conversion therapy techniques, like electroshock therapy, while permitting the plaintiffs' "speech-only talk therapy."

(*Id.*).[9] And the plaintiffs suggest the City could have required informed consent from minors and parents before a mental health counselor could provide SOCE counseling to a minor. (*Id.* at 31–32); *but see King*, 767 F.3d at 239–40 (finding an informed-consent requirement would not adequately protect minors).

The City failed to demonstrate how plausible alternatives, which the City apparently never considered before enacting Ordinance 2017-47, could not achieve the City's compelling interest in protecting minors. The plaintiffs are likely to succeed in proving that Ordinance 2017-47 is not narrowly tailored to promote the City's interest in protecting the physical and psychological well-being of minors. Therefore, the plaintiffs are likely to succeed on the merits on their claim that Ordinance 2017-47 is an unconstitutional content-based law under the First Amendment.

b.    *Viewpoint-Discrimination Claim*

The plaintiffs sufficiently demonstrated they are likely to succeed on the merits of their First Amendment claim that Ordinance 2017-47 is viewpoint discrimination. Section IV(A)(2)(a) of this report discusses how Ordinance 2017-47 is a content-based

_____

[9] At the hearing on the plaintiffs' motion for preliminary injunction, the City argued it determined both aversive and non-aversive conversion therapies threatened the well-being of minors; so, a ban on just aversive techniques is not plausible. The City's argument, however, is undermined by Ordinance 2017-47's legislative findings, which make no distinction between aversive and non-aversive techniques. (*See* Doc. 24-1, pp. 2–6) (listing the City's findings). Further, the City's designated party representative testified he did not know what the terms "aversive therapy" and "non-aversive therapy" meant. (Doc. 133-2, p. 36).

law for which the City considered no alternatives. These facts also sufficiently demonstrate the plaintiffs' claim that the City adopted Ordinance 2017-47 because the City disagreed with the viewpoint mental health counselors express during SOCE counseling. (*See also* Doc. 24-1, p. 6) (prohibiting counseling aimed at "chang[ing] . . . gender identity, or gender expression" while allowing counseling "that provides support and assistance to a person undergoing gender transition"); *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995) (citation omitted) (stating viewpoint discrimination occurs when the government targets specific views on a subject); *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 571 (2011) (citations omitted) (stating content-based laws can be viewpoint discriminatory). The plaintiffs therefore sufficiently demonstrated they are likely to prove Ordinance 2017-47 is unconstitutional viewpoint discrimination.

### c.    *Unconstitutionally-Overbroad Claim*

The plaintiffs similarly demonstrated they are likely to succeed on the merits of their claim that Ordinance 2017-47 is overbroad. A law is overbroad when every application of the law creates the risk that ideas might be suppressed, such as when the law gives overly broad discretion to the person enforcing it. *Nationalist Movement*, 505 U.S. at 129–30 (citations omitted); *Catron v. City of St. Petersburg*, 658 F.3d, 1260, 1269 (11th Cir. 2011). Because the plaintiffs are likely to succeed in proving Ordinance 2017-47 constitutes viewpoint discrimination, the plaintiffs are likely to prove that every application of the ordinance creates the risk ideas might be

suppressed. In other words, if the City adopted Ordinance 2017-47 because it disagreed with the ideas expressed during SOCE counseling, every application of Ordinance 2017-47 creates the risk the ideas expressed during SOCE counseling might be suppressed. Therefore, the plaintiffs demonstrated they are likely to succeed on the merits of their claim that Ordinance 2017-47 is overbroad.

### d. Prior-Restraint Claim

The plaintiffs also sufficiently demonstrated Ordinance 2017-47 restricts the plaintiffs' speech during SOCE counseling before they can express it. *See Black's Law Dictionary* 1387 (10th ed. 2014) (defining prior restraint on speech as a government restriction on speech before its expression); *Foryth Cty. v. Nationalist Movement*, 505 U.S. 123, 129–30 (1992) (citations omitted) (stating there is a "heavy presumption" against prior-restraint laws). So, the plaintiffs sufficiently demonstrated a likelihood of success on the merits of their claim that Ordinance 2017-47 is an unconstitutional prior restraint on the plaintiffs' free speech.

### e. Unconstitutionally-Vague Claim

The plaintiffs sufficiently demonstrated a likelihood of success on the merits of their claim that Ordinance 2017-47 is unconstitutionally vague. A plaintiff who claims that a law is unconstitutionally vague must prove either (1) the law fails to provide people of ordinary intelligence to understand what conduct the law prohibits or (2) the law authorizes or encourages arbitrary and discriminatory enforcement. *Konikov v. Orange Cty.*, 410 F.3d 1317, 1329 (11th Cir. 2005) (citations omitted). The

plaintiffs sufficiently demonstrated the City adopted Ordinance 2017-47 because it disagreed with the ideas and messages expressed during SOCE counseling. The ordinance therefore authorizes and encourages discriminatory enforcement by code enforcement officers (who may or may not have any medical or mental health counseling training) against the viewpoints of mental health professionals who provide SOCE counseling. So, the plaintiffs established a likelihood of success on the merits on their claim that Ordinance 2017-47 is unconstitutionally vague.

### B.   Irreparable Harm

The plaintiffs argue they are suffering irreparable harm because of Ordinance 2017-47 and will continue to do so without a preliminary injunction. (Doc. 85, p. 24; Doc. 114, pp. 27–29).

The City and Equality Florida argue the plaintiffs failed to demonstrate they will suffer irreparable harm without an injunction because the plaintiffs waited almost eight months after the ordinance's enactment to begin this lawsuit and repeatedly delayed in seeking injunctive relief. (Doc. 98, pp. 3–4; Doc. 99, pp. 28–30; Doc. 143, pp. 3–4).

The party requesting an injunction must demonstrate he or she will likely suffer irreparable harm without an injunction. *Winter*, 555 U.S. at 22 (citations omitted). A party's months-long delay in seeking a preliminary injunction "militates against a finding of irreparable harm." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016). Preliminary injunctions are meant to provide "speedy

and urgent action to protect a plaintiff's rights before a case can be resolved on the merits." *Wreal*, 840 F.3d at 1248 (citations omitted). That said, the Supreme Court instructs the loss of First Amendment freedoms constitutes irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373–74 (citation and footnote omitted).

Section II of this report illustrates the plaintiffs' months-long delay in seeking injunctive relief against Ordinance 2017-47. The plaintiffs' actions in this litigation repeatedly prevented a decision on their motion for preliminary injunction. These actions would normally weigh heavily against finding a likelihood of irreparable injury without an injunction. But the plaintiffs demonstrated they are likely to succeed on the merits of most of their First Amendment free-speech claims. Because of the seemingly automatic conclusion of irreparable injury in a First Amendment action, the plaintiffs sufficiently demonstrated they will likely be irreparably harmed without an injunction.

### C.  Balance of Equities

The plaintiffs argue the balance of equities tips in their favor because the City will not be harmed if enforcement of Ordinance 2017-47 is enjoined. (Doc. 85, p. 25; Doc. 114, pp. 29–30).

The party moving for a preliminary injunctive must demonstrate the balance of equities tips in his or her favor. *Winter*, 555 U.S. at 20. In other words, the threatened injury to the plaintiff must outweigh any harm the defendant might suffer. *Gen. Contractors*, 896 F.2d at 1284 (citations omitted); *see also Benisek v.*

*Lamone*, 138 S. Ct. 1942, 1944 (2018) (stating that years-long delay in seeking preliminary injunctive relief weighs against the plaintiff when considering balance of equities).

The plaintiffs sufficiently demonstrated their First Amendment rights will be irreparably harmed without a preliminary injunction. The City, however, failed to show any harm it may suffer if enforcement of Ordinance 2017-47 is enjoined. The City and Equality Florida instead focus on potential harm to non-defendants, especially minors, if the ordinance is enjoined. (Doc. 98, pp. 4–8; Doc. 99, pp. 30–35; Doc. 143, pp. 4–5). But the public interest is a separate factor in determining whether the court should grant a preliminary injunction. *Winter*, 555 U.S. at 20. Further, a "city has no legitimate interest in enforcing an unconstitutional ordinance." *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006). Therefore, the balance of equities tips in the plaintiffs' favor because the City failed to show any harm it would suffer if enforcement of Ordinance 2017-47 is enjoined and the City has no legitimate interest in enforcing an ordinance likely to be ruled unconstitutional.

### D.  Public Interest

The plaintiffs argue enjoining Ordinance 2017-47 is in the public interest because the ordinance is unconstitutional and the City presented no evidence of minors being harmed by SOCE counseling within city limits. (Doc. 85, p. 25; Doc. 114, pp. 29–30). The City and Equality Florida argue enjoining Ordinance 2017-47

is against the public interest because minors could be potentially harmed by conversion therapy while enforcement of the ordinance is enjoined. (Doc. 98, pp. 4–8; Doc. 99, pp. 30–35; Doc. 143, pp. 4–5).

The plaintiffs sufficiently demonstrated Ordinance 2017-47's overbroad prohibition on non-coercive, non-aversive SOCE counseling consisting entirely of speech or "talk therapy" is likely unconstitutional. The public has no interest in enforcing an unconstitutional ordinance. *KH Outdoor*, 458 F.3d at 1272–73 (citations omitted). Further, the City and Equality Florida's argument that minors will be harmed by SOCE counseling if Ordinance 2017-47 is enjoined is undermined by the fact the City received no complaints related to any minor harmed by SOCE counseling within the city limits. (Doc. 132-1, p. 8). In the absence of any harm to the public, the plaintiffs, therefore, sufficiently demonstrated it is in the public's interest to enjoin Ordinance 2017-47's prohibition on SOCE counseling.

### E.     Limited Injunction

An injunction should be no broader than necessary to avoid the harm on which the injunction is based. *See Trump v. Hawaii*, 138 S. Ct. 2392, 2426 (2018) (Thomas, J., concurring) (discussing how traditional courts of equity had discretion to "tailor a remedy" to the issue before the court); *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 933 n.81 (D.C. Cir. 1984) (discussing limited injunctions in the context of international litigation); *Uber Promotions, Inc. v. Uber Tech., Inc.* 162 F. Supp. 3d 1253, 1281–82 (N.D. Fla. 2016) (granting limited preliminary injunction

narrowly tailored to address the harm to the plaintiff); *Occupy Ft. Myers v. City of Ft. Myers*, 882 F. Supp. 2d 1320, 1339 (M.D. Fla. 2011) (granting limited injunction that enjoined parts of city ordinance found likely to violate the First Amendment in Section 1983 case).

The plaintiffs here repeatedly state that if Ordinance 2017-47 only banned aversive conversion-therapy techniques, like electroshock therapy, the plaintiffs would not be challenging the ordinance's constitutionality because Messrs. Vazzo and Pickup only provide non-aversive therapy. (*See, e.g.*, Doc. 114, p. 3) (stating the plaintiffs would not have filed this lawsuit if the ordinance only banned aversive therapy because Messrs. Vazzo and Pickup do not provide that therapy).

The City and Equality Florida also sufficiently demonstrated minors in the city limits could be harmed by techniques like electroshock therapy if enforcement of Ordinance 2017-47 is completely enjoined. (*See, e.g.*, Doc. 98, p. 6) (discussing dangers of coercive conversion therapy).

The lack of harm to the plaintiffs' First Amendment rights if Ordinance 2017-47's ban on aversive conversion therapy remains and the possible harm to minors if the ordinance is completely enjoined weigh in favor of a limited injunction. The court should preliminarily enjoin the enforcement of Ordinance 2017-47 to the extent the City may not enforce the ordinance against mental health professionals who provide non-coercive, non-aversive, SOCE counseling—which consists entirely of speech, or "talk therapy"—to minors within the city limits. This type of limited injunction will

36

balance the plaintiffs' First Amendment rights and the health and safety of minors within the city limits.

## V.    CONCLUSION

The plaintiffs failed to establish a likelihood of success on the merits of their claims that the City lacks authority to enact Ordinance 2017-47 (Count VI).  The court should not grant a preliminary injunction on that basis.

But the plaintiffs established a likelihood of success on the merits of most of their First Amendment claims against Ordinance 2017-47 in Count I.  The plaintiffs also demonstrated irreparable harm without an injunction; the balance of equities tips in the plaintiffs' favor; and partially enjoining enforcement of Ordinance 2017-47 is in the public interest.  Therefore, the plaintiffs' motion for preliminary injunction (Doc. 85) should be **GRANTED-IN-PART** and **DENIED-IN-PART** as follows:

1.    The plaintiffs' motion for preliminary injunction should be **GRANTED** to the extent that the City should be enjoined from enforcing Ordinance 2017-47 against mental health professionals who provide non-coercive, non-aversive SOCE counseling—which consists entirely of speech, or "talk therapy"—to minors within the city limits.

2.    The plaintiffs' motion for preliminary injunction should be **DENIED** to the extent that the plaintiffs seek to completely enjoin the enforcement of Ordinance 2017-47.

3. If the court agrees a limited preliminary injunction should issue, in its order, the court should require the plaintiffs to provide a proposed preliminary injunction order consistent with the court's order, Local Rules 4.06(b)(1), 4.05(b)(3)(iii), and Federal Rule of Civil Procedure 65(d).

**RECOMMENDED** in Tampa, Florida, on January 30, 2019.

AMANDA ARNOLD SANSONE
United States Magistrate Judge

## **NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of this service bars an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).